# ORIGINAL

**FILED**
**HARRISBURG**

MAR 16 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,

               Plaintiff

    vs.

PAUL EVANKO, MARK CAMPBELL,
THOMAS COURY, JOSEPH WESTCOTT,
HAWTHORNE CONLEY,

               Defendants

:
:
:
:
:
:
:
:
:
:

NO. 1: CV-01-0084
(Judge Caldwell)

CIVIL ACTION - LAW

JURY TRIAL DEMANDED

---

## DEFENDANTS' BRIEF IN SUPPORT
## OF THEIR MOTION TO DISMISS ALL CLAIMS

---

JOANNA N. REYNOLDS
Assistant Counsel
Attorney I.D. #37436

Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
(717) 783-5568

SYNDI L. GUIDO
Deputy General Counsel
Attorney I.D. #49802

Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
(717) 783-6563

(Counsel for Defendants)

Dated:  March 16, 2001

# STATEMENT OF THE QUESTIONS PRESENTED

I.    Should plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted?

II.    Should plaintiff's complaint be dismissed because defendants are entitled to qualified immunity?

III.    Are plaintiff's claims barred by the Eleventh Amendment?

## PROCEDURAL HISTORY AND STATEMENT OF THE CASE

On January 16, 2001, the plaintiff, Captain Darrell G. Ober, who is currently Director of the Administrative Division of the Bureau of Liquor Control Enforcement for the entire state, filed suit against the Commissioner, two Deputy Commissioners, a former Deputy Commissioner, and the Governor's Chief of Staff (formerly the Deputy Chief of Staff). The thrust of Ober's complaint is that the defendants caused unspecified damage to his career because they were upset that Ober had not told them about an FBI investigation into possible corruption in the process of selecting cadets for the State Police Academy. Ober's complaint is comprised almost entirely of inflammatory rhetoric and conclusory allegations that are unsupported by factual averments.

According to Ober, his problems began when he was serving as Acting Director of the Bureau of Professional Responsibility in the Internal Affairs Division. (Compl.¶ 21.) In late September or early October 1998, an unnamed person from the FBI contacted Ober. *Id.* at ¶ 23. This FBI source supposedly had information from an anonymous informant that "high-ranking members of the PSP," as well as members of the Governor's Office, might be taking payoffs in exchange for giving special consideration to certain cadet applicants. *Id.* at ¶ 24. Ober was allegedly ordered not to divulge the investigation's existence to the Commissioner (Colonel Evanko) or Deputy Commissioners (Lieutenant Colonels Coury, Westcott, and Hickes). *Id.* at ¶ 25.

In spite of the FBI's directive, Ober felt he should report these allegations, but he did not want to share the information with anyone he did not personally trust. *Id.* at ¶ 26. For that reason, Ober kept the investigation a secret from everyone in his chain of command and instead confided in Lieutenant Colonel Hickes.[1] *Id.* at 27. According to Ober, Lieutenant Colonel Hickes ordered him not to tell anyone else about the investigation. *Id.*

---

[1] At the time of these events, Major Conley (now Lieutenant Colonel Conley) was Ober's immediate supervisor. As part of the administrative division, Ober's chain of command reported to Colonel Evanko through Lieutenant Colonel Coury rather than Lieutenant Colonel Hickes.

In May 1999, someone at the FBI informed Ober that any wrongdoing was limited to a single trooper. *Id.* at ¶ 28. On May 12, Ober and Hickes told Colonel Evanko about the FBI's investigation. Colonel Evanko was angry that it had been kept secret from him and decided to conduct an administrative inquiry into the facts surrounding Ober's involvement. *Id.* at ¶¶ 30-33. The Governor's Deputy Chief of Staff, Mark Campbell, supposedly approved Colonel Evanko's request to conduct that investigation. *Id.* at ¶ 33. Ober believes that administrative inquiries such as this generally destroy an officer's reputation, causing him to be shunned, insulted, and ostracized. *Id.* at ¶ 37. Nevertheless, Ober has not mentioned a single person who shunned, insulted, or ostracized him because of this particular administrative inquiry.

As Ober explains it, the gravamen of his complaint is against Colonel Evanko, who is said to have committed "shocking" violations of Ober's "rights." *Id.* at Intro. and ¶ 46. Apparently Ober finds it shocking that he was transferred to Washington, Pennsylvania, even though that transfer was not ordered until the end of January 2000, more than eight months after the events that supposedly outraged Colonel Evanko. *Id.* at ¶¶ 46, 46(a), 50; *Ober v. Evanko,* Pet. for Prelim. Inj., No. 35 M.D. 2000 (Pa. Commw. filed Jan. 26, 2000).

To prevent that transfer, Ober filed a petition for mandamus and requested a preliminary injunction. *Ober v. Evanko*, Pet. for Mandamus, No. 35 M.D. 2000 (Pa. Commw. filed Jan. 26, 2000). On January 27, 2000, in exchange for Captain Ober's withdrawal of his motion for a preliminary injunction, Colonel Evanko voluntarily rescinded Captain Ober's transfer to Washington and agreed to keep him in the Harrisburg area until a final decision on Ober's mandamus petition. *Ober v. Evanko,* Petitioner's Mot. to Withdraw, App. A, No. 35 M.D. 2000 (Pa. Commw. filed January 27, 2000); Comp. ¶ 51.

On February 25, 2000, Colonel Evanko filed a motion to dismiss Ober's mandamus petition as moot. *Ober v. Evanko*, Respondents' Application to Dismiss for Mootness Pursuant to Pa.R.C.P.

