ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | **CIVIL ACTION LAW** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **1:CV-01-0084** |
| **vs.** | ) | |
| | ) | **(JUDGE CALDWELL)** |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | **JURY TRIAL DEMANDED** |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY and** | ) | |
| **JOANNA REYNOLDS** | ) | |
| **Defendants** | ) | |

FILED
HARRISBURG, PA

APR 2 2001

MARY E. D'ANDREA, CLE
Per _____
            Deputy Clerk

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I.    BACKGROUND

#### A.)    PROCEDURAL HISTORY

Plaintiff filed his civil rights complaint on January 16, 2001. On January 19,

2001, the defendants claim to have placed their motion to dismiss (the certificate of

service erroneously indicates it was mailed out on January 16, 2001) via the U.S.

Mail. Plaintiff received it on January 21, 2001. The defendants' raise 3 issues in

support of their F.R.Civ.P. 12(b)(6) motion to dismiss. The first is a motion to

dismiss for failure to state a claim. The second is based on qualified immunity, and

1

the third is based upon the 11th Amendment.

## B.) **FACTUAL HISTORY**

Plaintiff was a highly qualified and highly motivated member of the Pennsylvania State Police (PSP), (Complaint ¶20-22). He was contacted by the FBI, as head of Internal Affairs, and informed of a corruption investigation into higher ups in the PSP and state government and directed not to divulge his knowledge of the probe to any potential targets, (Complaint ¶23-25). He reported through his chain of command to Lt. Col Hickes (pronounced "Hi-Kiss"), who was not a potential target (Complaint ¶26-27). He and Hickes informed Evanko of the FBI probe after the FBI had advised Ober that it was successfully concluded (Complaint ¶28-31). Evanko was furious and threatened the FBI Agent involved with sanctions, as he exploded in a fit of a rage (Complaint ¶31-33). Evanko then went to the defendant Mark Campbell seeking permission (which was granted) to investigate Ober, which was something both knew was improper (Complaint ¶33-38). Evanko was joined in his plans to injure Ober and ruin his career by most of his front office (and a few others) specifically including the defendants' Conley, Coury, and Wescott (Complaint ¶40-41). The defendants then conducted a series of unlawful investigations into Ober and his affairs, and devised a number of debilitating, harmful personnel actions designed to harass, intimidate, and destroy his career

2

(Complaint ¶41-51). After defendants received the Complaint, the defendants

Evanko and others lacked credible responses to plaintiff's allegations. Fearing an

adverse result in this litigation the defendants manipulated PSP records and then

represented falsely to this Court (see page 12 of defendants' brief in support of their

motion to dismiss at the last 2 paragraphs) that Administrative Regulation AR 1-

1.02 had established that Ober skirted his chain of command. Supposedly this

justified Evanko and Campbell's decision to go ahead and pursue Ober based upon

Department Regulations. However, the section referred to by defendants and Ms.

Reynolds (§1-1.02(c) had been quietly added by the defendants after plaintiff's

complaint was filed on January 16, 2001 (the applicable AR was effected on

7/13/97). This was done on 2/22/01 by Evanko before defendants motion to dismiss

was filed on March 16, 2001. The material provision of the regulation the

defendants cited was intentionally added by defendants to injure plaintiff (sub

paragraph "C" of §1.02 was added to the applicable section, with the defendant

Evanko personally making the decision on February 22, 2001). The defendants'

counsel Joanna Reynolds was clearly aware of these machinations. They took the

"history" of the regulation out of the files hoping they would not be discovered, ie.

no one would realize that the changes were not made until February 22, 2001. See

Exhibit "A" hereto which is a copy of AR 1-1.02 dated 1997 which was the

3

regulation in effect during the entire period of time referred to in the complaint up to and beyond when the complaint was filed on January 16, 2001. Compare Exhibit "A" with Exhibit "B" which is a copy of the provisions of the AR ("AR1-1.02") referred to in defendants brief (third paragraph on page 12 of their brief). It is easily seen that subsection "C" entitled "Chain of Command" was added on February 22, 2001. The defendants misconduct cannot be explained away as mere error or ignorance. This is one more unlawful effort by the PSP defendants to deprive plaintiff of his rights, but in this instance, it is in retaliation for filing his original complaint. Further, as noted by defendants on page 13 of their brief, plaintiff indeed does claim a "constructive demotion" (complaint ¶46(b)). But defendants are estopped to deny there was an adverse employment action. When Ober sued Evanko to prevent a transfer from Harrisburg to Washington Pennsylvania, Evanko and the PSP hastily rescinded the action. Commonwealth Court had this to say, "Instead of a transfer, the State Police assigned Ober to a lessor ranking position as a Lieutenant in the Bureau of Liquor Control Enforcement". See the defendants' Brief in Opposition, where, although they don't mark them as exhibits, nor do they incorporate them, a number of documents are appended to defendants' brief including a copy of Judge Dan Pellegrini's opinion in Ober v. Evanko, 238 M.D. 2000 slip op at 3 (Pa. Comw. Sept 6, 2000). A copy of the opinion is attached

