ORIGINAL

*Summons issued w N/c att as to Jo Anna Reynolds & Syndi Guido. h/c to mgi.* *(15 pm* *5/3/01*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | **CIVIL ACTION LAW** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **1:CV-01-0084** |
| **vs.** | ) | |
| | ) | **(JUDGE CALDWELL)** |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | **JURY TRIAL DEMANDED** |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY** | ) | |
| **JOANNA REYNOLDS and** | ) | |
| **SYNDI GUIDO** | ) | |
| **Defendants** | ) | |

**FILED**
HARRISBURG, PA

MAY 0 2 2001

MARY E. D'ANDREA CLERK
Per _____
Deputy Clerk

## AMENDED COMPLAINT

## INTRODUCTORY STATEMENT

This is an amended civil rights complaint brought by the plaintiff, a Pennsylvania

State Police Captain, against the Commissioner of the Pennsylvania State Police in his

individual capacity, for the deprivation of the plaintiff's federally guaranteed rights

under the Due Process Clause, and the Privileges and Immunities Clause, of the 14th

Amendment, his 1st and 4th Amendment rights and his interest in property. The

gravamen of Captain Ober's complaint is that Commissioner Evanko unlawfully

1

promulgated a pattern of career damaging personnel actions against Captain Ober because Captain Ober properly obeyed lawful directives during a probe into alleged illegal activities by Governor's Office personnel and PSP "higher ups," that could have included Colonel Evanko himself. Commissioner Evanko retaliated against Captain Ober for what Evanko considered treasonous behavior towards himself personally even though Ober had no lawful alternative but to follow FBI requests and could not inform Colonel Evanko of the federal probe without committing a crime. In a vindictive display of intentional abuse, after he learned of the investigation, Paul Evanko set out on a course of conduct that severely damaged Captain Ober's career and caused irreparable injury to his person. Mr. Evanko successfully secured the permission and concurrence of the defendant Campbell to violate Captain Ober's rights and then, despite knowing they were wrong, he enlisted the support of the other defendants to systematically injure and destroy the career and person of Captain Darrell G. Ober.

This Amended Complaint adds paragraphs 52 to 60. It modifies the caption to add Joanna Reynolds and Syndi L. Guido as defendants (paragraph 9a) and it also modifies the ad damnum clause accordingly.

## JURISDICTION AND VENUE

2.) Jurisdiction is conferred on this Court by 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3) and (4) and the remedial statute 42 U.S.C. §1983.

2

3.) This court's supplemental jurisdiction is invoked as per 28 U.S.C. §1367.

4.) A jury trial is demanded.

5.) Punitive damages are requested.

6.) Venue is properly in the Middle District of Pennsylvania since the parties, witnesses, material facts, and other evidence are all common to Dauphin County Pennsylvania.

## PARTIES

7.) Darrell Ober is a Captain in the Pennsylvania State Police currently assigned to the Bureau of Liquor Control Enforcement (LCE) as the Director, Administration Division.

8.) The defendant, Colonel Paul Evanko, is the Commissioner of the Pennsylvania State Police. Coury, Westcott, and Conley all assisted Commissioner Evanko in running the Department.

9.) The defendant Mark Campbell was, at all times complained of herein, Governor Tom Ridge's Assistant Chief of Staff.

9a.) The defendant Joanna Reynolds is an attorney with the Pennsylvania State Police. She and the defendant Syndi L. Guido represent the defendants.

3

## RIGHTS VIOLATED

10.) The defendants Paul Evanko and Mark Campbell violated the plaintiffs' rights to substantive due process of law, a 14th Amendment right, and deprived plaintiff of his federally protected interest in property. At various times, as hereinafter described Coury, Westcott, and Conley knowingly assisted Evanko in carrying out the plan to injure Ober. Reynolds also violated Obers due process rights.

11.) The defendants violated the plaintiff's right to enjoy the protections afforded by the Privileges and Immunities Clause of the 14th Amendment.

12.) The defendants Evanko and Campbell violated the plaintiff's 1st Amendment rights and discriminated against him in his right to enjoy the equal protection of the laws.

