

# ORIGINAL

FILED

MAY 2 9 2001

PER _____ DEPUTY CLERK
HARRISBURG, PA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,              :
            Plaintiff         :     NO. 1: CV-01-0084
                              :     (Judge Caldwell)
      vs.                     :
                              :     CIVIL ACTION - LAW
PAUL EVANKO, MARK CAMPBELL,   :
THOMAS COURY, JOSEPH WESTCOTT,:     JURY TRIAL DEMANDED
HAWTHORNE CONLEY,             :
JOANNA REYNOLDS, AND          :
SYNDI GUIDO                   :
            Defendants        :

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT

---

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

SYNDI L. GUIDO
Deputy General Counsel

Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 783-6563

JOANNA N. REYNOLDS
Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA 17110
(717) 783-5568
(Counsel for Defendants)

Dated: May 29, 2001

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

PROCEDURAL HISTORY AND STATEMENT OF THE CASE ............................. 1

ARGUMENT ..................................................................................... 5

    I.    Ober's complaint must be dismissed for failure to state a claim ................. 5

        A. Substantive Due Process Rights ............................................... 7

        B. Privileges and Immunities Clause of the Fourteenth Amendment.......... 8

        C. First Amendment Right to Free Speech...................................... 9

        D. Fourth Amendment Rights..................................................... 11

        E. Equal Protection................................................................ 12

        F. Right to Be Free of Civil Conspiracies and Emotional Distress ........... 12

        G. Abuse of Process............................................................... 12

    II.    To the extent Ober's suit is brought against defendants
        in their individual capacities, they are protected by
        qualified immunity ...................................................................... 13

    III.    To the extent Ober's suit is against defendants in their official
        capacities, it is barred by sovereign immunity........................................... 17

CONCLUSION................................................................................. 18

EXHIBITS

Selected Pennsylvania State Police Administrative Regulations.................... Exhibit A

Selected Pennsylvania State Police Field Regulations ..................................Exhibit B

*Ober v. Evanko,* Pet. for Prelim. Inj., No. 35 M.D. 2000
    (Pa. Commw. filed Jan. 26, 2000)...........................................................Exhibit C

*Ober v. Evanko*, Pet. for Mandamus, No. 35 M.D. 2000
    (Pa. Commw. filed Jan. 26, 2000).......................................................... Exhibit D

*Ober v. Evanko,* Petitioner's Mot. to Withdraw, App. A,
    No. 35 M.D. 2000 (Pa. Commw. filed Jan. 27, 2000) ...............................Exhibit E

*Ober v. Evanko*, Respondents' Application to Dismiss
    for Mootness Pursuant to Pa.R.C.P. 1972(4),
    No. 35 M.D. 2000 (Pa. Commw. filed Feb. 23, 2000)..............................Exhibit F

*Ober v. Evanko*, No. 35 M.D. 2000 (Pa. Commw. Mar. 30, 2000) ................. Exhibit G

*Ober v. Evanko*, Pet. for Review, No. 238 M.D. 2000
    (Pa. Commw. filed May 9, 2000)........................................................... Exhibit H

*Ober v. Evanko*, 238 M.D. 2000, slip. op. at 6
    (Pa. Commw. Sept. 6, 2000) ....................................................................Exhibit I

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page**

*Anderson v. Creighton*, 483 U.S. 635 (1987)..................................................................13, 14

*Angus v. Shiley*, 989 F.2d 142 (3d Cir. 1993).......................................................................6

*California v. Byers*, 402 U.S. 424 (1971) .............................................................................11

*Czurlanis v. Albanese*, 721 F.2d 98 (3d Cir. 1983)...............................................................9

*Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir. 1990)..................................................12

*Doug Grant, Inc. v. Great Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000)........................................................................5, 6, 10

*Galahad v. Weinshenk*, 555 F.Supp. 1201 (D.C. Colo. 1983)............................................8

*Garrett v. Lehman*, 751 F.2d 997 (9th Cir. 1985)...............................................................11

*Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410 (1979)......................................9

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)...................................................................13, 14

*Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194 (1979)..................................................12

*Huang v. Board of Governors of Univ. of North Carolina*,
    902 F.2d 1134 (4th Cir. 1990)..............................................................................7

*Hunt v. Dunn*, 439 A.2d 240 (Pa. Commw. 1982)..............................................................16

*Jennings v. Shuman*, 567 F.2d 1213 (3d Cir. 1977)............................................................13

*Kelly v. Borough of Sayreville*, 107 F.3d 1073 (3d Cir. 1997)..................................7, 8, 17

*Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981).........................................................18

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000)................................................................6

*Mauriello v. Univ. of Med. & Dentistry of New Jersey*,
    781 F.2d 46 (3d Cir. 1986)....................................................................................7

*McKinney v. Pope,* 20 F.3d 1550 (11th Cir. 1994)................................................................7

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir. 1997).......................................6

*Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133 (3d Cir. 2000)..............................7, 8

*Ober v. Evanko,* Pet. for Prelim. Inj., No. 35 M.D. 2000
    (Pa. Commw. filed Jan. 26, 2000)................................................................................3

*Ober v. Evanko*, Pet. for Mandamus, No. 35 M.D. 2000
    (Pa. Commw. filed Jan. 26, 2000)................................................................................3

*Ober v. Evanko,* Petitioner's Mot. to Withdraw, App. A,
    No. 35 M.D. 2000 (Pa. Commw. filed Jan. 27, 2000)..................................................4

