

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | NO 1:CV-01-0084 |
| | ) | |
| Plaintiff | ) | (JUDGE CALDWELL) |
| | ) | |
| VS. | ) | |
| | ) | CIVIL ACTION LAW |
| **PAUL EVANKO, MARK CAMPBELL, THOMAS COURY, JOSEPH WESTCOTT, HAWTHORNE CONLEY, JOANNA REYNOLDS, AND SYNDI GUIDO,** | ) ) ) ) ) ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants | ) | |

FILED HARRISBURG JUN 2 5 2001 MARY E. D'ANDREA, CLERK Per____ DEPUTY CLERK

## PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE AMENDED COMPLAINT

**I.) BACKGROUND**

**A.) PROCEDURAL HISTORY**

Plaintiff filed his original civil rights complaint on January 16, 2001. Defendants filed a Motion to Dismiss and Brief in Support on March 16, 2001. On April 2, 2001, the plaintiff filed a Brief in Opposition and he also filed a motion to Amend the Complaint. On April 19, 2001, Defendants filed a reply brief and, apparently, a motion for sanctions (may or may not have actually been filed). On May 2, 2001, the plaintiff filed an amended Complaint. This was after the Court struck everything after the

1

original complaint. The defendants then filed a motion and brief in support to dismiss or strike plaintiffs "second" Amended Complaint. This brief is in opposition to that motion. Notably though there was no "second" Amended Complaint. Clearly this was simply an error on defendants' part. Plaintiffs Exhibits Appear separately in an Appendix. They are incorporated herein.

### B.) FACTUAL HISTORY

Plaintiff Darrell G. Ober is a Captain in the Pennsylvania State Police (PSP). On or about September 1998 he was contacted by an FBI Agent out of Pittsburgh about a public corruption case (Complaint ¶'s 23-25). He was head of the PSP internal affair's division at the time. He was also serving as temporary head of the Bureau of Professional Responsibility. The FBI agent expressly requested that Darrell not divulge information to high-ranking PSP members and, or, persons in the Governor's office because of concerns that they might be involved (id at 25).

He reported through his chain of command to Lt. Col Hickes (pronounced "Hi-Kiss"), who was not a potential target (Amended Complaint ¶26-27). He and Hickes informed Evanko of the FBI probe after the FBI had advised Ober that it was successfully concluded (Amended Complaint ¶28-31). Evanko was furious and threatened the FBI Agent involved with sanctions, as he exploded in a fit of a rage (Amended Complaint ¶31-33). Evanko then went to the defendant Mark Campbell

2

seeking permission (which was granted) to investigate Ober, which was something both knew was improper (Amended Complaint ¶33-38). Evanko was joined in his plans to injure Ober and ruin his career by most of his front office (and a few others) specifically including the defendants' Conley, Coury, and Wescott (Amended Complaint ¶40-41). The defendants then conducted a series of unlawful investigations into Ober and his affairs, and devised a number of debilitating, harmful personnel actions designed to harass, intimidate, and destroy his career (Complaint ¶41-51). After defendants received the Complaint, the defendants Evanko and others lacked credible responses to plaintiff's allegations. Fearing an adverse result in this litigation the defendants manipulated PSP records and then represented falsely to this Court (see page 12 of defendants' brief in support of their 1st motion to dismiss at the last 2 paragraphs) that Administrative Regulation AR 1-1.02 had established that Ober skirted his chain of command. Supposedly this justified Evanko and Campbell's decision to go ahead and pursue Ober based upon Department Regulations. However, the section referred to by defendants, §1-1.02(c) had been quietly added by the defendants after plaintiff's complaint was filed on January 16, 2001 (the applicable AR was effected on 7/13/97). This was done on 2/22/01 by Evanko before defendants motion to dismiss was filed on March 16, 2001. The material provision of the regulation the defendants cited was intentionally added by defendants to injure plaintiff

