IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | : | NO 1:CV-01-0084 |
| | : | |
| **Plaintiff** | : | |
| | : | CIVIL ACTION LAW |
| **PAUL EVANKO, MARK** | : | |
| **CAMPBELL, THOMAS COURY** | : | |
| **JOSEPH WESTCOTT,** | : | (JUDGE CALDWELL) |
| **HAWTHORNE CONLEY,** | : | |
| **JOANNA REYNOLDS AND** | : | |
| **SYNDI GUIDO,** | : | JURY TRIAL DEMANDED |
| | : | |
| **Defendants** | : | |

FILED
HARRISBURG
AUG 3 0 2001
MARY E. D'ANDREA, CLERK
Per _____
DEPUTY CLERK

**PLAINTIFFS BRIEF IN OPPOSITION TO DEFENDANTS
MOTION FOR SANCTIONS AND PLAINTIFFS
REQUEST FOR ALTERNATIVE RELIEF**

**I.)    BACKGROUND**

Plaintiff filed his Amended Complaint in this matter on or about May 2, 2001. Although there are a number of filings and briefs surrounding the initiation of this litigation, the relevant document is the Amended Complaint. Among other things the Amended Complaint made certain allegations about a change to PSP AR 1-1.02 (more specifically the addition of subsection (c) and it added the defendants Guido and Reynolds to the complaint). The defendants notified plaintiff's counsel on or

1

about April 19, 2001 of their threat of sanctions, and, after the court filed its August 13, 2001 memorandum and order, denying defendants' motion to dismiss the complaint, the defendants filed, on April 16, 2001, a brief in support of their motion for sanctions (which they filed on August 6, 2001, along with 3 affidavits). This brief is in opposition to defendants' motion and supporting brief.

**II.) ISSUES**

1.) Did plaintiff violate F.R. Civ.P. 11 in composing and filing his amended complaint?

   Suggested Answer No!

2.) Is defendants' motion for sanctions frivilous to the point that plaintiff should be awarded attorney's fees for having to compose a response?

   Suggested Answer Yes!

**III.) ARGUMENT**

F.R. Civ.P. 11 (the "Rule") was designed to deter vexations and frivilous pleadings. But the Rule was, and is, more importantly, designed to prevent and discourage misrepresentations to the Court; see subsection (b) to the Rule. Plaintiff not only asserts that the defendants violated Rule 11 themselves, and that plaintiff did not, but that they did so in furtherance of an intentional effort to obfuscate, confuse, and ultimately defeat plaintiff's complaint through an improper subterfuge, which is

2

why the Amended Complaint added Ms. Guido and Ms. Reynolds as defendants. They weren't added based upon a mere suspicion, but rather based upon an investigation by counsel. And it is counsel, not plaintiff, who recommended the inclusion of the aforementioned defendants' and it was counsel who signed the pleadings, not Mr. Ober. In sum, the defendants argue that their "error" about subsection (c) to the regulation was relatively harmless, was a simple "honest mistake," and one that they apologized for previously. Both attorneys representing for defendants also argue that they responded appropriately to plaintiff's allegations in the amended complaint in any event, through Sergeant Margeson's affidavit (Exhibit "A") to their motion for sanctions. They also offer Major Merryman's affidavit (Exhibit "B") to their motion as being responsive to plaintiffs allegations. Plaintiff wishes to point out, most emphatically, that he does not agree. While the affidavits of these two gentlemen were well written, they lacking in relevance. Similarly, Mary Bungo's affidavit is also not material. It doesn't matter who, or how, subsection (c) was changed, nor how the commissioner signed off on the regulation. The key issue here is when, and who, and how, the file was tampered with. The relevant paragraphs in the amended complaint appear on pages 17 through 19 (paragraphs 52-60). As this Court has already noted in its August 13, 2001 Memorandum, in the first full paragraph on page 4, in addressing the issue of what

3

defendants refer to as an insignificant, "honest mistake," about the effective date of AR 1.102(c), "THIS COULD ARGUABLY JUSTIFY THE PSP INVESTIGATION OF OBER" (emphasis added). This is the court's reasoning, not plaintiff's. What defendants persist in doing is making a disingenuous claim that their's was a relatively harmless mistake that sort of erroneously appeared in their brief as a minor aside. Neither plaintiff nor his counsel believes this incredulous claim for a number of reasons - which is why plaintiff's counsel asked plaintiff to review the file to begin with. When Mr. Ober did so, he found it had been significantly changed. Much of the history part of the file had been removed. See plaintiff's affidavit, which is Exhibit "A" hereto. Upon learning this, plaintiff's counsel first called Joanna Reynolds and learned from her that the brief had been drafted and sent over to Ms. Guido on March 9, 2001, though plaintiff only received it 5 days after the service date. Counsel then called Ms. Guido, and, during a difficult conversation, learned that Ms. Guido claimed to have "re-written" the brief herself and "personally investigated" the file, and that missing the effective date was "just a mistake". To make such a claim is simply not credible. To begin with, if that regulation (subsection "C") had been in place during the FBI probe and after, Captain Ober would possibly not be in federal court today. He certainly would have been disciplined, if not terminated, by the defendants and many of his arguments would be without any

