ORIGINAL

49
4/23

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,
                          Plaintiff

          vs.

PAUL EVANKO, MARK CAMPBELL,
THOMAS COURY, JOSEPH WESTCOTT,
HAWTHORNE CONLEY,
                          Defendants

:
:
:
:
:
:
:
:
:
:
:

NO. 1:CV-01-0084
(Judge Caldwell)

CIVIL ACTION - LAW

JURY TRIAL DEMANDED

FILED
HARRISBURG, PA

APR 22 2002

MARY E. D'ANDREA, CLERK
Per ____ DB

**DEFENDANTS' MOTION TO COMPEL ANSWERS TO
DEFENDANTS' INTERROGATORIES AND REQUEST
FOR PRODUCTION OF DOCUMENTS**

Defendants Evanko, Campbell, Coury, Westcott and Conley, through their

counsel, Syndi Guido, Deputy General Counsel, and Joanna N. Reynolds, Assistant

Counsel, Pennsylvania State Police, respectfully move this Honorable Court for an

order compelling plaintiff to more fully respond to the Defendants' Interrogatories and

Request for Production of Documents, and in support thereof aver the following:

        1.      Plaintiff brought a civil rights complaint against the defendants alleging

various civil rights violations.  After consideration of the Defendants' Motion to Dismiss,

this Court dismissed all claims except the plaintiff's First and Fourth Amendment claim,

and the Section 1983 conspiracy claim.

        2.      On February 27, 2002, Defendants served Plaintiff with Interrogatories

and a Request for Production of Documents.[1]  See Requests attached hereto as Exhibit

---

[1] At the plaintiff's request, the discovery deadline was extended from March 29 to April 22, 2002.

"A".  Defendants requested various information and documents relating to liability and damages issues.

3.    On or about April 1, 2002, counsel for the plaintiff, Don Bailey, Esquire, objected in part, to producing information as to Interrogatories 2, 3, 4, 5, 7, 8, 9, 10, 11 and 13.  See Response to Interrogatories attached hereto as Exhibit "B."  Mr. Bailey did not file any objections to the defendants' request for documents, except for a hand-written objection to providing the plaintiff's tax records.  See letter attached to documents from plaintiff, attached hereto as Exhibit "C."

4.    The documents that were produced by the plaintiff were not produced or marked properly in response to the Defendant's Request for Documents. The defendants specifically asked the plaintiff to identify each document and state how it related to the plaintiff's allegations; he did not do so.  Instead, plaintiff lumped all the documents together, and produced them in a pile accompanied by a letter from Mr. Bailey; Mr. Bailey's letter is attached hereto as Exhibit "C."

5.    The Interrogatory answers that were provided were not complete in the following particulars:

   a.    In Defendants' Interrogatory #2, the defendants requested physical evidence on which the plaintiff relied to support his allegations. The plaintiff objected to this interrogatory as burdensome and overbroad after giving some examples of physical evidence that support his allegations.  However, this interrogatory is not burdensome or overbroad in that it is merely asking for those pieces of physical evidence upon which the plaintiff intends to rely on at trial to prove his allegations.  The

defendants seek this information so that they can prepare a proper defense.

b.      In Defendants' Interrogatory #3, the defendants requested plaintiff to identify documents that related to his allegations.  Although the plaintiff objected to this interrogatory as overbroad and burdensome, he produced a pile of documents, purportedly in response to this request.  However, there is no identification of the documents or explanation of what allegations the documents relate to.  The plaintiff offered to let the defendants depose his client in order to determine the identity and relevancy of each document.  By letter of April 17, 2002 (See Attached Exhibit "D"), the defendants declined this offer, since there is no need for such a deposition, and the costs attendant thereto, if the plaintiff fulfulls his obligations under the Federal Rules of Civil Procedure and appropriately answers the interrogatories and request for documents directed to him.

c.      In Defendants' Interrogatory #4, the defendants asked for communications that the plaintiff had with any person relating to allegations in his lawsuit.  The plaintiff objected to this allegation as "overbroad, excessively general, oppressive, and burdensome" but produced two communications anyway.  The defendants tried to compromise by limiting their request their request to communications that the plaintiff had that he intends to introduce or rely on at trial.  (See Exhibit "D.")  To date, the plaintiff has produced nothing further.

3

d.    In Defendants' Interrogatory #5, the defendants asked for identification of supporting documents and witnesses relating to any injury the plaintiff suffered that he claims resulted from the incidents contained in his complaint.  In his response to this interrogatory, plaintiff related numerous injuries he allegedly suffered; however, he did not identify the documents he possesses or the witnesses he will utilize to support these injuries.  Although the plaintiff objected to this interrogatory as "overbroad, oppressive and burdensome" the defendants are entitled to receive this information because the plaintiff's claims for damages will be based on this information.

e.    In Defendants' Interrogatory #7, the defendants requested information on every health care provider and other professionals who examined or treated the plaintiff regarding the alleged injuries he suffered as a result of the incidents contained in his complaint.  This interrogatory asked for specific information on each professional, including the person's name and address, dates of visits, reason for visits, the nature of services provided, and expenses incurred.  The plaintiff provided the names of several health care providers, some addresses, and some phone numbers.  The plaintiff did not disclose the nature of services provided in some instances, nor did he provide any expenses he incurred.  Although the plaintiff objected to the interrogatory as overbroad, he must provide this information because it directly relates to his claims for damage.  The defendants are willing to accept signed medical releases by the plaintiff for

each provider, as long as the plaintiff provides defendants with the names and addresses of all the health care providers and professionals he contacted so that defendants can subpoena the records.

f.    In Defendants' Interrogatory #8, the defendants requested information on pre-existing medical or psychological conditions the plaintiff had in the five years preceding the incidents averred in the complaint. The plaintiff objected to this interrogatory as overbroad, but promised to gather information on it.  To date, the defendants have received no such information.  The information requested in this case is directly relevant to the issue of claimed damages.

g.    In Defendants' Interrogatory #9, the defendants requested information on all sums of money or losses that related to any of the alleged incidents in the plaintiff's complaint, as well as the date, time, location and manner of such expenditures.  The plaintiff did not object to this interrogatory, but only provided general information, not the specific information requested.  Moreover, although plaintiff claimed to have attached attorney bills and a projection of monies lost as a result of a denied promotion, those documents were not attached.  Since the information requested directly relates to the issue of damages, and no objection to the interrogatory was made, the information must be produced.

h.    In Defendants' Interrogatory #10, the defendants asked plaintiff to state all meetings and communications he had with members of

the State Police, P.S.T.A., F.O.P., or any other person with regard to his lawsuit. The plaintiff partially answered the interrogatory and then objected to it as "burdensome, overbroad and oppressive", violative of attorney-client privilege, and not capable of yielding discoverable evidence. Plaintiff's partial answer did not include all persons involved in each meeting or communication, nor did it identify the date, time and place of the meeting or communication.

Again, in an attempt to compromise, defendants advised plaintiff that he need only disclose those meetings and communications he had with civilian employees of the Pennsylvania State Police. (This would be in addition to the more specific information requested on the communications already disclosed.) To date, he has not fully answered this interrogatory.

The information requested in this interrogatory may lead to discoverable evidence, in that the plaintiff's allegations in his amended complaint are based in large part on what other people in the Pennsylvania State Police told him about certain occurrences. The defendants should be able to find out what those communications were so they can test whether those communications will be relied upon to prove the plaintiff's allegations. The defendants have specifically told the plaintiff that they are not seeking attorney/client communications.

i.      In Defendants' Interrogatory #11, the defendants asked for disclosure of money and assistance the plaintiff received from the State

Police, or any local or State lodge of the PSTA or the FOP.  The interrogatory also requested that the plaintiff disclose who provided the money or assistance, as well as the date, time, location, and manner in which it was provided.  Although the plaintiff provided sums received from different union groups, he did not provide specifics, including when the money was provided.  The plaintiff did object to the interrogatory on the grounds it was "oppressive" and would not yield useful discoverable information.  However, this interrogatory directly relates to the issue of attorneys' fees requested by the plaintiff, and defendants need to know when plaintiff received the monies so they can determine whether those funds should be set-off against the claimed attorneys fees.  The dates of the receipt of monies is needed to show whether the monies provided should be set-off against the attorneys fees claimed.

j.      In Defendants' Interrogatory #12, defendants asked the plaintiff to identify every person who had attacked, harassed, humiliated, threatened, ostracized, shunned, insulted or embarrassed the plaintiff as a result of any of the defendants' actions.  Although the plaintiff gave specific instances of alleged harassment, he did not specify when it occurred, or where it occurred.  Since the plaintiff did not object to this interrogatory, the information requested must be produced.

k.      In Defendants' Interrogatory #13, defendants asked the plaintiff to produce information on criminal investigations he conducted. The plaintiff objected to this interrogatory on relevancy grounds.  This

information is relevant because one of the key issues in this case is whether the plaintiff conducted himself appropriately in his role of assisting the F.B.I. in their criminal investigation of Tpr. Stanton. Knowledge of the plaintiff's alleged expertise is therefore essential to the defendants' case. Moreover, the plaintiff testified in his deposition that he conducted criminal investigations. The defendants are merely asking the plaintiff to disclose information on those he remembers, so they can test his veracity as to his statements regarding his investigative experience, among other things.

l.    In Defendants' Interrogatory #14, defendants asked the plaintiff to produce internal investigations he authorized, supervised, conducted or assisted with, including the specifics of those investigations. The plaintiff has emphasized many times in his deposition that he did an outstanding job while assigned to the Internal Affairs Unit. This interrogatory merely asks him to recall specifics of which investigations he supervised or conducted. Although the plaintiff responded that he had no specific recollection of how many investigations he was involved in, the interrogatory did not ask for the total number – it asked for the names, etc. of investigations he conducted, supervised, etc.