1972(4), No. 35 M.D. 2000 (Pa. Commw. filed Feb. 2000). In that motion, Colonel Evanko explained that Captain Ober had been transferred to Washington in order to assist the Area Commander in coordinating services at the Conference of the National Governors Association, which was to be held in Pennsylvania later that year. *Id.* at ¶ 3. Since Evanko had agreed to keep Ober in Harrisburg and the important Washington position needed to be filled immediately, Captain Dave Young, a Philadelphia resident, was transferred there from his position as Commander of the Organized Crime Section in Harrisburg. *Id.* at ¶¶ 5, 6. In the meantime, to fulfill his promise to Ober, Colonel Evanko temporarily assigned him as Central Section Commander of the Bureau of Liquor Control Enforcement (which oversees the entire central region of the state). *Id.* at ¶ 7. Based on these facts, the Commonwealth Court granted Colonel Evanko's motion and dismissed Ober's lawsuit as moot. *Ober v. Evanko*, No. 35 M.D. 2000 (Pa. Commw. Mar. 30, 2000).

Still, Ober was not happy. Even though he retained the same rank and pay, Ober did not like the fact that his new position had been held by a lieutenant. (Compl. ¶ 51.) Accordingly, Ober filed a second action under Pennsylvania's Whistleblowers' Law. *Ober v. Evanko*, Pet. for Review, No. 238 M.D. 2000 (Pa. Commw. filed May 9, 2000). That action was dismissed for failure to state a claim. *Ober v. Evanko*, 238 M.D. 2000, slip. op. at 6 (Pa. Commw. Sept. 6, 2000).

A few months later, Ober filed this lawsuit, repeating his factual averments and supplementing them with an assortment of vague contentions and innuendo. For example, at some unknown time, Ober was supposedly denied unspecified promotions, transfers, educational opportunities, and overtime, as well as reimbursement for unnamed "expenses." (Compl. ¶ 46(c),(d),(g),(h).) Ober contends he "was subjected to career destroying investigations," without explaining what those investigations were about or how his career was adversely effected. *Id.* at ¶ 46(e). Similarly, Ober believes he was "constructively" demoted, somehow "destroying" his reputation and effectiveness among unmentioned "colleagues." *Id.* at ¶ 46(b).

Ober also suggests that the defendants took "numerous actions" meant to injure him, "decimate" his career, and "hamper" his performance, but Ober has not described those actions or indicated how he was harmed by them. *Id.* at ¶ 46(j). Ober provides no factual support for the proposition that he has "suffered innumerable insults, humiliations, and embarrassments at the hands of" anonymous "PSP officers" who were somehow "made to fear they would suffer official retribution" if they treated Ober fairly. *Id.* at ¶ 47. In that same vein, Ober summarily concludes, without supporting facts, that he has been subjected to personal attacks and an atmosphere fostering retaliation, resentment, and harassment. *Id.* at ¶¶ 46(f),(i).

## ARGUMENT

### I.   Ober's complaint must be dismissed for failure to state a claim.

In assessing the sufficiency of Ober's complaint, the Court must accept all factual inferences as true; however, the Court is free to look beyond Ober's dramatic hyperbole. *See Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 185 (3d Cir. 2000) (expressing displeasure at arguments "couched in hyperbole obfuscating the real issues"). In ruling on a motion to dismiss, the Court should draw on the complaint's allegations in a "realistic, rather than slavish, manner" and avoid ruling based "upon the mere presence of words." *Id.* at 184.

To that end, the Court need not credit bald assertions, unsupported conclusions, or unwarranted inferences. *Id.* at 183-84 (court may reject unsupported conclusions and unwarranted inferences); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (court may disregard bald assertions and legal conclusions). Moreover, fair inferences may be drawn from what a plaintiff does *not* plead in the complaint. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000) (court may infer events did not occur if not alleged in the complaint); *accord Angus v. Shiley*, 989 F.2d 142, 147 (3d Cir. 1993).

4

Strident rhetoric aside, Ober's complaint contains very few factual averments. The sole allegation against Mark Campbell is that Colonel Evanko consulted him about Ober's failure to report the FBI investigation, and they decided to examine the matter further. The planned inquiry was apparently discussed at a meeting attended by Lieutenant Colonels Coury, Westcott, and Conley (who was then a Major in charge of Internal Affairs). Except for attending that meeting, the only specific allegation against Lieutenant Colonel Coury is that he removed Ober from an assignment with the "PSP Centennial Book Committee," which Ober considered "prestigious." Ober is upset with Lieutenant Colonel Conley for taking his cell phone and denying some sort of "expenses." Apparently, former Lieutenant Colonel Westcott did nothing more than reject a recommendation for Ober to serve as the state police contact with the Pennsylvania Emergency Management Agency.

Thus, Ober's specific allegations against defendants Campbell, Coury, Westcott and Conley boil down to three facts: (1) They knew Colonel Evanko was conducting an administrative inquiry into the events surrounding Ober's decision to conceal his contact with the FBI from his commanding officers; (2) Ober was relieved of some secondary responsibilities; and (3) Ober did not get to keep a cellular phone. Ober makes two additional allegations against Colonel Evanko, which do little to enhance his case. Without explaining why he was entitled to remain in Harrisburg, Ober attacks Evanko for transferring him to an assignment in Washington, Pennsylvania. Then, when Evanko allowed Ober to stay in the Harrisburg area, Ober complained because the position had previously been filled by a lieutenant. Taken as a whole, these factual allegations are insufficient to support any of Ober's claims for relief.