hereto as Exhibit "C." Judge Pellegrini had no problem seeing the retaliation from which plaintiff suffered at defendants' hands and his findings are res judicata here. Particularly material is his finding that plaintiff was transferred to a "lesser ranking position." Judge Pellegrini goes on, "The State Police also argue that the claims are moot because Ober received the same amount of compensation in the Lieutenant position as he did as a Captain and has since been returned to a Captain's position within the Bureau of Liquor Control Enforcement," id at 3. However Judge Pellegrini does not concur in the PSP analysis. It is clear that this issue is dispositive of the underlying facts here. Knowing this, the defendants sought, in vein, for some basis upon which defendants could justify their actions. Finding none they created a falsehood and presented it to this court as a material fact in support of their motion to dismiss. They should not be rewarded for this misconduct.

**II**    **ISSUES**

    A.) Did plaintiff state a claim?

    B.) Are defendants entitled to qualified immunity?

    C.) Is the Eleventh Amendments relevant to this litigation?

**III**    **ARGUMENT**

    Plaintiff did state a claim, defendants aren't entitled to qualified immunity, and the Eleventh Amendment, with all of its protections for state officials, is not

implicated in this case.

### A.) __Plaintiff stated a claim.__

In <u>Ober v. Evanko</u>, supra, Judge Pellegrini found that Ober had been, in so many words, subjected to classic examples of deprivations of his rights as an employee merely because he did what the law requires. Had Ober disobeyed the FBI directive, he would have been subject to criminal prosecution had he tipped off a potential target, like Evanko, who later proved to be a material witness or a criminal defendant. Besides, Ober did inform Hickes, who was in his chain of command. Hickes properly ordered Ober not to tell anyone (Complaint ¶27). Thus neither Ober or Hickes "mishandled" the matter as defendants claim. Defendants attack the complaint generally as being "comprised almost entirely of inflammatory rhetoric" "bald assertions," "unsupported conclusions," "unwarranted inferences," "dramatic hyperbole," "strident rhetoric," etc. But after making these unprofessional, conclusory statements, the defendants go on to admit that Ober complains about "injurious employment action," "retaliation," that "the Court must accept Ober's factual allegations as true." Defendants admit in their brief that Ober won a Commonwealth Court case <u>Ober v. Evanko,</u> supra, when Evanko rescinded Ober's transfer to Washington, Pa. The defendants even appended a copy of the slip opinion to their brief, but strangely don't make it an exhibit. Why? It might be

because the Commonwealth Court Judge, clearly offended by PSP practices and actions, held that Ober had, once Evanko and the PSP backed off (not voluntarily) on the transfer, suffered from other inappropriate actions taken against him. Judge Pellegrini's finding is res judicata as to these proceedings and he said, and held, that Ober was in effect demoted. See page 3 of Exhibit "C" hereto which is a copy of the slip opinion in Ober v. Evanko taken from defendants' brief. Defendants also admit that Ober was taken off of important assignments, and deprived of emoluments and many valuable brandishments of his position. He was denied what was given to others of equal rank. Defendants obliquely segregate each item and call it less than important enough to rise to the level of a due process violation. However, taken as a whole, Ober has been destroyed personally and career wise to date by these defendants, all for doing what was proper and just. The Third Circuit held in Rabinovitz v. Pena, 89 F.3d 482 (3d Cir 1996) that there are other considerations besides mere reductions in pay that can amount to an anti personnel action for constitutional purposes. The 2nd, 6th, 8th, and 10th Circuit have even adopted the EEOC standards applied in Title VII cases called the "Faragher/Ellerth standard" (Faragher v. City of Boca Raton, 118 S.Ct. 2275 (1998) and Burlington Industries, Inc. v. Ellerth, 118 S.Ct. 2257 (1998). Though they are sexual harassment cases, the EEOC looked to them for guidance in promulgating