13.) The defendants Paul Evanko and Mark Campbell violated the plaintiff Darrell Ober's right to be free of civil conspiracies both as a matter of federal law pursuant to 42 U.S.C. §1983 and as a matter of Pennsylvania tort law.

14.) The defendants unlawfully violated plaintiff's 4th Amendment rights, subjecting him unlawfully to custodial investigations and invasions of privacy in a series of investigations and administrative actions as part of an intentional effort to destroy plaintiff's career and use him as a teaching example to other members of the PSP, that they must adhere to an employment policy of blind loyalty to Evanko above

4

any other dictate of law, duty, or morality, or face debilitating professional or personal injury.

15.) The defendants violated Captain Ober's rights to be free of debilitating and injurious policies and practices intentionally designed to inflict emotional distress on Captain Ober.

15a.) The defendants Evanko, Reynolds and others retaliated against plaintiff for filing his original complaint and secretly changed a regulation then made false representations to this Court hoping to have the complaint dismissed.

## DAMAGES

16.) The plaintiff seeks compensatory and punitive damages for pain and suffering for humiliation, embarrassment, retaliation, injurious adverse employment actions, and emotional trauma, pursuant to 42 U.S.C. §1983 and according to Pennsylvania tort law.

17.) The plaintiff seeks damages for lost earnings and lost promotional, and career opportunities, and also for injuries to reputation and privacy.

18.) The plaintiff seeks compensatory damages for the deprivation of his federally guaranteed rights, and if and when appropriate, intends to move for punitive damages against the individual defendants.

5

19.) The defendants unlawfully damaged plaintiff's reputation and cruelly placed him in a false light to his colleagues and the public in violation of Pennsylvania law.

## OPERATIVE FACTS

20.) Darrell G. Ober, on or about September 1998, was one of the brightest and the best, a rising star in the Pennsylvania State Police (PSP) organization. A Cum laude graduate of the Pennsylvania State University, Darrell graduated with a class rank of number 1 from the Pennsylvania Law Enforcement Academy. His work history was replete with numerous career enhancing achievements, citations, and experience qualifications. His career potential was without any foreseeable limit.

21.) On May 2, 1998, Captain Ober was named as Director, Internal Affairs Division, and later, in early September 1998, Darrell Ober was named as the Acting Bureau Director of the PSP's Bureau of Professional Responsibility.

22.)   This career path is customarily associated in the State Police with advancement to the very highest ranks in the organization including Commissioner. Colonel Evanko's career included service in the Bureau of Professional Responsibility, as did Colonel Coury's and Colonel Conley's careers.

23.) On or about late September or early October 1998, the plaintiff was contacted by the FBI about a political corruption case.

6

24.) The FBI indicated that a reliable confidential Informant (CI ) had reported that members of the "Governor's Office" and "high-ranking members of the PSP" might be involved in accepting payoffs in return for special consideration for certain applicants on the PSP cadet eligibility list.

25.) The FBI expressly and clearly requested that Darrell not divulge this information to potential investigation targets including top-ranking PSP officials. There is no PSP policy or regulation to guide a member on how to conduct or report on an investigation into alleged criminal or other misconduct by a high-ranking PSP official such as Commissioner or Deputy Commissioner.

26.) Since Ober was chosen by the FBI as a contact, obviously because he was not a target, or potential target, of the investigation, he felt, consistent with FBI directives, that it was equally important to limit any superior to whom he might report, to someone he was personally certain would not be involved in an unlawful matter, and to whom no conflict would present itself, but at the same time, be someone who was, hopefully a superior in his chain of command. It never occurred to Captain Ober that he should not, or would not, comply with the letter and spirit of PSP practices and policies and that is precisely what he did.

27.) Consequently, Captain Ober (he was promoted to Captain in the Spring of 1995) reported the corruption matter, as related by the FBI, to Lieutenant Colonel

7

Robert C. Hickes, newly appointed Deputy Commissioner of Staff. Captain Ober was confident that Colonel Hickes was of impeccable character, and knew, because of his position, that Hickes could not be involved. Though not in his direct chain of command, informing Lt. Col. Hickes, meant plaintiff complied with PSP Regulations. He could not inform Evanko or one of his assistants because of the clear and unambiguous FBI directive. Upon learning of the FBI probe from Ober, Hickes ordered Ober to maintain confidentially, and to keep Hickes informed. These were lawful orders.