*Ober v. Evanko*, Respondents' Application to Dismiss
    for Mootness Pursuant to Pa.R.C.P. 1972(4),
    No. 35 M.D. 2000 (Pa. Commw. filed Feb. 23, 2000)..................................................4

*Ober v. Evanko*, No. 35 M.D. 2000 (Pa. Commw. Mar. 30, 2000) ..................................4

*Ober v. Evanko*, Pet. for Review, No. 238 M.D. 2000
    (Pa. Commw. filed May 9, 2000)..................................................................................4

*Ober v. Evanko*, 238 M.D. 2000, slip. op. at 6
    (Pa. Commw. Sept. 6, 2000) ........................................................................................4

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)....................................17

*Salem Blue Collar Workers Ass'n v. City of Salem*,
    33 F.3d 265 (3d Cir. 1994)............................................................................................9

*Seigert v. Gilley*, 500 U.S. 226 (1991)...............................................................................13

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)......................................................17

*Shoop v. Dauphin County*, 766 F.Supp. 1327 (M.D. Pa. 1991),
    *aff'd*, 945 F.2d 396 (3d Cir. 1991),
    *cert. denied*, 502 U.S. 1097 (1992) ..........................................................................18

*Singleton v. Cecil,* 176 F.3d 419 (8th Cir. 1999)................................................................7

*Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339 (6th Cir. 1992)........................................7

*Toomer v. Witsell*, 334 U.S. 385 (1948)..................................................................8

*Will v. Michigan, Dep't of State Police,* 491 U.S. 58 (1989)............................................18

## Constitutions

U.S. Const. amend. XIV, §1 ...........................................................................8

## Statutes

1 Pa.C.S. § 2310 ..................................................................................18

42 U.S.C. § 1983 ..................................................................................18

42 P.S. § 8521(b) ................................................................................18

42 Pa.C.S. § 8522 ................................................................................18

71 P.S. § 67.1(d)(1) .............................................................................16

71 P.S. § 250(b) .................................................................................16

71 P.S. § 251 ....................................................................................16

71 P.S. § 251(a) .............................................................................14, 16

71 P.S. §1192 ....................................................................................16

## Regulations

Pennsylvania State Police Administrative Regulations

AR 4-25.01 .................................................................................15
AR 4-25.04(B) ..............................................................................15
AR 4.25.08(B) ..............................................................................15
AR 4-25.09(A),(B) .........................................................................15
AR 4-25.09(A)(11) .........................................................................15
AR 4-25.10 (B)(1) .........................................................................14
AR 4-25.11(B) .............................................................................16
AR 4-25, Appendage I(D)(3) ................................................................15

Pennsylvania State Police Field Regulations

FR 1-1.17(B)...........................................................................................12, 14
FR 1-1.28.....................................................................................................14
FR 3-2.04(A) ...............................................................................................16
FR 3-3.04...............................................................................................14, 15
FR 3-3.05(B)................................................................................................15

## **Other**

Blacks Law Dictionary, (7th ed. 1999)............................................................13

## PROCEDURAL HISTORY AND STATEMENT OF THE CASE

On January 16, 2001, the plaintiff, Captain Darrell Ober, filed a civil rights complaint against State Police Commissioner Paul Evanko, Deputy Commissioner Thomas Coury, Deputy Commissioner Hawthorne Conley, former Deputy Commissioner Joseph Wescott, and the Governor's Chief of Staff, Mark Campbell. The thrust of Ober's complaint was that the defendants caused unspecified damage to his career because they were upset with Ober for not telling them about an FBI investigation into possible corruption at the State Police Academy. According to Ober, the defendants retaliated against him for going outside his chain of command and confiding in Lieutenant Colonel Hickes, who supposedly ordered Ober to keep the FBI investigation a secret from his superiors.

On March 16, 2001, defendants filed a motion to dismiss Ober's complaint, along with a supporting brief, which was authored, signed, and served by defendants' lead counsel, Syndi Guido. In that brief, defendants noted that Ober's decision to bypass his chain of command directly violated state police regulations. Unfortunately, to support that proposition, defense counsel mistakenly cited the wrong administrative regulation – incorrectly referencing AR 1-1.02(c) ("Chain of Command"), which had not been in effect during the relevant time period.

On April 2, 2001, Ober filed a brief opposing defendants' motion to dismiss, as well as a motion to amend his complaint and an amended complaint, which added Joanna Reynolds (Ms. Guido's cocounsel) as a defendant. In a curious turn of events, Ober accused Ms. Reynolds, rather than Ms. Guido, of attempting to defeat his claims by secretly altering state police regulations to add AR 1-1.02(c), intentionally misrepresenting facts to the Court, and removing the regulation's "historic file."

On April 19, 2001, defendants filed a reply brief, in which counsel readily admitted their citation error, explaining that it was unintentional and could be stricken without altering the substance

1

of their argument. At the same time, defendants moved to dismiss or strike Ober's amended complaint. That motion was granted on April 23, 2001.