3

(sub paragraph "C" of §1.02 was added to the applicable section, with the defendant Evanko personally making the decision on February 22, 2001). The defendants' had to have been clearly aware of these machinations. Upon information and belief, the defendants or some combination thereof, took the "history" of the regulation out of the files obviously hoping they would not be discovered, ie. no one would realize that the changes were not made until February 22, 2001. See Exhibit "A" hereto which is a copy of AR 1-1.02 dated 1997 which was the regulation in effect during the entire period of time referred to in the complaint up to and beyond when the complaint was filed on January 16, 2001. Compare Exhibit "A" with Exhibit "B" which is a copy of the provisions of the AR ("AR1-1.02") referred to in defendants' 1st underlying "Brief in Support of Their motion to Dismiss All Claims) (third paragraph on page 12 of that brief). It is easily seen that subsection "C" entitled "Chain of Command" was added on February 22, 2001. (Amended Complaint ¶'s 52-61). The defendants misconduct cannot be explained away as mere error or ignorance. Plaintiff alleges that this is one more unlawful effort by the PSP defendants to deprive plaintiff of his rights, but in this instance, it is in retaliation for filing his original complaint. Further, as noted by defendants on page 13 of their March 16, 2001 brief, plaintiff indeed does claim a "constructive demotion" (Amended Complaint ¶46(b)). But defendants are estopped to deny there was an adverse employment action. They've admitted to at least one

4

major transgression - the transfer to Washington PA. When Ober sued Evanko to prevent a transfer from Harrisburg to Washington Pennsylvania, Evanko and the PSP hastily rescinded the action. But they struck again. This is not unusual in the PSP. Commonwealth Court had this to say, "Instead of a transfer, the State Police assigned Ober to a lessor ranking position as a Lieutenant in the Bureau of Liquor Control Enforcement". This finding by Judge Pellegrini arose when Ober filed a Whistle blower complaint. See the defendants' 1st Brief in Support where, although, for unexplained reasons they didn't mark the Commonwealth Court decision as exhibits, nor did they incorporate them. A copy of Judge Dan Pellegrini's opinion in *Ober v. Evanko*, 238 M.D. 2000 slip op is attached as Exhibit "C". See page 3. (Pa. Comw. Sept 6, 2000). Judge Pellegrini had no problem seeing the retaliation from which plaintiff suffered at defendants' hands, and his findings are res judicata here. Particularly material is his finding that plaintiff was transferred to a "lesser ranking position." Judge Pellegrini goes on, "The State Police also argue that the claims are moot because Ober received the same amount of compensation in the Lieutenant position as he did as a Captain and has since been returned to a Captain's position within the Bureau of Liquor Control Enforcement," id at 3. This isn't correct. However Judge Pellegrini does not concur in the PSP analysis. It is facially clear that the defendants position on the transfer is not credible. Just as Colonel Evanko didn't "voluntarily" (Brief in Support pg 3, next to last

5

line). The use of a transfer in this circumstance was punitive. Knowing this, the defendants sought, in vein, for some basis upon which defendants could justify their actions when they wrote their Brief. Having none they created evidence but got caught. In short, they created a falsehood, and presented it to this court as a material fact in support of their motion to dismiss. This was an intentional effort to subvert this process. If the two attorney defendants are somehow innocent of this subterfuge, then the other defendants who engineered it, since it could not have been inadvertent, must answer for the injury they have caused.