4

foundation except for prospective relief based upon due process and public policy arguments. Mr. Evanko would have had no need to go to Mr. Campbell, and most notably, if any attorney investigating this matter, had come upon subsection (c), it would have been aggressively advanced as an absolute defense to all of the plaintiff's claims. Further, it is inconceivable that if this ill conceived and abortive regulation (subsection "C") had been in effect, that it would not have surfaced before or during the Pennsylvania Commonwealth Court proceedings. Any attorney would know that. The defendants continue to cloud this obviously intentional misconduct in a way that defies common sense and insults the Court. Even the most incompetent of attorneys would have seized upon the magnitude of subsection (c)'s effect on plaintiff's claims had it been in effect before his alleged wrongs. And even its constitutional infirmities, and public policy weaknesses, and its conflicts with other regulations, wouldn't have saved Captain Ober's complaint because it probably would have given Evanko, and all of his co-defendants, something this Court has denied them, immunity. And that's precisely what these defendants, appear to have been planning. Looking further into the technical aspects of the defendants arguments, they may have realized they fail for even more plain and simple reasons and thats why all the smoke and mirrors. It makes no difference if the regulations were "auto penned" or personally signed, where's an affidavit from Mr. Evanko that he never reviewed the change or wasn't

5

familiar with the time line? This thing looks as if it was set up to be hidden by attorney client privilege, with immunity, as a shield and the defendants clearly did not make some simple mistake in reading the historic file. The first thing they would have done when they saw subsection (c) would be to raise it as a major issue. The fact is that documents in the file show the matter was reviewed on February 22, 2001 by the "Commissioner," Mr. Evanko. There is only one "Commissioner." How his signature was affixed is not important. So to with the statements of Mr. Margeson and Mr. Merryman. No where do these documents' address the allegations in the Complaint ie. the completeness, and/or integrity of the contents of the "Historic" file that forms the basis of the entire regulation file (see Complaint paragraphs 57-58). Plaintiff doesn't care who composed or researched subsection (c) - that's not the issue, and it has no meaning in this case. If the truth be known, subsection (c) has been kicked around in various forms for years. It was never changed because its not workable and is fraught with conflicts - It was suddenly approved <u>after</u> plaintiff filed his complaint.

The complaint, and Captain Ober's affidavit, do speak to the issue. Again, it's not important how the regulation was changed, but rather <u>when</u> it was changed. What is finally relevant is how the <u>file</u> was changed not the regulation, and why. And most important as to this motion, is how these defendants and their attorneys could ever make such an "honest mistake" and yet not even, apparently, realize its significance.

6

Thank goodness plaintiff saw the "error". Regardless this Court has ruled as a matter of law that the requirements to make out an abuse of process claim were not met by plaintiff. The Court's reasoning is of course the law of this case. But the gravity, relevancy, and materially, of what plaintiffs are absolutely confident was an effort to subvert the legal process, hasn't changed. Moreover, defendants' actions are all still relevant to the underlying issue of conspiracy, and will be explored fully. Plaintiff and his counsel can understand how upset defendants and opposing counsel are over these charges, be they ethical or tortious in nature, but they have only themselves to blame. It is they who made the misrepresentations. It is they who somehow investigated so poorly so maybe someone else tampered with the file. But if so, common sense dictates that they would have followed up. As the great Bard penned "Something's rotten in Denmark." Indeed the only argument they can make, in this frivilous motion, is their own failure to investigate. However, plaintiff cannot believe they could fail to see the significance of subsection (c) and merely mention it in passing in their brief. Thats the part that's not believable, and the defendants admissions to preparing the brief and investigating the underlying facts, only justifies more strongly, counsel's recommendation to make the very proper accusations the plaintiff has made.

**WHEREFORE** this Court should deny defendants' motion for sanctions and grant plaintiff attorneys fees for having to respond to this motion, the defendants clearly being at fault, and still being vulnerable to paying legally for their misconduct once all the facts are known.

Respectfully Submitted,

_____
Don Bailey/PAID# 23786
4311 N. 6th Street
Harrisburg, Pa 17110
(717) 221-9500

August 28, 2001

8

STATE OF <u>PENNSYLVANIA</u>    :

COUNTY OF <u>DAUPHIN</u>    :

<u>AFFIDAVIT</u>

I, Captain Darrell G. Ober, being first duty sworn according to law, depose and say:

1. In August 1989, as a Corporal, I was selected through a competitive selection process, to serve in the Pennsylvania State Police, Bureau of Research and Development, Systems and Procedures Section, Programming Division, as a Staff Analyst. As a Staff Analyst, my duties included researching, writing, editing, revising, and preparing assigned Department draft directives for the Commissioner. My duties also included creating and maintaining directive historical files and conducting historical directive research for the Office of Chief Counsel in pending litigation for actions filed against the Department and its members.