Since the plaintiff did not object to this interrogatory, a more complete answer must be provided.

m.    In Defendants' Interrogatory #15, the defendants asked for every Pennsylvania State Police protocol, procedure, rule or regulation drafted by Capt. Ober for the Bureau of Professional Responsibility or

Liquor Control Enforcement.  The plaintiff responded that he may have written dozens of regulations or drafts in the Bureaus indicated.  However, he doesn't list a single one.  The defendants are aware that the plaintiff knows some of those regulations, etc. because he testified about some of them in his deposition.  Plaintiff is in a unique position to know this information, since the various Bureaus do not necessarily possess this information.  The requested information is relevant because defendants believe that plaintiff may have personally drafted some of the procedures and regulations that he now claims are illegal.

n.     In Defendants' Interrogatory #17, defendants requested information on plaintiff's assignments with PEMA.  Although plaintiff responded to this interrogatory, he did not give dates, times, and location of his assignments, nor did he give specific information on what tasks he performed.  This information is relevant to the issue of damages in this case, because the plaintiff claims he lost substantial amounts of money by not being permitted to be re-assigned to PEMA after he voluntarily removed himself from that assignment.

6.     The document responses that were provided were not satisfactory in the following particulars:

a.     The documents were provided in one pile, with no reference on each document to the number of the documents request, nor to the relevance of each document.

9

b.    The only objection made to the documents request was a hand-written "relevancy" objection to producing the tax records of the plaintiff, written on the cover letter of plaintiff's response.  (See Exhibit "C").  The tax records of the plaintiff are relevant to this action, in that they may demonstrate the alleged monetary losses the plaintiff claims he suffered at the hands of the defendants.  This is evidence directly relevant to damages, and must be produced.

Because the only timely objection the plaintiff made to the document request is the "relevancy" objection he made to producing the tax records, the documents requested must be produced.  This is particularly important in the case of documents we requested upon which the defendants will rely at trial to prove liability or damages.

c.    Plaintiff has failed to produce banking records and medical records sought by defendants, releases for these records, which are relevant to the issues of liability and damages.  Since plaintiff did not object to production, and the records are relevant, plaintiff must produce the records, or specifically identify and execute signed releases for all banking and medical records so that defendants may subpoena them.

7.    Defendants seek discovery of the requested information and documents because they relate to the issues of liability or damages.  The information and documents are also directly relevant in many cases to the defenses raised by the defendants.  For these reasons, it is requested that this Motion to Compel be granted.

WHEREFORE, it is respectfully requested that this Honorable Court enter the attached Order compelling the plaintiff to answer Defendants' Interrogatories and Request for Production of Documents in the above-captioned matter.

Respectfully submitted,

JOANNA N. REYNOLDS
Assistant Counsel
Attorney I.D. #37436
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
717--783-5568


SYNDI L. GUIDO
Deputy General Counsel

BARBARA L. CHRISTIE
Chief Counsel
Pennsylvania State Police

Dated:  April 22, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                         :
                    Plaintiff            :        NO.  1:CV-01-0084
                                         :        (Judge Caldwell)
                                         :
            vs.                          :        CIVIL ACTION - LAW
                                         :
PAUL EVANKO, MARK CAMPBELL,              :        JURY TRIAL DEMANDED
THOMAS COURY, JOSEPH WESTCOTT,           :
HAWTHORNE CONLEY,                        :
                    Defendants           :

## CERTIFICATION OF COUNSEL PURSUANT TO FED.R.CIV.PROC., RULE 37 (a)(2)(B)

Pursuant to Fed.R.Civ.Proc., Rule 37(a)(2)(B), the undersigned counsel certifies that after reasonable effort, counsel for Plaintiff and Counsel for Defendants, are unable to resolve the present dispute.  Efforts to resolve this dispute include a letter of April 17, 2002, sent to plaintiff's counsel by defendants' counsel, and an unsuccessful attempt by defendants' counsel on April 19, 2002, to discuss this issue by telephone with plaintiff's counsel.    Therefore, efforts to resolve this dispute have been unsuccessful and, therefore, this dispute is appropriately brought before this court.

Respectfully submitted,

JOANNA N. REYNOLDS
Assistant Counsel
Attorney I.D. #37436
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
(717) 783-5568

Dated:  April 22, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,
                Plaintiff    :      NO. 1: CV-01-0084

                               :      (Judge Caldwell)

     vs.                    :

                               :      CIVIL ACTION - LAW

PAUL EVANKO, MARK        :
CAMPBELL, THOMAS COURY,  :      JURY TRIAL DEMANDED
JOSEPH WESTCOTT,          :
HAWTHORNE CONLEY,      :
              Defendants  :

---

Defendants' Interrogatories Addressed
To Plaintiff Darrell G. Ober

---

To:    Plaintiff Darrell G. Ober
       c/o Don Bailey, Esquire
       4311 N. 6th Street
       Harrisburg, PA 17110

The defendants submit the following interrogatories pursuant to

Fed. R. Civ. P. 33. Plaintiff is requested to respond to the following interrogatories

under oath, within 30 days from the date of service of this request, at the Office of

General Counsel, 333 Market Street, 17th Floor, Harrisburg, PA 17101. These

interrogatories shall be deemed continuing, so as to require supplemental responses.



EXHIBIT
A

Please attach documents to any answer for which documents are available. If they are not available, state where they may be obtained. Please label all documents attached to your response with the number of the interrogatory to which they pertain.

### DEFINITIONS

The following definitions are applicable to and incorporated by reference into each request:

1.    The terms "you" and "your" refer to you and any of your representatives.

2.    The term "person" means any natural person, partnership, corporation or other business entity and all present and former officers, directors, agents, employees, partners, venturers, owners, attorneys and others acting, or purporting to act, on behalf of such natural person, partnership, corporation or other business entity.

3.    The term "representative" means any past or present member, officer, director, employee, attorney, agent, or other person person or entity who has acted or purported to act on any person's behalf.

4.    The term "document" means any original, written, typewritten, handwritten, printed, pictorial, photographic, or recorded material and any tapes or disks and copies or transcripts thereof, now or at any time in your possession,

custody or control; without limiting the generality of the foregoing definition, but for purposes of illustration, "document" includes any letter, memorandum, note, log book, notebook, contract, agreement, work paper, audit paper, spreadsheet, study, report, record, calendar, notice, deposition, minutes of meetings of board of directors or of shareholders of a corporation, job minutes, program, computation, accounting sheet, work pad, diary, legal opinion, message, electronic message, e-mail, voicemail message, videotape, telegram, brochure, computer printout, invoice, billing, graph, projection, financial statement, balance sheet, journal entry, confirmation, photograph, videotape, videograph, tape-recording, audio-recording, blueprint, architectural drawing, advice or other items, whether in manuscript, handwritten, typewritten, printed, electronic, magnetic, or other forms of recordation of any kind, and whether in original or copy form.

5.      The term "communication" includes, but is not limited to, all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, conferences, video-conferences, voice mail messages, interviews, telephone conversations, correspondence, notes, minutes, memoranda, telegrams, telexes, advertisements, electronic messages, e-mail messages, or other forms of oral, pictorial, or written intercourse, however transmitted.

6.      The term "relates to" means constitutes, refers, reflects, concerns, pertains to, or in any way logically or factually connects with the matter described.

7.    The term "officers" means any sworn employee of the Pennsylvania State Police.

8.    The term "date" means the exact day, month and year, if ascertainable or, if not, the best approximation (including the relation of or to other events).