### A.    Substantive Due Process Rights

First, Ober accuses the defendants of violating his Fourteenth Amendment right to substantive due process. (Compl. ¶ 10; Wherefore Clause ¶ (b)) To prevail on this claim, Ober must show that the government deliberately and arbitrarily abused its power to deprive him of a property interest that

is "fundamental" under the United States Constitution. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000).

Not all property rights are protected by the concept of substantive due process. *Id.* at 140. So far, the Third Circuit has limited substantive due process protection to cases involving the ownership of real property. *Id.* at 141.[2] Less fundamental interests, such as rights created by contract, are not entitled to protection. *Id.* at 141-42 (tenured professorship at state university was not entitled to substantive due process protection); *Mauriello v. Univ. of Med. & Dentistry of New Jersey*, 781 F.2d 46 (3d Cir. 1986) (graduate student's interest in continued academic enrollment is not constitutionally protected). Likewise, reputation alone is not protected by due process. *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997).

Ober complains bitterly that his "rights" have been violated. However, Ober has not explained what fundamental, constitutionally-protected property interest he has in being assigned to any particular post, in serving on the Centennial Book Committee, in acting as the state police contact with PEMA, in being supplied with a cellular phone, or in having his expenses paid. Not one of these items rises to the level of a fundamental interest entitled to substantive due process protection. *See See Kelly*, 107 F.3d at 1077 (police officer's allegations were insufficient to state a due process claim although he was subjected to a series of reprimands, disciplinary actions, reprisals, job-related actions, and damage to his reputation); *Nicholas*, 227 F.3d at 141-42 (tenured professorship unworthy of due process protection). Accordingly, Ober's due process claim should be dismissed.

---

[2] The majority of other circuit courts of appeal have adopted the same approach. *See Singleton v. Cecil*, 176 F.3d 419, 425-26 (8th Cir. 1999) (*en banc*) (state-law contract rights in employment are not fundamental Constitutional interests); *accord McKinney v. Pope*, 20 F.3d 1550, 1560 (11th Cir. 1994) (*en banc*); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339 (6th Cir. 1992); *Huang v. Board of Governors of University of North Carolina*, 902 F.2d 1134, 1142 n.10 (4th Cir. 1990).



**B.    Privileges and Immunities Clause of the Fourteenth Amendment**

Next, Ober makes the confusing assertion that the defendants violated "his right to enjoy the protections afforded by the Privileges and Immunities Clause" of the Fourteenth Amendment. (Compl. ¶¶ 11; Wherefore Clause ¶ (d))  There is simply no basis for Ober's claim.

The privileges and immunities clause provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, §1.  In essence, "when a state affords rights or privileges to its own citizens, it may not deny them to citizens immigrant from other states." *Galahad v. Weinshenk,* 555 F.Supp. 1201, 1206 n.3 (D.C. Colo. 1983).

To prevail on a "privilege and immunities" claim, a plaintiff must prove that:  (1) he has a fundamental interest that is being burdened by a state of which he is not a citizen; and (2) the defendants did not have a substantial reason to discriminate against citizens of other states.  This does not mean that states cannot discriminate against the citizens of other states.  In fact, there may be perfectly valid reasons for doing so.  The inquiry is whether reasons for the discrimination exist and whether the degree of discrimination bears a close relation to those reasons. *Toomer v. Witsell*, 334 U.S. 385, 396 (1948).

The privileges and immunities clause is plainly irrelevant to these facts.  As discussed above, Ober has not pointed to any fundamental right that has been adversely affected. *See Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 270 (3d Cir. 1994) (public employment is not a fundamental right).  More importantly, Ober does not claim discrimination based on his state citizenship.  His privileges and immunity claim is baseless and must be dismissed.

**C.    First Amendment Right to Free Speech**

Ober also maintains that his First Amendment rights were violated by defendants Evanko and Campbell. (Compl. ¶ 12)  Ober then demands judgment against all the defendants for depriving him

of his First Amendment "rights to be free of unlawful injurious employment actions in retaliation for his proper exercise of protected speech." (Compl. Wherefore Clause ¶ (a).)

In analyzing a public employee's retaliation claims, the Court must engage in a three-part analysis. Did the plaintiff engage in protected activity? *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983). Was that protected activity a substantial or motivating factor in the alleged retaliatory action? *Id.* If the protected conduct had not occurred, would the employer still have taken the same action? *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 416-17 (1979). The allegations in Ober's complaint are insufficient to meet this test because Ober did not engage in protected conduct and the Commissioner's actions were in no way retaliatory.

Ober has not explained exactly what "protected speech" he was supposedly punished for. However, there are only two instances of speech mentioned in Ober's complaint: (1) In early October 1998, he told Lieutenant Colonel Hickes about the FBI investigation; and (2) in May 1999, Ober belatedly told Colonel Evanko about the investigation. Unless either of these incidents can be "fairly characterized as constituting speech on a matter of public concern" (as opposed to speech "upon matters of personal interest"), the reasons for the defendants' actions are not subject to scrutiny by the courts. *Czurlanis*, 721 F.2d at 103 (quoting *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)).

Here, Ober's decision to tell Hickes about the FBI's investigation was motivated by his personal interests, not public concern. According to Ober's complaint, the FBI expressly directed Ober *not* to divulge the existence of his investigation to the Commissioner or the Deputy Commissioners. (Compl. ¶ 25.) Despite those instructions, Ober wanted to share his secret with someone he personally trusted – Hickes. (Compl. ¶¶ 26, 27.) Accepting Ober's allegations as true, his report to Hickes was contrary to any public interest involved. Ober's act not only ran counter to his duty to report matters through his chain of command, it also ran counter to the FBI's directive.