7

regulations and the EEOC has applied the standard to retaliation cases, not just

sexual harassment cases. See EEOC Enforcement Guidance in Vicarious Employer

Liability for Unlawful Harassment by Supervisors 8 FEP Man, 405:7651 (June 18,

1999). All of these defendants worked together and their effort produced a litany of

destructive career damaging actions and unlawful investigations designed to destroy

Ober personally and professionally. They read Court opinions and they take

advantage of them. Do what you can get away with, just don't cut his pay, that way

the Federal law will let you get by. But as Rabinovitz demonstrates, at page 488,

there are limits, and the Court can, and should, look to other considerations.

Regardless, the issue was decided in Commonwealth Court and the defendants

never questioned Judge Pellegrini's findings. Nonetheless the language of

Rabinovitz might be helpful.

> "[A] materially adverse change in the terms and conditions
> of employment must be more disruptive than a mere
> Inconvenience or an alteration of job responsibilities.
> A materially adverse change might be indicated by a
> Termination of employment, a demotion evidenced by
> a decrease in wage or salary, a less distinguished title,
> a material loss of benefits, significantly diminished
> material responsibilities, or other indices that might be
> unique to a particular situation."

Rabinovitz v. Pena, 89 F.3d 482, 488 (3d Cir. 1996) (quoting Crady v.

Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). Must we fear

the word "unique" lest it force us to judge on a case by case basis and raise Justice Rehnquest's fears of situations where the facts aren't pristine and the law crystal clear? Ober appears to have been grossly abused, that much is indeed enumerable.

The same is true as to Obers 4th Amendment claims. Without any authority to do so the defendants forced him to sit down and answer questions and subject himself to interrogation over matters with 5th Amendment implications. That aside, if my employer can order me as a public employee to respond to questions as a result of an "administrative investigation," that focus on matters of public concern and are part of my public duties, which investigation is not authorized (as here) by regulation or statute, then I've been seized and or deprived of my due process rights and my freedom to move, to leave, or perform my duties, has been taken away involuntarily worse yet I've been detered from speaking out. If employees can be arbitrarily and capriciously "investigated" for performing their public duties, then such employees have any freedom to act in the public interest. That is protected speech. See <u>Cooper v. Smith</u>, 189 F.3d 761 (11th Cir. 1996); <u>Arenal v. City of Punta Gorda</u>, 932 F.Supp 1406 (M.D. Fla. 1996); <u>Cahill v. O'Donnell</u>, 7 F.Supp. 2d 341 (S.D.N.Y. 1998). Keeping one's mouth shut as a correct expression of duty and responsibility on a matter of public concern, and then being punished for it, implicates the 1st Amendment just like a street corner speech. It is noteworthy that if

9

the duties performed by Ober were "mishandled" (defendants' brief page 12 ln 7) then why was no one formally reprimanded or even verbally counseled? The reason is clear - because no one did mishandle the matter. Lacking the authority to do so Evanko and the other defendants merely vented their spleens on plaintiff by punishing him for performing his lawful duties in a lawful manner. They violated his rights in doing so.

### B.) <u>Qualified Immunity</u>

As demonstrated above the defendants had absolutely no authority via any law, regulation, or custom to discipline or reprimand Ober let alone deprive him of his rights. These defendants know exactly what they're doing when they isolate, ostracize, and administratively manipulate a colleagues' career assignments to harass, intimidate, and ruin him. It is a vile, hateful, unlawful practice when taken to extreme lengths, as here. And it is rampant in the PSP. They know full well that they are violating a PSP members rights.  Evanko was even warned not to conduct an investigation into Ober's performance (Complaint ¶'s 38 & 39). So he got Campbell's permission and proceeded anyway. The well known standards of <u>Harlow v. Fitzgerald,</u> 457 U.S. 800 (1982) are applicable here. Do the defendants, who have actually drafted the equivant of a speaking demurrer and should he ordered to answer the complaint, anywhere deny that Evanko was warned not to

investigate Ober? No. The defendants are not entitled to qualified immunity. They knowingly violated Ober's rights, as their attempt to subvert this legal process, proves.

### C.) The 11th Amendment

The 11th Amendment is not implicated in this law suit.