28.) On or about May 1999 the plaintiff learned from the FBI that the FBI had reached the conclusion that the wrong doing seemed limited to one PSP Trooper and that it had not reached higher. Subsequently, it was learned that the investigation may have been compromised even before plaintiff was informed by Agent Kush. Plaintiff made the latter deduction because Campbell, to whom Evanko went for permission to unlawfully investigate plaintiff, was in the Governor's office. FBI body wires from an informant mentioned sources in the Governor's office, high PSP officials and even a State Senator and a State Representative, earlier in the investigation. Ober even learned that another PSP member had been informed before Ober was, in an earlier attempt at investigation. Only the FBI to whom Evanko personally went, knows the answers to these questions.

8

29.) Thus upon information and belief, the plaintiff believes that a real possibility still exists that the corruption investigation referred to above was truncated or otherwise limited because of PSP leadership interests and/or the concerns of others, regardless plaintiff was unlawfully investigated by defendants to ascertain what he knew, and to punish him for putting the law above the PSP leadership's interests.

30.) Subsequently, on May 12, 1999, the plaintiff and Lieutenant Colonel Hickes informed Commissioner Evanko about the FBI investigation.

31.) Upon being told of the investigation by plaintiff and LTC Hickes, the defendant Evanko exploded in a fit of rage. He told Hickes and the plaintiff Darrell Ober that "I will have Louie Freed (Director of the FBI) on the phone tonight and have the agents involved transferred by tomorrow."

32.) Upon information and belief plaintiff alleges that FBI Special Agent Ralph Kush was quickly transferred from the underlying corruption case, in a display of what plaintiff believes was an inappropriate influence on the FBI by Colonel Evanko.

33.) Subsequent to learning about the FBI investigation, Col. Evanko sought the personal and official approval of the defendant Mark Campbell to begin an investigation into Captain Ober. Campbell was an Assistant to the Pennsylvania Governor's Chief of Staff.

9

34.) At the time Campbell and Evanko conferred on investigating Ober, they both knew that Ober had committed no wrong, had broken no law, and had violated no regulation, practice, or custom of the Pennsylvania State Police.

35.) Nonetheless, in order to punish Ober because he had followed proper PSP procedure, obeyed the law, and conducted himself in a spirit supportive of proper law enforcement duties and practices, consistent with his oath,   as opposed   to demonstrating blind devotion, obedience and subservience to the personal and political interests  and concerns of the defendants, both Evanko and Campbell decided to use Ober as an example to PSP officers and members to show that obedience   to the political sensitivities  of their  PSP leader  and his political mentors, is a necessity regardless of what the law may require, even if that leader himself  is a target, or potential target,  of an official law enforcement agency investigation himself.

36.) Campbell and Evanko then decided to launch the first investigation into the affairs of Captain Ober, which was only the beginning of a series of unlawful antipersonnel actions undertaken, by the defendants, to destroy Captain Ober's career and to inflict personal pain.

## INVESTIGATIONS

37.) Investigations such as those done on Captain Ober have the effect of destroying  an officer's standing and reputation among his colleagues. He becomes

10

shunned and is subjected to insults and is ostracized. When this policy is fostered by the leader of the PSP, the impact, like here, is dramatic. Plaintiff was subjected to an unlawful and improper investigation into his activities at the direction of Evanko and Campbell. These investigations were conducted for two unlawful reasons. The first was to learn the breadth and depth of Ober's knowledge about the FBI investigation and whether Evanko and someone in the Governors office was a target, or actually under suspicion, and the second was to harass and injure Ober as a way to send a signal to others that the defendants as a leadership cadre, require the obedience, even the unlawful obedience of PSP members, above all other considerations, as an unwritten term and condition of employment. Such a policy is a shocking perversion of the public trust and of plaintiff's rights.

38.) Shortly after Evanko had been informed by plaintiff about the FBI probe, and after he had threatened action against the FBI agents involved, he had a meeting in his office with a number of his top staff members to discuss the "investigation" he planned into Captain Ober.