On May 2, 2001, Ober filed a second amended complaint. Like his earlier filings, Ober's current complaint is comprised almost entirely of inflammatory rhetoric and conclusory allegations that are unsupported by factual averments.[1] In essence, Ober has merely reiterated his prior claims and added defendants' lead attorney, Syndi Guido, as another defendant, accusing her, as well as Ms. Reynolds, of abuse of process based on the previous citation to AR 1-1.02(c). This time, Ober also complains that defense counsel misrepresented another state police regulation, FR 1-1.17(B), in that same brief. (Plaintiff's Second Amended Complaint, filed May 2, 2001, at ¶¶ 54-56, 59-61).[2]

As Ober tells the story, his problems began while serving as Director of the Internal Affairs Division in the Bureau of Professional Responsibility. (Plaintiff's Second Amended Complaint, filed May 2, 2001, at ¶ 21.) In late September or early October 1998, an unnamed person from the FBI contacted Ober. *Id.* at ¶ 23. This FBI source supposedly had information from an anonymous informant that "high-ranking members of the PSP," as well as members of the Governor's Office, might be taking payoffs in exchange for giving special consideration to certain cadet applicants. *Id.* at ¶ 24. Ober was allegedly ordered not to divulge the investigation's existence to the Commissioner (Colonel Evanko) or Deputy Commissioners (Lieutenant Colonels Coury, Westcott, and Hickes). *Id.* at ¶ 25.

In spite of the FBI's directive, Ober felt he should report these allegations; yet he did not want to share the information with anyone he did not personally trust. *Id.* at ¶ 26. For that reason, Ober kept the investigation a secret from everyone in his chain of command and instead confided in

---

[1]For example, Ober's complaint is peppered with accusations that the defendants' actions were "vile," "hateful," "irresponsible," and "outlandish," while consistently characterizing his own actions as "legal," "lawful," and "proper."

[2]In his second amended complaint, Ober has retracted his allegation that defendants removed the historical file on AR 1-1.02. Instead, Ober claims that the file does not comply with "PSP custom, practice, usages and regulations." *Id.* at ¶ 57.

Lieutenant Colonel Hickes.[3]  *Id.* at 27.  According to Ober, Lieutenant Colonel Hickes ordered him

not to tell anyone else about the investigation.  *Id.*

In May 1999, someone at the FBI informed Ober that any wrongdoing was limited to a single

trooper.  *Id.* at ¶ 28.  On May 12, Ober and Hickes told Colonel Evanko about the FBI's

investigation.  Colonel Evanko was angry that it had been kept secret from him and decided to

conduct an administrative inquiry into the facts surrounding Ober's involvement.  *Id.* at ¶¶ 30-33.

The Governor's Deputy Chief of Staff, Mark Campbell (now Chief of Staff), supposedly approved

Colonel Evanko's request to conduct that investigation.  *Id.* at ¶ 33.  Ober believes that administrative

inquiries such as this generally destroy an officer's reputation, causing him to be shunned, insulted,

and ostracized.  *Id.* at ¶ 37.  Yet, he has not mentioned a single person who treated him in that fashion

because of this particular administrative inquiry.

In any event, what actually sparked this litigation was Ober's eventual transfer to an

assignment in Washington, Pennsylvania.  Even though that transfer was not ordered until the end of

January 2000 – more than eight months after the events that supposedly outraged Colonel Evanko –

Ober insists it was done solely out of spite.  *Id.* at  ¶¶ 46, 46(a), 50; *Ober v. Evanko,* Pet. for Prelim.

Inj., No. 35 M.D. 2000 (Pa. Commw. filed Jan. 26, 2000).  To prevent being transferred, Ober filed a

petition for mandamus in state court and requested a preliminary injunction.  *Ober v. Evanko*, Pet. for

Mandamus, No. 35 M.D. 2000 (Pa. Commw. filed Jan. 26, 2000).  On January 27, 2000, in exchange

for Captain Ober's withdrawal of his motion for a preliminary injunction, Colonel Evanko voluntarily

rescinded Captain Ober's transfer to Washington and agreed to keep him in the Harrisburg area until

---

[3]Although Ober also mentions that he briefly served as the Acting Director of the Bureau of Professional Responsibility, by the time the events in question occurred, Major Hawthorne Conley (now Lieutenant Colonel) was the Director of the Bureau of Professional Responsibility.  In fact, Conley was promoted to Major and named Director of the Bureau on the same day that Hickes was promoted to Lieutenant Colonel and named Deputy Commissioner of Staff.  As Bureau Director, Major Conley was Ober's supervisor, and Ober's chain of command reported to Colonel Evanko through Lieutenant Colonel Coury, Deputy Commissioner of Administration, rather than Lieutenant Colonel Hickes, who was Deputy Commissioner of Staff.

a final decision on Ober's mandamus petition. *Ober v. Evanko,* Petitioner's Mot. to Withdraw, App. A, No. 35 M.D. 2000 (Pa. Commw. filed Jan. 27, 2000).

On February 25, 2000, Colonel Evanko filed a motion to dismiss Ober's mandamus petition as moot. *Ober v. Evanko,* Respondents' Application to Dismiss for Mootness Pursuant to Pa.R.C.P. 1972(4), No. 35 M.D. 2000 (Pa. Commw. filed Feb. 23, 2000). In that motion, Colonel Evanko explained that Captain Ober had been transferred to Washington in order to assist the Area Commander in coordinating services at the Conference of the National Governors Association, which was to be held in Pennsylvania later that year. *Id.* at ¶ 3. Since Evanko had agreed to keep Ober in Harrisburg and the important Washington position needed to be filled immediately, Captain Dave Young, a Philadelphia resident, was transferred there from his position as Commander of the Organized Crime Section in Harrisburg. *Id.* at ¶¶ 5, 6. In the meantime, to fulfill his promise to Ober, Colonel Evanko temporarily assigned him as Central Section Commander of the Bureau of Liquor Control Enforcement (which oversees the entire central region of the state). *Id.* at ¶ 7. Based on these facts, the Commonwealth Court granted Colonel Evanko's motion and dismissed Ober's lawsuit as moot. *Ober v. Evanko,* No. 35 M.D. 2000 (Pa. Commw. Mar. 30, 2000).