**II.) ISSUES**

    1.) Did Ober State a Claim?

        a.) <u>Substantive Due Process</u>

        b.) <u>Privileges and Immunities</u>

        c.) <u>First Amendment</u>

        d.) <u>Fourth Amendment</u>

        e.) <u>Equal Protection</u>

        f.) <u>Conspiracy and Emotional Distress</u>

        g.) <u>Abuse of Process</u>

    2.) Qualified Immunity

    3.) Sovereign Immunity

## III.) ARGUMENT

### 1.) Stating a Claim:

a.) The essence of public employee due process claims is whether a state created property interest exists upon which to base any alleged 14th Amendment violation. Judicial notice could be taken in the Middle District, that the PSP contract with its employees, of which Ober is one, creates an enforceable property interest. The nature of the contract - it is in no way "at - will", is replete with a grievance procedure, and has guarantees against arbitrary employer actions, is such that the employee has a vested interest in continuous employment. There is no plenary termination right in the employer. See *Board of Regents v. Roth*, 408 U.S. 564 (1972). Ober thus has a property interest in his employment. And see the comparison case of *Perry v. Sindermann*, 408 U.S. 593 (1972) where the high court indicated that the existence of a state contract where the public employee could only be dismissed for just cause, and was beyond any probationary period, indicated the existence of a property right in employment, and thus serves here as a sound basis to support Ober's argument that he had a protectable property interest in his employment.

And there is little question that Ober has suffered a deprivation. The adverse employment actions were pervasive and were pled in significant detail, see the Amended Complaint ¶'s 33-51. See *Cushing v. City of Chicago*, 3F.3d 1156 (7th Cir

7

1993), <u>Winegar v. Des Moines Independent Community School District</u>, 20 F.3d 895 (8th Cir. 1994), <u>Rabinovitz v. Pena</u>, 89 F.3d 482 (3d Cir 1996). In Ober's case the transfer's and job assignments were done intentionally to injure him and indeed caused him significant damages. That's why Judge Pellegrini commented as he did in his opinion on the PSP's actions against Ober once they knew they could not go forward with the punitive transfer to Washington, Pa. See Exhibit "C" page 3, 1st Full paragraph. Instead of the transfer, the State Police assigned Ober to a lessor ranking position as a Lieutenant in the Bureau of Liquor Control Enforcement. The position had been held by a Sergeant. See Exhibit "G".

b.) <u>Privileges and Immunities</u>

Ober has a right to pursue his chosen vocation free of arbitrary and capricious government molestation. The nature of the defendants injurious actions were administrative in nature. They used arbitrary and irrational managerial tactics and made meanspirited decisions designed to destroy Ober's career, and his effectiveness as a police officer. These actions violate Ober's rights under the Privileges and Immunities clause of the 14th Amendment. See 3rd Circuit Opinion McLaughlin v.

c.) <u>First Amendment and</u>, d.) <u>Fourth Amendment</u>.

The defendants brief is like a "speaking demurrer." It distorts not only the allegations in the Amended Complaint, but it takes excessive license with making

8

unsupported factual allegations. If we are to accept the allegations in the Amended Complaint as true however Ober stated 4th and 1st Amendment claims.

And the issue here really isn't what Ober uttered as much as the arbitrary and capricious destruction of his career for doing his job. If a policeman is going to be professionally destroyed for doing a lawful job, then the 1st Amendment is implicated because he must work, associate, and move about in performing his task. He must express himself as an investigator.

### A.) Plaintiff stated a claim.

In *Ober v. Evanko*, Pet. For Review No. 238 M.D. 2000 (*Pa. Commwlth May 2000*) Exhibit "C," hereto, Judge Pellegrini found that Ober had been, in so many words, subjected to classic examples of deprivations of his rights as an employee merely because he did what the law requires. Had Ober disobeyed the FBI directive, he would have been subject to criminal prosecution had he tipped off a potential target, like Evanko, who later proved to be a material witness or a criminal defendant. Besides, Ober did inform Hickes, who was in his chain of command. Hickes properly and immediately ordered Ober not to tell anyone (Complaint ¶27). Thus neither Ober or Hickes "mishandled" the matter as defendants claim. Notably the defendants admit in their brief that Ober complains about "injurious employment action," "retaliation," that "the Court must accept Ober's factual allegations as true" etc.. Defendants also