2. In March 1991 I was promoted to Sergeant and assigned as Supervisor, Systems and Procedures Section, Programming Division, Bureau of Research and Development. My duties included supervising the development, writing, editing, revising, and staffing of the entire Department directives system, Suggestion Program, and Records Management Unit. I also supervised the directive historical files and directive research projects for the Office of Chief Counsel in regard to pending litigation for actions filed against the Department and its members. I served in this position until I was promoted to Lieutenant and transferred to the Bureau of Professional Responsibility in March 1993.

3. I recruited Sergeant Walter J. Margeson into the Bureau of Research and Development and was his immediate Supervisor. I also trained Sergeant Margeson as my replacement regarding the aforementioned duties as Section Supervisor upon my promotion to Lieutenant.

4. As a Lieutenant and the Central Section Commander of Systems and Process Review Division, Bureau of Professional Responsibility, my duties, in part, included administrative responsibility for ensuring in-depth, comprehensive staff inspections of personnel, installations and for compliance with the rules, regulations and established policies of the Pennsylvania State Police for the following organizational components: Troops F, G, H, all Bureau headquarters, (including the Bureau of Research and Development) and decentralized components co-located in the aforementioned Troops.

1

*Exhibit "A"*

5. In March 1995, I was promoted to the rank of Captain and assigned as the Division Director in the Systems and Process Review Division. As such I maintained responsibility for the aforementioned staff inspection function in the State Police for the entire Department.

6. The defendant's explanations and affidavits do not address the issue of what would have to be in a file for a regulation such as AR 1-1.102 (c). Based on my extensive experience in reviewing Department files for compliance with regulations, the historic file of AR 1-1.102 (c) provided to me for review by Major Merryman was **NOT** in conformance with the existing policy and required practices of the Pennsylvania State Police.

7. Based on my experience, it is impossible that the historic origins of this far ranging change in Department policy, one that affects every enlisted member (4,168 individuals) and every civilian employee (1,534 individuals) in the Department, would be absent from the file without someone intentionally removing it. When I viewed the file, it had clearly been depleted of the necessary and relevant material related to this change; it had been altered.

8. I also attest to the fact that I have a significant litigation history with the Department. At no time since this ordeal began have I **EVER** been accused or otherwise informed that I violated *any* Department regulation; including AR 1-1.02 (C) before or after it was changed. Given that history, it is impossible that any reviewer of these files could ever miss the change to AR 1-1 because, of necessity, it would have provided the very justification the defendants needed to legitimately make inquiry into my actions as well a basis for the actions taken against me.

9. I also attest to the fact that during the administrative "inquiry" that conducted on me in June 1999, I was informed by the investigators, Major Thomas F. Williams and Major Robert G. Werts, that they had found **NO** evidence that I had committed any violations of Department regulations. The Notification of Inquiry, Form SP 1-102, issued to me on June 28, 1999 during my interrogation also attests to the fact the defendants knew I had not committed any violations of any agency rule or regulation. The alterations of the document from its original form and format also attest to the defendants need to "customize" it for their unlawful purpose. Additionally, the block that is to be utilized when a member *is* suspected of committing a violation is blank. Also left blank is the BPR Control Number block which is a violation of Department regulations and practice and demonstrates proof that this investigation was conducted "off the books". The final testament to the defendants prior knowledge that I committed no wrongdoing is in the narrative of the "Notification of Inquiry" which reads as follows:

2

"By order of the Pennsylvania State Police Commissioner, Paul J. Evanko, I have been assigned to make inquiry into your knowledge of the facts or circumstances surrounding the political corruption investigation that was conducted by the FBI in Western Pennsylvania."

*[Signature: Captain]*

[Notarial Seal]

Sworn to and subscribed before me this

____ Day of August 2001

Notary Public
My Commission Expires:

*[Signature: Adrienne L. Bailey]*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRELL G. OBER** | ) | CIVIL ACTION LAW |
| | ) | |
| **Plaintiff** | ) | |
| | ) | 1:CV-01-0084 |
| vs. | ) | |
| | ) | (JUDGE CALDWELL) |
| **PAUL EVANKO, MARK** | ) | |
| **CAMPBELL, THOMAS COURY,** | ) | JURY TRIAL DEMANDED |
| **JOSEPH WESTCOTT,** | ) | |
| **HAWTHORNE CONLEY and** | ) | |
| **JOANNA REYNOLDS** | ) | |
| **Defendants** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of AUGUST, 2001, a true and correct copy of the **DOCUMENT** was served upon the following counsel of record by United States Mail, postage prepaid:

**SYNDI L. GUIDO**
**DEPUTY GENERAL COUNSEL**
**OFFICE OF GENERAL COUNSEL**
333 Market Street, 17th Floor
Harrisburg, PA 17101
Attorney for Defendants'

BY: _____
Don Bailey ID# 23786
4311 N. 6th Street
Harrisburg, PA 17110
(717) 221-9500