9.    The term "identify" or "identity," when used in reference to a document, means to state the date and author, the type of document (e.g., letter, memorandum, photograph, etc.) or some other means of identifying it and its present location and custodian.  If such document was, but no longer is, in your possession or subject to your control, state what disposition was made of it.

10.    The term "identify" or "identity," when used in referenced to an individual, means to state his or her full name, present address, business address, and home telephone number, present or last known business affiliation and position or business affiliation and position at the time in question.

11.    The term "incident" or occurrence" refers to those events alleged in your complaint which allegedly caused you harm.

12.    The term "amended complaint" refers to the complaint you filed on May 2, 2001.

## RULES OF CONSTRUCTION

In construing these requests:

1.     The singular shall include the plural, and the plural shall include the singular.

2.     A masculine, feminine or neuter pronoun shall not exclude the other genders.

3.     Unless otherwise specified in the request, each request shall extend to all information and documents which have been available to you, in your possession, or subject to your control up to the date of your response to these requests.  This paragraph does not limit your continuing duty to supplement your responses.

## INSTRUCTIONS

1.     All documents produced shall be organized or marked to correspond to the numbered paragraph and subparagraph in response to which it is being produced.  All original and non-identical copies of each responsive document shall be produced.

2.     Any document withheld under a claim of privilege shall be identified by its:

        (a) author;

        (b) addressee;

(c) copy recipient;

(d) type of document;

(e) subject matter;

(f) date;

(g) file source;

(h) type of privilege claimed;

(i) the position and capacity of each person named in (a), (b) or (c) above; and

(j) the facts on which you rely to support the claim of privilege.

## INTERROGATORIES

1.      State whether you have been a party, including but not limited to being a named plaintiff, unnamed plaintiff, defendant, additional defendant, or intervenor, in any other legal cause of action; if your answer is anything other than an unqualified no, set forth with respect to each lawsuit or legal cause of action its caption, court and case number, causes of action alleged, and the status or disposition of the case, including but not limited to each divorce action, each custody petition, and each protection from abuse order and motion.

2.    Describe every item of physical evidence upon which you rely to support each allegation that you make, identify the location and custodian of that evidence, and explain which allegation that evidence supports.

3.     Identify any and all documents that relate to the allegations in your amended complaint filed.

4.    Describe every communication that you had with any person that refers or relates, in any way, to the allegations in your amended complaint.  For each communication, identify the person involved, state the date, location, and subject matter of the communication, describe it in detail, and identify all documents referring to that communication.

5.    State in detail, and identify any and all supporting documents or witnesses relating to, every injury, complaint, illness, disability, or any other type of harm that you claim resulted from any of the incidents or occurrences in your amended complaint.

6.     Have you fully recovered from any of your injuries?  If so, state the approximate date of recovery.  If you have not recovered from any of your injuries, state those injuries from which you have not recovered and explain in what respects you have not fully recovered.

7.     Identify all health care providers, psychologists, psychiatrists, therapists, counselors, vocational consultants, or other professionals who have examined, tested, treated, or consulted with you (including the State Police Member Assistance Program, Peer Contact, or State Employee Assistance Program) regarding any of the injuries you allege to have suffered as a result of any incident or occurrence in your amended complaint and state:

     a.    that person's name and address;

     b.    the date or dates of every visit, consultation, examination, test, or treatment;

     c.    the reason for seeing that person;

     d.    the nature of their services, including any specialities; and

     e.    the amount of any expense incurred, and attach any bills.

8.    State every mental, emotional, neurological, or physical illness, sickness, disease or condition that you had within the five years preceding the incidents and occurrences in your amended complaint.  For each one, state:

    a.    the date and place;

    b.    a detailed description of your symptoms;

    c.    identify any hospital or other health care facility where you were tested, treated, examined, or consulted;

    d.    identify any medical practitioner, health care provider, psychologist, psychiatrist, therapist, counselor, consultant, or other professional who examined, tested, treated, or consulted with you (including the State Police Member Assistance Program, Peer Contact, or State Employee Assistance Program);

    e.    identify any medication that you used or were prescribed, specifying the type, amount, purpose, and frequency;

    f.    the nature and extent of your recovery.

9.    Describe in detail all sums of money, all expenditures, and all losses referred to in your amended complaint or that resulted from any alleged incident or occurrence in that amended complaint, including the date, time, location, and manner of such expenditures or losses.

10.    Describe, in detail, any meetings or communications you had with, by, or from (a) any past or present member of the Pennsylvania State Police, (b) the Pennsylvania State Troopers Association, its lodges, its lawyers, any of its past or present members, or any person associated or previously associated, in any way, with the Pennsylvania State Troopers Association; (c) the Fraternal Order of Police, its lodges, it lawyers, any of its past or present members, or any person associated or previously associated, in any way, with the Fraternal Order of Police; (d) or any other person regarding, referring or related, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, matter, or opinion mentioned in your amended complaint or the lawsuits docketed in the Commonwealth Court of Pennsylvania at No. 35 M.D. 2000 and No. 238 M.D. 2000 and identify every person involved in the meeting or communication as well as the date, time, and place of that meeting or communication.

11.    Describe, in detail, any sums of money or other form of assistance you may have received from (a) any past or present member of the Pennsylvania State Police, (b) the Pennsylvania State Troopers Association, its lodges, its lawyers, any of its past or present members, or any person associated or previously associated, in any way, with the Pennsylvania State Troopers Association; (c) the Fraternal Order of Police, its lodges, it lawyers, any of its past or present members, or any person associated or previously associated, in any way, with the Fraternal Order of Police; (d) or any other person, and identify the person who provided that money or other form of assistance, as well as the date, time, location, and manner in which it was provided.

12.    In paragraph 46 of your amended complaint, you claim to have been harassed, humiliated, threatened, ostracized, subjected to vituperative personal attacks and attacks on your job performance. In paragraph 47 of your amended complaint, you claim to have "suffered innumerable insults, humiliations and embarrassments at the hands of PSP officers." Please identify every person who has ever attacked, harassed, humiliated, threatened, ostracized, shunned, insulted, or embarrassed you as a result of any action or inaction taken by the defendants or their representatives, and describe, in detail, what occurred, the date, time, and location it occurred, and the manner and degree in which you were harmed.

13.   Please state, and describe in detail, every criminal investigation you conducted or assisted with, including the incident number, criminal offenses, the name of the victim or perpetrator, the date of the criminal offenses, and the location of the criminal offenses.

14.   Please state, and describe in detail, every internal affairs investigation you authorized, supervised, conducted, or assisted with, including the case number, the subject of the investigation, and the date of the investigation.

15.    Please state, and describe in detail:  (a) every adjudication you rendered, wrote, or drafted, whether in whole or in part, for the Pennsylvania State Police; and (b) every Pennsylvania State Police protocol, procedure, rule, or regulation you wrote or drafted, in whole or in part, regardless of whether it was ultimately implemented, including but not limited to every protocol, procedure, system, rule, regulation, policy, or practice of the Pennsylvania State Police Bureaus of Professional Responsibility and Liquor Control Enforcement.

16.    Please state, and describe in detail, every (a) promotion you requested, applied for, received, rejected, were refused, or were denied within the past seven years; (b) every educational or training opportunity you requested, applied for, received, rejected, were refused, or were denied during the past seven years; and (c) every assignment you requested, applied for, received, rejected, were refused, or were denied during the past seven years, including the date, time, location, and manner of your request.

17.    Please state, and describe in detail, every assignment, responsibility, duty, or task you have ever performed in connection with the Pennsylvania Emergency Management Agency, including the date, time, and location of that assignment, responsibility, duty, or task was performed, the person who made the assignment, and the reason the assignment, responsibility or task was performed.

18.    Please state, and describe in detail, the basis for your belief that

Joanna Reynolds, Esquire, wrote or drafted, whether in whole or in part, the

Defendants' Brief in Support of Their Motion to Dismiss All Claims, which was

filed in the United States District Court for the Middle District of Pennsylvania at

No. 1:CV-01-0084, on March 16, 2001, as well as your belief that the brief, or a

draft of that brief, was delivered to Syndi Guido, Esquire, on March 9, 2000,

including the date, time, manner and source of that information.