Likewise, Ober's belated report to Colonel Evanko was not protected speech.  When Ober and Hickes learned that the FBI had exonerated everyone in the state police except a solitary trooper, they finally told the Commissioner what was going on.  Significantly, Ober does not allege that Colonel Evanko retaliated against him because Ober knew of any independent evidence of corruption in the cadet selection program.  Rather, Evanko was apparently upset when Ober confessed hiding the investigation from his superiors, a purely personal decision.

Moreover, Ober asks this Court to draw the unjustified conclusion that he was transferred to Washington, Pennsylvania, "in an irresponsible act of outlandish and extreme retribution" in a "hateful attempt to separate him from his children." (Compl. ¶¶ 46(a), 50.)  Although the Court must accept Ober's factual allegations as true, it may reject unwarranted inferences such as this one. *Doug Grant*, 232 F.3d at 183-84.

Colonel Evanko first learned of the FBI's investigation, as well as the fact that Ober had kept it secret, in May 1999.  Yet Ober was not transferred to Washington until eight months later.  If Colonel Evanko's goal was to punish Ober, why would he have waited so long?  During that eight-month period, why would Colonel Evanko have trusted Ober to be the "project manager on the largest and most technical law enforcement project in PSP history"? (Compl. ¶ 50.)  More importantly, why would the Commissioner transfer Ober to a post as significant as assistant to the Task Commander for the National Governors Association's Conference?  If Colonel Evanko's sole motivation was a desire to punish Ober by separating him from his family, why would the Commissioner also have "punished" Captain Young, a Philadelphia resident and Commander of the Organized Crime Unit, by sending him to Washington in Ober's stead?  Quite simply, Captain Ober's reasoning defies logic, his conclusions are not supported by the facts he has alleged, and Ober's retaliation claim should be dismissed.

9

### D.    Fourth Amendment Rights

Ober makes another puzzling claim – that the defendants violated his Fourth Amendment rights by subjecting him to "custodial investigations" and "invasions of privacy in a series of investigations and administrative actions." (Compl. ¶ 14; Wherefore Clause ¶ (c).)  Accepting all of Ober's averments as true, it is clear he was never subjected to an unlawful seizure within the meaning of the Fourth Amendment.  Ober was not seized as a suspect in a criminal case; he was interviewed during an administrative inquiry, which does not implicate the Fourth Amendment.  *See Garrett v. Lehman*, 751 F.2d 997, 1004 (9th Cir. 1985) (holding the exclusionary rule of Fourth Amendment not applicable to military administrative discharge proceedings).

Issues of custodial interrogation arise under the Fifth Amendment, not the Fourth Amendment.  Assuming Ober's complaint somehow implicitly alleges a Fifth Amendment claim, the concept of "custodial interrogation" is still inapplicable because it only arises in the context of criminal cases.  *See California v. Byers*, 402 U.S. 424, 434 (1971) (statutory requirement that drivers involved in accidents stop and provide identification did not violate the Fifth Amendment when the purpose was civil not criminal).  Ober's factual averments do not have Fourth or Fifth Amendment implications, and these claims must be dismissed.

### E.    Equal Protection

Evanko and Campbell are also said to have discriminated against Ober in violation of the equal protection clause.  (Compl. ¶ 12.)  Ober then demands judgment against all of the defendants on this count.  (Compl. Wherefore Clause ¶ (h).)  To make out an equal protection claim, Ober must establish that he is part of a suspect classification or that he has been deprived of a fundamental right.  *Harrah Indep. Sch. Dist. v. Martin,* 440 U.S. 194, 199 (1979).  He has done neither.  Accordingly, Ober's equal protection claim cannot stand.

### F.    Right to Be Free of Civil Conspiracies and Emotional Distress

Finally, defendants supposedly violated Ober's rights "to be free of civil conspiracies" and "emotional distress." (Compl. ¶¶ 13, 15; Wherefore Clause ¶¶ (e)-(g)).  There is no federal constitutional right to be free of emotional pain and mental distress.  In order to state a conspiracy claim under § 1983, there must be an underlying constitutional deprivation.  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).  Ober has not made out a case of any constitutional violation; accordingly, these claims fail.

## II.    To the extent Ober's suit is brought against defendants in their individual capacities, they are protected by qualified immunity.

In the introduction to his complaint, Ober states that his suit is brought against Commissioner Evanko in his individual capacity.  (Compl., Introduction.)  The complaint does not indicate whether the remaining defendants are being sued in their official or individual capacities.  To the extent Evanko and the other defendants have been sued in their individual capacities, they are protected by qualified immunity.

Qualified immunity should be determined at the earliest possible stage because it constitutes immunity from suit and discovery, not just a defense to liability.  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (qualified immunity protects public officials from disruptive discovery); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (qualified immunity is a threshold question).

In any qualified immunity analysis, the court must determine whether the plaintiff has presented a constitutional right that was clearly established at the time of the defendants' actions.  *See Seigert v. Gilley*, 500 U.S. 226, 231 (1991) (court determines not only the currently applicable law, but whether that law was clearly established at the time the action occurred).  To be clearly established, the right's contours must have been obvious enough that a reasonable official would have known his actions violated that right.  *Anderson*, 483 U.S. at 640.