## IV    SUMMARY AND CONCLUSION

Defendants have really written a running answer in the form of a brief. They clearly have demonstrated that there are disputed material facts here and that discovery is in order. The Court should take notice of Judge Pellegrini's findings and the fact that the defendants never contested or appealed his decision. Lastly, as an alternative sanction, the Court should consider striking defendants brief because of the unlawful misconduct they engaged in over the regulation issue and order the matter investigated by federal authorities. If plaintiff or his counsel behaved in this manner they would be the subjects of a criminal investigation. This change in the AR had been kicked around for years. They dusted if off and misrepresented the added section to create an excuse - but they did it after the fact and did not tell this Court the truth. If they had, they would have had no issue. They knew that. These defendants knew what they were doing and they subverted the process unlawfully for unlawful reasons.

**WHEREFORE** this Court is respectfully requested to dismiss defendants' motion, or in the alternative strike their brief and order them to answer the complaint, or in the alternative find them in contempt of court and order appropriate sanctions.

Respectfully Submitted,

DON BAILEY
PA ID# 23786
4311 N. 6TH STREET
HARRISBURG, PA 17110

April 2, 2001

SP 3-200-(12-93)







AR 1-1
7/31/97

**PENNSYLVANIA STATE POLICE**
**DEPARTMENT DIRECTIVE**

SUBJECT:   ORGANIZATION


1.01        TABLE OF ORGANIZATION

A.    <u>Authority</u>:  The Table of Organization of the Pennsylvania State Police, Appendage B, reflects the structure of the Department as adopted by the Executive Board.

B.    <u>Definitions</u>:

1.    Organizational:  All references to organizational segments, when used in Department and Troop Tables of Organization, shall conform to the following designations:

a.    Area:  An organizational segment comprised of two or more Troops, which is supervised by an Area Commander accountable for the performance of subordinates and to whom the Commissioner delegates the authority to take independent action on assigned functions.

b.    Bureau:  An organizational segment comprised of Divisions, which is supervised by a Bureau Director accountable for the performance of subordinates and to whom the Commissioner delegates the authority to take independent action on assigned functions.

c.    Division:  An organizational segment of a Bureau comprised of Sections, which is supervised by a Division Director accountable for the performance of subordinates and to whom commensurate authority is delegated to perform specific functions. Certain Divisions have decentralized locations and perform functions in a specific geographical area.

-1-

*Exhibit "A*

commensurate authority is delegated to perform specific functions.

2. The following definitions shall apply when referring to the individuals employed by the Department:

    a. Employe: A civilian working full time for the Department.

    b. Enforcement Officer: An employe working full time for the Bureau of Liquor Control Enforcement, authorized by law to enforce the provisions of the Liquor Code and any regulations promulgated pursuant thereto.

    c. Member: A sworn Pennsylvania State Police Trooper.

    d. Personnel: Employes, Enforcement Officers, and members collectively.

1.02    ADMINISTRATIVE AUTHORITY AND ORGANIZATION

A. Commissioner's Personal Staff:

    1. Executive Officer to the Commissioner.

    2. Legislative Liaison Office.

    3. Municipal Police Officers' Education and Training Commission.

    4. Office of Chief Counsel.

    5. Public Information Office.

    6. Administrative Officer to the Commissioner.

B. Commissioner's Command Staff:

    1. Deputy Commissioner of Administration:

    c.    Bureau of Emergency and Special Operations.

    d.    Bureau of Laboratory and Communications Services.

    e.    Bureau of Records and Identification Services.

    f.    Bureau of Research and Development.

    g.    Bureau of Staff Services.

## 1.03    FUNCTIONS AND RESPONSIBILITIES

This section outlines major functions and responsibilities of each organizational segment and level of command.

A.    Commissioner:

Assists the Governor by enforcing the law and preserving the peace through the detection of crime, apprehension of criminals, and patrol of the highways.

Exercises administrative, command and fiscal authority, and responsibility over the Department.

Maintains discipline and, when necessary, administers disciplinary action.

Establishes policies and procedures, and prescribes training standards for the Department, while ensuring that the Department continues to maintain a high proficiency in administration, training, and operational activities.

Formulates rules and regulations consistent with the Department's consent decree, and subject to approval of the Governor, prescribing qualifications prerequisite to membership in the force and selecting members on the basis of merit.

Administers the Lethal Weapons Training Act and the Municipal Police Officers' Education and Training Act.