39.) It is averred that this meeting followed Colonel Evanko's meeting with the defendant Mark Campbell where Evanko secured permission to investigate the plaintiff, because Evanko proceeded to harass plaintiff, have others, such as the defendants, Conley, Coury and Westcott, harass him, and have him officially

11

investigated despite the fact that Evanko was told  he should not conduct an

investigation into plaintiff because it was not proper, there being no cause for such

an inquiry, as required by PSP policies and rules and by both the Pennsylvania and

the United States Constitution.

40.) In that meeting were a number of Commissioner  Evanko's top

confidants, among which were the defendants  Conley, Coury and Westcott.

41.) Each of the foregoing individuals personally participated in various

violations of the plaintiff's federally guaranteed rights as a way to demonstrate their

loyalty to Commissioner Evanko and to show their agreement with his policy that

loyalty to the leader is above all, even if it means the law will be violated and the

integrity of an investigation into matters of public corruption should be

compromised if the leader's interest is at issue. Beyond being against the stated

goals and purposes of the Pennsylvania State Police, this policy is anti American

and violates due process clauses of the 5th and 14th Amendments in their spirit and

letter.

42.) Acting upon the orders of their superiors, two PSP majors conducted a

custodial interview of the plaintiff that was no more than an inquiry into his personal

loyalty to Evanko. The format of the interrogation was permeated with an ill

disguised plan to learn what was discovered about the role, if any, of PSP upper

12

echelon leaders and Governor's Office personnel, in the alleged money for hiring scam the FBI was investigating.

43.) Later the defendant, Coury, blocked certain of plaintiff's promotional opportunities and also launched another totally improper investigation into plaintiff's personal affairs, for a PSP pet project of Col. Evanko's that clearly exceeds the proper role and function of the PSP as a government agency.

44.) On at least two occasions Lieutenant Colonel Westcott also personally violated plaintiff's rights in carrying out the vindictive, unlawful desires of Col. Evanko to injure plaintiff by changing his recommendation for a PEMA (Pennsylvania Emergency Management Agency) appointment causing Plaintiff's removal. Lieutenant Colonel Wescott changed plaintiff's selection for appointment to PEMA as an act of unlawful blatant abuse of plaintiff's rights to please Evanko.

45.) Colonel Conley also performed acts of vengeance for the defendant Evanko, such as stripping plaintiff of his cell phone for no reason, and denying him reimbursements for expenses allowed others.

46.) The defendant Evanko, by and through the aforementioned group of conspirators, who acted at his behest, unlawfully, and for no just or proper purpose, violated the plaintiff's rights and interests in his property and his right to be free of irrational and purposeless government actions devoid of rational or reasonable

13

government purposes that rose to shocking levels. The defendants committed at least the following adverse employment actions against the plaintiff solely because Plaintiff obeyed the law, performed his public duty in a proper fashion, and put his right and duty to perform his job in a lawful manner, over blind obedience and misplaced loyalty to his PSP leaders.

a.) Plaintiff was summarily transferred to Washington, Pennsylvania from Harrisburg, Pennsylvania in a hateful attempt to separate him from his children. Only the intervention of the Pennsylvania Courts saved plaintiff from an unlawful transfer and,

b.) plaintiff was made to suffer demeaning career injuring transfers and constructive demotions that have destroyed his reputation and effectiveness among colleagues, and totally destroyed his opportunities to advance in his chosen profession and,

c.) has been denied opportunities for overtime and to be reimbursed like those of equal rank and experience in the PSP and,

d.) has been unduly and unreasonably discriminated against in his attempts to obtain educational opportunities within the PSP and,

e.) was subjected to career destroying investigations without just cause.