Still, Ober was not happy. Even though he retained the same rank and pay, Ober did not like the fact that his new position had been previously held by a lieutenant. (Plaintiff's Second Amended Complaint, filed May 2, 2001, at ¶ 51.) Accordingly, Ober filed a second action under Pennsylvania's Whistleblowers' Law. *Ober v. Evanko,* Pet. for Review, No. 238 M.D. 2000 (Pa. Commw. filed May 9, 2000). That action was dismissed for failure to state a claim. *Ober v. Evanko,* 238 M.D. 2000, slip. op. at 6 (Pa. Commw. Sept. 6, 2000).

A few months later, Ober filed this federal lawsuit, repeating the averments he made in Pennsylvania's Commonwealth Court and supplementing them with an assortment of vague contentions and innuendo. For example, at some unknown time, Ober was supposedly denied

unspecified promotions, transfers, educational opportunities, and overtime, as well as reimbursement for unnamed "expenses." (Plaintiff's Second Amended Complaint, filed May 2, 2001, at ¶ 46(c),(d),(g),(h).) Ober contends he "was subjected to career destroying investigations," without explaining what those investigations were about or how his career was adversely affected. *Id.* at ¶ 46(e). Similarly, Ober believes he was "constructively" demoted, somehow "destroying" his reputation and effectiveness among unmentioned "colleagues." *Id.* at ¶ 46(b).

Ober also suggests that the defendants took "numerous actions" meant to injure him, "decimate" his career, and "hamper" his performance, but Ober has not described those actions or indicated how he was harmed by them. *Id.* at ¶ 46(j). Ober offers no factual support for the proposition that he has "suffered innumerable insults, humiliations, and embarrassments at the hands" of anonymous "PSP officers" who were somehow "made to fear they would suffer official retribution" if they treated Ober fairly. *Id.* at ¶ 47. In that same vein, Ober summarily concludes, without supporting facts, that he has been subjected to personal attacks and an atmosphere fostering retaliation, resentment, and harassment. *Id.* at ¶¶ 46(f),(i). Finally, Ober asks this Court to draw the unjustified conclusion that defense counsel colluded with their clients to retaliate against Ober for filing the original complaint by secretly changing a regulation and making intentional misrepresentations to the Court. *Id.* at ¶¶ 15a, 61, Wherefore Clause ¶ (j).

## ARGUMENT

**I.    Ober's complaint must be dismissed for failure to state a claim.**

In assessing the sufficiency of Ober's complaint, the Court must accept all factual inferences as true; however, the Court is free to look beyond Ober's dramatic hyperbole. *See Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 185 (3d Cir. 2000) (expressing displeasure at arguments "couched in hyperbole obfuscating the real issues"). In ruling on a motion to dismiss, the Court

should draw on the complaint's allegations in a "realistic, rather than slavish, manner" and avoid ruling based "upon the mere presence of words." *Id.* at 184.

To that end, the Court need not credit bald assertions, unsupported conclusions, or unwarranted inferences. *Id.* at 183-84 (court may reject unsupported conclusions and unwarranted inferences); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (court may disregard bald assertions and legal conclusions). Moreover, fair inferences may be drawn from what a plaintiff does *not* plead in the complaint. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000) (court may infer events did not occur if not alleged in the complaint); *accord Angus v. Shiley*, 989 F.2d 142, 147 (3d Cir. 1993).

Strident rhetoric aside, Ober's complaint contains very few factual averments. The sole allegation against Mark Campbell is that Colonel Evanko consulted him about Ober's failure to report the FBI investigation, and they decided to examine the matter further. The planned inquiry was apparently discussed at a meeting attended by Lieutenant Colonels Coury, Westcott, and Conley (who was then a Major in charge of the Bureau of Professional Responsibility). Except for attending that meeting, the only specific allegation against Lieutenant Colonel Coury is that he removed Ober from an assignment with the "PSP Centennial Book Committee," which Ober considered "prestigious." Ober is upset with Lieutenant Colonel Conley for taking his cell phone and denying some sort of "expenses." Apparently, former Lieutenant Colonel Westcott did nothing more than reject a recommendation for Ober to serve as the state police contact with the Pennsylvania Emergency Management Agency.

Thus, Ober's specific allegations against defendants Campbell, Coury, Westcott and Conley boil down to three facts: (1) They knew Colonel Evanko was conducting an administrative inquiry into the events surrounding Ober's decision to conceal his contact with the FBI from his commanding officers; (2) Ober was relieved of some secondary responsibilities; and (3) Ober did not get to keep a

cellular phone. Ober makes two additional allegations against Colonel Evanko, which do little to enhance his case. Without explaining why he was entitled to remain in Harrisburg, Ober attacks Evanko for transferring him to an assignment in Washington, Pennsylvania. Then, when Evanko allowed Ober to stay in the Harrisburg area, Ober complained because the position had previously been filled by a lieutenant. Taken as a whole, these factual allegations are insufficient to support any of Ober's claims for relief.

### A.    Substantive Due Process Rights

First, Ober accuses the defendants of violating his Fourteenth Amendment right to substantive due process. (Compl. ¶ 10; Wherefore Clause ¶ (b).) To prevail on this claim, Ober must show that the government deliberately and arbitrarily abused its power to deprive him of a property interest that is "fundamental" under the United States Constitution. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000).