9

admit in their brief that Ober won a Commonwealth Court case *Ober v. Evanko*, supra, when Evanko rescinded Ober's transfer to Washington, Pa. But claim it was "voluntarily" withdrawn (Brief in Support page 3) - which is simply not only untrue but very misleading. The Commonwealth Court Judge, clearly offended by PSP practices and actions, held that Ober had, once Evanko and the PSP backed off (not voluntarily) on the transfer, suffered from other inappropriate actions taken against him. Judge Pellegrini's finding is res judicata as to these proceedings and he said, and held, that Ober was in effect demoted. See page 3 of Exhibit "C" hereto which is a copy of the slip opinion in *Ober v. Evanko*. Defendants deny of course, that Ober was taken off of important assignments, and deprived of emoluments and many career enhancing benefits of his position. Complaint ¶'s 33-51. But he was denied what was given to others of equal rank. Defendants obliquely segregate each item and call them less than important enough to rise to the level of a due process violation. However, taken as a whole, Ober has been destroyed career wise, and all for doing what was proper and just. The Third Circuit held in *Rabinovitz v. Pena*, 89 F.3d 482 (3d Cir 1996) that there are other considerations besides mere reductions in pay that can amount to an anti personnel action for constitutional purposes. In consistent holdings the 2nd, 6th, 8th, and 10th Circuit have even adopted the EEOC standards applied in Title VII cases called the "*Faragher/Ellerth* standard" (*Faragher v. City of Boca Raton*, 118 S.Ct. 2275

(1998) and *Burlington Industries, Inc. v. Ellerth,* 118 S.Ct. 2257 (1998). Though they are sexual harassment cases, the EEOC looked to them for guidance in promulgating regulations and the EEOC has applied the standard to retaliation cases, not just sexual harassment cases. See *EEOC Enforcement Guidance in Vicarious Employer Liability for Unlawful Harassment by Supervisors 8 FEP* Man, 405:7651 (June 18, 1999). All of these defendants worked together and their effort produced a litany of destructive career damaging actions and unlawful investigations designed to destroy Ober personally and professionally. They read Court opinions and they take advantage of them. Do what you can get away with, just don't cut his pay, that way the Federal law will let you get by. But as *Rabinovitz* demonstrates, at page 488, there are limits, and the Court can, and should, look to other considerations. Regardless, the issue was decided in Commonwealth Court and the defendants never questioned Judge Pellegrini's findings. Nonetheless the language of *Rabinovitz* might be helpful.

> "[A] materially adverse change in the terms and conditions
> of employment must be more disruptive than a mere
> Inconvenience or an alteration of job responsibilities.
> A materially adverse change might be indicated by a
> Termination of employment, a demotion evidenced by
> a decrease in wage or salary, a less distinguished title,
> a material loss of benefits, significantly diminished
> material responsibilities, or other indices that might be
> unique to a particular situation."

11

*Rabinovitz v. Pena*, 89 F.3d 482, 488 (3d Cir. 1996) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

The same is true as to Obers 4th Amendment claims. Without any authority to do so the defendants forced him to sit down and answer questions and subject himself to interrogation over matters with 5th Amendment implications. That aside, if my employer can order me as a public employee to respond to questions as a result of an "administrative investigation," simply because I cooperate with the FBI and report an investigation into public corruption that focus on matters of public concern, and are part of my public duties, which investigation is not authorized (as here) by regulation or statute, then I've been seized and or deprived of my due process rights to do my job, earn a living and address (speak out) on matters of public concern. My freedom to move, to leave, or perform my duties has been taken away involuntarily. Worse yet I've been deterred from speaking out and doing my job. If employees can be arbitrarily and capriciously "investigated" and suffer debilitating career injuries for performing their public duties, then such employees have no freedom to act in the public interest which is why they are paid. That is protected speech. See *Cooper v. Smith*, 189 F.3d 761 (11th Cir. 1996); *Arenal v. City of Punta Gorda*, 932 F. Supp 1406 (M.D. Fla. 1996); *Cahill v. O'Donnell*, 7 F. Supp. 2d 341 (S.D.N.Y. 1998). Keeping one's mouth shut as a correct expression of duty and responsibility on an investigation of a matter of public