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

By: _____
Syndi L. Guido, Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
(717) 787-9356

Joanna N. Reynolds, Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Dated:  February 27, 2002    Harrisburg, PA  17110

23

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                    :
                    Plaintiff       :       NO.  1: CV-01-0084
                                    :       (Judge Caldwell)
        vs.                         :
                            :       CIVIL ACTION - LAW
PAUL EVANKO, MARK                   :
CAMPBELL, THOMAS COURY,             :       JURY TRIAL DEMANDED
JOSEPH WESTCOTT,                    :
HAWTHORNE CONLEY,                   :
                    Defendants      :

---

**Defendants' Request for Production of Documents**

---

To:    Plaintiff Darrell G. Ober
       c/o Don Bailey, Esquire
       4311 N. 6th Street
       Harrisburg, PA  17110

The defendants submit the following requests for production of documents

pursuant to Fed. R. Civ. P. 34.  Plaintiff is requested to produce the requested documents

for inspection and copying, within 30 days from the date of service of this request, at the

Office of General Counsel, 333 Market Street, 17th Floor, Harrisburg, PA  17101.

Alternatively, the defendants are willing to accept true, correct and complete copies of

the requested documents.  These requests shall be deemed continuing, so as to require supplemental responses.

## DEFINITIONS

The following definitions are applicable to and incorporated by reference into each request:

1.    The terms "you" and "your" refer to you and any of your representatives.

2.    The term "person" means any natural, person, partnership, corporation, or other business entity and all present and former officers, directors, agents, employees, partners, venturers, owners, attorneys and others acting, or purporting to act, on behalf of such natural person, partnership, corporation or other business entity.

3.    The term "representative" means any past or present member, officer, director, employee, attorney, agent, or other person person or entity who has acted or purported to act on any person's behalf.

4.    The term "document" means any original, written, typewritten, handwritten, printed, pictorial, photographic, or recorded material and any tapes or disks and copies or transcripts thereof, now or at any time in your possession, custody or control; without limiting the generality of the foregoing definition, but for purposes of illustration, "document" includes any letter, memorandum, note, log book, notebook, contract, agreement, work paper, audit paper, spreadsheet, study, report, record, calendar,

notice, deposition, minutes of meetings of board of directors or of shareholders of a corporation, job minutes, program, computation, accounting sheet, work pad, diary, legal opinion, message, electronic message, e-mail, voicemail message, videotape, telegram, brochure, computer printout, invoice, billing, graph, projection, financial statement, balance sheet, journal entry, confirmation, photograph, videotape, videograph, tape-recording, audio-recording, blueprint, architectural drawing, advice or other items, whether in manuscript, handwritten, typewritten, printed, electronic, magnetic, or other forms of recordation of any kind, and whether in original or copy form.

5.    The term "communication" includes, but is not limited to, all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, conferences, video-conferences, voice mail messages, interviews, telephone conversations, correspondence, notes, minutes, memoranda, telegrams, telexes, advertisements, electronic messages, e-mail messages, or other forms of oral, pictorial, or written intercourse, however transmitted.

6.    The term "relates to" means constitutes, refers, reflects, concerns, pertains to, or in any way logically or factually connects with the matter described.

7.    The term "officers" means any sworn employee of the Pennsylvania State Police.

8.    The term "incident" or "occurrence" refers to those events alleged in your amended complaint which allegedly caused you harm.

3

9. The term "amended complaint" refers to the complaint you filed on May 2, 2001.

## RULES OF CONSTRUCTION

In construing these requests:

1. The singular shall include the plural, and the plural shall include the singular.

2. A masculine, feminine or neuter pronoun shall not exclude the other genders.

3. Unless otherwise specified in the request, each request shall extend to all information and documents which have been available to you, in your possession, or subject to your control up to the date of your response to these requests. This paragraph does not limit your continuing duty to supplement your responses.

## INSTRUCTIONS

1. All documents produced shall be organized or marked to correspond to the numbered paragraph and subparagraph in response to which it is being produced. All original and non-identical copies of each responsive document shall be produced.

2. Any document withheld under a claim of privilege shall be identified by its:

(a) author;

(b) addressee;

(c) copy recipient;

(d) type of document;

(e) subject matter;

(f) date;

(g) file source;

(h) type of privilege claimed;

(i) the position and capacity of each person named in (a), (b) or (c) above;

and

(j) the facts on which you rely to support the claim of privilege.

## DOCUMENTS TO BE PRODUCED

1.      All documents that you have made, received, possessed, or seen that tend to confirm, support, evidence, prove, disprove, undermine or negate any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned during your deposition on December 5 and 7, 2001, including, but not limited to, the following:

a.      Every promotion, demotion, or transfer you received while a member of the Pennsylvania State Police;

b.      All of your job duties, responsibilities, tasks, assignments, and performance while a member of the Pennsylvania State Police;

c.      Every criminal investigation you conducted or assisted with;

d.      Every internal affairs investigation you authorized, supervised,

conducted or assisted with;

e.      Your education, as well as any training you have had in law

enforcement or investigation;

f.      Every adjudication you rendered, wrote, or drafted, whether in

whole or in part;

g.      Every protocol, procedure, rule, or regulation you wrote or drafted,

in whole or in part, regardless of whether it was ultimately implemented;

h.      Every investigation, whether internal or otherwise, in which you

were interviewed or otherwise provided information to the investigators;

i.      Every honor, award, citation, commendation, or other recognition

you have ever received;

j.      All of your contacts with any official or employee of the Federal

Bureau of Investigation, including but not limited to Special Agent Ralph Kush;

k.      Every contact or communication with Lieutenant Colonel Robert

Hickes;

l.      Every contact or communication with any past or present member or

employee of the Pennsylvania State Police;

m.      Every contact or communication you had with Syndi L. Guido,

Joanna N. Reynolds; Barbara L. Christie; or any other Commonwealth employee

assigned to the Office of General Counsel or the Pennsylvania State Police Office of Chief Counsel;

n.     The background, education, experience, character, reputation, or performance of Lieutenant Colonel Robert Hickes, the named defendants, or any other person mentioned or referenced (whether or not by name) during your deposition;

o.     Any investigation conducted by the Federal Bureau of Investigation;

p.     The duties, responsibilities, tasks, assignments, promotions, demotions, transfers, or performance of Federal Bureau of Investigation Special Agent Ralph Kush;

q.     Every protocol, procedure, system, rule, regulation, policy, or practice of the Pennsylvania State Police Bureau of Professional Responsibility;

r.     Your selection for and assignment to the IIMS project, as well as your responsibilities, tasks, performance, and communications in connection with that project;

s.     Your assignment, responsibilities, duties, tasks, performance, and communications in connection with your assignment as Special Projects Officer to the Region III Area Commander, as well as your belief that the title "Special Projects Officers" carries any negative connotation among members of the Pennsylvania State Police;

t.    Your administrative interview on June 28, 1999;

u.    Any overtime you earned, were paid, were authorized, refused, or denied during the past seven years;

v.    Any salary differential you earned, were paid, were authorized, were refused or were denied during the past seven years;

w.    Every promotion you requested, applied for, received, rejected, were refused, or were denied within the past seven years;

x.    Any educational or training opportunity you requested, applied for, received, rejected, were refused, or were denied during the past seven years;

y.    Every assignment you requested, applied for, received, rejected, were refused, or were denied during the past seven years;

z.    Internal Affairs Investigation 1999-409;

aa.    Your participation in the Centennial Book Committee;

bb.    Any communication by, with, from, or about retired Colonel Philip Conti;

cc.    Your lawsuits docketed in Commonwealth Court at No. 35 M.D. 2000 and No. 238 M.D. 2000;

dd.    Your assignment, responsibilities, duties, tasks, performance, and communications in connection with the positions you have held in the Bureau of Liquor Control Enforcement of the Pennsylvania State Police;

ee.   Your assignments, responsibilities, tasks, performance, and communications in connection with the Pennsylvania Emergency Management Agency, including the number of times you were activated;

ff.   Your belief that any of the defendants or any other past or present member or employee of the Pennsylvania State Police ever considered or discussed your fitness for duty;

gg.   Every bi-weekly meeting of the Commissioner's staff that you have ever attended;

hh.   Every complaint or grievance, whether formal or informal, you have ever made to the defendants or any other member or employee of the Pennsylvania State Police concerning the manner in which you have been treated by the defendants or any other member or employee of the Pennsylvania State Police;

ii.   Your belief that Joanna Reynolds, Esquire, wrote or drafted, whether in whole or in part, the Defendants' Brief in Support of Their Motion to Dismiss All Claims, which was filed in the United States District Court for the Middle District of Pennsylvania at No. 1:CV-01-0084, on March 16, 2001, as well as your belief that the brief, or a draft of that brief, was delivered to Syndi Guido on March 9, 2000;

jj.   Any communication you had with Lieutenant Colonel Thomas Coury in which he stated, or implied, that former Colonel Glenn Walp promoted

9

Hawthorne Conley to captain because he was incompetent as a lieutenant or because he is a minority.

The subjects enumerated above are given by way of illustration and do not limit your responsibility to produce any document that is related to or referenced, in any manner, any subject, fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned during your deposition on December 5 and 7, 2001,

2.    All documents you have made, received, possessed, or seen referring or relating, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned in your amended complaint.