11

As discussed above, Ober has not shown a violation of any clearly-established constitutional right. Assuming Ober's complaint sets forth the requisite constitutional violation, defendants still cannot be held liable because it was objectively reasonable for them to believe their actions were constitutional. *Harlow*, 457 U.S. at 819 (government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established constitutional or statutory rights that a reasonable person should have known about).

Initially, Ober is upset that Colonel Evanko decided to examine Ober's actions. Nevertheless, as Commissioner of the State Police, Colonel Evanko is ultimately responsible for the conduct of every member of the force. Pennsylvania State Police Field Regulation, FR 3-3.04. The Commissioner also has a duty to maintain the State Police Academy. 71 P.S. § 251(a). On May 12, 1999, Colonel Evanko first learned that Ober had been contacted by the FBI about possible corruption in the academy. Evanko also learned that Ober had concealed this fact from his direct supervisor, Major Conley, as well as Commissioner Evanko and Deputy Commissioner Coury.

Ober's decision to bypass his chain of command directly violated state police regulations. *See* FR 1-1.17(B) (requiring members to promptly notify their supervisor when they receive any information indicating another member might have violated the law); Pennsylvania State Police Administrative Regulation, AR 1-1.02 (prohibiting personnel from bypassing the established chain of command without first obtaining their supervisor's permission). After learning that Ober had reported to Lieutenant Colonel Hickes without consulting Major Conley, it was well within Commissioner Evanko's authority to investigate that unauthorized breach in the chain of command.

Ober further suggests there was something improper about Colonel Evanko consulting the Governor's Deputy Chief of Staff, Mark Campbell, about Ober's conduct. Colonel Evanko's conduct was not only reasonable, it was entirely appropriate under Pennsylvania law.

Pennsylvania has not waived its immunity, and Congress has not abrogated the states' immunity in the Civil Rights Act, 42 U.S.C. § 1983. *See* 42 P.S. § 8521(b) (expressly withholding consent to be sued in federal court); *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania has not waived its immunity); *Will v. Michigan, Dep't of State Police*, 491 U.S. 58, 67 (1989) (42 U.S.C. § 1983 does not abrogate sovereign immunity).

Moreover, even though the Eleventh Amendment permits a plaintiff to sue state officials for injunctive relief in order to end continuing violations of federal law, they cannot be sued in their official capacity for monetary damages. *Will,* 491 U.S. at 71. Monetary damages are the only form of relief Ober has requested; therefore, federal claims are barred by the Eleventh Amendment.

Ober's state law claims are likewise barred. Under Pennsylvania law, state employees enjoy sovereign immunity except in those situations where the General Assembly has waived that immunity. 1 Pa.C.S. § 2310. Our Legislature has carved out nine narrow exceptions to the rule of immunity, none of which apply to plaintiff's claims. *See* 42 Pa.C.S. § 8522, *Shoop v. Dauphin County*, 766 F.Supp. 1327 (M.D. Pa. 1991), *aff'd*, 945 F.2d 396 (3d Cir. 1991), *cert. denied*, 502 U.S. 1097 (1992) (finding that a state trooper had immunity from plaintiff's intentional tort claims, including a claim for the infliction of emotional distress).

## CONCLUSION

Defendants' respectfully ask this Court to dismiss Ober's complaint with prejudice.

Respectfully submitted,

March 16, 2001

Syidi L. Guido, Deputy General Counsel
Joanna N. Reynolds, Assistant Counsel

| | | |
|---|---|---|
| **CAPTAIN DARRELL OBER** | * | **IN THE** |
| **Petitioner,** | * | **COMMONWEALTH COURT** |
| **vs.** | * | **OF** |
| **COLONEL PAUL EVANKO, et. al.** | * | **PENNSYLVANIA** |
| **Respondents.** | * | **Case No. 35MD2000** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## PETITIONER'S MOTION TO WITHDRAW
## PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AND
## PETITIONER'S MOTION TO WITHDRAW
## PETITIONER'S REQUEST FOR EXPEDITED HEARING

Petitioner, Captain Darrell Ober (Captain Ober), by and through his attorneys, John Miller, Esq., Byron L. Warnken, Esq., James A. Lanier, Esq., hereby withdraw: (1) Petitioner's Motion for Preliminary Injunction and (2) Petitioner's Request for Expedited Hearing.

The Respondents have stipulated to the injunctive relief sought by Captain Ober in his Motion for Preliminary Injunction, thereby making the need for a preliminary injunction hearing and the need for an expedited hearing moot. The Respondents have agreed to maintain this stipulation until the Court rules upon Captain Ober's Application for a Writ of Mandamus. This stipulation is attached at Appendix A.

This motion to withdrawal in no way affects Petitioner's Application for Writ of Mandamus.

John Miller, Esquire
7 West Main Street
P.O. Box 27
Fawn Grove, Pennsylvania 17321

Bar No. 50033

Byron L. Warnken, Esquire
James A. Lanier, Esquire
32 East Preston Street
Baltimore, Maryland 21202-2727

Attorneys for Petitioner Ober.

January 27, 2000

PSP COMM OFFICE Hbg ● ☎ 717 787 2948 ● 27/00 15:35 ☐ :02/02 NO:351



**PENNSYLVANIA STATE POLICE**
**DEPARTMENT HEADQUARTERS**
**1800 ELMERTON AVENUE**
**HARRISBURG, PA. 17110**
Office of Chief Counsel
(717) 783-5568

January 27, 2000

FAXED AND SENT FIRST CLASS MAIL

Mr. Byron L. Warnken, Esquire
32 East Preston Street
Baltimore, MD 21202-2727

RE: <u>Ober v. Evanko and Pennsylvania State Police</u> (Commonwealth Court of Pennsylvania)

Dear Mr. Warnken:

Pursuant to our conversation, this confirms that we will suspend the transfer of Captain Ober in exchange for your withdrawal of the motion for a preliminary injunction.