SP 3-200 (10-99)





AR Manual

**PENNSYLVANIA STATE POLICE**
**DEPARTMENT DIRECTIVE**

February 23, 2001

Change No. 866

SUBJECT:    AR 1-1, ORGANIZATION

1.    Special Order 99-76, Department Reorganization, is cancelled; it shall be removed from files and destroyed.

2.    AR 1-1 has been revised.

## INSTRUCTIONS

Remove these pages:         Insert these pages:

1 through 70                1 through 66
A.1 through IV              A.1 through D

3.    Commanders and Directors shall ensure all members of their command review this regulation in its entirety.

4.    The revised Pennsylvania State Police Location Map, Appendage C, will be distributed under separate cover as soon as it is available.

5.    This Change Sheet shall be inserted into the back of Volume II of the AR Manual immediately behind Change Sheet No. 865.

Paul J. Evanko
Colonel    PSP

Distribution "AR"

*Exhibit "B"*

AR 1-1
2/23/2001

## ORGANIZATION

1.01      TABLE OF ORGANIZATION

A.      <u>Authority</u>:  The Table of Organization of the Pennsylvania State Police, Appendage B, reflects the structure of the Department as adopted by the Executive Board.

B.      <u>Definitions</u>:

1.      Organizational:  All references to organizational segments, when used in Department and Troop Tables of Organization, shall conform to the following designations:

a.      Area:  An organizational segment comprised of one or more Troops, which is supervised by an Area Commander accountable for the performance of subordinates, and to whom the Commissioner delegates the authority to take independent action on assigned functions.

b.      Bureau:  An organizational segment comprised of Divisions, which is supervised by a Bureau Director accountable for the performance of subordinates, and to whom the Commissioner delegates the authority to take independent action on assigned functions.

c.      Division:  An organizational segment of a Bureau comprised of Sections, which is supervised by a Division Director accountable for the performance of subordinates, and to whom commensurate authority is delegated to perform specific functions. Certain Divisions have decentralized locations and perform functions in a specific geographical area.

d.      Executive and Administrative Offices:  An organizational segment comprised of the Commissioner, the Commissioner's Personal Staff, the Deputy Commissioners, and the various other organizational segments not under Area, Troop, or Bureau Commands.

-1-

*Exhibit "B"*

AR 1-1
2/23/2001

b.  Enforcement Officer:  An employe working full time for the Bureau of Liquor Control Enforcement, authorized by law to enforce the provisions of the Liquor Code and any regulations promulgated pursuant thereto.

c.  Member:  A sworn Pennsylvania State Police Trooper.

d.  Personnel:  Employes, enforcement officers, and members collectively.

1.02    ADMINISTRATIVE AUTHORITY AND ORGANIZATION

A.  Commissioner's Personal Staff:

1.  Administrative Officer to the Commissioner.

2.  Executive Officer to the Commissioner.

3.  Legislative Affairs Office.

4.  Municipal Police Officers' Education and Training Commission.

5.  Office of Chief Counsel.

6.  Public Information Office.

B.  Commissioner's Command Staff:

1.  Deputy Commissioner of Administration:

a.  Department Discipline Office.

b.  Equal Employment Opportunity Office.

c.  Executive Officer to Deputy Commissioner of Administration.

d.  Member Assistance Program.

e.  Bureau of Personnel.

C.   <u>Chain of Command:</u>

1.   Chain of command is the normal and logical progression of supervisory and command function within the Department.

2.   Personnel shall adhere to, and utilize, the chain of command except when prevented by exigent circumstances, when exempted by existing regulations, e.g., AR 4-26, Sexual Harassment Policy. Personnel shall not bypass the established chain of command without first consulting with the appropriate supervisor.

1.03   FUNCTIONS AND RESPONSIBILITIES

This section outlines major functions and responsibilities of each organizational segment and level of command.

A.   <u>Commissioner:</u>

Assist the Governor by enforcing the law and preserving the peace through the detection of crime, apprehension of criminals, and patrol of the highways.

Exercise administrative, command and fiscal authority, and responsibility over the Department.

Maintain discipline and, when necessary, administer disciplinary action.

Establish policies and procedures, and prescribe training standards for the Department, while ensuring that the Department continues to maintain a high proficiency in administration, training, and operational activities.

Administer the Lethal Weapons Training Act and the Municipal Police Officers' Education and Training Act.