14

f.) was subjected to an irrational, baseless, series of vituperative personal attacks on his character, and a series of attacks on his job performance, meant to destroy his reputation, career, self confidence, and motivation to perform his duties and,

g.) was denied a number of opportunities to improve his career through promotion and, or, transfer and,

h.) was refused considerations for promotional opportunities or requests for career enhancing transfers of assignments and,

i.) was discriminated against by defendants who created a pervasive atmosphere among PSP staff fostering retaliation, resentment, and officially sanctioned harassment of Darrell Ober through petty humiliations, acts and threats of personnel actions, and outright ostracism designed to destroy Obers' good will and effectiveness among the PSP workforce, and

j.) as a matter of PSP policy, the defendants effectuated numerous actions meant to intentionally injure plaintiff primarily through himself, Westcott, Coury, and some other of plaintiffs' superiors which have essentially decimated Captain Ober's career, his professional credentials, his opportunities and availability for promotion, and which have hampered the performance of his law enforcement duties to the detriment of the PSP and the public.

15

47.) The plaintiff has suffered innumerable insults, humiliations and embarrassments at the hands of PSP officers who were made to fear that they would suffer official retribution from their leaders if they treated plaintiff in an even handed, fair, way.

48.) Conclusive evidence of Evanko's unlawful misconduct is evidenced by a series of transfers, constructive demotions, and injurious personnel actions engendered by Evanko's abuse of lawful authority.

49.) Captain Ober was unlawfully removed from a prestigious assignment to the PSP Centennial Book Committee when Lt. Col. Coury instituted the unjustified, illegal and subsequently unfounded, investigation into Ober's personal activities. He was never informed that the investigation ended with an "unfounded" result, and he was never returned to the Committee in violation of his rights.

50.) On or about April 24, 1999, Captain Ober was assigned as project manager on the largest and most technical law enforcement project in PSP history (Incident Information Management System). He was promised personally by Commissioner Evanko that he would be returned to his position as Director of Internal Affairs, Bureau of Professional Responsibility upon completion of the project . Afterwards Evanko, in an irresponsible act of outlandish and extreme retribution summarily removed Ober from the assignment and returned him to the

position of Director of Internal Affairs for 5 days before transferring Ober to Troop

"B" Washington Pa away from his family. The Commissioner's unlawful action in

removing Ober, created a project liability, cost taxpayers countless dollars, and

caused unconscionable delay. All of this was to facilitate the personal vengeance of

Paul Evanko in violation of federal and state law, and his own governor's wishes.

51.) Captain Ober, as a Captain, was transferred into a position that has

traditionally and consistently called for a Lieutenant in the Pennsylvania State Police

Bureau of Liquor Enforcement. This was done to humiliate, embarrass and demean

plaintiff and to demonstrate to him that any chance to move forward in his career in

the PSP is essentially over, merely because, he believes in the rule of law.

52.) On or about January 16, 2001 to March 16, 2001 the defendants Syndi L.

Guido and Joanna Reynolds claim to have investigated the underlying fact situation

and complied a brief entitled "Defendants Motion to Dismiss all Claims"

(hereinafter "MTD") which was filed and served on March 16, 2001.

53.) Syndi L. Guido claims to have rewritten the original brief submitted to

her by Joanna Reynolds on March 9, 2001 and also to have conducted her "own

investigation," including a review of the "Historical" file for AR1-1.02.

54.) The MTD, on page 12 purports to advise the court that PSP AR 1-1.02

authorized the defendant Evanko to investigate Ober for an unauthorized breach of

17

his chain of command.

55.) That representation was false. AR 1-1-02 had just been changed on February 22, 2001 and was personally approved by the defendant Evanko according to file documents.

56.) The subject change, adding the key matter (subsection C) at issue in this case, that defendants expressly represented in their brief was a legal justification for Evanko and Campbell to act, was distributed only days (March 6, 2001 at the earliest) before defendants composed and filed their brief.

57.) The "Historical File" for change # 866, for AR 1-1.02 was not in compliance with PSP custom, practice, usages and regulations appertaining to the maintenance and content of "Historical" files to be kept for regulations and directives, in that the applicable file for the change to AR1-1.02  did not even contain documentation in conformance with AR 1-2.03 (B)(5).

58.) However, the file did contain a copy of the July 1997 version of AR 1-1.02 which was in effect and applicable to Obers conduct prior to when he filed his original complaint, and thus to the issue of whether Evanko and Campbell were justified in investigating Ober. Evanko's purported authority according to his MTD (subsection "C"), was clearly not a part of AR 1-1.02 at the applicable time.