Not all property rights are protected by the concept of substantive due process. *Id.* at 140. So far, the Third Circuit has limited substantive due process protection to cases involving the ownership of real property. *Id.* at 141.[4] Less fundamental interests, such as rights created by contract, are not entitled to protection. *Id.* at 141-42 (tenured professorship at state university was not entitled to substantive due process protection); *Mauriello v. Univ. of Med. & Dentistry of New Jersey*, 781 F.2d 46 (3d Cir. 1986) (graduate student's interest in continued academic enrollment is not constitutionally protected). Likewise, reputation alone is not protected by due process. *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997).

Ober complains bitterly that his "rights" have been violated. However, Ober has not explained what fundamental, constitutionally-protected property interest he has in being assigned to

---

[4] The majority of other circuit courts of appeal have adopted the same approach. *See Singleton v. Cecil*, 176 F.3d 419, 425-26 (8th Cir. 1999) (*en banc*) (state-law contract rights in employment are not fundamental Constitutional interests); *accord McKinney v. Pope*, 20 F.3d 1550, 1560 (11th Cir. 1994) (*en banc*); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339 (6th Cir. 1992); *Huang v. Board of Governors of Univ. of North Carolina*, 902 F.2d 1134, 1142 n.10 (4th Cir. 1990).

any particular post, in serving on the Centennial Book Committee, in acting as the state police contact

with PEMA, in being supplied with a cellular phone, or in having his expenses paid.  Not one of these

items rises to the level of a fundamental interest entitled to substantive due process protection.  *See*

*Kelly,* 107 F.3d at 1077 (police officer's allegations were insufficient to state a due process claim

although he was subjected to a series of reprimands, disciplinary actions, reprisals, job-related

actions, and damage to his reputation); *Nicholas,* 227 F.3d at 141-42 (tenured professorship unworthy

of due process protection).  Accordingly, Ober's due process claim should be dismissed.

### B.    Privileges and Immunities Clause of the Fourteenth Amendment

Next, Ober makes the confusing assertion that the defendants violated "his right to enjoy the

protections afforded by the Privileges and Immunities Clause" of the Fourteenth Amendment.

(Compl. ¶¶ 11; Wherefore Clause ¶ (d).)  There is simply no basis for Ober's claim.

The privileges and immunities clause provides that "no state shall make or enforce any law

which shall abridge the privileges or immunities of citizens of the United States."  U.S. Const.

amend. XIV, §1.  In essence, "when a state affords rights or privileges to its own citizens, it may not

deny them to citizens immigrant from other states."  *Galahad v. Weinshenk,*  555 F.Supp. 1201, 1206

n.3 (D.C. Colo. 1983).

To prevail on a "privilege and immunities" claim, a plaintiff must prove that:  (1) he has a

fundamental interest that is being burdened by a state of which he is not a citizen; and (2) the

defendants did not have a substantial reason to discriminate against citizens of other states.  This does

not mean that states cannot discriminate against the citizens of other states.  In fact, there may be

perfectly valid reasons for doing so.  The inquiry is whether reasons for the discrimination exist and

whether the degree of discrimination bears a close relation to those reasons.  *Toomer v. Witsell*, 334

U.S. 385, 396 (1948).

8



The privileges and immunities clause is plainly irrelevant to these facts. As discussed above, Ober has not pointed to any fundamental right that has been adversely affected. *See Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265, 270 (3d Cir. 1994) (public employment is not a fundamental right). More importantly, Ober does not claim discrimination based on his state citizenship. His privileges and immunity claim is baseless and must be dismissed.

### C.    First Amendment Right to Free Speech

Ober also maintains that his First Amendment rights were violated by defendants Evanko and Campbell. (Compl. ¶ 12.) Ober then demands judgment against all the defendants for depriving him of his First Amendment "rights to be free of unlawful injurious employment actions in retaliation for his proper exercise of protected speech." (Compl. Wherefore Clause ¶ (a).)

In analyzing a public employee's retaliation claims, the Court must engage in a three-part analysis. Did the plaintiff engage in protected activity? *Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir. 1983). Was that protected activity a substantial or motivating factor in the alleged retaliatory action? *Id.* If the protected conduct had not occurred, would the employer still have taken the same action? *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 416-17 (1979). The allegations in Ober's complaint are insufficient to meet this test because Ober did not engage in protected conduct and the Commissioner's actions were in no way retaliatory.

Ober has not explained exactly what "protected speech" he was supposedly punished for. However, there are only two instances of speech mentioned in Ober's complaint: (1) In early October 1998, he told Lieutenant Colonel Hickes about the FBI investigation; and (2) in May 1999, Ober belatedly told Colonel Evanko about the investigation. Unless either of these incidents can be "fairly characterized as constituting speech on a matter of public concern" (as opposed to speech "upon matters of personal interest"), the reasons for the defendants' actions are not subject to scrutiny by the courts. *Czurlanis*, 721 F.2d at 103 (quoting *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)).

9

Here, Ober's decision to tell Hickes about the FBI's investigation was motivated by his personal interests, not public concern. According to Ober's complaint, the FBI expressly directed Ober *not* to divulge the existence of his investigation to the Commissioner or the Deputy Commissioners. (Compl. ¶ 25.) Despite those instructions, Ober wanted to share his secret with someone he personally trusted – Deputy Commissioner Hickes. (Compl. ¶¶ 26, 27.) Accepting Ober's allegations as true, his report to Hickes was contrary to any public interest involved. Ober's act not only ran counter to his duty to report matters through his chain of command, it also ran counter to the FBI's directive.