12

concern, and then being punished for it, implicates the 1st Amendment just like a street corner speech. It is noteworthy that if the duties performed by Ober were "mishandled" then why was no one formally reprimanded or even verbally counseled? The reason is clear - because no one did mishandle the matter. Lacking the authority to do so Evanko and the other defendants merely vented their spleens on plaintiff by punishing him for performing his lawful duties in a lawful manner. They violated his 1st and 4th Amendment rights in doing so.

e.) Equal Protection

Defendants, in their Brief, spend 6 lines and less than 70 words in opposition to plaintiff's Equal Protection of the Laws claim. Defendants argue that there is no such claim because plaintiff is not in a "suspect classification," Brief in Support pg 12. But see *Village of Willowbrook v. Olech*, 120 S.Ct. 1073 (2000). And see *Esmail v. Maciane,* 53 F.3d 176 (7th Cir 1995) and *Futernick v. Surnter*, 78 F.3d 1051 (6th Cir 1996). The roots of recognizing arbitrary and capricious violations in non-suspect category equal protection situations runs deep in the history of Third Circuit and District Court decisions, *Epstein v. Town of Whitehall,* 693 F. Supp 309 (E.D.Pa. 1988) "The existence of bias, bad faith or other improper motive may be an excellent indicator of arbitrary government conduct," id at 313. See *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989) where reference is made to

13

"other arbitrary classification" at page 197 footnote 3. And see *Bello v. Walker*, 840 f.2d 1140 (3rd Cir 1988) where the issue of arbitrary and personal animus by a government official is discussed. As we sit here today the defendants continue to violate Ober's rights as is best illustrated by the intentional effort to subvert this litigation and make it appear that Evanko's ( and the other defendants) unlawful efforts and conspiracy to investigate and harass Ober, was based on PSP regulations. That effort was unlawful and intentional. There is no rational basis for defendants arbitrary misconduct in statute or regulations. See Exhibit "A" and Exhibit "B" hereto which are respective copies of AR1-1 (effective 7/31/97 and AR1-1 (effective 2/23/2001). Compare Sections 1.02. See where subsection "C" was added <u>after</u> Ober filed his complaint. Obers complaint was filed on January 16, 2001. The Brief in Support of Defendants Motion to Dismiss the original complaint was filed on March 16, 2001. This was no mistake. It was obviously planned and intentional, see Amended Complaint ¶'s 52-61. This is one of the most basic and key issues in all of this litigation ie. whether Evanko and Campbell had some right or justification to investigate, let alone discipline, Captain Ober (see Exhibit "D" hereto which is a 2 page excerpt from an Arbitrator's decision in the case of a certain PSP Corporal named Stanton). While the defendants say they didn't discipline Ober, they knew they wanted to hurt him and they knew his rights were being violated. Judge Pellingrini saw that. And they knew the

14

effect of their other administrative and investigatory actions were going to destroy him. This case is governed by the law of *Willowbrook*. Of relevant significance here also see Exhibit "E" hereto which is a copy of PSP regulations at Chapter 51 "Obstructing Governmental Operations." And see Field Regulations 1-2 at 2.13, Exhibit "F" hereto. These regulations show not only that the defendants were wrong in what they did, but they show why Evanko was told not to investigate Ober. He and Campbell were warned. In a display of blatant abuse they went ahead. The other defendants willingly followed. Evanko and Campbell knew better. Ober was being punished for following PSP regulations and the law. He was to be an example to put loyalty to the leader above the rule of law.

f.) <u>Emotional Distress and Conspiracy</u>.