3.    All documents that you have made, received, possessed, or seen that tend to confirm, support, evidence, prove, disprove, undermine or negate any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned in your amended complaint.

4.    All documents written by you or any present or former member or employee of the Pennsylvania State Police, as well as all documents based on communications with, by, from, or between you and any present or former member or employee of the Pennsyvlania State Police, that refer or relate, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition,

speculation, assumption, or opinion mentioned in your amended complaint. This request includes, but is not limited to, all statements, declarations, affidavits, or drafts of statements, declarations, or affidavits, which you may have obtained from State Police employees.

5.    All documents written by, based on, recording, documenting, or confirming, in any fashion (whether in whole or in part), any communication any present or former member or employee of the Pennsylvania State Police that tends to confirm, support, evidence, prove, disprove, undermine or negate any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned in your amended complaint or this lawsuit.

6.    All documents written by, based on, recording, documenting, or confirming, in any fashion (whether in whole or in part), any communication by or between any person or persons, including witnesses, experts, or other professionals, that relate to any allegation, incident, occurrence, deduction, conclusion, supposition, fact, or opinion in your amended complaint or this lawsuit.

7.    Any and all documents you provided to any person, including witnesses or experts, referring or related, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, or opinion mentioned in your amended complaint or your deposition on December 5 and 7, 2001.

11

8.    All documents evidencing any and all medical care, health care, psychiatric care, psychological care, counseling, therapy, treatment, testing, examination, or other professional service you may have received or participated in since January 1996, including the State Police Member Assistance Program, Peer Contact, and State Employees Assistance Program.  Defendants contend that you have access to all records concerning the care described in this paragraph because you can obtain them from the care providers.  Alternatively, please provide defendants with executed releases and the names and address of anyone who has provided medical care, health care, psychiatric care, psychological care, counseling, therapy, treatment, testing, examination, or other professional service you may have received or participated in as of January 1996, so that defendants can subpoena the relevant records.

9.    All receipts and cancelled checks for any payment you made for medical, psychological, or other professional services that you contend relate to this lawsuit or any allegation in your amended complaint.

10.    All income tax forms that you submitted to the Internal Revenue Service for the years 1996 to the present.

11.    All bank statements for all your bank accounts from October 1998 to the present.

12.    All documents relating, in any manner, to your lawsuits docketed in the Commonwealth Court of Pennsylvania at No. 35 M.D. 2000 and No. 238 M.D. 2000.

13. All documents related, in any manner, to any meeting or communication with the Pennsylvania State Troopers Association, its lodges, lawyers, any member of the Pennsylvania State Troopers Association, or any person related, in any way, to the Pennsylvania State Troopers Association, regarding or related, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, matter, or opinion mentioned in your amended complaint or the lawsuits docketed in the Commonwealth Court of Pennsylvania at No. 35 M.D. 2000 and No. 238 M.D. 2000, as well as any document related, in any manner, to any sums of money, or other form of assistance, you may have received from the Pennsylvania State Troopers Association, its lawyers, any of its members, or any person associated, in any way, with the Pennsylvania State Troopers Association.

14. All documents related, in any manner, to any meeting or communication with the Fraternal Order of Police, its lodges, lawyers, any member of the Fraternal Order of Police, or any person related, in any way, to the Fraternal Order of Police, regarding or related, in any way, to any fact, incident, occurrence, allegation, inference, deduction, conclusion, supposition, speculation, assumption, matter, or opinion mentioned in your amended complaint or the lawsuits docketed in the Commonwealth Court of Pennsylvania at No. 35 M.D. 2000 and No. 238 M.D. 2000, as well as any document related, in any manner, to any sums of money, or other form of assistance, you may have

received from the Fraternal Order of Police, its lawyers, any of its members, or any

person associated, in any way, with the Fraternal Order of Police.

15.    All documents relating to any other legal proceeding in which you were a

plaintiff or defendant, including any divorce or custody action.

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

By:    _Syndi L. Guido_

Syndi L. Guido, Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA  17101
(717) 787-9356

Joanna N. Reynolds, Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
(717) 783-5568

Dated:  February 27, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                         :
                Plaintiff          :      NO.  1: CV-01-0084
                           :      (Judge Caldwell)
                           :
     vs.                                 :
                           :      CIVIL ACTION - LAW
PAUL EVANKO, MARK                        :
CAMPBELL, THOMAS COURY,                  :      JURY TRIAL DEMANDED
JOSEPH WESTCOTT,                         :
HAWTHORNE CONLEY,                        :
               Defendants     :

## CERTIFICATE OF SERVICE

    I hereby certify that, on this date, I served an original and two copies of the Defendants' Interrogatories Addressed to Plaintiff Darrell G. Ober and Defendants' Request for Production of Documents upon plaintiff's counsel by First Class Mail, U.S. Postal Service, addressed as follows:

             Don Bailey, Esquire
             4311 North 6th Street
             Harrisburg, PA  17110

             *(Syndi L. Guido)*
             SYNDI L. GUIDO
             DEPUTY GENERAL COUNSEL
             GOVERNOR'S OFFICE OF GENERAL COUNSEL
             333 Market Street, 17th Floor
             Harrisburg, PA  17101
             (717) 783-6563

Dated:  February 27, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,

               Plaintiff    :    NO. 1: CV-01-0084

                         :    (Judge Caldwell)

      vs.                :

                         :    CIVIL ACTION - LAW

PAUL EVANKO, MARK        :

CAMPBELL, THOMAS COURY,   :    JURY TRIAL DEMANDED

JOSEPH WESTCOTT,          :

HAWTHORNE CONLEY,       :

              Defendants  :

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I served an original and two copies of the Defendants' Interrogatories Addressed to Plaintiff Darrell G. Ober and Defendants' Request for Production of Documents upon plaintiff's counsel by First Class Mail, U.S. Postal Service, addressed as follows:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA  17110

SYNDI L. GUIDO
DEPUTY GENERAL COUNSEL
GOVERNOR'S OFFICE OF GENERAL COUNSEL
333 Market Street, 17th Floor
Harrisburg, PA  17101
(717) 783-6563

Dated:  February 27, 2002

## DEFENDANT'S INTERROGATORIES

To the best of plaintiff's recollection, the below listed are the suits he has been involved in.

1.   Plaintiff in a personal injury suit filed by Attorney Gary Lightman for injuries sustained in an on-duty motor vehicle crash. No recollection of the case number, etc., but believe the crash occurred in July 1987. Case was disposed of by offer of settlement. No longer have a copy of the suit.

2.   Plaintiff filed a protection of abuse order against ex-wife in March 1989. No longer have a copy of the order. No PFA has ever been filed against plaintiff.

3.   Plaintiff was named as a defendant in a divorce action filed by ex-wife in 1989. It was not contested. Divorce granted in 1991.

4.   Primary physical custody of minor child was (and is) with plaintiff. Ex-wife does enjoy and exercise visitation rights.



EXHIBIT
B

## DEFENDANT'S INTERROGATORIES

2.    Items of physical evidence to support each allegation plaintiff will be relying on to support his allegations includes, but is not limited to:

Plaintiffs Complaint
Plaintiffs Amended Complaint
Plaintiffs Request for Documents submitted during Discovery.
Videos and depositions
Plaintiff's list of documents to support allegations: see attached list of documents.
It is important to note that plaintiff's still working on this list and it may not be complete.

OBJECTION: This request is burdensome and is overbroad.  Defendants have made a document request and it is being responded to.   F.R. Civ. P33(a) and L.R 33.3 are violated by this interrogatory as are others, particularly 3, 4, 5, 7, 10, 11, 13, 15, 16, and 17.



## DEFENDANT'S INTERROGATORIES

3.   Documents related to the allegations in the amended complaint include, but are not limited to those requested from defendants through discovery.


See attached plaintiff's production of document response to defendant's request. Plaintiff objects to this interrogatory as overbroad and burdensome since there is significant information, including the relevance and of course the materiality, of each document. However, to accommodate the defendants, plaintiff will submit to a deposition limited strictly to the identity and relevance of each document if defendants so desire.



## DEFENDANT'S INTERROGATORIES

4.    Plaintiff has no way of specifically recalling every communication he might have had with every person during the past year since the amended complaint was filed. However, plaintiff does recall having communication with at least the following individuals:

- Marie Marshall – Shortly after discovering the fraudulent representation in the defendant's motion to dismiss, plaintiff telephoned Ms. Marshall and made an inquiry re: the AR 1-1.02 (c) historical file.  Ms. Marshall checked and called plaintiff back and said that file had not yet been given to her to file.