We agree to return Captain Ober to the IIMS (Integrated Incident Management System) position he served in prior to the transfer, in the Bureau of Technology Services, under the supervision of Major Wesley Waugh. We agree also not to transfer Captain Ober outside the Harrisburg/Hershey area until such time as the instant litigation is resolved either in our favor or your favor; however, we reserve the right to transfer Captain Ober to other existing positions in this area, that meet the operational needs of the Department, during the pendency of the litigation. (This agreement would not extend to any appeal from a Commonwealth Court determination).

This suspension of transfer will not affect the Department's intent to proceed forward with the mandamus action nor does it waive or limit any arguments that we may raise in this action, but it will obviate the need for the preliminary injunction hearing scheduled for tomorrow.

I assume that you will be cancelling the preliminary injunction hearing scheduled for tomorrow in Philadelphia – please fax me a copy of whatever document you file with the court that accomplishes this.

Very Truly Yours,

Joanna N. Reynolds

A

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER,          :
              Petitioner       :

                    :

       v.              :     NO. 35 M.D. 2000

                    :

COLONEL PAUL EVANKO,      :
COMMISSIONER, PENNSYLVANIA  :
STATE POLICE, et al.,         :
             Respondents  :

RECEIVED

BY _____

FEB 2 5 2000

OFFICE OF GENERAL COUNSEL

REFERRED _____

**RESPONDENTS' APPLICATION TO DISMISS FOR
MOOTNESS PURSUANT TO Pa.R.C.P. 1972(4)**

AND NOW, this 23rd day of February, 2000 come respondents, the Pennsylvania State Police and Colonel Paul J. Evanko, Commissioner, by and through their attorney, Assistant Counsel Joanna N. Reynolds, and respectfully petition this Honorable Court to dismiss as moot the Petition for Review for a Writ of Mandamus filed in the above-entitled matter, and in support thereof state as follows:

     1.     On January 26, 2000, the petitioner, Captain Darrell Ober, filed a Motion for a Preliminary Injunction and a Petition for Review for a Writ of Mandamus, seeking an order enjoining Colonel Evanko and the Pennsylvania State Police from transferring him to Area III, Troop B – Washington, Pennsylvania.

     2.     Captain Ober alleged that he was being transferred to a "made-up" position in Area III, Troop B – Washington in order to punish him by making him commute 420 miles a day from his home in Enola, Pennsylvania. (Petition, ¶¶ 38, 39).

     3.     In fact, the Special Projects Officer position in Area III, Troop B – Washington was not "made up" to punish Captain Ober. Rather, the position was created to assist the Area

Commander, Major Lyle Szupinka, in coordinating police services at the Conference of the National Governors Association, which will be held in Pennsylvania later this year. The transfer was necessary because Major Szupinka still has an area command to supervise while taking care of the ever-increasing duties associated with the Conference, and Captain Ober possesses organizational and administrative skills necessary for coordination of the Conference's large-scale security needs.

4.     Captain Ober's transfer to Area III, Troop B, was not unique. A similar transfer occurred previously when Captain Cynthia Transue was transferred from the Bureau of Research and Development in Harrisburg, to Area VI in Philadelphia in order to assist Major Robert Werts in coordinating police services for this summer's Republican National Convention.

5.     On January 27, 2000, in exchange for Captain Ober's withdrawal of his motion for a preliminary injunction, the Pennsylvania State Police voluntarily rescinded Captain Ober's transfer to Area III, Troop B – Washington and agreed not to transfer him outside of the Harrisburg/Hershey area during the pendency of this litigation.

6.     On February 12, 2000, Colonel Evanko transferred a Philadelphia resident, Captain Dave Young, from his position as Commander of the Organized Crime Section in Harrisburg to the Special Projects Officer position in Area III, Troop B – Washington.

7.     By order dated February 16, 2000, Captain Ober was transferred, effective February 19, 2000, to the position of Central Section Commander in the Bureau of Liquor Control Enforcement, Harrisburg, Pennsylvania. The transfer was necessary because that section's commander was recently suspended without pay pending disposition of criminal charges filed against him.

2

8.      Since Captain Ober's transfer to Troop B—Washington has been rescinded, that position has been filled by Captain Young, and Ober has been reassigned to a position in the Harrisburg area, any possibility that petitioner could suffer the harm alleged in his petition for review has been eliminated.  Accordingly, any controversy over Captain Ober's transfer to Area III, Troop B, has been obviated and rendered moot.

WHEREFORE, the Petition for Review for a Writ of Mandamus should be dismissed as moot.

Respectfully submitted,


Joanna N. Reynolds
Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
(717) 783-5568
Attorney I.D. #37436

Dated:  February 23, 2000

3

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER,                      :
                        Petitioner          :
                                            :
        v.                                  :        NO. 35 M.D. 2000
                                            :
COLONEL PAUL EVANKO,                        :
COMMISSIONER, PENNSYLVANIA                  :
STATE POLICE, et al.,                       :
                        Respondents         :

## VERIFICATION

I, Joanna N. Reynolds, hereby verify that the facts set forth in the foregoing

application to dismiss for mootness are true and correct to the best of my knowledge,

information, and belief.  I understand that the statements made herein are made subject to

the penalties of 18 Pa. C.S. § 4909 relating to unsworn falsification to authorities.