Organizational segments that comprise the Commissioner's Personal Staff are as follows:

1.   Administrative Officer to the Commissioner:

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER       :
c/o: PENNSYLVANIA STATE     :
POLICE DEPARTMENT          :
HEADQUARTERS,              :
              Petitioner    :
                     :

        v.                :

COLONEL PAUL EVANKO     :
COMMISSIONER,            :
PENNSYLVANIA STATE POLICE  :
DEPARTMENT HEADQUARTERS   :
and PENNSYLVANIA STATE     :
POLICE a/k/a: COMMONWEALTH  :
OF PENNSYLVANIA          :
DEPARTMENT HEADQUARTERS, :   No. 238 M.D. 2000
           Respondents:   Argued: August 30, 2000

'00 SEP 8 AM 11 16
CHIEF [...]
STATE [...]
RECEIVED

BEFORE:   HONORABLE DAN PELLEGRINI, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION               
BY JUDGE PELLEGRINI          FILED: September 6, 2000

      Before this Court is an application to dismiss as moot and preliminary objections of Respondents, Colonel Paul Evanko (Colonel Evanko) and the Pennsylvania State Police (State Police), to the Petition for Review in the Nature of

*Exhibit "C"*

1

a Complaint for Violation of the Pennsylvania Whistleblower Act[1] Statute (Complaint) filed by Captain Darrell Ober (Ober).[2]

Ober held the position as the Director of Internal Affairs Division of the Pennsylvania State Police's Bureau of Professional Responsibility, which included the duties of managing and overseeing complaints filed against State Police employees. In September or October of 1998, the Federal Bureau of Investigation (FBI) contacted Ober concerning their investigation of political corruption in the State Police's cadet hiring process. It was unknown how high the corruption went in the State Police. Concerned that it may reach high into the chain of command of the state, Ober informed a superior officer outside the scope of the investigation, Lt. Colonel Hickes, of the FBI investigation. Lt. Colonel Hickes ordered Ober to maintain confidentiality of the investigation and not advise his superior Lieutenant Colonel, Colonel Evanko, or the State Police Commissioner. He also ordered Ober to cooperate with the FBI investigation and to keep him apprised of the status of the investigation. Over the next few months, Ober was contacted by the FBI and was provided updates of the investigation, which he in turn reported to Lt. Colonel Hickes. On May 1, 1999, the FBI advised Ober that the investigation was complete and that the corruption involved one lower-level sworn officer. On May 12, 1999, Ober and Lt. Colonel Hickes briefed Colonel Evanko on the FBI investigation.

---

[1] The Pennsylvania Whistleblower Law, Act of December 12, 1986, P.L. 169, 43 P.S. §§1421-1428.

[2] For purposes of these motions, we will consider the facts as pled in the complaint as true. *See Lutz v. Springettsbury Township*, 667 A.2d 251 (Pa. Cmwlth. 1995).

As Ober alleges, Colonel Evanko became enraged because neither the FBI nor Ober informed him directly of the investigation. Colonel Evanko directed Ober to prepare a memorandum of his involvement in the FBI investigation and commenced a "secret" administrative investigation as to Ober's involvement with the FBI's investigation. Ober alleges various retaliatory acts by Colonel Evanko, including a denial of reimbursement for administrative costs incurred in the FBI investigation and an involuntary transfer on short notice to Washington, Pennsylvania for a "new position" created by Colonel Evanko. After filing a Petition for Writ of Mandamus with this Court to stop the alleged punitive transfer, by agreement, the State Police rescinded the transfer and an order was entered dismissing the Writ of Mandamus as moot. Instead of the transfer, the State Police assigned Ober to a lesser ranking position as a Lieutenant in the Bureau of Liquor Control Enforcement.

The State Police argue that Ober's complaint is moot for two reasons. First, they assert that these claims were decided by this Court's dismissal of the mandamus action which raised similar claims. However, the dismissal of that mandamus action as moot arose out of the agreement of the parties, not litigation and a judgment. Because there was no final determination on the merits necessary to preclude the present claims, Ober is not estopped from pursuing his Whistleblower claims. *See Consolidated Coal Company v. District 5, United Mine Workers of America*, 485 A.2d 1118 (Pa. Super. 1984).

The State Police also argue that the claims are moot because Ober received the same amount of compensation in the Lieutenant position as he did as a Captain and has since been returned to a Captain position within the Bureau of

Liquor Control Enforcement. While this may be so, his remedy under the Whistleblower Law is not limited to backpay awards. Claims may also be asserted for assessment of a civil penalty of up to $500 and for reimbursement of litigation costs and attorney fees. 43 P.S. §§1425 and 1426. Because of the availability of these additional remedies, Ober's claims for violations of the Whistleblower Law are not moot merely because he has lost no pay or seniority.