18

59.) Additionally FR 1-1.17 (B) is misrepresented to the Court on page 12 of the MTD as "requiring members to promptly notify their supervisor when they receive any information indicating another member "might" have violated the law," emphasis added. The subject FR uses the words and phraseology "has violated any law, rule, regulation, or order" emphasis added. It does not use the word "might."

60.) These matters are not of minor importance and are key material issues in the current litigation.

61.) These misrepresentations to this court where intentional and constitute an abuse of legal process.

**WHEREFORE** the plaintiff Darrell G. Ober demands judgement of the defendants for the deprivation of his federally guaranteed rights and for the violation of his rights under Pennsylvania law more particularly as follows:

a.)  Plaintiff demands judgement jointly and severally of the defendants Evanko, Reynolds, Guido, Campbell, Coury, Westcott, and Conley for the deprivation of his 1st Amendment rights to be free of unlawful injurious employment actions in retaliation for his proper exercise of protected speech and to punish him for filing his original complaint.

b.)  Plaintiff demands judgement jointly and severally of the defendants Evanko, Reynolds, Guido, Campbell, Coury, Westcott, and Conley for the

deprivation of his federally guaranteed rights to substantive due process and of his

interest in property pursuant to the due process clause of the 14th Amendment and,

c.) Plaintiff demands judgement of the defendants Evanko, Campbell, and

Coury for the deprivation of his 4th Amendment rights to be free of unlawful seizures

of his person subjecting him to unlawful custodial interrogations denying him other

procedural safeguards and,

d.) Plaintiff demands judgement of the defendant Evanko under the Privileges

and Immunities clause of the 14th Amendment for depriving him of his rights to

pursue his chosen occupation free of arbitrary and capricious government

molestation.

e.) Plaintiff demands judgement of all defendants for the deprivation of his

right to be free of unlawful conspiracies to deprive him of his federally guaranteed

rights under the 14th Amendment pursuant to 42 U.S.C. §1983 and,

f.) Plaintiff demands judgement of all defendants jointly and severally for the

deprivation of his federally guaranteed rights to be free of emotional pain and mental

distress imposed pursuant to the intentional effort engaged in by all defendants to

deprive him of his federally guaranteed rights under 42 U.S.C. §1983 and,

g.) Plaintiff demands judgement of all defendants, jointly and severally for

the violation of his rights under Pennsylvania law to be free of civil conspiracies and

the intentional infliction of mental distress as supplemental state claims and,

h.) Plaintiff demands judgement of the defendants jointly and severally for the denial of his rights pursuant to the equal protection of the laws clause of the 14th Amendment pursuant to 42 U.S.C. §1983 and,

i.) Plaintiff demands judgement of the defendant Evanko for falselight defamation as a supplemental state claim, all together with costs, fees, special damages in the amount of $25,000.00 for legal fees incurred in defeating the unlawful efforts by the defendant Evanko to illegally assign plaintiff to Washington County Pennsylvania, punitive damages and such other relief as the court may deem appropriate.

J.) plaintiff demands judgement of the defendants Reynolds and Guido for the deprivation of his right to be free of abuse of legal process as a federally guaranteed right.

Respectfully Submitted,

DON BAILEY
PA ID# 23786
4311 N. 6TH STREET
HARRISBURG, PA 17110
(717) 221-9500

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | **CIVIL ACTION LAW** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **1:CV-01-0084** |
| **vs.** | ) | |
| | ) | **(JUDGE CALDWELL)** |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | **JURY TRIAL DEMANDED** |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY and** | ) | |
| **JOANNA REYNOLDS** | ) | |
| **Defendants** | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on this **2nd day of May 2001**, a true and correct copy of the foregoing

**Document** was served upon the following counsel of record by United States Mail, postage

prepaid:

**SYNDI L. GUIDO**
**DEPUTY GENERAL COUNSEL**
**OFFICE OF GENERAL COUNSEL**
333 Market Street, 17th Floor
Harrisburg, PA 17101
Attorney for Defendants')

BY: _____
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500