Likewise, Ober's belated report to Colonel Evanko was not protected speech. When Ober and Hickes learned that the FBI had exonerated everyone in the state police except a solitary trooper, they finally told the Commissioner what was going on. Significantly, Ober does not allege that Colonel Evanko retaliated against him because Ober knew of any independent evidence of corruption in the cadet selection program. Rather, Evanko was apparently upset when Ober confessed hiding the investigation from his superiors, a purely personal decision.

Moreover, Ober asks this Court to draw the unjustified conclusion that he was transferred to Washington, Pennsylvania, "in an irresponsible act of outlandish and extreme retribution" in a "hateful attempt to separate him from his children." (Compl. ¶¶ 46(a), 50.) Although the Court must accept Ober's factual allegations as true, it may reject unwarranted inferences such as this one. *Doug Grant,* 232 F.3d at 183-84. This is particularly true where Ober's reasoning is so clearly distorted.

Colonel Evanko first learned of the FBI's investigation, as well as the fact that Ober had kept it secret, in May 1999. Yet Ober was not transferred to Washington until eight months later. If Colonel Evanko's goal was to punish Ober, why would he have waited so long? During that eight-month period, why would Colonel Evanko have trusted Ober to be the "project manager on the largest and most technical law enforcement project in PSP history"? (Compl. ¶ 50.) More

importantly, why would the Commissioner transfer Ober to a post as significant as Assistant to the Task Commander for the National Governors Association's Conference? If Colonel Evanko's sole motivation was a desire to punish Ober by separating him from his family, why would the Commissioner also have "punished" Captain Young, a Philadelphia resident and Commander of the Organized Crime Unit, by sending him to Washington in Ober's stead? Quite simply, Captain Ober's reasoning defies logic, his conclusions are not supported by the facts he has alleged, and Ober's retaliation claim should be dismissed.

### D.    Fourth Amendment Rights

Ober makes another puzzling claim – that the defendants violated his Fourth Amendment rights by subjecting him to "custodial investigations" and "invasions of privacy in a series of investigations and administrative actions." (Compl. ¶ 14; Wherefore Clause ¶ (c).) Accepting all of Ober's averments as true, it is clear he was never subjected to an unlawful seizure within the meaning of the Fourth Amendment. Ober was not seized as a suspect in a criminal case; he was interviewed during an administrative inquiry, which does not implicate the Fourth Amendment. *See Garrett v. Lehman*, 751 F.2d 997, 1004 (9th Cir. 1985) (holding the exclusionary rule of Fourth Amendment not applicable to military administrative discharge proceedings).

Issues of custodial interrogation arise under the Fifth Amendment, not the Fourth Amendment. Assuming Ober's complaint somehow implicitly alleges a Fifth Amendment claim, the concept of "custodial interrogation" is still inapplicable because it only arises in the context of criminal cases. *See California v. Byers*, 402 U.S. 424, 434 (1971) (statutory requirement that drivers involved in accidents stop and provide identification did not violate the Fifth Amendment when the purpose was civil not criminal). Ober's factual averments do not have Fourth or Fifth Amendment implications, and these claims must be dismissed.

11

### E.      Equal Protection

Evanko and Campbell are also said to have discriminated against Ober in violation of the equal protection clause. (Compl. ¶ 12.)  Ober then demands judgment against all of the defendants on this count. (Compl. Wherefore Clause ¶ (h).)  To make out an equal protection claim, Ober must establish that he is part of a suspect classification or that he has been deprived of a fundamental right.  *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 199 (1979).   He has done neither.  Accordingly, Ober's equal protection claim cannot stand.

### F.      Right to Be Free of Civil Conspiracies and Emotional Distress

Next, Ober alleges that the defendants supposedly violated his rights "to be free of civil conspiracies" and "emotional distress."  (Compl. ¶¶ 13, 15; Wherefore Clause ¶¶ (e)-(g)).  There is no federal constitutional right to be free of emotional pain and mental distress.  In order to state a conspiracy claim under § 1983, there must be an underlying constitutional deprivation.  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).  Ober has not made out a case of any constitutional violation; accordingly, these claims fail.

### G.      Abuse of Process

Finally, in accusing defense counsel of violating his "federally guaranteed right" to be "free of abuse of legal process," Ober has chosen to take a simple mistake and blow it completely out of proportion.  Defense counsel have readily admitted that, earlier in this litigation, they erroneously cited an administrative regulation (AR 1-1.02(c)) that did not exist at the relevant time.  Without any basis in fact, Ober stubbornly insists that this mistake must have been an intentional misrepresentation.  To compound matters, Ober has added the entirely specious assertion that counsel also misrepresented a field regulation, FR 1-1.17(B), which states, "Members shall promptly report to their supervisor any information which comes to their attention and *which tends to indicate* that any other member or employe has violated any law, rule, regulation or order." (Emphasis added).  To the

12

contrary, defense counsel correctly described that regulation as "requiring members to promptly notify their supervisor when they receive any information indicating another member might have violated the law." (Defendants' Reply Brief, filed March 16, 2001.)