Likewise defendants spend minimal time on this area in their brief. They totally fail to address the issue of conspiracy and plaintiff has a right to have that claim go forward. Regardless, he meets pleading standards. See Amended Complaint ¶'s 38-41, and see also ¶'s 33-36. Lastly, judicial notice can be taken that emotional trauma, which is pled here, is part, or can be part, of any §1983 claim.

g.) <u>Abuse of Process</u>

In the Amended Complaint, at ¶'s 52-61, the plaintiff alleges an unlawful effort by the defendants to mislead this Court and subvert the purpose, intent, and substance

15

of this lawsuit by intentionally creating false evidence, which, if believed by this Court, would have provided a rationale to support Campbell, Evanko, and the other defendants' arguments that Ober had mishandled the FBI investigation and had violated PSP regulations by doing so. But it would have done something far more insidious. After this court's hoped for stamp of approval, it would have justified further personnel actions by the defendants, including Ober's termination, but what is far far worse, it would give the current PSP leadership the power to second guess virtually every command decision made by any PSP member below them in the chain of command at any time. It would enable them to transfer with impunity. As the Supreme Court notes in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364 (1994) the constitutional tort of abuse of process still lives, and is, and should, be of great concern to our courts. What occurred in composing the original Brief in Support was both retaliation and abuse of process.

2.) Immunity

Ober has clearly demonstrated violations of his known civil rights. He has met the *Harlow v. Fitzgerald,* 457 U.S. 800 (1982) test and the *Anderson v. Creighton,* 483 U.S. 635 (1987) test. Further, the plaintiffs rights are still being violated as this brief is being written. There has been no cessation of the defendants' illegal actions. In fact, to retaliate against him for filing his suit, the defendants committed a violation

of Ober's rights to be free of an abuse of legal process, and attempted to "gut" the suit as it were, by creating false evidence. Complaint ¶'s 52-61. *Willowbrook* applies to the law of this case as do the other violations from which Ober still suffers today. And continuing this misconduct, the defendants persist in misquoting, misapplying, and misusing PSP regulations. When provided with a copy of the defendants brief, counsel for plaintiff asked him to respond to the brief's factual representations paragraph by paragraph. The plaintiff kindly complied. No matter how counsel tried to improve upon Captain Ober's work for this brief, he could not. Consequently attached hereto (and incorporated herein) and marked Exhibit "G" is a copy of plaintiffs response which is included to demonstrate how, and what, the defendants knew, and when, as they violated Ober's rights. Their very Brief in Support with its erroneous spin on regulations and facts, both as to their letter and their spirit is evidence of their disrespect for the process. They continue this misconduct to this very day. They know what they are doing. They read court orders and the law and they still fashioned anti personnel actions as Obers punishments to avoid legal responsibility. The theory behind the facts presented is that they knew they were wrong. But they intentionally went ahead. They are not entitled to immunity under these circumstances.

3.) <u>Sovereign Immunity</u>

Sovereign Immunity not an issue in this case. The defendants are sued individually.

Respectfully Submitted,

*[signature]*

Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, Pa 17110
(717) 221-9500

June 25, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | CIVIL ACTION LAW |
| | ) | |
| **Plaintiff** | ) | |
| | ) | 1:CV-01-0084 |
| vs. | ) | |
| | ) | (JUDGE CALDWELL) |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | JURY TRIAL DEMANDED |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY and** | ) | |
| **JOANNA REYNOLDS** | ) | |
| **Defendants** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this **25th day of JUNE, 2001**, a true and correct copy of the **PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS THE AMENDED COMPLAINT** was served upon the following counsel of record by United States Mail, postage prepaid:

**SYNDI L. GUIDO**
**DEPUTY GENERAL COUNSEL**
**OFFICE OF GENERAL COUNSEL**
333 Market Street, 17th Floor
Harrisburg, PA 17101
Attorney for Defendants'

BY: _____
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500