- Major R. Dane Merryman – Plaintiff telephoned Major Merryman and requested to review the historical file for AR Change No.866.  After locating the file, Major Merryman telephoned plaintiff and stated the file was open for my review at my convenience.

Plaintiff objects to this interrogatory as overbroad, excessively general, oppressive and burdensome.

# DEFENDANT'S INTERROGATORIES

5.     State in detail, and identify any and all supporting documents or witnesses
       relating to every injury, complaint, illness, disability, or any other type of
       harm that you claim resulted from any of the incidents or occurrences in
       amended complaint.

Documents include, but are not limited to plaintiff's complaint, amended
complaint and plaintiff's request for documents presented during discovery.

Plaintiff has no specific recollection of each and every time and cannot produce
examples of every instance when the actions of the defendants have harmed him
during the past three years.  However, plaintiff does cite at least the following
examples of the types of injuries received at the hands of the defendants:

Punitive transfers
Loss of multiple promotional opportunities to rank of Major
Loss and denial of training opportunities
Loss of career advancement.
Loss of special assignment opportunities
Loss of pay from denied promotions, overtime and Out of Class assignments.
Loss of opportunity to interact with organizational peer; e.g. plaintiff has not been
permitted to attend Executive Staff meetings, represent his Bureau at official
State Police functions (assigned to subordinate officer)
Harassment
Retaliation
Stripped of issued equipment
Costs of litigation.
Humiliation and embarrassment
Subjected to intense investigations devoid of any viable investigative purpose as
a way to notify plaintiffs' colleagues that he was an undesirable and also as a
way to inflict pain, humiliation and fear.
Forced reimbursement for petty expenditures
Department wide announcement, published through Official Personnel Order
signed by Evanko, that plaintiff was being punished through a General Transfer
over 200 miles from his wife, children and his life
Department wide announcement, through Official Personnel Order signed by
Evanko, that plaintiff was demotion to Lieutenant's position
Unjustified and unfounded "fishing expedition" into plaintiff personal hobby of
collecting State Police historical memorabilia and the damage suffered to
plaintiff's character and reputation as a result of such unwarranted intrusion
It is difficult to describe the humiliation and fear that accompanies the completely
unjustified inquiry by a top State Police Official into plaintiff's fitness for duty

As recently as March 4, 2002, while plaintiff was refueling state vehicle at the
Department Headquarters, Lieutenant Wesley Thurston, accompanied by
Sergeant Troxell, upon seeing plaintiff said, "Hello Captain.  Is it okay to be seen
with you?"



## DEFENDANT'S INTERROGATORIES

On many, many occasions the danger of "being seen with me" has been brought to plaintiff's attention by co-workers. For example, many times Captain McDonald, Ms. Alice Belmont, Sergeant Sweeting, Lieutenant Martin, or Corporal Karbowski, to name a few, of the Bureau of Liquor Control Enforcement have made statements re: being seen with plaintiff at Department Headquarters and the negative consequences that could attach.

At times, plaintiff's e-mails and telephone messages to peers go unanswered or are returned with obvious "guarded" responses. Until being harassed by Evanko, plaintiff never had this problem or reaction from peers.

Plaintiff was subjected to confrontation over his handling of the FBI investigation by the Commanding Officer, Area III at the State Police Academy during an IT Steering Committee.

During a technology briefing at the Strategic Development Division, Major's Hackenberg and newly promoted Major Pudliner were talking to plaintiff in the hallway when Evanko came out of the conference room. Hackenberg made a remark about being seen talking to plaintiff. Pudliner said, "What about me? Good thing Evanko didn't see me talking to him last week (meaning before being offered a promotion)."

These are but a few of examples of the harm suffered by plaintiff at the hands of the defendants.

This interrogatory is objected to on the grounds that it is overbroad, oppressive, and burdensome. It is clearly violative of F.R. Civ. P. 33 and L.R. 33.3. Plaintiff responded in detail to this interrogatory in his deposition. He supplements that response here.



## DEFENDANT'S INTERROGATORIES

6. Have you fully recovered from any of your injuries? If so, state the approximate date of recovery. If you have not recovered from any of your injuries, state those injuries from which you have not recovered and explain in what respects you have not fully recovered.

Plaintiff has not recovered from any of the stress-induced injuries caused by the defendants beginning with the investigation which began on June 28, 1999 and the pain, humiliation and suffering continues to this day.

Plaintiff continues to deal with the emotional effects of the actions of the defendants and the pervasively embarrassing and depressing impact the defendants have had on plaintiff's future and his feelings. Plaintiff lives everyday with the fear that a sword of Damocles can fall at any moment. When plaintiff sees his children and walks and talks with his wife, the pain of the damage and truncated career and the defendants injuries inflicted on plaintiff constantly haunts him – like living in the shadow of helplessness, pain and frustration that never ends and never leaves his side, that walks with him, that sleeps with him, that shares every thought making it sad and injurious presence known at every turn.

# DEFENDANT'S INTERROGATORIES

7.    Identify all health care providers etc.

As a result of the defendant's actions, plaintiff has sought the support at least the following health care providers:

- Lieutenant Marcenia M. Robinson, State Police Member Assistance Program (unknown dates, believed to have been three telephone contacts).

- Corporal Govan A. Martin, State Police Member Assistance Program. Unknown date, Corporal Martin referred plaintiff to Dr. David Rodgers.

- Dr. David Rodgers, unknown dates.  Plaintiff believes he visited Dr. Rogers on three or four occasions.

- Dr. Edward S. Beck; Professional Counselor, Susquehanna Institute, 2405 Linglestown Road, Linglestown, Pa. 17110 (717) 545-5500. Plaintiff had one diagnostic appointment.

- Dr. Denise Harr, Good Hope Family Physicians, 1830 Good Hope Road, Enola, Pa 17025. Telephone (717) 732-8877.  Plaintiff sought Dr. Harr medical expertise on several occasions for stress related issues.

- Dr. Chris Turnpaugh, D.C., D.A.C.N.B.; Chiropractic Neurologist, 6103 Carlisle Pike, Mechanicsburg, Pa 17055, Telephone (717) 795-9566. Plaintiff sought Dr. Turnpaugh's expertise on numerous occasions for stress related issues.

- Dr. Michael Gawlas, Good Hope Family Physicians, 1830 Good Hope Road, Enola, Pa 17025. Telephone (717) 732-8877.  Plaintiff sought Dr. Gawlas medical expertise on for stress related issues.

- Dr. Dennis Red, referral for jaw pain.

- Karen Red, P.T., Clinical Director, Physiotherapy Associates, Karkuff, Leninton and Hilbolt Physical Therapy, Inc. Telephone (717) 691-8272.

- Dale Hilbolt, Physical Therapist, Physiotherapy Associates, Karkuff, Leninton and Hilbolt Physical Therapy, Inc. Telephone (717) 691-8272.

Specifics related to health care provided are available from the providers.

OBJECTION: This interrogatory is overbroad, violative of F.R. Civ. P. 33 and L.R. 33.3, burdensome and oppressive.  It is objected to.



**DEFENDANT'S INTERROGATORIES**

8.     State every mental, emotional, neurological, or physical illness, sickness, disease or condition that you had within the five years preceding the incidents and occurrences in your amended complaint.

OBJECTION: Plaintiff objects to this interrogatory as overboard, violative of F.R. Civ. P. 33 and L.R. 33.3. Plaintiff will nonetheless try to gather as much information as possible. Assuming a time frame of 1997-2001 plaintiff can only comment that prior to the Spring or Summer of 1999 plaintiffs career was productive and his future bright. Once his world began to crash about him, his emotional pain and suffering began to grow. This is a good issue for trial and appeal if necessary in light of the AR 1-1.102 (c) threat.



**DEFENDANT'S INTERROGATORIES**

9.      Describe in detail all sums of money, all expenditures, and all losses
        referred to in your amended complaint or that resulted from any alleged
        incident or occurrence in that amended complaint, including the date and
        time, location, and manner if such expenditures or losses.

- Attached are copies of attorney bills to date.
- Attached is a copy of a framing bill plaintiff was forced to pay. ✓
- Attached is a projection of monies lost as a result of promotion denied.
- Plaintiff cannot provide the exact amount of any overtime lost due to being
  removed from PEMA. An estimate of this amount could be obtained from
  reviewing the PEMA associated overtime records of Captain Charles Skurkis
  and Captain Michael Nagurny.
- To date, plaintiff estimates his lost of pay incurred through continued denial of
  Acting Director, Bureau of Liquor Control Enforcement, opportunities to be in
  excess of $500.00.
- As even some of defendants' witnesses have testified, plaintiff had risen
  quickly in the PSP. Plaintiff was on a fast career track. Plaintiff is now the 4th
  or 5th most senior Captain in the State Police. Plaintiffs lost promotional
  opportunities, lost overtime, and other benefits like those mentioned above,
  involve thousands of dollars.