_Joanna N. Reynolds_
Joanna N. Reynolds
Assistant Counsel
Pennsylvania State Police


Dated:        February 23, 2000

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER,                    :
                            Petitioner    :
                                          :
              v.                          :        NO. 35 M.D. 2000
                                          :
COLONEL PAUL EVANKO,                     :
COMMISSIONER, PENNSYLVANIA               :
STATE POLICE, et al.,                    :
                            Respondents   :

## PROOF OF SERVICE

I hereby certify that on this date a copy of the foregoing application to dismiss for

mootness was served on the following persons by first class mail, addressed as follows:

> Byron L. Warnken, Esquire
> James A. Lanier, Esquire
> 32 East Preston Street
> Baltimore, MD  21202-2727

Joanna N. Reynolds
Assistant Counsel
Pennsylvania State Police

Dated:  February 23, 2000

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER,        :

         Petitioner       :

          v.             :     NO. 35 M.D. 2000

COLONEL PAUL EVANKO,      :
COMMISSIONER, PENNSYLVANIA :
STATE POLICE and PENNSYLVANIA:
STATE a/k/a COMMONWEALTH OF :
PENNSYLVANIA,            :

        Respondents  :

## ORDER

AND NOW, this 30th day of March, 2000, upon review of the pleadings and argument in the above-captioned matter, Respondent's Application to Dismiss for Mootness is hereby GRANTED.

The injunctive aspect of this case which sought to enjoin Respondents from transferring Petitioner to a position in a distant location from his home for "retaliatory purposes" was settled by the parties by agreement, thereby rendering the remaining Petition for Review for Writ of Mandamus moot. While the conduct complained of is capable of repetition, this Court does not find the mootness exception to be applicable as such conduct is not likely to evade review. Accordingly, the Petition for Review for Writ of Mandamus is dismissed as moot.

Certified from the Record

MAR 3 1 2000

and Order Exit

JAMES R. KELLEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER            :
c/o: PENNSYLVANIA STATE         :
POLICE DEPARTMENT               :
HEADQUARTERS,                   :
                    Petitioner  :
                                :
        v.                      :
                                :
COLONEL PAUL EVANKO             :
COMMISSIONER,                   :
PENNSYLVANIA STATE POLICE       :
DEPARTMENT HEADQUARTERS         :
and PENNSYLVANIA STATE          :
POLICE a/k/a: COMMONWEALTH      :
OF PENNSYLVANIA                 :
DEPARTMENT HEADQUARTERS,        :  No. 238 M.D. 2000
                    Respondents :  Argued: August 30, 2000

BEFORE:   HONORABLE DAN PELLEGRINI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE PELLEGRINI                  FILED: September 6, 2000

        Before this Court is an application to dismiss as moot and preliminary

objections of Respondents, Colonel Paul Evanko (Colonel Evanko) and the

Pennsylvania State Police (State Police), to the Petition for Review in the Nature of

a Complaint for Violation of the Pennsylvania Whistleblower Act[1] Statute (Complaint) filed by Captain Darrell Ober (Ober).[2]

Ober held the position as the Director of Internal Affairs Division of the Pennsylvania State Police's Bureau of Professional Responsibility, which included the duties of managing and overseeing complaints filed against State Police employees. In September or October of 1998, the Federal Bureau of Investigation (FBI) contacted Ober concerning their investigation of political corruption in the State Police's cadet hiring process. It was unknown how high the corruption went in the State Police. Concerned that it may reach high into the chain of command of the state, Ober informed a superior officer outside the scope of the investigation, Lt. Colonel Hickes, of the FBI investigation. Lt. Colonel Hickes ordered Ober to maintain confidentiality of the investigation and not advise his superior Lieutenant Colonel, Colonel Evanko, or the State Police Commissioner. He also ordered Ober to cooperate with the FBI investigation and to keep him apprised of the status of the investigation. Over the next few months, Ober was contacted by the FBI and was provided updates of the investigation, which he in turn reported to Lt. Colonel Hickes. On May 1, 1999, the FBI advised Ober that the investigation was complete and that the corruption involved one lower-level sworn officer. On May 12, 1999, Ober and Lt. Colonel Hickes briefed Colonel Evanko on the FBI investigation.

---

[1] The Pennsylvania Whistleblower Law, Act of December 12, 1986, P.L. 169, 43 P.S. §§1421-1428.

[2] For purposes of these motions, we will consider the facts as pled in the complaint as true. *See Lutz v. Springettsbury Township*, 667 A.2d 251 (Pa. Cmwlth. 1995).

As Ober alleges, Colonel Evanko became enraged because neither the FBI nor Ober informed him directly of the investigation.  Colonel Evanko directed Ober to prepare a memorandum of his involvement in the FBI investigation and commenced a "secret" administrative investigation as to Ober's involvement with the FBI's investigation.  Ober alleges various retaliatory acts by Colonel Evanko, including a denial of reimbursement for administrative costs incurred in the FBI investigation and an involuntary transfer on short notice to Washington, Pennsylvania for a "new position" created by Colonel Evanko.  After filing a Petition for Writ of Mandamus with this Court to stop the alleged punitive transfer, by agreement, the State Police rescinded the transfer and an order was entered dismissing the Writ of Mandamus as moot.  Instead of the transfer, the State Police assigned Ober to a lesser ranking position as a Lieutenant in the Bureau of Liquor Control Enforcement.