Because Ober is not estopped from pursuing his claims under the Whistleblower Law, and because there are remedies available to him for the alleged violations, the State Police's motion to dismiss the Complaint as moot is denied.

The State Police have also filed preliminary objections to the Complaint in the nature of a demurrer.[3] They allege that Ober has not pled a cause of action under the Whistleblower Law because he cannot plead a causal connection between an alleged report of wrongdoing and any retaliatory actions by Evanko or the State Police.

Under §1422 of the Whistleblower Law, a "whistleblower" is defined as:

A person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith

---

[3] In ruling on preliminary objections in the nature of a demurrer, all well-pled facts and reasonable inferences are deemed true. *Lutz*, 667 A.2d at 253. A demurrer may be sustained when it appears with certainty that the law does not permit a recovery under the allegations pled. *Id.*

report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority.

To establish a cause of action for a violation, the employee "must show by preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority." 43 P.S. §1424(b). A wrongdoing is "a violation which is not of merely a technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interests of the public or employer." 43 P.S. §1422. *See also Podgurski v. Pennsylvania State Police*, 722 A.2d 730 (Pa. Superior Ct. 1998).

In this case, Ober alleges that the precipitating report was that "on May 12, 1999, [he] and Lt. Colonel Hickes briefed Colonel Evanko on the FBI's investigation." (Paragraph 26 of the Complaint). Ober does not allege that he witnessed or had any independent evidence of the underlying corruption being investigated that caused any retaliation against him, but only that his report of the completed FBI's investigation caused Colonel Evanko to become disturbed because he was not told when Ober was approached by the FBI. An employee's report of an investigation only, that does not also allege his evidence of a wrongdoing on the part of the employer, is not a report of wrongdoing under the act. 43 P.S. §1422; *see Golaschevsky v. Commonwealth, Department of Environmental Resources*, 683 A.2d 1299 (Pa. Cmwlth. 1996), *affirmed*, 554 Pa. 157, 720 A.2d 757 (1998). Because he alleges that he made a report of an

investigation, not any evidence of any wrongdoing, Ober is not a "whistleblower" as defined by the law.

Because Ober has plead no facts upon which to support a showing that he is a whistleblower who reported an instance of wrongdoing to the employer or an appropriate authority, 43 P.S. §1424(b), he has failed to plead a cause of action under the Whistleblower Law. Accordingly, the preliminary objections of the State Police are granted and the complaint is dismissed.

_____
DAN PELLEGRINI, JUDGE

6

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

CAPTAIN DARRELL OBER                          :
c/o: PENNSYLVANIA STATE                       :
POLICE DEPARTMENT                             :
HEADQUARTERS,                                 :
                          Petitioner          :
                                              :
          v.                                  :
                                              :
COLONEL PAUL EVANKO                           :
COMMISSIONER,                                 :
PENNSYLVANIA STATE POLICE                     :
DEPARTMENT HEADQUARTERS :
and PENNSYLVANIA STATE                        :
POLICE a/k/a: COMMONWEALTH :
OF PENNSYLVANIA                               :
DEPARTMENT HEADQUARTERS, :
                          Respondents:  No. 238 M.D. 2000

## O R D E R

AND NOW, this 6th day of September, 2000, the application to dismiss the Petition for Review as moot is denied.

Respondent's Preliminary Objections are granted and the Petition for Review in the Nature of a Complaint in Equity is dismissed.

_____
DAN PELLEGRINI, JUDGE

Certified from the Record

SEP 0 6 2000

and Order Exit

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | **CIVIL ACTION LAW** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **1:CV-01-0084** |
| **vs.** | ) | |
| | ) | **(JUDGE CALDWELL)** |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | **JURY TRIAL DEMANDED** |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY and** | ) | |
| **JOANNA REYNOLDS** | ) | |
| **Defendants** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this **2ND DAY OF APRIL 2001**, a true and correct copy of the

foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO**

**DISMISS** was served upon the following counsel of record by United States Mail, postage

prepaid:

**SYNDI L. GUIDO**
**DEPUTY GENERAL COUNSEL**
**OFFICE OF GENERAL COUNSEL**
333 Market Street, 17th Floor
Harrisburg, PA 17101
Attorney for Defendants')

BY: _____
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500