Regardless, neither of these two citations constitutes any sort of "abuse of legal process." As commonly understood, the term "process" refers to a summons, or summons and complaint, or a writ. Blacks Law Dictionary, 7th Edition (West 1999). Process "issues forth in order to bring the defendant into court." *Id.* An action for abuse of process lies when a party employs legal process for some unlawful object. *Jennings v. Shuman,* 567 F.2d 1213, 1214 (3d Cir. 1977). In this case, defendants have not attempted to use process for any improper purpose; they have merely defended against a suit initiated by Ober. Thus, even if the citation error had been intentional, the alleged facts would not give rise to a cause of action for abuse of process.

**II.     To the extent Ober's suit is brought against defendants in their individual capacities, they are protected by qualified immunity.**

In the introduction to his complaint, Ober states that his suit is brought against Commissioner Evanko in his individual capacity. (Introduction to Plaintiff's Second Amended Complaint, filed May 2, 2001.) The complaint does not indicate whether the remaining defendants are being sued in their official or individual capacities. To the extent Evanko and the other defendants have been sued in their individual capacities, they are protected by qualified immunity.

Qualified immunity should be determined at the earliest possible stage because it constitutes immunity from suit and discovery, not just a defense to liability. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (qualified immunity protects public officials from disruptive discovery); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (qualified immunity is a threshold question). In any qualified immunity analysis, the court must determine whether the plaintiff has presented a constitutional right that was clearly established at the time of the defendants' actions. *See Seigert v. Gilley*, 500 U.S. 226, 231 (1991) (court determines not only the currently applicable law, but whether that law was

clearly established at the time the action occurred). To be clearly established, the right's contours must have been obvious enough that a reasonable official would have known his actions violated that right. *Anderson*, 483 U.S. at 640.

As discussed above, Ober has not shown a violation of any clearly-established constitutional right. Assuming Ober's complaint sets forth the requisite constitutional violation, defendants still cannot be held liable because it was objectively reasonable for them to believe their actions were constitutional. *Harlow*, 457 U.S. at 819 (government officials performing discretionary functions are shielded from liability for civil damages unless their conduct violates clearly established constitutional or statutory rights that a reasonable person should have known about).

Even though Ober is upset that Colonel Evanko decided to examine his actions, as Commissioner of the State Police, Colonel Evanko is ultimately responsible for the conduct of every member of the force. Pennsylvania State Police Field Regulation, FR 3-3.04. The Commissioner also has a duty to maintain the State Police Academy. 71 P.S. § 251(a). On May 12, 1999, Colonel Evanko first learned that Ober had been contacted by the FBI about possible corruption in the academy. Evanko also learned that Ober had reported the matter to Lieutenant Colonel Hickes rather than Major Conley or Lieutenant Colonel Coury.

Ober's actions violated departmental regulations governing the receipt of information about possible misconduct. FR 1-1.17(B) (requiring members to promptly notify their supervisor when they receive any information indicating another member might have violated the law); AR 4-25.10 (B)(1) (requiring personnel to record every allegation of misconduct, whether anonymous, verbal, or written on a Use of Force or Complaint Reception and Processing Worksheet); FR 1-1.28 (requiring members to immediately prepare a written statement when any complaint is received indicating misconduct of personnel so that a record will be available for future reference).

14

Moreover, as Ober's supervisor and Director of the Bureau of Professional Responsibility, it was the responsibility of Major Conley, not Lieutenant Colonel Hickes, to determine what action should have been taken with respect to the information received from the FBI. *See* AR 4-25.01 (granting the Bureau of Professional Responsibility, Internal Affairs Division, authority over all allegations of misconduct by personnel); AR 4-25.08(B) (placing responsibility for all investigations into alleged misconduct upon the Director of the Bureau of Professional Responsibility); AR 4-25.09(A), (B) (making it the responsibility of the Director of the Bureau of Professional Responsibility to determine whether the Internal Affairs Division will investigate allegations of misconduct); AR 4-25, Appendage I(D)(3) (granting the Director of the Bureau of Professional Responsibility the discretion to determine whether an investigation is appropriate); FR 3-3.05(B) (holding Directors accountable for the conduct and performance of members under their immediate command).

After learning that Ober had reported to Lieutenant Colonel Hickes without consulting Major Conley, it was well within Commissioner Evanko's authority to investigate that unauthorized breach in the chain of command. *See* FR 3-3.04 (holding the Commissioner responsible for the conduct of every member of the force); AR 4-25.09(A)(11) (indicating that Commissioner may request administrative investigations); AR 4-25.04(B) (defining administrative investigation as "[i]nquiries into alleged misconduct by personnel or any inquiry into the actions of Department personnel required by directives where no misconduct is alleged.")

Ober further suggests there was something improper about Colonel Evanko consulting the Governor's Deputy Chief of Staff, Mark Campbell, about Ober's conduct. Colonel Evanko's conduct was not only reasonable, it was entirely appropriate under Pennsylvania law.

The Pennsylvania State Police is charged with the duty of assisting the Governor in administering Pennsylvania's laws, and the Commissioner is the head and chief executive officer of

the agency.  71 P.S. §§ 250(b), 251(a).  The State Police Commissioner is appointed by the Governor.  71 P.S. §§ 67.1(d)(1), 1192.  With the Governor's approval, the Commissioner prescribes the rules and regulations governing state police officers' conduct.  71 P.S. § 251(a).  Accordingly, it is difficult to understand what Ober finds inappropriate about Colonel Evanko advising the Governor, through his Deputy Chief of Staff, about the FBI's investigation and the way it had been mishandled by personnel under Evanko's command.  Under the circumstances, both Evanko and Campbell are protected by qualified immunity.