## DEFENDANT'S INTERROGATORIES

10. Describe in detail every communication (a) past, present members of the State Police; (b) PSTA; (c) FOP; (d) any other person.

(a) To best of Plaintiff's recollection, plaintiff has had discussions with the following PSP members re: this lawsuit:

- Retired Major William Hunter.
- Retired Colonel Frank McKetta
- Retired Major Richard D.A. Morris
- Lieutenant Robert Queen
- Sergeant Al Roy

(b) To the best of Plaintiff's recollection, plaintiff has discussed this lawsuit with the following members of the PSTA:

- Past President Retired Corporal Paul McCommons
- Past President Lou Lazarro
- President Bruce Edwards
- Gary Lightman, Attorney
- Sean Welby, Attorney

(c) To the best of plaintiff's recollection, plaintiff has discussed this lawsuit with the following members of the FOP:

- State FOP President Mike Lutz
- Lodge 41 President Mike Ruda
- National Trustee

(d) "...any other person..." is overly broad and impossible for plaintiff to respond.

OBJECTION: This interrogatory is burdensome, overbroad, and oppressive. Plaintiff responds above, as best he can, but does not waive his objections. He does not have an instant recall of the conversations surrounding the Commonwealth Court suits. Their interrogatory is further objected to on the grounds that it violates attorney client privilege and will not yield discoverable information.

## DEFENDANT'S INTERROGATORIES

11.    Plaintiff has received sums of money for assistance from the following associations:

- Keystone Lodge 41 - $400.00

- Pennsylvania State Troopers Association - $2,000.00

- Pennsylvania State Fraternal Order of Police - $2,000.00

- American Association of State Troopers - $500.00

- National Police Defense Foundation - $1,000.00


The above monies have been used to defray discovery costs.

OBJECTION: This interrogatory is objected to on the grounds that it is oppressive and will not yield useful discoverable information.  Notably the taxpayers are footing the bill for the defendants, not one of whom is an official, as opposed to being an individual defendant.  The 11th amendment bars damage claims to plaintiffs but allows payments of attorney's fees and costs for government officials.  And is this fair?

### DEFENDANT'S INTERROGATORIES

12. Identify every person who has ever attacked harassed, etc. plaintiff as a result of the actions taken by defendants.

Plaintiff has been made to suffer at the hands of defendants through a variety of mechanisms, which includes but is not limited to the following:

- Department wide humiliation suffered by way of "penalty box" transfer to Washington.
- Demotion to Lieutenant's position.
- Humiliation of not being allowed serving in the Acting Bureau Directors role.
- Not being permitted to adjudicate Huston Williams investigation.
- For a three month period having to answer to a peer; another Captain. Received assignments from a peer; given the work to perform of a Lieutenant to include a Supervisory Inquiry on Corporal Karbowski.
- Being subordinate in the chain of command to a Lieutenant who was named as the Acting Division Director of Administration.
- Being removed from PEMA.
- Being removed from the Centennial Book Committee

See response to interrogatories 5 and 6. Plaintiff, as outlined in the complaint, was embarrassed and humiliated by the defendants (see complaint).



**DEFENDANT'S INTERROGATORIES**

13.   State, in detail, every criminal investigation plaintiff ever conducted,
      including incident number, location, etc.

Having been a police officer for over 22 years, there is no possible way plaintiff
could account for the information requested; nor does the plaintiff have access to
this type of data; if it exists.

Plaintiff's response then have to be many because as the Director, Internal
Affairs, and also including the rest of my career there are numerous
investigations that did, or might have, or had, criminal implications. Further,
plaintiff objects to the relevancy of this information particularly since the word, or
phrase, "ever conducted" is not conducive to any clear meaning or application.

## DEFENDANT'S INTERROGATORIES

14.    State in detail every internal affairs investigation plaintiff authorized, supervised, conducted or assisted with including case number, etc.

Plaintiff has no specific recollections or records that would indicate how many internal affairs investigations he authorized, supervised or assisted.

To the best of plaintiff's recollection, he does recall having been assigned to investigative at least the following investigations:

- Approximately 1988, accidental shooting at Troop G, Bedford.  Subject was Trooper Gerald Polka.
- Approximately 1991, traffic violation (possible unregistered vehicle involved in an off duty crash); Subject Sergeant Byron Lewis.
- Approximately 1997, Administrative Inquiry; Subject Sergeant Thomas Bictka.
- March 2001, Supervisory Inquiry, Subject Corporal Denise Karbowski.



## DEFENDANT'S INTERROGATORIES

15.    State in detail every (a) adjudication plaintiff ever wrote:

Plaintiff is able to recall writing adjudication's for at least the following subjects:

Sergeant Thomas Bickta
Sergeant Pearl Sweeting
Corporal Andrew Skelton

(b) every Pa State Police protocol, procedure, rule or regulation wrote or drafted of BPR and LCE.

This request would encompass the past nine years. Plaintiff estimates he may have written dozens of such regulations or drafts in the past nine years. The respective Bureaus may have this information.

## DEFENDANT'S INTERROGATORIES

16.    State (a) every promotion received in past seven years:

Plaintiff has not received a promotion in the past seven years.

Plaintiff has been denied at least three promotions in the past two years; Director, BPR, LCE and Legislative Affairs Office.

(b)    Every educational opportunity requested or denied, etc.

Plaintiff does not have access to these records only to the extent that training was approved then denied to the National Alcohol Symposium in June 2000 after plaintiff was demoted to LCE.

(c)    Every assignment requested, applied for, rejected in the past seven years.

Plaintiff has been denied assignment to PEMA on two occasions; removed from the Centennial Book Committee assignment as a clearly vindictive act and I was removed from the IIMS Project prematurely as a way to humiliate and injure me.



## DEFENDANT'S INTERROGATORIES

17.    State every assignment, responsibility, duty or task ever preformed in connection with PEMA.

For many years, plaintiff was assigned to PEMA as an Emergency Preparedness Officer and served as a Team Leader. When activated, plaintiff supervised all functions of the Team.  To the best of plaintiff's recollection, activation's have included such events as snow emergencies, industrial explosions, floods, exercises, etc.



DEFENDANT'S INTERROGATORIES

18.    State basis for belief that Joanna Reynolds wrote or drafted a brief that
was delivered to Syndi Guido on March 9, 2000.

Plaintiff has no direct knowledge that Reynolds wrote the aforementioned
draft. His Attorney, Don Bailey, supplied that information to plaintiff.
Bailey recounts a conversation with Reynolds where she explained away
the lengthy period of time between when a brief was dated (or filed?) and
when it was delivered to Bailey. Bailey had called Reynolds to request
more time to respond and she told him she had completed the draft and
sent it to Guido, I believe, on the 5th or 6th (or 9th) of March. Bailey called
Guido who he described as becoming very upset and raising her voice
loudly or being unpleasant (an understatement) but most important, Guido
said that she had done the brief all by herself and that she had
"investigated" it herself. Our research indicated that the subsection (c) to
AR 1-1.02 was manipulated intentionally to create misinformation for the
court and we've narrowed it down to where it's quite clear that the lawyers
for the defendants had to have been in on it. There is no other believable
explanation.

## VERIFICATION

I, Darrell G. Ober, hereby state under penalty of perjury that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information and belief.

DATE: _3/29/02_

Darrell G. Ober

## *Don Bailey, Esq.*

**ATTORNEY AT LAW**

GREENSBURG OFFICE:
114 S. MAIN STREET
GREENSBURG, PA 15601
(724) 836-5334 FAX (724) 836-2909

4311 N. 6TH STREET
HARRISBURG, PA 17110
(717) 221-9500 FAX (717) 221-9600

OF COUNSEL:
SAMUEL C. STRETTON
301 S. HIGH STREET
WEST CHESTER, PA 19381-3231
(610) 696-4243

April 1, 2002

Via Fax - 772-2883
        787-1448

Pennsylvania State Police
Syndi L. Guido Esq.
Barbara Christi, Esq.
1800 Elmerton Avenue
Harrisburg, Pa 17110

Dear Barbara:

    Enclosed please find:

1.) Answers to Interrogatories.

2.) Response to document request. (I also have performance evaluations which you should have).

3.) List of witnesses to finish up with and appropriate notices ie.

        A.) Finish Mr. Coury
        B.) Mr. McAreavy
        C.) Mary Bungo
        D.) Mary Wooloy

    I should not be too long with anyone. I also need the "smeared" documents to be readily available.