The State Police argue that Ober's complaint is moot for two reasons.  First, they assert that these claims were decided by this Court's dismissal of the mandamus action which raised similar claims.  However, the dismissal of that mandamus action as moot arose out of the agreement of the parties, not litigation and a judgment.  Because there was no final determination on the merits necessary to preclude the present claims, Ober is not estopped from pursuing his Whistleblower claims. *See Consolidated Coal Company v. District 5, United Mine Workers of America*, 485 A.2d 1118 (Pa. Super. 1984).   .

The State Police also argue that the claims are moot because Ober received the same amount of compensation in the Lieutenant position as he did as a Captain and has since been returned to a Captain position within the Bureau of

3

Liquor Control Enforcement.   While this may be so, his remedy under the Whistleblower Law is not limited to backpay awards.  Claims may also be asserted for assessment of a civil penalty of up to $500 and for reimbursement of litigation costs and attorney fees.  43 P.S. §§1425 and 1426.  Because of the availability of these additional remedies, Ober's claims for violations of the Whistleblower Law are not moot merely because he has lost no pay or seniority.

Because Ober is not estopped from pursuing his claims under the Whistleblower Law, and because there are remedies available to him for the alleged violations, the State Police's motion to dismiss the Complaint as moot is denied.

The State Police have also filed preliminary objections to the Complaint in the nature of a demurrer.[3]  They allege that Ober has not pled a cause of action under the Whistleblower Law because he cannot plead a causal connection between an alleged report of wrongdoing and any retaliatory actions by Evanko or the State Police.

Under §1422 of the Whistleblower Law, a "whistleblower" is defined as:

> A person who witnesses or has evidence of wrongdoing
> or waste while employed and who makes a good faith

---

[3] In ruling on preliminary objections in the nature of a demurrer, all well-pled facts and reasonable inferences are deemed true.  *Lutz*, 667 A.2d at 253.  A demurrer may be sustained when it appears with certainty that the law does not permit a recovery under the allegations pled. *Id.*

> report of the wrongdoing or waste, verbally or in writing,
> to one of the person's superiors, to an agent of the
> employer or to an appropriate authority.

To establish a cause of action for a violation, the employee "must show by preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority."  43 P.S. §1424(b).  A wrongdoing is "a violation which is not of merely a technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interests of the public or employer." 43 P.S. §1422.  *See also Podgurski v. Pennsylvania State Police*, 722 A.2d 730 (Pa. Superior Ct. 1998).

In this case, Ober alleges that the precipitating report was that "on May 12, 1999, [he] and Lt. Colonel Hickes briefed Colonel Evanko on the FBI's investigation." (Paragraph 26 of the Complaint).  Ober does not allege that he witnessed or had any independent evidence of the underlying corruption being investigated that caused any retaliation against him, but only that his report of the completed FBI's investigation caused Colonel Evanko to become disturbed because he was not told when Ober was approached by the FBI.  An employee's report of an investigation only, that does not also allege his evidence of a wrongdoing on the part of the employer, is not a report of wrongdoing under the act.    43 P.S. §1422; *see Golaschevsky v. Commonwealth, Department of Environmental Resources*, 683 A.2d 1299 (Pa. Cmwlth. 1996), *affirmed*, 554 Pa. 157, 720 A.2d 757 (1998).  Because he alleges that he made a report of an

5

investigation, not any evidence of any wrongdoing, Ober is not a "whistleblower" as defined by the law.

Because Ober has plead no facts upon which to support a showing that he is a whistleblower who reported an instance of wrongdoing to the employer or an appropriate authority, 43 P.S. §1424(b), he has failed to plead a cause of action under the Whistleblower Law. Accordingly, the preliminary objections of the State Police are granted and the complaint is dismissed.

_Dan Pellegrini_

DAN PELLEGRINI, JUDGE

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER      :
c/o: PENNSYLVANIA STATE    :
POLICE DEPARTMENT       :
HEADQUARTERS,           :
             Petitioner   :
                       :
   v.                :
                       :
COLONEL PAUL EVANKO     :
COMMISSIONER,          :
PENNSYLVANIA STATE POLICE :
DEPARTMENT HEADQUARTERS :
and PENNSYLVANIA STATE    :
POLICE a/k/a: COMMONWEALTH :
OF PENNSYLVANIA         :
DEPARTMENT HEADQUARTERS, :
        Respondents:  No. 238 M.D. 2000

## O R D E R

AND NOW, this 6th day of September, 2000, the application to dismiss the Petition for Review as moot is denied.

Respondent's Preliminary Objections are granted and the Petition for Review in the Nature of a Complaint in Equity is dismissed.

_Dan Pellegrini_
DAN PELLEGRINI, JUDGE

Certified from the Record

SEP 0 6 2000

and Order Exit

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                         :
                        Plaintiff        :        NO. 1: CV-01-0084
                                         :        (Judge Caldwell)
        vs.                              :
                                         :        CIVIL ACTION - LAW
PAUL EVANKO, MARK CAMPBELL,              :
THOMAS COURY, JOSEPH WESTCOTT,           :        JURY TRIAL DEMANDED
HAWTHORNE CONLEY,                        :
                        Defendants       :

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I served the defendants' motion to dismiss and supporting brief upon plaintiff's counsel by First Class Mail, U.S. Postal Service, addressed as follows:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA  17110

By:  _____
     SYNDI L. GUIDO
     DEPUTY GENERAL COUNSEL

     OFFICE OF GENERAL COUNSEL
     333 Market Street, 17th Floor
     Harrisburg, PA  17101
     (717) 783-6563

Dated:  March 16, 2001