Next, Ober complains that, many months after the May 1999 disclosure to Evanko, he was transferred and "constructively demoted."  Significantly, Ober does not claim to have suffered a reduction in either rank or pay – even during the three months he was temporarily assigned to head the state's Central Section of the Bureau of Liquor Control Enforcement.

State law authorizes the Commissioner to assign members of the state police so as to effect the most efficient performance of the force's law enforcement duties.  71 P.S. § 251 (Commissioner has the duty to efficiently distribute the force throughout the Commonwealth); Pennsylvania State Police Field Regulation 3-2.04(A) (giving Commissioner the authority to transfer members as needed to fulfill the requirements for additional services, specific or specialized skills or to accomplish any other needs of the Department); *see also Hunt v. Dunn*, 439 A.2d 240, 242 (Pa. Commw. 1982) ("the Commissioner has discretion founded on the need of the service in ordering transfers").

The Commissioner had a reasonable basis for believing he could transfer Ober from the Internal Affairs Division to a position where Evanko felt he would be most useful.  Indeed, it "is a generally accepted practice to periodically rotate members assigned to an Internal Affairs Division." AR 4-25.11(B).  In this type of command decision, the Court should not substitute its judgment for that of the Commissioner.  The Commissioner is protected by qualified immunity for the transfer decisions he made regarding Ober.

Likewise, Deputy Commissioners Coury, Conley and former Deputy Commissioner Westcott are entitled to qualified immunity for their actions. They may have known that Colonel Evanko ordered an administrative inquiry, but the Constitution does not prohibit Ober's employers from examining the manner in which he did or did not carry out his duties. Even if the Deputy Commissioners decided not to have Ober serve on the Centennial Book Committee or act as the PEMA contact, what right were they violating? Similarly, the state police had no constitutional duty to pay Ober's expenses or provide him with a cellular phone. In short, there was nothing objectively unreasonable about any of the Deputy Commissioners' actions. *See Kelly*, 107 F.3d at 1077 (in a case where a police officer is not suspended, removed, fined, or reduced in rank, no deprivation of property right is alleged and claim should be dismissed). Consequently, Ober's complaint should be dismissed.

**III.**    **To the extent Ober's suit is against defendants in their official capacities, it is barred by sovereign immunity.**

As mentioned above, with the exception of Colonel Evanko, Ober's complaint does not indicate whether the defendants have been sued in their official or individual capacities. To the extent that Ober's action is brought against the defendants in their official capacities, it is barred by the Eleventh Amendment.

The Eleventh Amendment immunizes states from suit in federal court, and that immunity extends to a state's departments, agencies, and officials acting in their official capacities. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996). A state may waive this immunity, but that waiver must be unequivocal. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Similarly, although Congress has the power to abrogate sovereign immunity with respect to rights guaranteed by the Fourteenth Amendment, an unequivocal expression of Congressional intent is also required. *Id.*

Pennsylvania has not waived its immunity, and Congress has not abrogated the states' immunity in the Civil Rights Act, 42 U.S.C. § 1983. *See* 42 P.S. § 8521(b) (expressly withholding consent to be sued in federal court); *Laskaris v. Thornburgh,* 661 F.2d 23 (3d Cir. 1981) (Pennsylvania has not waived its immunity); *Will v. Michigan, Dep't of State Police,* 491 U.S. 58, 67 (1989) (42 U.S.C. § 1983 does not abrogate sovereign immunity).

Moreover, even though the Eleventh Amendment permits a plaintiff to sue state officials for injunctive relief in order to end continuing violations of federal law, they cannot be sued in their official capacity for monetary damages. *Will,* 491 U.S. at 71. Monetary damages are the only form of relief Ober has requested; therefore, federal claims are barred by the Eleventh Amendment.

Ober's state law claims are likewise barred. Under Pennsylvania law, state employees enjoy sovereign immunity except in those situations where the General Assembly has waived that immunity. 1 Pa.C.S. § 2310. Our Legislature has carved out nine narrow exceptions to the rule of immunity, none of which apply to plaintiff's claims. *See* 42 Pa.C.S. § 8522, *Shoop v. Dauphin County,* 766 F.Supp. 1327 (M.D. Pa. 1991), *aff'd,* 945 F.2d 396 (3d Cir. 1991), *cert. denied,* 502 U.S. 1097 (1992) (finding that a state trooper had immunity from plaintiff's intentional tort claims, including a claim for the infliction of emotional distress).

## CONCLUSION

For all the foregoing reasons, defendants' respectfully ask this Court to dismiss Ober's complaint with prejudice.

Respectfully submitted,

May 29, 2001

Syndi L. Guido, Deputy General Counsel
Joanna N. Reynolds, Assistant Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                    :
                    Plaintiff      :      NO.  1: CV-01-0084
                                   :      (Judge Caldwell)
          vs.                      :
                                   :      CIVIL ACTION - LAW
PAUL EVANKO, MARK                  :
CAMPBELL, THOMAS COURY,            :      JURY TRIAL DEMANDED
JOSEPH WESTCOTT,                   :
HAWTHORNE CONLEY,                  :
JOANNA REYNOLDS,                   :
AND SYNDI GUIDO                    :
                    Defendants     :

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I served a copy of defendants' brief in support of their motion to dismiss or strike plaintiff's second amended complaint, as well as the supporting exhibits, upon plaintiff's counsel by First Class Mail, U.S. Postal Service, addressed as follows:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA  17110


Syndi L. Guido
Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA   17101
(717) 783-6563

Dated:  May 29, 2001