Sincerely,

Don Bailey

EXHIBIT
C

P.S. Darrell will not be producing his tax records there is no relevancy here thank you



## PENNSYLVANIA STATE POLICE
### OFFICE OF CHIEF COUNSEL
1800 ELMERTON AVENUE
HARRISBURG, PA 17110
PHONE: 717-783-5568
FAX: 717-772-2883



Governor's Office of
General Counsel

April 17, 2002

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA 17110

Re:    Discovery – <u>Ober v. Evanko</u>

Dear Mr. Bailey:

Please be advised that pursuant to Federal Rule of Civil Procedure 37, we are prepared to move to compel disclosure of the documents and information we have sought. However, in an attempt to resolve this dispute, I am proposing that you provide the following documents and information, which will satisfy our discovery requests, by Friday, April 19, 2002. If we don't receive the requested documents and information on the following interrogatories and request for documents by Friday at 2:00 p.m., we will be forced to file a Motion to Compel on that date. The numbers listed below correspond to the number of the interrogatory:

2.    In this interrogatory we asked only for the physical evidence supporting the allegations the plaintiff has made. This request is not burdensome or overbroad and must be produced eventually anyway by the plaintiff before trial in the final pre-trial statement. Therefore, we insist that you describe the physical evidence which you will utilize at trial to support the plaintiff's allegations.

3.    This request asked for documents relating to the plaintiff's allegations. Your suggestion of allowing us to re-depose plaintiff regarding the identity and relevance of the produced documents is unacceptable. You have an obligation under the Rules of Civil Procedure to identify each document and explain its relevancy to your case. Please do so.

4.    This interrogatory asked the plaintiff to describe every communication the plaintiff had which relates to his amended complaint. You objected to this as overbroad and burdensome. We will accept an answer to this interrogatory limited to communications that the plaintiff had with anyone that relates to the allegations in his amended complaint that you intend to rely on or introduce at trial.

**EXHIBIT**
**D**

Mr. Bailey
Page 2
April 17, 2002

     5.     This interrogatory requests supporting documents and witnesses relating to every injury, etc. you claim resulted from any of the incidents noted in the amended complaints.  You objected to this as overbroad, oppressive and burdensome.  We are entitled to receive this information because the plaintiff's claim for damages will be based on this.  Therefore, we have the right to obtain information on the plaintiff's alleged injuries and the documents and witnesses he intends to rely on to prove his injuries and damages.

     7.     This interrogatory requests information on health care providers and other professionals regarding the alleged injuries the plaintiff has suffered.  Although I assume you provided the names of all providers, you did not provide the addresses of some of them, nor did you list the dates of the plaintiff's visits with them, the reasons the plaintiff saw them, the nature of their specialties, or the expenses and bills associated with each.

     Although we intend to subpoena the records of each of these health-care providers, it will be difficult to subpoena the records without the providers addresses, and the dates the plaintiff saw them.  You are obligated to produce such information, because it directly relates to the damages alleged.

     8.     This interrogatory asked for pre-existing mental and physical illnesses that preceded the events noted in the amended complaint.  Although you objected to this interrogatory as overbroad, you indicated you would nonetheless attempt to gather information on it.  To date, we have received no such information.  The information requested is directly relevant to the issue of damages.

     9.     This interrogatory asked for expenditure and losses referred to in the plaintiff's amended complaint.  Although you refer to "attachments", the pile of documents produced have no identifiers on them so that we can connect them to the plaintiff's answer of this interrogatory.  Moreoever, there are no copies of attorney bills or a projection of monies lost as a result of a denied promotion attached to the interrogatory answers or to the pile of documents produced.  (i.e., even though you say those documents are attached, we did **not** receive them).  Finally, you do not indicate the date, time, location, or manner of all of the plaintiff's alleged losses.  This request is directly relevant to the issue of damages – since you have not objected to the interrogatory, you must produce the information requested.

Mr. Bailey
Page 3
April 17, 2002

10.    This interrogatory asked for meetings and communications the plaintiff had with persons other than the named groups relating to his lawsuits.  This group would include civilian employees of the State Police and it is apparent from the documents that the plaintiff has produced that he has discussed his lawsuits with some civilian employees of the PSP.  The defendants want that information, as well as more detailed information on his discussions regarding the persons named in his answer to this interrogatory.  (i.e., date, time and place of meeting and what precisely was discussed).  The plaintiff obviously does not have to produce attorney/client protected material.  However, since he has produced lists of names of people he contacted in the three named groups, he should also be able to produce names of people he contacted who are civilian employees of the PSP.

11.    This interrogatory relates to money or assistance the plaintiff received from the PSTA and its lodges.  Although you identified the group who provided the plaintiff with that information and the amounts of money he received, you did not identify persons who provided the money, nor did you identify the date, time, location and manner in which it was provided.  This information is directly relevant to your client's claim for attorney's fees in this action.

12.    This interrogatory asked for information on plaintiff's allegations that he was harassed, humiliated, etc.  Although he gave specific instances of alleged harassment, he did not give details of what occurred, and the date, time, and location at which it occurred, or the manner and degree in which he was harassed.  Since no objection was made to this interrogatory in the time provided, you must provide a more complete answer.

13.    This interrogatory requests information from the plaintiff on every criminal investigation he's conducted in his career.  Although you objected on the basis of relevancy, the defendants submit this request is relevant since one of the issues in this lawsuit is whether the plaintiff conducted himself appropriately in his role in assisting the FBI in their criminal investigation.  Knowledge of his alleged expertise in conducting criminal investigations is therefore essential to the defendants' case.  Moreover, Capt. Ober testified about conducting criminal investigations when he was deposed.  Surely, he remembers or can recount some of those investigations and his role in them.

15.    This interrogatory requests protocols, regulations, etc., that Capt. Ober drafted for BPR and LCE.  The plaintiff is the person who possesses the unique knowledge of whether he drafted a particular

Mr. Bailey
Page 4
April 17, 2002

regulation.   The various Bureaus of the State Police do not have that information.   The plaintiff testified in his deposition that he personally drafted several policies and regulations for BPR.  He should be able to at least list those.  Since this interrogatory was not objected to, it must be answered.

17.    This interrogatory requests information on Capt. Ober's assignments with PEMA.  Although the plaintiff listed types of activations, he did not specify if he personally was involved with those activations, nor did he include any specifics relating to his assignments.  This interrogatory relates to the issue of damages, since Capt. Ober claims he lost money as a result of not being assigned to PEMA duties.  Since this interrogatory was not objected to, a more complete answer must be provided.

With regard to the defendants' request for production of documents, you have not identified what the documents produced referred to, which violates the instructions in the defendants' request for production of documents and the Rules of Civil Procedure.   In other words, you did not answer the document request appropriately, i.e. you did not identify the request to which each document refers.  Rather, you simply supplied us with a pile of documents, leaving us to sort it out – this is an unacceptable and inappropriate response under the Rules.

Although you suggested that we depose the plaintiff regarding the documents, that alternative is not acceptable to us – you have an obligation under the Rules of Civil Procedure to answer the request for documents appropriately, as we did. (i.e., you must explain which documents produced refer to which request for production of documents).

I note that you filed no objection to the documents requested, other than a hand written "relevancy" objection to producing Capt. Ober's tax records.  Please be advised that the plaintiff's tax records are relevant, in that they may demonstrate any losses he suffered over the relevant time period, particularly since he claims losses to income, etc.   This information directly relates to the damages issue, and must be produced.

Moreover, we requested medical releases to obtain medical, psychological and psychiatric treatment records regarding the plaintiff.   Since your client has not

Mr. Bailey
Page 5
April 17, 2002

provided specific case records, we will require executed releases and addresses for all care providers related to the damages your client alleges he suffered.

Finally, it appears that you have not produced many documents we requested, including bank statements. Inasmuch as you did not timely object to the production of these documents, you must produce them. This is particularly important in the case of documents we requested upon which you will rely at trial to prove liability or damages in this case.

Very truly yours,

Joanna N. Reynolds
Assistant Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                          :
                         Plaintiff        :        NO.  1: CV-01-0084
                                          :        (Judge Caldwell)
            vs.                           :
                                          :        CIVIL ACTION - LAW
PAUL EVANKO, MARK                         :
CAMPBELL, THOMAS COURY,                   :        JURY TRIAL DEMANDED
JOSEPH WESTCOTT,                          :
HAWTHORNE CONLEY,                         :
                         Defendants  :

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of Defendants' Motion to Compel

Answers to Defendant's Interrogatories and Request for Production of Documents was

served on plaintiff's counsel, by first-class mail, addressed as follows:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA 17110

Joanna N. Reynolds
Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110

Dated:    April 22, 2002