

JUDGE'S COPY

FILED
HARRISBURG, PA

MAY 2 0 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,
           Plaintiff

    vs.

PAUL EVANKO, MARK CAMPBELL,
THOMAS COURY, JOSEPH WESTCOTT,
HAWTHORNE CONLEY,
           Defendants

:
:
:
:
:
:
:
:
:
:

NO. 1: CV-01-0084
(Judge Caldwell)

CIVIL ACTION - LAW

JURY TRIAL DEMANDED

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

---

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

SYNDI L. GUIDO
Deputy General Counsel

BARBARA L. CHRISTIE
Chief Counsel, Pennsylvania State Police

JOANNA N. REYNOLDS
Assistant Counsel, Pennsylvania State Police

Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 783-6563
(Counsel for Defendants)

Dated: May 20, 2002

## PROCEDURAL HISTORY STATEMENT OF THE CASE

The bulk of Ober's claims were dismissed by this Court in an order and opinion dated August 13, 2001. Three contentions remain: (1) that the defendants' retaliated against Ober for exercising his First Amendment rights; (2) that Ober was unlawfully seized in violation of his Fourth Amendment rights; and (3) that the defendants conspired with each other to violate Ober's First and Fourth Amendment rights. On May 6, 2002, defendants filed a motion for summary judgment, along with a statement of the material facts that are not in dispute. That statement is incorporated herein by reference.[1]

## ARGUMENT

The defendants are entitled to summary judgment because there is no evidence to support Ober's claims. At this stage in the proceedings, Ober cannot sit back and rest on the conclusory allegations in his complaint. Rather, Ober must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986); Fed.R.Civ.P. 56(e).

A factual dispute is not material unless it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Likewise, a factual dispute is not "genuine," unless there is sufficient evidence to allow a reasonable factfinder to return a verdict for the non-moving party. *Id.* at 249. It is not enough for Ober to simply replace the "conclusory allegations of [his] complaint . . . with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). "[A]mbiguous allegations and

---

[1] In footnote 2 of the Statement of Material Facts, defendants indicated an intent to move to strike several depositions based on irregularities they had just discovered. Although the defendants have decided not to file a formal motion to strike, they believe the Court needs to be apprised of their findings since it appears that in many of the depositions, the administration of the oath was defective for the reasons set forth in Appendix A.

vague inferences . . . cannot defeat summary judgment." *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 254 (3d Cir. 1999); *see also Liotta v. Borough of Springdale*, 985 F.2d 119, 122 (3d Cir. 1993) (a "belief," not based on personal knowledge, is mere speculation and therefore insufficient to withstand summary judgment). If Ober's evidence is "merely colorable" or is "not significantly probative," defendants' motion should be granted. *See Anderson v. Liberty*, 477 U.S. at 249.

Defendants are entitled to summary judgment unless Ober can show evidence establishing each essential element he will have to prove at trial. *See In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002) (citations omitted) ("Only evidence sufficient to convince a reasonable fact finder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage.") It is impossible for Ober to make the required showing.

## I.   PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS RETALIATED AGAINST HIM FOR EXERCISING HIS FIRST AMENDMENT RIGHTS.

The Supreme Court has established the following analysis for First Amendment retaliation claims: The plaintiff must show (1) that he engaged in activity protected by the First Amendment, and (2) that the protected activity was a substantial or motivating factor for the alleged retaliation. If the plaintiff can establish that his protected activity was a substantial or motivating factor, the defendants may still defeat the plaintiff's claims by showing that they would have taken the same action in the absence of the protected conduct. *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

In this case, Ober cannot even establish the first prong – that he engaged in protected speech. The Court's inquiry on this first step "requires balancing the public employee's interests in commenting on matters of public concern against the public employer's interests in efficiency." *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1270 (3d Cir. 1994).

Whether speech is a matter of public concern "involves an examination of the content, form, and context of a given statement as revealed by the whole record." *Id.* at 1271. Based on the undisputed material facts, Ober did not engage in protected activity.

In late September 1998, the FBI had information that an enlisted member of the Pennsylvania State Police had allegedly received pay-offs for assisting state police applicants to obtain cadet positions. FBI Special Agent Kush called State Police headquarters and asked for Internal Affairs; he was transferred to Captain Ober. Kush asked Ober to assist him in obtaining information about the cadet selection process.

On October 5, 1998, Ober decided not to disclose this matter to his direct supervisor, Major Conley, who was then the Director of the Bureau of Professional Responsibility. Instead, Ober went completely outside his own chain of command and went to Lieutenant Colonel Hickes with the information. Ober told Hickes that the FBI had expressly directed him to maintain absolute confidentiality. That was untrue. The FBI never asked Ober to keep the matter a secret; in fact, the FBI had already talked to several other members of the state police about the very same investigation. Ober testified that he felt the matter should be kept confidential because the FBI had come to him with the information, rather than the Commissioner or his Deputies. However, Ober conceded that the FBI never explicitly asked him not to disclose the information to his Bureau Director; according to Ober, the FBI was not in a position to give him such a directive.

Further, there is no evidence that the FBI ever believed the Commissioner, his deputies, or the Governor's Office were involved in any illegal activity. Rather, Ober was the one who made that suggestion, based on a wiretap tape he heard several weeks *after* he decided to tell Lieutenant Colonel Hickes, rather than Major Conley, about the investigation. Moreover, Ober

leapt to that conclusion based on gratuitous statements made by Dennis Jay Bridge, the person

who was attempting to buy his way into the State Police. Ober had no reason to believe Bridge

had any accurate information about Pennsylvania State Police hiring procedures.[2] Ober's

decision to ignore state police regulations and report the matter to Lieutenant Colonel Hickes

was a matter of personal, rather than public, concern. To this day, it remains unclear why Ober

was concerned with keeping the matter from Major Conley at all.

Moreover, the Court must balance Ober's personal interest in bypassing his supervisor

with the government's interests. As explained in *Swineford,* an employer's interests may

outweigh the plaintiff's interest in commenting on matters of public concern where the speech:

> "(1)'impair[ed] discipline by superiors'; (2) 'impair[ed] . . . harmony among co-
> workers'; (3) 'ha[d] a detrimental impact on close working relationships for
> which personal loyalty and confidence are necessary'; (4) 'impede[d] the
> performance of the speaker's duties'; or (5) 'interfere[d] with the regular
> operation of the enterprise.'"

*Id.* (citing *Versarge v. Clinton,* 984 F.2d 1359, 1366 (3d Cir. 1993), quoting *Rankin v.*

*McPherson*, 483 U.S. 378, 388 (1987)). An additional consideration is "whether [the plaintiff]

knowingly or recklessly made false statements and whether [the] speech was motivated by

animus." *Id.*

Many of the interests outlined in *Swineford* are implicated in this case. State Police

regulations required Ober, as the Director of the Internal Affairs Division, to tell his supervisor,

Major Conley, that he had just received information about a trooper who was supposedly

involved in illegal activity. *See* FR 1.17(b). Inexplicably, Ober chose not to do so.[3] Instead,

---

[2] Not only did Ober mischaracterize the nature of the F.B.I. investigation to Lieutenant Colonel Hickes, he also mischaracterized the specific information he presented to Hickes. Hickes specifically recalls Ober telling him the word "Colonel" had been used on the wiretap; however, Bridge actually mentioned a "Lieutenant Colonel."

[3] There was no reason for Ober not to tell Conley about the investigation because, even in Ober's mind, there was no legitimate basis to believe that Conley had anything to do with a cadet job-selling scheme.

Ober circumvented his chain of command; he gave Lieutenant Colonel Hickes misleading information, falsely portraying top management of the State Police as targets of a criminal investigation. Because of that misrepresentation, Lieutenant Colonel Hickes swore Ober to secrecy but then told members of the Governor's Office that members of the State Police command staff might be implicated in a job-selling scheme. These baseless rumors obviously caused the Commissioner and his Deputies unwarranted embarrassment. Clearly, the government's interest in proper management of the State Police outweigh any personal reasons Ober may have had for going outside his chain of command and misrepresenting the facts to Lieutenant Colonel Hickes.

**B.      Even if Ober engaged in protected activity, it was not a substantial or motivating factor for any action he considers retaliatory.**

Here, Ober claims the defendants retaliated against him through a series of adverse employment actions, in which he was subjected to investigations and personal attacks, inappropriately transferred, constructively demoted, refused promotions, and denied overtime and educational opportunities. According to Ober, he was also harassed, shunned, and ostracized at the defendants' behest. Yet, Ober has not produced any evidence to support any of his allegations.

As the Third Circuit has recognized, "not everything that makes an employee unhappy" should be actionable. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir. 1997) "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.,* quoting *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)). Instead, the complained-of conduct "must be serious enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson*, 120 F.3d at 1300.

Ober is unhappy about being transferred to work with the Area III commander. However, "a purely *lateral* transfer," which does not involve a demotion in form or substance, "cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996). Captain Ober's transfer to Area III was not a demotion in form or substance – the transfer did not affect his salary, rank, or benefits in any way. Nor did the transfer carry any negative implications for Ober's future career – if anything, it would have enhanced his chances for promotion. As such, the transfer to the Special Projects Officer position in Area III was not a material adverse action and may not be the basis for a claim under § 1983. More importantly, Ober never actually went to Area III; because Ober wanted to stay in the Harrisburg area, the Commissioner assigned him to the Bureau of Liquor Control Enforcement.

Of course, Ober was not happy with that either, claiming his temporary assignment as the Central Section Commander was a constructive demotion because it had been held by a lieutenant. Again, Ober suffered no loss of pay, rank or benefits; Major Koscelnak urgently needed a Central Section Commander, and Ober fulfilled that need for a very brief period until a Captain's position became available in the Harrisburg area, where Ober wanted to stay. Ober may have been unhappy with the assignment; but that does not make his claim actionable under § 1983. *See Robinson*, 120 F.3d at 1300.

As for Ober's other allegations, there is no evidence he was denied opportunities for overtime. Ober believes he should have been assigned to the Pennsylvania Emergency Management Agency (PEMA) so he could have earned overtime. However, there was no guarantee Ober would earn overtime with PEMA, and he rejected the chance to earn the extensive overtime involved with the Special Projects position in Area III. (*See* Young Aff.)

Finally, Ober's § 1983 claim fails because there is *no* evidence that any of the defendants were personally involved in the decision not to assign Ober to PEMA. (*See* Koscelnak Aff; DeWire Aff.); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (personal involvement in alleged wrongs is required for § 1983 liability).

Next, Ober complains that he was denied educational opportunities, subjected to investigations, criticized and removed from a volunteer book committee. None of these actions rise to the level of a constitutional deprivation. Employment decisions that have intangible and indirect effects on an employee's status do not qualify as "adverse" actions. *Lefevre v. Design Professional Ins. Co.*, No. C-93-20720 RPA, 1994 WL 544430. Harsh criticism or counseling and general allegations of being treated "differently or more harshly" do not constitute adverse employment actions. *Simmerman v. Hardee's Food Systems, Inc.*, 1996 WL 131948, at *14 (E.D. Pa. March 22, 1996); *Moore v. Grove North America, Inc.*, 927 F.Supp. 824, 831 (M.D. Pa. 1996). Ober was not harmed by the two administrative investigations he complains about; in fact, Ober was completely vindicated by the investigation into retired Colonel Conti's complaint. As far as the administrative inquiry Colonel Evanko requested, Ober was not disciplined or counseled about his actions. Colonel Evanko was not even particularly concerned about Ober's actions; his primary focus was on how Lieutenant Colonel Hickes had handled the situation.

Finally, Ober is upset that he has not been promoted to Major. There is only one individual who has the discretion to promote Ober and that is Colonel Evanko. Therefore, the other defendants have no liability in this matter. As for Colonel Evanko, there is no evidence that Ober was better qualified than any individual the Commissioner chose to promote. Captain Ober remains on the eligibility list for promotion to major and has been and will be considered for promotion whenever a vacancy in a major's position becomes available. (Evanko Aff.).

In sum, Ober's First Amendment claim should be dismissed because he did not engage in protected activity, and none of the defendants have engaged in any form of retaliation against him.

### III.  DEFENDANTS DID NOT SEIZE PLAINTIFF OR CONSPIRE TO SEIZE HIM IN VIOLATION OF THE FOURTH AMENDMENT.

Next, Ober makes the completely baseless claim that he was "seized" within the meaning of the Fourth Amendment when he was interviewed by Majors Werts and Williams about his role in the FBI's investigation. A Fourth Amendment seizure only occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *U.S. v. Mendenhall*, 466 U.S. 544, 552 (1980) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n. 16). Unless a reasonable person in Ober's position would have believed he was not free to leave, there was no seizure. *Mendenhall*, 446 U.S. at 554.

The averments in Ober's complaint have no evidentiary basis. Ober was never subjected to a custodial interrogation. Like many other members of the State Police, including Colonel Evanko, Ober was interviewed by Majors Werts and Williams about his response to information from the FBI. The interview was not objectively coercive; no weapons were brandished, no threats were made, no physical force was used. By his own admission, Ober could have left at any time. Ober concedes that he has personally conducted similar administrative interviews and given administrative (or *Garrity*) warnings identical to the ones given to him.

Even if Ober was "seized," the seizure was entirely reasonable. Public employees' expectation of privacy "may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). Search and seizures for "work-related purposes, as well as for investigations of work-related misconduct" are constitutionally valid as long as they are reasonable under all the circumstances. *Id.* at 725-26.

For example, in *U.S. v. Donato*, 269 F. Supp. 921 (E.D. Pa. 1967), the court upheld the

constitutionality of searching the locker of an employee at the United States Mint because the

employee's expectation of privacy was reduced by virtue of actual office practices.

As in *Donato,* the State Police have specific policies applicable to interviewing

employees during internal administrative investigations. *See* Pennsylvania State Police Field

Regulation 1-1.28 and Administrative Regulation 4-25. Those regulations mandate that

members cooperate truthfully and completely in investigations or inquiries. Moreover, AR 4-25

plainly puts members of the state police on notice that during the course of an administrative

investigation, they may be subjected to certain invasions of privacy, including questions related

to alleged misconduct or performance of duties. *See* AR 4-25, §§ 25.08(H)(1)(h). These policies

came as no surprise to Ober; he has been a member of the State Police for over 20 years, and as

Director of Internal Affairs, Ober directed hundreds of administrative investigations. Ober

admits conducting similar interviews and administering identical warnings. Ober's Fourth

Amendment rights were not violated in any fashion.

## IV.    PLAINTIFF CANNOT PROVE THE DEFENDANTS CONSPIRED TO VIOLATE HIS CONSTITUTIONAL RIGHTS.

Ober claims that the defendants conspired among themselves to deprive him of his First

and Fourteenth Amendment rights. As demonstrated above, however, Ober cannot establish that

any of the defendants violated his rights; nor can he establish that any of the defendants had the

knowledge requisite to form a common scheme or plan.

To begin with, Ober's conspiracy claim fails because he cannot establish a § 1983

violation. *See Moles v. Griffy,* 2001 WL 1152984 (E.D. Pa. Sept. 18, 2001) *citing Caldeira v.*

*County of Kauai,* 866 F.2d 1175, 1182 (9th Cir. 1989 (absence of § 1983 claim precludes § 1985

conspiracy claim on the same allegation.).[4] Further, Ober cannot demonstrate that any of the defendants made an agreement to inflict harm to him. *See Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980). There is no conspiracy unless the defendants acted with a single plan, the general nature and scope of which was known to each of them. *Id.* There is simply no evidence to support Ober's conspiracy theories.[5]

## V.    ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY QUALIFIED IMMUNITY

Even if the defendants somehow violated Ober's First or Fourteenth Amendment rights, they are entitled to qualified immunity because each defendant believed his acts were legal, and that belief was objectively reasonable. *See Saucier v. Katz*, 531 U.S. 194, 205, 121 S.Ct. 2151, 2158 (2001) ("If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense.").

"Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit individuals in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Courts have addressed this concern "by generally providing government officials performing discretionary functions with a 'qualified immunity,' shielding them from civil

---

[4] Ober has also claimed that, under Pennsylvania tort law, he has a right to be free from civil conspiracies. That claim is barred by state sovereign immunity. Generally, "the Commonwealth and its agencies are...shielded by the defense of sovereign immunity." *Bufford v. Department of Transportation*, 670 A.2d 751, 753 (Pa. Commw. 1996); *see also* 42 Pa.C.S. §§ 8521, 8522. In order to prevail on a claim against the Commonwealth based on a tort theory , the plaintiff must show that "(1) the alleged negligent act...involved[d] a cause of action that is recognized at common law or by a statute, and (2) the case...fall[s] within one of the exceptions to sovereign immunity listed in Section 8522(b)." *Bufford*, 670 A.2d at 753. Further, a Commonwealth party cannot be held liable for damages arising out of intentional torts. *Shoop v. Dauphin County* ,766 F. Supp. 1327 (M.D. Pa. 1991) (state trooper could not be held liable for intentional state torts that were pendent to federal civil rights claims.); *Faust v. Com., Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991) (Commonwealth defendants are immune from claims arising from intentional torts). Thus, Ober's claims are barred by sovereign immunity.

[5] Most of Ober's allegations relate to no more than one defendant. For example, Conley is the only defendant who had anything to do with denying Ober's expenses and asking for the return of his cell phone; only Coury was involved with the Conti complaint; only Evanko was involved with the book committee; none of the defendants participated in the PEMA decision. In short, there is simply no evidence of any conspiracy against Ober.

damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *McLaughlin v. Watson*, 271 F.3d 566, 570 (3d Cir. 2001) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Doctrinally speaking, qualified immunity" is an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *McLaughlin*, 271 F.3d at 566 (citations omitted). Qualified immunity thus affords "protection to all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341.

In order to defeat qualified immunity, a plaintiff must show that the official violated a "clearly established" right. *McLaughlin,* 271 F.3d at 571. In *McLaughlin*, the Third Circuit reinforced the notion that the right the official is alleged to have violated must have been "clearly established" in a more particularized and relevant sense. *Id.* (citations omitted). As the *McLaughlin* court says,

> "clearly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right. A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of pre-existing law the unlawfulness was apparent." *Shea v. Smith*, 966 F.2d 127, 130 (3d Cir. 1992).

Based on the factual record, every defendant is entitled to qualified immunity. The defendants' all believed their actions were legal, and that belief was objectively reasonable.

**A.    Colonel Paul Evanko** – Ober claims he was improperly investigated, improperly transferred, constructively demoted, not considered for promotion, and removed from the PSP Centennial Book Committee. However, Evanko's conduct with regard to each of these actions was objectively reasonable.

When Ober and Lieutenant Colonel Hickes told Colonel Evanko about the FBI's investigation in May 1999, Evanko was concerned about Ober's failure to tell Major Conley about the investigation; more importantly, he was concerned about Lieutenant Colonel Hickes' role in the matter. Based on his experience, the information provided by Ober and Hickes did not seem reasonable to Colonel Evanko, so he requested an administrative inquiry into the surrounding facts and circumstances. The Commissioner's request was consistent with Administrative Regulation 4-25 and the practice of past Commissioners. Once the administrative inquiry was concluded, Evanko discussed the matter with Hickes. Although Ober had violated FR 1.17(b), Evanko felt discipline was unnecessary.

When Colonel Evanko transferred Ober to Area III eight months later, that decision was completely unrelated to Ober's actions during the FBI investigation. Rather, the Commissioner needed a Captain to assist the Area IIII commander in preparing for the National Governors Association's Convention. The Commissioner has the discretion to transfer commissioned officers anywhere he desires within the Department to suit the needs of the organization. However, Ober was distraught about the transfer and sought preliminary and permanent injunctions. The Commissioner agreed to keep Ober in the Harrisburg area if Ober withdrew his request for a preliminary injunction. There were no immediate openings for a Captain in the Harrisburg area, so Colonel Evanko temporarily assigned Ober to the Bureau of Liquor Control Enforcement, which urgently needed a Central Section Commander. Ober's assignment allowed him to stay near his family and did not involve a reduction in rank, salary or benefits. As soon as a Captain's position was available in Harrisburg, it was given to Ober. The Commissioner objectively believed he had the authority to take these actions in order to fulfill the needs of the

Department. See Pennsylvania State Police Field Regulation 3-2.05, the Pennsylvania State Police Regulation on General Transfers.

Although Ober has not yet been promoted to major, he is eligible for promotion and the Commissioner has considered him for each vacancy that has occurred at that rank. Evanko has not promoted Ober, but there is no evidence that the Commissioner acted out of retaliation. Many other captains were also eligible for promotion, and the Commissioner simply felt someone else was better suited for the job. (Evanko Aff.)

Finally, Ober was upset when the Commissioner decided that Ober should concentrate on his work with the Incident Information Management System (IIMS) project rather than performing volunteer work for the Centennial Book Committee. As Ober acknowledges, his role as Team Leader for System Integrator Procurement was an important part of the IIMS project. Under the circumstances, the Commissioner's decision was reasonably related to a legitimate government purpose.

**B.** **Retired Lieutenant Colonel Thomas Coury** – Ober claims that retired Lieutenant Colonel Coury "harassed" him, "blocked plaintiff's promotional opportunities," and "launched an improper investigation into plaintiff's personal affairs." However, Ober has not provided any specific information about how he was supposedly harassed, and those allegations should be dismissed. *See Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F.Supp 981, 988 (E.D. Pa 1994) (plaintiff must provide the degree of particularity that animates the fair notice requirement or his claim will be dismissed.)

As far as promotional opportunities are concerned, Coury could not have blocked Ober's promotion; he did not have the authority do so. *See* Pennsylvania State Police Operations

13

Manual 7-9 (granting the Commissioner sole authority to promote). There is no evidence that

Coury even gave the Commissioner any advice on whether to promote Ober.

Ober's real contention against retired Lieutenant Colonel Coury is that Coury improperly

ordered an investigation into Ober's personal affairs. That claim is not supported by the

evidence. Coury received a complaint from a retired Lieutenant Colonel who believed Ober was

misusing his position as a state police officer to improperly solicit historical artifacts from retired

members or their widows. As required by state police regulations, Coury forwarded that

complaint to the Bureau of Professional Responsibility. AR 4-25. More importantly, Ober was

not *harmed* by Coury's actions; rather, Coury personally adjudicated the complaint unfounded,

vindicating Ober. Ober's claim of constitutional harm is incomprehensible.

C.    **Retired Lieutenant Colonel Joseph Westcott** – The only specific allegation

against retired Lieutenant Colonel Westcott is that Westcott supposedly blocked a

recommendation for Captain Ober to return him to a Pennsylvania Emergency Management

Agency (PEMA) position. To begin with, Ober had no right to a position with PEMA, and he

had voluntarily withdrawn from that position after his initial transfer to Area III. Regardless,

there is no evidence that Westcott had anything to do with the decision not to assign Ober back

to PEMA after his assignment to the Bureau of Liquor Control Enforcement. Major Koselnak

made that decision on his own. (Koselnak Aff.) When Major DeWire took over the Bureau,

Major Washington (who was responsible for PEMA assignments) decided not to have Ober

participate. There is no evidence Westcott had anything to do with the matter.

D.    **Lieutenant Colonel Hawthorne Conley** – Ober's claim against Lieutenant

Colonel Conley is that he "performed acts of vengence." These acts of "vengeance" apparently

consist of asking Ober to return the Bureau of Professional Responsibility's cellular phone after

Ober was transferred to another Bureau, as well as denying Ober's request for certain expenses. There is no evidence Ober was harmed by these decisions. The cell phone belonged to Major Conley's bureau and paid for out of his budget. Besides, taking an employee's cellular phone for legitimate reasons is too insignificant to be constitutionally actionable. *See Moore v. Grove North America*, 927 F.Supp. 824, 831 (M.D. Pa 1996). As for the expenses, Ober won a grievance and was reimbursed for a hotel room he rented to meet with the FBI. Conley denied Ober's request to be paid for framing a retirement gift, but that denial was upheld. Again, Conley's actions were too insignificant to give rise to a cause of action under § 1983. *See Robinson*, at 1299-1304.

     **E.**     **Mark Campbell, Governor's former Deputy Chief of Staff** – Finally, there is no evidence whatsoever that Mark Campbell was personally involved in any of the alleged wrongs. Commissioner Evanko told Campbell about his decision to look into what happened with the FBI. Evanko and Campbell both testified that the Commissioner did not seek or receive Campbell's approval to conduct that inquiry. Ober's contrary assumption cannot be supported with facts. The claim against Campbell should be dismissed. *See Rode*, 845 F.2d 1195, 1207 (requiring the defendants' personal involvement to sustain a § 1983 claim).

<div align="center">

**CONCLUSION**

</div>

     For all the foregoing reasons, defendants respectfully ask this Court to grant their motion for summary judgment in its entirety.

                                       Respectfully submitted,

                                       _____
                                       Syndi L. Guido, Deputy General Counsel
                                       Barbara L. Christie, Chief Counsel
                                       Joanna N. Reynolds, Assistant Counsel
                                       Governor's Office of General Counsel

Dated: May 20, 2002                     (Counsel for Defendants)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL G. OBER, | : | |
| Plaintiff | : | NO. 1: CV-01-0084 |
| | : | (Judge Caldwell) |
| vs. | : | |
| | : | CIVIL ACTION - LAW |
| PAUL EVANKO, MARK CAMPBELL, | : | |
| THOMAS COURY, JOSEPH WESTCOTT, | : | JURY TRIAL DEMANDED |
| HAWTHORNE CONLEY, | : | |
| Defendants | : | |

---

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**
# APPENDIX A

---

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

SYNDI L. GUIDO
Deputy General Counsel

BARBARA L. CHRISTIE
Chief Counsel, Pennsylvania State Police

JOANNA N. REYNOLDS
Assistant Counsel, Pennsylvania State Police

Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 783-6563
(Counsel for Defendants)

Dated: May 20, 2002

## **Depositions Taken By Plaintiff**

During discovery, plaintiff took 22 depositions.  Each notice of deposition stated that it would be taken "by video and/or audio means."  The deposition notices specified the time and place for the examination, as well as the name and address of the videotape operator.  The notices did not specify the name of the officer before whom the deposition would be taken.

Plaintiff's first deposition was that of the Governor's Chief of Staff, Mark Campbell; it was conducted on October 10, 2001, at the State Capitol in Harrisburg. The deposition notice specified that it would be videotaped by Anthony Marceca, 2919 Dixie Drive, York, Pennsylvania, 17402.  At the outset of the deposition, Mr. Marceca indicated he had been contracted by P.R. Video to conduct the deposition.  (Campbell Dep. at 7.)  However, the defendants had also arranged to have a court reporter present, and she was the one who actually administered the oath to Mr. Campbell.

The next two depositions were taken on October 12, 2001, at Don Bailey's law office, located at 4311 North Sixth Street, Harrisburg, Pennsylvania.  As before, the deposition notices indicated they would be taken by video and/or audio means and that the video operator would be Anthony Marceca, 2219 Dixie Drive, York, Pennsylvania, 17042.  At the beginning of each deposition, Mr. Marceca stated that he was employed by P.R. Video.  (Carr Dep. at 3; Williams Dep. at 1.)  Mr. Marceca administered the oath to both deponents.  (Carr Dep. at 4; Williams Dep. at 1.)  At the end of Mr. Carr's deposition, Mr. Bailey told him they would be making a transcript of the deposition and that the video and transcript could be purchased from P.R. Video at the same price Mr. Bailey would be charged for it.  (Carr Dep. at 47-48.)   In addition, Mr. Marceca told defense counsel, Syndi Guido, that transcripts could be purchased from P.R. Video by contacting him at phone number 717-600-8668, fax number 717-600-8678, or at

anthonymarceca@earthlink.net.  Mr. Marceca gave Ms. Guido his Dixie Drive address in York.

At the time, defendants had no reason to believe that there was any financial connection between

Mr. Bailey and Mr. Marceca or Mr. Marceca's employer, P.R. Video.

On October 23, 2001, Mr. Bailey took three more depositions:  Sergeant Walter J.

Margeson, Captain Larry Riley, and Major Francis Koselnak.  At the outset of each deposition,

Mr. Marceca stated that he was employed by P.R. Video and then administered the witness's

oath. (Margeson Dep. at 2, Riley Dep. at 2, Koselnak Dep. at 2.)  Defendants still had no reason

to question the relationship between Mr. Bailey and P.R. Video.

On the contrary, defendants' believed there was no connection between Mr. Bailey and

P.R. Video, and that impression was reinforced on January 7, 2002, when Mr. Bailey deposed

retired Lieutenant Colonel Joseph Westcott, one of the defendants in this action.  Lieutenant

Colonel Westcott's deposition was videotaped by Crystal Lyde, who indicated she had been

contracted by P.R. Video; it was Ms. Lyde who administered the oath to Lieutenant Colonel

Westcott. (Westcott Dep. at 7-8.)[1]

At the beginning of Westcott's deposition, Mr. Bailey noted that the defendants had also

arranged to have the deposition stenographically recorded by a court reporter.  (Westcott Dep. at

9.)  Mr. Bailey then advised Lieutenant Colonel Westcott that he had a right to view the video of

his deposition at Mr. Bailey's office; alternatively, he could purchase a copy of it.  (Westcott

Dep. at 10.)  When defense counsel, Joanna Reynolds, indicated that she wanted Mr. Westcott to

review his deposition and sign an errata sheet for corrections, Mr. Bailey said that procedure was

not available for videotaped depositions. (Westcott Dep. at 13-14.)[2]  Then Mr. Bailey said that a

---

[1] Ms. Lyde also administered the oath when Mr. Bailey deposed Major Robert G. Werts that same day.

[2] Local Rule 30.7 provides, "No signature of the witness will be *required*, unless the transcript is prepared
pursuant to Local Rule 30.4." LR 30.7 (emphasis added).  However, Fed. R. Civ. P. 30(e) provides, "If requested by
the deponent or a party before completion of the deposition, the deponent *shall* have 30 days after being notified that

A.2

transcript of the video would be made, adding, "You'll not be permitted to take it out or to have that unless it is purchased from the video company, because it's not my property. I have to buy mine, too." (Westcott Dep. at 14.) Given that exchange, defendants had no reason to believe Mr. Bailey had any financial interest in P.R. Video or that P.R. Video's subcontractor, Ms. Lyde, was anything but a disinterested person authorized to administer oaths in Pennsylvania.

Plaintiff took three depositions on February 25, 2002: Robert Dane Merryman, Wilfred Pudliner, and Mark Grab. At each deposition, the video operator, Crystal Lyde, identified herself as a subcontractor of P.R. Video and swore in the witness. (See Merryman Dep. at 2, Pudliner Dep at 2, and Grab Dep. at 2.)

On March 5 and 6, 2002, plaintiff took four more depositions. Before swearing in each of these four deponents, Mr. Marceca indicated he was working for P.R. Video. (Brown Dep. at 2, Skurkis Dep. at 2, DeWire Dep at 2, Marshall Dep. at 2.)

On March 12, 2002, plaintiff deposed two of the defendants, Lieutenant Colonel Hawthorne Conley and retired Lieutenant Colonel Thomas Coury. Although P.R. Video recorded the depositions for the plaintiff, defense counsel had also arranged for the depositions to be taken by Sargeant's Court Reporting Service. Lieutenant Colonel Coury's deposition could not be finished that day and was continued to an unspecified time.

On March 27, 2002, the plaintiff deposed Colonel Paul Evanko, Commissioner of the State Police. Again, P.R. Video videotaped the deposition for the plaintiff, but the defendants chose to have it taken by Sargeant's Court Reporting Service as well.

---

the transcript *or recording* is available in which to review the transcript *or recording* and, *if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them.*" Fed. R. Civ. P. 30(d) (emphasis added).

A.3

On April 10, 2002, plaintiff took two depositions. Albert Rodriguez was the video operator at those depositions. Mr. Rodriguez swore in both witnesses after explaining that he was working for P.R. Video. (McAreavy Dep. at 2, Bungo Dep. at 1.)

Lieutenant Colonel Coury's deposition resumed on April 15, 2002. Albert Rodriquez, again working for P.R. Video, administered the oath and acted as plaintiff's video operator.[3] On defendants' behalf, the deposition was taken by Sargeant's Court Reporting Service. (Coury Dep. at 10.)

Plaintiff took his last deposition on the final day of discovery, April 22, 2002. Mr. Bailey subpoenaed the witness, Louis J. Lazzaro, to appear at Mr. Bailey's office in Greensburg, Pennsylvania. Defense counsel received a faxed copy of that subpoena on April 19, 2002. That same day, Ms. Reynolds notified Mr. Bailey that, in addition to the method utilized by plaintiff, the defendants planned to have the deposition recorded by video and stenographic means; she then arranged to have the deposition recorded by Sargeant's Court Reporting Service. Although Mr. Bailey issued the subpoena and took Mr. Lazzaro's deposition, he apparently made no arrangements to have it taken before an officer authorized to administer the witness's oath. Instead, Mr. Bailey personally videotaped the deposition, and the court reporter from Sargeant's swore the witness.

Meanwhile, defendants were cognizant of the fact that all dispositive motions were due Monday, April 29, 2002. To that end, they had ordered copies of the videotaped depositions and transcripts from P.R. Video by contacting Crystal Lyde or Anthony Marceca. The transcripts are not stenographic and do not contain the officer's certificate; however, they do bear the corporate seal of P.R. Video. Defendants were given invoices for both the transcripts and the videotapes; all of the invoices were on the letterhead of P.R. Video, Inc., P.O. Box 5228, Harrisburg, PA

---

[3] Arguably, the oath did not need to be administered again because this was the continuation of the deposition that began on March 12, 2002.

17110, (717) 234-4055.  The first invoice, dated October 30, 2001, was signed by Anthony

Marceca.  Invoices dated November 26, 2001; November 27, 2001, and December 14, 2001,

were signed by Crystal Lyde.  (See A.9-A.12.)  None of the subsequent invoices were signed,

and they bore no name except that of the company.  (See A.13-A.18.)[4]  Defendants paid the

invoices with checks cut to PR Video.  (See A.21-A.23.)

By April 24, 2002, defendants still had not received many of the videotapes and

transcripts they had ordered from P.R. Video.  Consequently, Ms. Reynolds called Mr. Bailey

and asked if he would agree to extend the deadline for dispositive motions.  During that

conversation, Mr. Bailey questioned whether defense counsel had made photocopies of

transcripts they had purchased from P.R. Video.  According to Mr. Bailey, unauthorized copying

of the transcripts would cost the firm money, and Mr. Bailey said he would have "Adrienne"

write "Dorothy" a letter about the copying issue.   ("Dorothy" is Dorothy Martin, Ms. Guido's

executive assistant.  "Adrienne" is Mr. Bailey's receptionist and secretary.  Defense counsel also

understand Adrienne to be Mr. Bailey's wife; she uses the name Adrienne Bailey, and Mr. Bailey

has mentioned, conversationally, that he and Adrienne have six young children.)

After the conversation concerning photocopies, defense counsel began to wonder why

Mr. Bailey or his wife would be concerned about P.R. Video's finances.  The Baileys' interest

became clear as soon as defense counsel checked the Department of State's corporate records for

P.R. Video.  As it turns out, "Adrienne Palarino" is the Chief Executive Officer, Treasurer, and

Secretary of P.R. Video, Inc. (See A.24-A.29.)  The articles of incorporation were signed by

"Adrienne Palarino" on October 27, 2000.  (See A.25.)

---

[4] Defense counsel then checked their files and found that on October 17, 2001, Crystal Lyde had used Don
Bailey's law office fax to send a copy of P.R. Video, Inc.'s rates to Dorothy Martin, Ms. Guido's assistant.  (See
A.19-A.20.)  At the time, it had not seemed strange because Ms. Lyde had implied, on the fax cover sheet, that she
was using Mr. Bailey's fax machine because she had just finished depositions for Attorney Ostrowski, Mr. Bailey's
associate.

When she saw the articles of incorporation, Ms. Guido immediately recognized the name, Adrienne Palarino. Ms. Guido remembered that early in the litigation, her executive assistant, Dorothy Martin, had taken a phone message from "Adrienne Palarino of Don Bailey's office," inquiring whether Ms. Guido would concur in a motion to continue the case management conference. (See A.30.) Since then, defense counsel and their staff have had numerous contacts with Adrienne; however, her initial contact with Ms. Martin is the only time Adrienne has ever given her name as Adrienne Palarino.

Just this month, defendants learned that Adrienne Palarino has gone by the name of Adrienne Bailey since at least 1991 – almost a decade before she filed articles of incorporation for P.R. Video, Inc. (See A.24, A.40.) According to records from the Department of Transportation, Adrienne Bailey was born January 16, 1967, and has Pennsylvania operator's license number 21250367. Adrienne Bailey's driver's license was originally issued on August 30, 1983 (when she was 16 years old). (See A.35.) Effective May 13, 1991 (when Ms. Palarino was 24 years old), her driver's license was changed from the name Adrienne L. Palarino to Adrienne L. Bailey. (See A.40.) Adrienne Bailey's current driver's license lists an address of 4015 North Second Street, Harrisburg, Pennsylvania. (See A.32, A.35.) When she obtained her Notary Public commission in April 1999, Adrienne also used the named Adrienne Bailey, not Adrienne Palarino. (See A.41-A.44.)

Significantly, according to official records kept by the Department of State, P.R. Video, Inc., is located at 4015 North Second Street in Harrisburg – the same address given for Adrienne Bailey on her driver's license. (See A.24-A.29 and A.32. A.35.) The property at 4015 North Second Street is owned by Don Bailey, and the IRS has a lien against *both* Don and Adrienne Bailey on that very property. (See A.45-A.49.)

Additionally, Don Bailey's law office is located at 4311 North Sixth Street in Harrisburg; that property is owned by Adrienne *Bailey*. (A.50-A.52.) Adrienne *Bailey* purchased that property just three days before she filed the Articles for Incorporation for P.R. Video, Inc., in the name of Adrienne *Palarino*. (See A.51 and A.24.)

Given these facts, it seems evident that when they administered oaths to witnesses deposed by the plaintiff, Anthony Marceca, Crystal Lyde, and Albert Rodriguez were actually employed by Adrienne Bailey, who is not only Mr. Bailey's receptionist and secretary but his wife and the mother of his children as well.

Regardless, defendants do not question the propriety of having P.R. Video, Inc., videotape the depositions taken by Mr. Bailey on plaintiff's behalf. *See* LR 30.3 (providing that the videotape operator may be an employee of the attorney taking the deposition). Yet, defendants are still concerned that individuals working for P.R. Video may not have been qualified to swear the deponents. *See* Fed. R. Civ. P. 28(c) (specifically prohibiting administration of the oath by an employee or relative of counsel to any party or by any other person with a financial interest in the matter).[5] In any event, defendants' primary concern is that two of P.R. Video's employees, Anthony Marceca and Albert Rodriguez, apparently administered oaths before they were legally authorized to do so.

Mr. Marceca administered the witness's oath at two depositions taken on October 12, 2002. (See Williams Dep. at 2; Carr Dep. at 2.) However, Mr. Marceca's notary commission did not become effective until October 22, 2002. (See A.54.) Likewise, Mr. Rodriquez

---

[5] *See also Ott v. Stipe Law Firm,* 169 F.R.D. 380 (E.D. Okla. 1996) (depositions rendered inadmissible because plaintiff administered the witnesses' oaths and she had a financial interest in the case); *United States v. City of New York,* 134 F. Supp. 374 (1955) (granting motion to vacate defendants' deposition because it was taken by federal employee and the federal government was the plaintiff); *Gale v. National Transp. Co., Inc.,* 7 F.R.D. 237 (1946) (plaintiff's objection to proposed deposition sustained where the deposition was to be taken before a Notary Public associated with defendant's attorney); *Michels v. Ripley,* 1 F.R. D. 332 (1939) (objection to deposition sustained where Notary Public had become associated with plaintiff's attorney after the notice of deposition was served).

administered the oath at depositions taken on April 10, 2002. (See McAreavy Dep. at 2; Bungo Dep. at 1.) According to the Department of State, Mr. Rodriguez's commission did not become effective until May 10, 2002. (See A.53.) Under Pennsylvania law, it is illegal to administer the oath before the surety bond has been filed and the signature is on file with the prothonotary, and Notaries may not act in a transaction in which they have a pecuniary interest. See 57 P.S. §§ 154, 155, 166, 164, 165. It is actually a crime to impersonate a Notary. 18 P.S § 4913. Defendants have referred these irregularities to the Department of State for resolution.

The defendants do not want to overburden the Court or to protract or reopen discovery; however, they feel it is important to call this matter to the Court's for whatever action it deems appropriate. Inasmuch as it appears that some of the witnesses were not sworn by officers authorized to administer an oath, defendants are not sure how that defect impacts on the character and quality of the deponents' testimony. For that reason, defendants have supplied the Court with affidavits verifying the material undisputed facts contained in any deposition in which an official court reporter was not also present, stenographically transcribing the proceedings. Defendants reserve the right to object to plaintiff's use of the defective depositions should that become necessary.

**P.R. VIDEO, INC**
**P.O. BOX 5228**
**HARRISBURG, PA 17110**
**(717) 234-4055**

RECEIVED

BY_____

OCT 3 0 2001

OFFICE OF GENERAL COUNSEL

REFERRED_____

October 30, 2001

*Via - Hand Delivery*

*Syndi Guido Esquire*
*333 Market Street*
*Harrisburg, PA 17101*

    *In Re: Darrell G. Ober vs. Paul Evanko et al.*
       *1:CV-01-0084*

*Dear Ms. Guido:*

    *Enclosed please find copies of the deposition of Thomas Carr and Thomas Williams held on October 12, 2001. The video tapes will be forwarded to you via U.S. mail. The total cost for both copies is $357.00. If you should have any questions please feel free to contact me at the phone number above. Thank you.*

                      *Sincerely,*

                      *Anthony Marceca*

                      *Anthony Marceca*

*cc: file*

*Federal I.D.# 25-1882747*

- Recd Transcripts 10/30/2001
- Gave bill to Jamie/Kim for processing 11/6/2001

A.9

*P.R. VIDEO, INC*
*P.O. BOX 5228*
*HARRISBURG, PA 17110*
*(717) 234-4055*

**RECEIVED**

BY_____

NOV 2 8 2001

OFFICE OF GENERAL COUNSEL

REFERRED_____

November 26, 2001

Ms. Syndi Guido
333 Market Street
Harrisburg, PA 17120

Dear Ms. Guido:

Enclosed please find the deposition transcripts of Walter J. Margeson, Francis Koselnak, and Thomas Williams. The total amount due is $390.00. If you should have any questions please feel free to call. Thank you.

Sincerely,

Crystal Lyde

Federal S.S.# 25-1882747

A.10

**P.R. VIDEO, INC**
**P.O. BOX 5228**
**HARRISBURG, PA 17110**
**(717) 234-4055**

*November 27, 2001*

RECEIVED

BY_____

NOV 2 9 2001

OFFICE OF GENERAL COUNSEL

REFERRED_____

*Ms. Syndi Guido Esquire*
*333 Market Street*
*Harrisburg, Pa 17120*

*In Re: Darrell Ober vs.Paul Evanko et al.*
*1:CV-01-0084*

*Dear Ms. Guido:*

*Enclosed is the deposition of Captain Larry Riley. You have already received the depositions of Walter J. Margeson, Francis Koselnak . The corrected total amount due is $333.90. I apologize for the error on our part on the billing. The deposition of Larry Williams is a condensed version, please just keep it for your convenience. Thank you again for your service.*

*Theres*

*Sincerely,*

*Crystal Lyde*

*cc: file*

Federal I.D.# 25-1882747

**P.R. VIDEO, INC**
**P.O. BOX 5228**
**HARRISBURG, PA 17110**
**(717) 234-4055**

December 14, 2001

Ms. Syndi Guido Esquire
333 Market Street
Harrisburg, Pa 17120

Dear Ms. Guido:

Enclosed please find the Video Depositions of Walter Margeson, , Francis Koselnak, Thomas Williams, Larry Riley and Tom Carr. This should complete your order. If you should have any questions please feel free to contact me at the above number. Thank you for your order.

Sincerely,

Crystal Lyde

Crystal Lyde

cc: file

**RECEIVED**

BY_____

DEC 1 7 2001

OFFICE OF GENERAL COUNSEL

REFERRED_____

A.12



# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055

*F.I.D. #25-1882747*

TO:
Syndi Guido Esq.
Office of General Counsel
333 Market Street
17th Floor
Harrisburg, PA 17120

Date: March 22, 2002

---

Deposition taken of Charles Skurkis on March 5, 2002  in the case of Ober vs. Evanko et al. 1:CV-01-0084 in the Middle District of Pennsylvania.

Video/Transcript Deposition of:    Charles Skurkis $2.10 per pg

**Total Amount Due: $174.30**

**THANK YOU FOR YOUR BUSINESS!**

# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055

FID: 25-1882747

TO:  Syndi L. Guido
*Deputy General Counsel*
*Governor's Office of General Counsel*
*333 Market Street, 17th Floor*
*Harrisburg, PA 17101*

Date: March 26, 2002

Deposition taken of Marie Marshall held on March 6, 2002 in the case of Darrell G. Ober vs. Paul Evanko et al. docketed at No. 1:CV-01-0084 in the United States District Court for the Middle District of Pennsylvania.

Transcript/Video tape Deposition of Marie Marshall:

|  |  |
|---|---|
| 44 pages @ $2.10 per page | $92.40 |
| Video only of Thomas Coury *Deposition* *on 3-12-2002* | $160.00 |
| **Total Due:** | **$252.40** |

## THANK YOU FOR YOUR BUSINESS!

**RECEIVED**
BY_____

MAR 2 7 2002

OFFICE OF GENERAL COUNSEL
REFERRED_____

A.14

# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055
F.I.D.# 25-1882747

**RECEIVED**

BY_____

APR 1 0 2002

OFFICE OF GENERAL COUNSEL

REFERRED_____

TO:

Syndi L. Guido
Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101

Date: April 5, 2002

---

Video Deposition taken of Hawthorne Conley held on March 12, 2002 in the case of
Darrell G. Ober vs. Paul Evanko et al. docketed at No. 1:CV-01-0084 in the United States
District Court for the Middle District of Pennsylvania.

Video (3) Tape Only of Hawthorne Conley:      $280.00

**Total Due:**      **$280.00**

**THANK YOU FOR YOUR BUSINESS!**

A.15

# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055

*F.I.D. #25-1882747*

**RECEIVED**

BY_____

APR 1 0 2002

OFFICE OF GENERAL COUNSEL

REFERRED_____

TO:

Syndi L. Guido
Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101

*Date: April 8, 2002*

*Video Deposition taken of Major Philip DeWire held on March 6, 2002 in the case of Darrell G. Ober vs. Paul Evanko et al. docketed at No. 1:CV-01-0084 in the United States District Court for the Middle District of Pennsylvania.*

*Video/Transcript Deposition of Major Phillip DeWire*

| | |
|---|---|
| 75 pages @ $2.10 per page | $157.50 |
| *Postage & Handling* | $10.00 |
| **Total Due:** | **$167.50** |

## THANK YOU FOR YOUR BUSINESS!

# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055

*F.I.D. #25-1882747*

RECEIVED

BY_____

APR 2 6 2002

OFFICE OF GENERAL COUNSEL
REFERRED_____

*April 26, 2002*

*Syndi Guido Esquire*
*Office of General Counsel*
*333 Market street*
*17th Floor*
*Harrisburg, PA 17120*

Depositions taken in the matter of *Darrell Ober vs. Paul Evanko et al. Docketed at 1:CV-01-0084 in the Middle District of Pennsylvania.*

Video/Transcripts of:

| | |
|---|---|
| *Richard Brown 126 PAGES @ $2.10* | *$264.60* |
| *Wilfred Pudliner 34 PAGES @$2.10* | *$71.40* |
| *Mary Bungo 38 PAGES @$2.10* | *$79.80* |
| *Mark McAlreavy 94 PAGES @ $2.10* | *$197.40* |
| *Mark Grab 58 PAGES @ $2.10* | *$121.80* |
| | |
| *Exhibits (McAlreavy dep.) 13 pages @.25* | *$3.25* |

| | |
|---|---|
| **Total Amount Due:** | **$738.25** |

### THANK YOU FOR YOUR BUSINESS!

# P. R. Video, Inc.

P. O. Box 5228
Harrisburg, PA 17110
(717) 234-4055

*F.I.D. #25-1882747*

**RECEIVED**

BY_____

MAY 1 1 2002

OFFICE OF GENERAL COUNSEL

REFERRED_____

*May 8, 2002*

TO:      *Syndi Guido Esq.*
         *Office of General Counsel*
         *333 Market Street*
         *17th Floor*
         *Harrisburg, PA 17120*

---

*Deposition/Video of Robert Dane Merryman taken in the case captioned matter of Darrell Ober vs. Evanko et al. Docketed at No. 1:CV-01-0084.*

*Robert Dane Merryman  89 pages @ $2.10  $186.90*

*Total Due:*                    *$186.90*

*This Transcript/Video were already hand delivered*
*Thank you for your continued service!*

Oct 17 37 04:24p    Don Bailey            717 221 9600        p.1

# FACSIMILE TRANSMISSION

*Andrew J. Ostrowski*
*Attorney at Law*
4311 North Sixth Street
Harrisburg, PA 17110
Telephone: 717-221-9500
Facsimile: 717-221-9600

**To:** DOROTHY

**Fax No.:** 787-1448

**Date:** 10-17-01

**No. of Pages (including cover sheet):** 2

**Message:** Thanks – I Just Finished Depositions for
Atty Ostrowski + I HAD this For You –
Z5-1882747
PR VIDEO TAX ID#

Average –
400 Pgs

Crystal

### FAX COVER NOTICE OF CONFIDENTIALITY

The information contained in this facsimile message is intended only for the personal and confidential use of the designated recipients named above. This message may be an attorney-client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail at our expense. Thank you.

A.19

**P.R. VIDEO, INC**
**P.O. BOX 5228**
**HARRISBURG, PA 17110**
**(717) 234-4055**

## SCHEDULE OF RATES

**VIDEO ONLY:**

| | |
|---|---|
| $160.00/FIRST HOUR | (1 HOUR MINIMUM) |
| $60.00/HOUR | FOR EACH ADDITIONAL HOUR ON ANY GIVEN DAY REGARDLESS OF THE NUMBER OF DEPOSITIONS |

**TRANSCRIPT ONLY:** rate for copy

$2.50 PER PAGE (ORIGINAL)
$1.65 PER PAGE FOR A COPY

**TRANSCRIPT & VIDEO:**

$3.00 PER PAGE (ORIGINAL)
$2.10 PER ~~COPY~~ Page (Copy)

**TAPES CANNOT BE REPRODUCED, AND CANNOT BE SOLD, TRADED PLACEMENT OF AN ORDER IS AN AGREEMENT NOT TO REPRODUCE OR COPY P.R. VIDEO WORK PRODUCT**

**ALL VIDEO/TRANSCRIPT ORDERS MUST BE PREPAID!**

*Please provide a copy of the Video tapes of the following depositions:*

______________________________

*Please provide a copy of the Transcript/Video of the above depositions:*

______________________________

*Please provide a copy of the Transcript only of the following deposition:*

______________________________

BY:______________________ DATED______________________

COMMONWEALTH OF PENNSYLVANIA
STATE TREASURER'S ADVANCEMENT ACCOUNT
OFFICE OF ADMINISTRATION
311 FINANCE BLDG., HARRISBURG, PA 17120

029931

8-9/ 430 817

PNCBANK
PNC Bank, N.A.
Pittsburgh, PA   001

DATE    December 11, 2001

$333.90¢

PAY TO THE
ORDER OF

PR Video
P.O. Box 5228
Harrisburg, PA 17110

VOID AFTER 6 MONTHS

⑈029931⑈ ⑆043000096⑆ 000 2010 760⑈

A-21

030191

8-9/430 817

**COMMONWEALTH OF PENNSYLVANIA**
STATE TREASURER'S ADVANCEMENT ACCOUNT
OFFICE OF ADMINISTRATION
311 FINANCE BLDG., HARRISBURG, PA 17120

**PNCBANK**
PNC Bank, N.A.
Pittsburgh, PA   001

DATE     April 4, 2002

PAY TO THE
ORDER OF

P.R. Video, Inc.
PO Box 5228
Harrisburg, PA   17110

$1,174.30

VOID AFTER 6 MONTHS

⑈030191⑈ ⑆043000096⑆ 000 2010210⑈

March 4/02

A.22



COMMONWEALTH OF PENNSYLVANIA
STATE TREASURER'S ADVANCEMENT ACCOUNT
OFFICE OF ADMINISTRATION
311 FINANCE BLDG., HARRISBURG, PA 17120

030196

8-9/430 817

PNCBANK
PNC Bank, N.A.
Pittsburgh, PA    001

DATE    April 5, 2002

$**352.40**

VOID AFTER 6 MONTHS

PAY TO THE
ORDER OF

P.R. Video, Inc
PO Box 5228
Harrisburg, PA 17110

⑈030196⑈ ⑆043000096⑆ 000 2040 240⑈

A.23

Microfilm Number _____    290000 · 1039

Filed with the Department of State on: **DEC - 7 2000**

_Kim Pizzingrilli_

Secretary of the Commonwealth

## ARTICLES OF INCORPORATION-FOR PROFIT
### OF

**PR VIDEO INC.**
Name of Corporation

**A TYPE OF CORPORATION INDICATED BELOW**

Entity Number _____

**Indicate type of domestic corporation:**

X **Business-stock** (15 Pa.C.S. § 1306)

____ **Business-nonstock** (15 Pa.C.S. § 2102)

____ **Business-statutory close** (15 Pa.C.S. § 2303)

____ **Cooperative** (15 Pa.C.S. § 7102)

____ **Management** (15 Pa.C.S. § 2702)

____ **Professional** (15 Pa.C.S. § 2903)

____ **Insurance** (15 Pa.C.S. § 3101)

DSCB:15-1306/2102/2303/2702/2903/3101/7102A (Rev 91)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. (relating to corporations and unincorporated associations) the undersigned, desiring to incorporate a corporation for profit hereby, state(s) that:

1. The name of the corporation is: **PR Video, Inc.**

2. The (a) address of this corporation's initial registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

(a) **4015 NORTH 2ND ST.   HARRISBURG PA 17110   DAUPHIN**
    Number and Street          City        State    Zip      County

(b) c/o: _____
    Name of Commercial Registered Office Provider          County

For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

3. The corporation is incorporated under the provisions of the Business Corporation Law of 1988.

4. The aggregate number of shares authorized is: **1000** (other provisions, if any attach 8 1/2 x 11 sheet)

5. The name and address, including number and street, if any, of each incorporator is:

| Name | Address |
|------|---------|
| **ADRIENNE PALARINO** | **4015 North 2ND ST. HARRISBURG PA 17110** |

ENCLOSURE ____ **6**

PAGE ____ **1** OF ____ **6**

200030 : 1040

DSCB:15-1306/2102/2303/2702/2903/7102A (Rev 91)-2

6. The specified effective date if any is: ___October___ ___1___ ___2000___ ___hour if any___
month          day          year

7. Additional provisions of the articles, if any, attach an 8 1/2 x 11 sheet.

8. **Statutory close corporation only:** Ne... the corporation nor any shareholder shall make an offering of any of its shares of any class that would const... a "public offering" within the meaning of the Securities Act of 1933 (15 U.S.C. § 77a et seq.).

9. **Cooperative corporations only:** (Complete and strike out inapplicable term) The common bond of membership among its members/shareholders is: _____

IN TESTIMONY WHEREOF, the incorporator(s) has (have) signed these Articles of Incorporation this __27th__ day of __October__, _2000_.

_Adrienne D. Palazzo_
(Signature)

_____
(Signature)

ENCLOSURE ___6:___

PAGE ___2___ OF ___6___

A. 25

COMMONWEALTH  OF  PENNSYLVANIA

DEPARTMENT  OF  STATE

MAY 01, 2002

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING:

PR VIDEO, INC.

I, C Michael Weaver, acting Secretary of the Commonwealth of

Pennsylvania do hereby certify that the foregoing and annexed is a true

and correct photocopy of Articles of Incorporation

which appear of record in this department



IN TESTIMONY WHEREOF, I have
hereunto set my hand and caused
the Seal of the Secretary's
Office to be affixed, the day
and year above written.

ACTING: ----------------------------------
        Secretary of the Commonwealth

A.26

DPOS
ENCLOSURE ___ 6

PENNSYLVANIA DEPARTMENT OF STATE
CORPORATION BUREAU
ROOM 206 NORTH OFFICE BUILDING
P. O. BOX 8722
HARRISBURG, PA  17105-8722
(717) 787-1057

R E C O R D    S E A R C H

MAY 01, 2002

EXAMINATION OF THE INDICES IN THE DEPARTMENT OF STATE ON THE ABOVE
DATE SHOWS A PENNSYLVANIA BUSINESS CORPORATION WAS FILED ON
DECEMBER 07, 2000 ENTITLED:


PR VIDEO, INC.
ENTITY #2976277


WITH ADDRESS AT: 4015 N 2ND ST
                 HARRISBURG, (DAUPHIN COUNTY), PA  17110


CORPORATE OFFICERS ON RECORD AS OF DECEMBER 07, 2000 ARE:
CEO: ADRIENNE PALARINO
SEC: ADRIENNE PALARINO
TRE: ADRIENNE PALARINO


MAILING ADDRESS IS: 4015 N 2ND ST
                    HARRISBURG, PA  17110


THIS IS A SUBSISTING ASSOCIATION.

CPL. JOHN DUEY
PA STATE POLICE

A.27

ENCLOSURE _____ 6 _____

PAGE ___4___ OF ___6___    DPOS

```
                   PENNSYLVANIA DEPARTMENT OF STATE                        2
                          CORPORATION BUREAU
                    ROOM 206 NORTH OFFICE BUILDING
                            P. O. BOX 8722
                      HARRISBURG, PA  17105-8722
                           (717) 787-1057
                                                              PAGE    2

                       R E C O R D   S E A R C H

                                        MAY 01, 2002


     IN RE: 2976277
            PR VIDEO, INC.


     INSTRUMENT HISTORY:

         DATE        MICROFILM       TYPE OF CHANGE AND COMMENTS
     12-07-2000  2000090/1039-1040  ARTICLES OF INCORPORATION-BUSINESS
         *****    END OF HISTORY INFORMATION   *****
```

**A.28**

C O M M O N W E A L T H   O F   P E N N S Y L V A N I A

D E P A R T M E N T   O F   S T A T E

MAY 01, 2002

TO ALL WHOM THESE PRESENTS SHALL COME, GREETING:

PR VIDEO, INC.

I, C Michael Weaver, acting Secretary of the Commonwealth of
Pennsylvania do hereby certify that the foregoing and annexed is a true
and correct copy of Index and Docket Record

which appear of record in this department



IN TESTIMONY WHEREOF, I have
hereunto set my hand and caused
the Seal of the Secretary's
Office to be affixed, the day
and year above written.

A.29

ACTING    Secretary of the Commonwealth

ENCLOSURE    6

PAGE    6    OF    6

(FYI.)

**WHILE YOU WERE OUT**

Date 4-19-2001    Hour 10:51 AM

To Syndi

M Adrienne Palarino

(Atty) Jon Bailey's Office

Phone 221-9500
Area Code    Phone Number

| | | |
|---|---|---|
| Telephoned | ✓ Returned Call | Left Package |
| Please Call | Was In | Please See Me |
| Will Call Again | Will Return | Important |

Message Please advise

Re: Rescheduling Management
Conference. They are asking
if Syndi objects.
(If Syndi does not
mind rescheduling)
They were looking at the
wk of 6/1 to 6/15 or 6/18-20

Signed J    over

AVERY FORM NO. 50-736    PRINTED IN USA

---

(Overly)
Advised Adrienne that
Syndi was not available
6/18-20; however, she
is available 6/11-6/15.

For Info> Bailey is on
vacation the week of
June 6th that is why
they want to reschedule

A.30

BPR029-00877 - OLS        05/01/02 08:39:23 - 05/01/02 08:38:25 8C51MA3B7D98

RESPONSE FROM PENNSYLVANIA BUREAU OF MOTOR VEHICLES

OLN: 21250367. VALIDATED: 2001-01-10. EXPIRES: 2005-01-17.
NAM: BAILEY,ADRIENNE L
     4015 N 2ND STREET
     HARRISBURG      PA. 17110

SSN: 163583812.     DOB: 1967-01-16.  SEX: F.     EYE: HAZ.     HGT:  5' 6".
RESTRICTIONS: NONE
SUSPENSION: NO
OPERATOR CLASS: C = SINGLE VEH <= 26,000
OPERATOR TYPE: REGULAR OPERATOR
VALID DUPLICATE LICENSE NUMBER: N/A
          INFORMATION OBTAINED FROM PENNDOT FILES AND SHOULD BE VERIFIED

ENCLOSURE ___2___

PAGE __1__ OF __3__

A.31

*Driver Detail*

*PA Department of Transportation*

| Driver Demographics | | Source: PennDOT IMS |
|---|---|---|

**BAILEY, ADRIENNE L**
Driver Name

**21 250 367**
Driver License Number

**01/16/1967**
Date of Birth

**F**
Gender

**66**
Height (inches)

**(HZ) HAZEL**
Eye Color

**4015 N 2ND STREET**
**HARRISBURG, PA 17110**
Driver Address

| Driver License | Source: PennDOT IMS |
|---|---|

**01/10/2001**
Issue Date

**01/17/2005**
Expiration Date

**00**
Duplicate Count

**(C) SINGLE VEH <= 26,000.**
License Class

Endorsements             Restrictions             Commercial Restrictions

| Photo History | Source: Viisage Corporation Photo Repository |
|---|---|

Photo Record (1 of 2)

*Photo Capture Station Information*

**01/10/2001 12:00:00**
Photo Date

**(022) RIVERFRONT OFF C**
Location

**2251**
Operator ID

**10**
Station ID

**200102210@010016**
Viisage Control ID

*Driver Information*

**21 250 367**
Driver License Number

**01/16/1967**
Date of Birth

**DAUPHIN**
County

**DRIVER'S LICENSE**
License Card Type

**YES**
Organ Donor



*Adrienne L. Bailey*

2
2       3

https://www.penndot.jnet.state.pa.us/DriverInfo/request?RequestType=DriverDetailRequest&Act 5/1/02



## Photo Record (2 of 2)

### Photo Capture Station Information

**01/10/1997 12:00:00**
Photo Date

**(022) RIVERFRONT OFF C**
Location

**8693**
Operator ID

**30**
Station ID

**199702230@010004**
Viisage Control ID

### Driver Information

**21 250 367**
Driver License Number

**01/16/1967**
Date of Birth

**WESTMORELAND**
County

**DRIVER'S LICENSE**
License Card Type

**YES**
Organ Donor



Content Provided by: PennDOT
Webmaster: TBD

Update Schedule: As needed
Last Modified Date: TBD

All information provided is for authorized JNET users only. This information is provided in
response to the JNET user's request and is to be used exclusively by the requestor in the
performance of their criminal justice responsibilities only. Secondary dissemination is strictly
prohibited. Although the information may continue to be valid over a period of time it should
be considered complete and accurate only on the date of response.

©1998-2001 Pennsylvania Justice Network. All rights reserved.

ENCLOSURE  2

PAGE  3  OF  3

A-33

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF TRANSPORTATION
BUREAU OF DRIVER LICENSING
HARRISBURG, PA  17123
05/03/02

PENNA STATE POLICE                          021236668727885 001
ATTN- TPR DUBY
7820 ALLENTOWN BLVD
HARRISBURG PA 17112

ENCLOSURE _____ 13
PAGE _____ 1 OF 7

A-34

PAGE   1

PENNSYLVANIA DEPARTMENT OF TRANSPORTATION
BUREAU OF DRIVER LICENSING
CERTIFIED DRIVING HISTORY
MAY 03 2002

DRIVER: ADRIENNE L BAILEY
        4015 N 2ND STREET
        HARRISBURG, PA  17110

DRIVER LICENSE NO   : 21250367
DATE OF BIRTH       : JAN 16 1967
SEX                 : FEMALE
RECORD TYPE         : REG LICENSE

   DRIVER LICENSE (DL)
- - - - - - - - - - - - - - - - - - -

LICENSE CLASS       : C
LICENSE ISSUE DATE: JAN 10 2001
LICENSE EXPIRES     : JAN 17 2005
ORIG ISSUE DATE     : AUG 30 1983
MED RESTRICTIONS    : NONE
LEARNER PERMITS     :
LICENSE STATUS      : VALID

   COMMERCIAL DRIVER LICENSE (CDL)
- - - - - - - - - - - - - - - - - - - - - - - -

CDL LICENSE CLASS   :
CDL LICENSE ISSUED  :
CDL LICENSE EXPIRES:
CDL ENDORSEMENTS    : NONE
CDL RESTRICTIONS    : NONE
CDL LEARNER PERMITS:
CDL LICENSE STATUS  :

SB ENDORSEMENT      :

   PROBATIONARY LICENSE (PL)
- - - - - - - - - - - - - - - - - - - - - - - -

PL LICENSE CLASS    :
PL LICENSE ORIG ISS:
PL LICENSE ISSUED   :
PL LICENSE EXPIRES  :
PL LICENSE STATUS   :

OCCUPATIONAL LIMITED LICENSE (OLL)
- - - - - - - - - - - - - - - - - - - - - - - -

OLL LICENSE CLASS   :
OLL LICENSE ISSUED  :
OLL LICENSE EXPIRES:
OLL LICENSE STATUS  :

*** CONTINUED ***

ENCLOSURE _____ 13

PAGE _____ 2 OF _____ 7

A.35

PAGE   2
CERTIFIED DRIVING HISTORY - MAY 03 2002 - LICENSE NUMBER 21250367 CONTINUED

---

### REPORT OF VIOLATIONS AND DEPARTMENTAL ACTIONS

---

```
VIOLATION DATE:  MAR 30 1991
VIOLATION:       VEHICLE CODE:  3362
DESCRIPTION:     EXCEEDING MAXIMUM SPEED
                 067 MPH IN A 055 MPH ZONE
CONVICTION DATE: APR 19 1991
ACTION:          ASSIGNED POINTS
```

---

### REPORT OF MEDICALS AND DEPARTMENTAL ACTIONS

---

NO MEDICALS OR DEPARTMENTAL ACTIONS DURING THIS REPORTING PERIOD

---

### REPORT OF ACCIDENTS AND DEPARTMENTAL ACTIONS

---

NO ACCIDENTS DURING THIS REPORTING PERIOD

*** END OF RECORD ***

ENCLOSURE ___13___
PAGE ___3___ OF ___7___

36

IN COMPLIANCE WITH YOUR REQUEST, I HEREBY CERTIFY THAT I HAVE CAUSED A SEARCH TO BE MADE OF THE FILES OF THE DEPART- MENT OF TRANSPORTATION, AND HAVE SET FORTH ABOVE AN ACCURATE SUMMARY OF ALL RECORDS IN THE NAME OF THE PERSON INDICATED.


SINCERELY,

*Rebecca L. Bickley*

SEAL                          DIRECTOR, BUREAU OF DRIVER LICENSING
                                           FOR
                              SECRETARY OF TRANSPORTATION


COMMONWEALTH OF PENNSYLVANIA SS:              DATE:MAY 03 2002

I HEREBY CERTIFY THAT REBECCA L. BICKLEY, DIRECTOR OF THE BUREAU OF DRIVER LICENSING, OF THE PENNSYLVANIA DEPARTMENT OF TRANSPORTATION IS THE LEGAL CUSTODIAN OF THE DRIVER LICENSING RECORDS OF THE DEPARTMENT OF TRANSPORTATION.  AS THE DIRECTOR OF THE AFORESAID BUREAU, SHE HAS LEGAL CUSTODY OF THE ORIGINAL OR MICROFILM RECORDS WHICH ARE THE SUBJECT OF THE ABOVE CERTIFICATION.


IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY HAND  AND  SEAL OF THIS DEPARTMENT THE DAY AND YEAR AFORESAID.


SINCERELY,

*Bradley L Mallory*


SECRETARY OF TRANSPORTATION


SEAL


ENCLOSURE ___ 13

PAGE ___ 4 ___ OF ___ 7

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF TRANSPORTATION
BUREAU OF DRIVER LICENSING
HARRISBURG, PA  17123
05/03/02


PENNA STATE POLICE                          021236668727918 001
ATTN- TPR DUBY
7820 ALLENTOWN BLVD
HARRISBURG PA 17112


## CERTIFICATE & ATTESTATION

     I hereby certify that Rebecca L. Bickley Director of the Bureau
of Driver Licensing, of the Pennsylvania Department of Transportation,
is the legal custodian of the Driver Licensing Records of the
Pennsylvania Department of Transportation.


IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY HAND AND SEAL OF THIS
DEPARTMENT ON THE ABOVE DATE IN ACCORDANCE WITH SECTION 6103 OF THE
JUDICIAL CODE, TITLE 42, PA. Consolidated Statutes.

*Bradley L. Mallory*


## SECRETARY OF TRANSPORTATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     I  hereby attest that the documents listed below and at-
tached hereto are full, true and correct photostatic  and/or
microfilm copies of which I have legal custody, and that the
copies  conform  to  the requirements of Section 6109 of the
Judicial Code.

THE FOLLOWING:  THE PRIOR NAME INQUIRY SCREEN PRINT-OUT DATED
5-3-02 OF ADRIENNE L BAILEY, OPERATOR'S #21250367.


IN TESTIMONY WHEREOF, I HAVE HEREUNTO SET MY HAND AND SEAL
ON THE ABOVE DATE, IN ACCORDANCE WITH SECTION 6103 OF THE
JUDICIAL CODE.

*Rebecca J. Bickley*

ENCLOSURE ___13___

PAGE ___5___ OF ___7___

REBECCA L. BICKLEY, DIRECTOR
BUREAU OF DRIVER LICENSING

```
C7201500 3DL01530                  Prior Name Inquiry              A07C03FF 05/03/02

Customer       : 21250367   BAILEY,ADRIENNE,L
Date of Birth  : 01/16/67   1

Trans Seq No   : 988
Ef  ctive Date : 05/13/91   1
La_  Update    : ROSENBE    05/13/91   12022052

Prior OL Number :
Prior Name      : PALARINO,ADRIENNE,L




13-SUBMENU                                             15-RETURN
```



**COUNTY OF DAUPHIN**

**HARRISBURG, PA.**

**PHILIP SPASEFF**
**RECORDER OF DEEDS**

**OFFICIAL RECEIPT**

RD004TC02              R E C O R D E R   O F   D E E D S        05/01/2002      P
   INQUIRY – INDIVIDUAL DOCUMENT INFORMATION   (DATA VALID AS OF: 04/26/2002)
GRANTORS
                      GRANTEES
BAILEY, ADRIENNE L
              BAILEY, ADRIENNE L


BOOK    PAGE    FILE NO     DATE FILED     DATE INST     DESCRIPTION
3405     234     19379      05/12/1999     04/14/1999
KIND: NOTARY               DMP:
Enter "S" to see more Grantees or Grantors, "N" to return to Name List,
         or leave blank to return to Entry Screen                    XMIT

RECD. BY    _Philip Spaseff_

ENCLOSURE ____5____

PAGE ___/___ OF ___4___

A-41

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Dauphin County, Pennsylvania.



MAY 0 1 2002

Philip Spaseff
Philip Spaseff
Recorder of Deeds

# Commonwealth of Pennsylvania



### Department of State

**ADRIENNE L BAILEY**

OF THE COUNTY OF

**DAUPHIN**

**GREETINGS:**

**WHEREAS,** UNDER THE PROVISIONS OF THE NOTARY PUBLIC LAW, APPROVED THE 21ST DAY OF AUGUST, ANNO DOMINI ONE THOUSAND NINE HUNDRED FIFTY-THREE, THE SECRETARY OF THE COMMONWEALTH IS AUTHORIZED TO APPOINT AND COMMISSION NOTARIES PUBLIC IN AND FOR THE COMMONWEALTH OF PENNSYLVANIA.

**THEREFORE, KNOW YE,** THAT I HAVE APPOINTED AND DO BY THESE PRESENTS COMMISSION YOU TO BE A

### NOTARY PUBLIC
### FOR THE COMMONWEALTH OF PENNSYLVANIA

**TO HAVE AND TO HOLD** THE SAID OFFICE, TOGETHER WITH ALL RIGHTS, POWERS AND EMOLUMENTS THEREUNTO PERTAINING, OR BY LAW IN ANYWISE APPERTAINING, FOR THE PERIOD OF FOUR YEARS, IF YOU SHALL SO LONG BEHAVE YOURSELF WELL.

THIS APPOINTMENT TO COMPUTE FROM: **APRIL 14, 1999.**



**GIVEN** UNDER MY HAND AND THE SEAL OF MY OFFICE AT THE CITY OF HARRISBURG, THIS FOURTEENTH DAY OF APRIL IN THE YEAR OF OUR LORD ONE THOUSAND NINE HUNDRED AND NINETY-NINE AND OF THE COMMONWEALTH THE TWO HUNDRED AND TWENTY-THIRD.

Kim Pizzingrilli
SECRETARY OF THE COMMONWEALTH

0754104

BK 3 4 0 5 PG 2 3 4

ENCLOSURE _____ 5

PAGE _____ 2 ___ 4

A.42

NOTARY PUBLIC BOND
AND OATH OF

ADRIENNE L BAILEY Bond # S 413 - 538

SERIAL # 0754104

NOTARY PUBLIC, WITH OFFICE IN

DAUPHIN COUNTY

AND RESIDENCE IN

DAUPHIN COUNTY

$3,000.00

THIS BOND AND SURETY APPROVED AND FILED IN THE OFFICE OF THE SECRETARY OF THE COMMONWEALTH AT HARRISBURG, PA. THIS DATE

SECRETARY OF THE COMMONWEALTH

DAUPHIN COU... PENNA.
MAY 12 10 33 AM '99
RECEIVED RECORDERS OFFICE
19329

KNOW ALL MEN BY THESE PRESENTS, THAT WE

ADRIENNE L BAILEY

PRINCIPAL (NAME OF NOTARY PUBLIC APPLICANT)   AND

National Grange Mutual Ins. Co.
SURETY (NAME OF SURETY COMPANY)

3540 N PROGRESS AVE
(STREET AND NUMBER)

4455 N. Front St.
(PENNSYLVANIA ADDRESS)

HARRISBURG
(CITY, BOROUGH OR TOWNSHIP)

Harrisburg, Pennsylvania 17110

DAUPHIN
(COUNTY OF RESIDENCE)

New Hampshire
(STATE OF INCORPORATION)

ARE HELD AND FIRMLY BOUND UNTO THE COMMONWEALTH OF PENNSYLVANIA, FOR THE USE THEREOF, IN THE PENAL SUM OF THREE THOUSAND DOLLARS, FOR THE PAYMENT OF WHICH, WELL AND TRULY TO BE MADE, WE BIND OURSELVES, OUR HEIRS, EXECUTORS, ADMINISTRATORS AND ASSIGNS JOINTLY AND SEVERALLY, FIRMLY BY THESE PRESENTS.

WHEREAS, THE ABOVE BOUND PRINCIPAL HAS BEEN DULY APPOINTED A NOTARY PUBLIC IN AND FOR THE COMMONWEALTH OF PENNSYLVANIA BY COMMISSION FROM THE SECRETARY OF THE COMMONWEALTH FOR THE PERIOD OF FOUR YEARS, TO COMPUTE FROM APRIL 14, 1999.

NOW, THEREFORE, THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, THAT IF THE PRINCIPAL SHALL WELL AND FAITHFULLY, ACCORDING TO LAW, DISCHARGE THE DUTIES OF THE OFFICE OF NOTARY PUBLIC IN ALL THINGS APPERTAINING THEREUNTO DURING THE RESIGNATION, DISQUALIFICATION OR REMOVAL FROM OFFICE, THE PRINCIPAL, OR IN CASE OF DEATH, OTHER LEGAL REPRESENTATIVE OF THE PRINCIPAL SHALL DELIVER THE REGISTER AND ALL THE OFFICIAL PAPERS OF THE OFFICE TO THE RECORDER OF DEEDS OF THE COUNTY IN WHICH THE PRINCIPAL HELD OFFICE, THEN THIS OBLIGATION TO BE NULL AND VOID, OTHERWISE TO REMAIN IN FULL FORCE AND VIRTUE IN LAW.

WITNESS OUR HANDS AND SEALS THIS

16th DAY OF April , 1999

PRINCIPAL                    L.S.
Adrienne L Bailey

SURETY
Curt A. Nunemaker

BK3405PG 235

SIGNED AND DELIVERED IN OUR PRESENCE:

WITNESS

WITNESS

INSTRUCTIONS: 1) THE NOTARY PUBLIC LAW REQUIRES THAT THE COMMISSION OF ANY NOTARY SHALL BE NULL AND VOID, IF THE NOTARY FAILS TO GIVE BOND AND CAUSE THE BOND AND OATH TO BE RECORDED WITHIN 30 DAYS AFTER THE BEGINNING OF THE TERM. 2) THE BOND MUST HAVE AS SURETY A DULY AUTHORIZED SURETY COMPANY, AND SHOULD ENCLOSE AND OATH TO THE SURETY COMPANY. SEE INSTRUCTIONS CONCERNING USE OF INDIVIDUAL SURETY WHICH MUST EXECUTE THE ABOVE SIDE. IF ACKNOWLEDGED BY AN ATTORNEY-IN-FACT, USE PARAGRAPH (A) AND STRIKE OUT (A) A RESIDENT VICE-PRESIDENT OR ASSISTANT SECRETARY, USE PARAGRAPH (B) AND STRIKE OUT (A). RESIDENT VICE-PRESIDENT OF THE BOND IS EXECUTED BY A CORPORATION ITS ATTORNEY-IN-FACT, OR OTHER CASES, A CERTIFICATE OF THE RESOLUTION AUTHORIZING ITS EXECUTION, AND A CERTIFICATE THAT THE POWER OF ATTORNEY OR RESOLUTION IS IN FORCE, MUST BE ATTACHED HERETO.

ENCLOSURE 5
PAGE 3 OF 4

A-43

S 413-538

# National Grange Mutual Insurance Company

A Main Street America company

**POWER OF ATTORNEY**

*KNOW ALL MEN BY THESE PRESENTS:* That the National Grange Mutual Insurance Company, a New Hampshire corporation having its principal office in the City of Keene, State of New Hampshire, pursuant to Article V, Section 2 of the By-Laws of said Company, to wit:

"Section 2. The board of directors, the president, any vice president, secretary, or the treasurer shall have the power and authority to appoint attorneys-in-fact and to authorize them to execute on behalf of the company and affix the seal of the company thereto, bonds, recognizances, contracts of indemnity or writings obligatory in the nature of a bond, recognizance or conditional undertaking and to remove any such attorneys-in-fact at any time and revoke the power and authority given to them." Pursuant to said by-law does hereby make, constitute and appoint GEORGE NUNEMAKER, CURT NUNEMAKER, CARMELA KRITZER,

its true and lawful Attorneys-in-fact, to make, execute, seal and deliver for and on its behalf, and as its act and deed, bonds, undertakings recognizances, contracts of indemnity, or other writings obligatory in the nature of a bond subject to the following limitation:

1.    No one bond to exceed One Million Dollars ($1,000,000.00).

and to bind the National Grange Mutual Insurance Company thereby as fully and to the same extent as if such instruments were signed by the duly authorized officers of the National Grange Mutual Insurance Company, and all the acts of said Attorney are hereby ratified and confirmed.

This power of attorney is signed and sealed by facsimile under and by the authority of the following resolution adopted by the Directors of The National Grange Mutual Insurance Company at a meeting duly called and held on the 2nd day of December 1977.

Voted: That the signature of any officer authorized by the By-Laws and the company seal may be affixed by facsimile to any power of attorney or special power of attorney or certification of either given for the execution of any bond, undertaking, recognizance or other written obligation in the nature thereof; such signature and seal, when so used being hereby adopted by the company as the original signature of such office and the original seal of the company, to be valid and binding upon the company with the same force and effect as though manually affixed.

By execution of this Power of Attorney, National Grange Mutual Insurance Company does hereby revoke, rescind and declare null and void any previous Power of Attorney at any time previously furnished to the aforesaid individuals or agencies.

*IN WITNESS WHEREOF,* The National Grange Mutual Insurance Company has caused these presents to be signed by its Corporate Secretary and its corporate seal to be hereto affixed this 14TH day of January, 1999.   THIS APPOINTMENT SHALL EXPIRE AND TERMINATE AUTOMATICALLY AS OF DECEMBER 31ST, 2001, unless sooner revoked as provided.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY   By

THIS POWER IS INVALID IF RED DIAGONAL IMPRINT " NATIONAL GRANGE MUTUAL INSURANCE COMPANY] KEENE, NEW HAMPSHIRE " IS NOT SHOWN IN ITS ENTIRETY.

State of New Hampshire, County of Cheshire.

On this 14TH day of January, 1999, before the subscriber a Notary Public of the State of New Hampshire in and for the County of Cheshire duly commissioned and qualified, came William C. McKenna of the National Grange Mutual Insurance Company, to me personally known to be the officer described herein, and who executed the preceding instrument, and he acknowledged the execution of same, and being by me fully sworn, deposed and said that he is an officer of said Company, aforesaid: that the seal affixed to the preceding instrument is the corporate seal of said Company, and the said corporate seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said Company; that Article V, Section 2 of the By-Laws of said Company is now in force.

*IN WITNESS WHEREOF,* I have hereunto set my hand and affixed by official seal at Keene, New Hampshire this 14TH day of January, 1999.

*Susan M Fortin*

Notary Public

My Commission Expires: May 14, 2003

I Lyn E. Landry, Assistant Vice President of the National Grange Mutual Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney executed by said Company which is still in force and effect.

*IN WITNESS WHEREOF,* I have hereunto set my hand and affixed the seal of said Company at, Keene, New Hampshire this

_____ 16th _____ day of _____ April _____, 1999

Assistant Vice President

68-7340.003

**WARNING** — Any unauthorized reproduction or alteration of this document is prohibited. This power is void unless seals are readable and the certification seal at the bottom is embossed. The diagonal imprint, warning and confirmation must be in red ink.

**CONFIRMATION** Of validity of attached bond, call NGM at: Keene 603-358-1339; Richmond 804-270-6611 ext. 138; Syracuse 315-434-1410.

ENCLOSURE       5
PAGE ___4___ OF ___4___



## COUNTY OF DAUPHIN
### HARRISBURG, PA.

**PHILIP SPASEFF**
**RECORDER OF DEEDS**

OFFICIAL RECEIPT

RE004TC07          DAUPHIN COUNTY TAX ASSESSMENT          05/01/2002   09:22
                    PARCEL NO. 62-015-275          NO. MOBILE HOMES      NO. LOTS
OWNER......BAILEY DONALD A                LEASED LAND.....................N/A
CO-OWN....                                TAX STATUS..................TAXABLE
ADDRESS...4015 N 2ND ST                   ABATEMENT:  NO DT ENTERED 00-00-0000
          HARRISBURG PA                   DELINQUENT TAXES................ NO
                                          ---------- ASSESSED VALUE ----------
ZIP.......171101602          EC TE04      *1985 BASE YEAR AT 100% STATED RATIO*
LOCATION..4015 N 2ND ST                   LAND.....................    11,300
PROP USE.......2 STORY RESIDENCE          BUILDING.................    34,500
DEED REF.......................(2105-042) TOTAL ASSESSMENT.........    45,800
LAST ASSESSMENT DATE.........00-00-0000   HOME/FARMSTEAD.....       NONE/NONE
PREVIOUS ASSESSMENT DATE......00-00-0000  HOMESTEAD APP. FILING DT..00-00-0000
E  MPT REASON...                          EXEMPT LAND AMOUNT.......         0
LAST ACTIVITY DATE...........11-24-1993   EXEMPT BUILDING AMOUNT...         0
LAST APPRAISER CONTACT........00-00-0000  REVAL LAND...............         0
FINAL APPEAL FILING DATE......00-00-0000  REVAL BUILDING...........         0
CLEAN AND GREEN NUMBER........            INTERIM ASSESSMENT.......         0
LAST SALE DATE...............11-18-1993   LAST SALE AMOUNT.........    84,000
PREVIOUS SALE DATE...........00-00-0000   PREVIOUS SALE AMOUNT.....         0

           NEXT PARCEL   MOBILE   DELINQUENT    CLEAN-GREEN    PROP-SALES    RETURN
KEY IN:    N                                         N              P            R
FUNCTION   PARCEL NO                    DEED REF.                 XMIT

RECD. BY   *Philip Spaseff*

ENCLOSURE ___3___

PAGE ___1___ OF ___4___



I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Dauphin County, Pennsylvania.

MAY 0 1 2002

*Philip Spaseff*

Philip Spaseff
Recorder of Deeds

# THIS DEED

MADE this __15TH__ day of __November__, in the year of our Lord One Thousand
Nine Hundred Ninety-Three(1993). *By his Attorney-in-Fact, Laura Bromberg,*

BETWEEN **JACK BROMBERG** and **LAURA BROMBERG**, his wife, of Harrisburg,
Susquehanna Township, Dauphin County, and Commonwealth of Pennsylvania, Grantors
and Parties of the First Part *(said Power-of-Attorney to Be Recorded herewith)*

- A N D -

**DONALD A. BAILEY**, of Harrisburg, Susquehanna Township, Dauphin County, and
Commonwealth of Pennsylvania, Grantee and Party of the Second Part.

WITNESSETH, that in consideration of the sum of Eighty Four Thousand and
00/100 ($84,000.00) Dollars, in hand paid, the receipt whereof is hereby acknowledged,
Grantors do hereby grant and convey to Grantee:

ALL THAT CERTAIN lot or piece of land, situated on the Easterly side of Second
Street, in the Township of Susquehanna, County of Dauphin and Commonwealth of
Pennsylvania aforesaid, being composed of Lot No. 25 and the Southern half of Lot No.
24 as shown on the Revised Plan of a Revised Survey of a part of "Boulevard Park" which
Revised Plan is recorded in the Office for the Recording of Deeds, in and for the County
of Dauphin aforesaid, in Plan Book "K", at page 84, and bounded and described as
follows, to wit:

BEGINNING at a point in the Easterly side of Second Street aforesaid, at a distance
of 363 feet North of the intersection of the Easterly side of said Second Street and the
Northerly side of Parkway Road, at the Northwest corner of Lot No. 26 on said Revised
Plan of Boulevard Park; thence extending in a Northerly direction along the Easterly side
of said Second Street, a distance of 75 feet to a point in the middle of the Westerly line
of said Lot No. 24; thence extending in an Easterly direction in and along the middle of
said Lot No. 24, a distance of 130 feet to a point in the middle of the Westerly line of Lot
No. 39 on said Revised Plan of Boulevard Park; thence extending in a Southerly direction
along a part of the Westerly line of said Lot No. 39 and along the Westerly line of Lot No.
40 on said Revised Plan of Boulevard Park, a distance of 75 feet to a point at the
Northeast corner of said Lot No. 26; thence extending in a Westerly direction along the
Northerly line of said Lot No. 26, a distance of 130 feet to a point in the Easterly side of
Second Street, aforesaid the Place of BEGINNING.

HAVING THEREON ERECTED a two and one-half (2 1/2) story stone, frame and
brick dwelling known and numbered as 4015 North Second Street, Susquehanna
Township, Dauphin County, Pennsylvania.

BOOK **2105** PAGE **042**

ENCLOSURE __3__

PAGE __2__ OF __4__

BEING the same premises which Paul Vinicoff, singleman and Keystone Trust Company, Executor of the Estate of Louis V. Vinicoff, deceased, by Deed dated August 15, 1967 and recorded at Dauphin County, Pa. in Deed Book "X", Volume 52, Page 692, granted and conveyed unto Jack Bromberg and Laura Bromberg, his wife, the Grantors herein.

AND the said Grantors will Warrant Specially the property hereby conveyed.

IN WITNESS WHEREOF, the said Grantors have hereunto set their hands and seals the date and year first above written.

Signed, Sealed and Delivered

in the presence of:

Jack Bromberg
by Laura Bromberg PoA _____ (S)
JACK BROMBERG

Laura Bromberg _____ (S)
LAURA BROMBERG

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF REVENUE

REALTY
TRANSFER     NOV 18 '93
TAX

P.D. 11140

8 4 0 . 0 0

840.00 gE

TOWNSHIP AND SCHOOL DISTRICT OF SUSQUEHANNA
DAUPHIN COUNTY, PENNSYLVANIA
REAL ESTATE TRANSFER TAX

DATE 11-18-93 AMT. $ 840. 00

Philip Spasoff
Collection Agent

BOOK 2105 PAGE 043

ENCLOSURE _____ 3

PAGE _____ 3 _____ OF _____ 4

COMMONWEALTH OF PENNSYLVANIA    :
                                : SS:
COUNTY OF DAUPHIN               :

On this, the _15th_ day of _November_, 1993, before me, the undersigned officer, personally appeared Jack Bromberg and Laura Bromberg, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_Charles I. Hinson_
Notary Public

My Commission Expires:

NOTARIAL SEAL
CHARLES I. HINSON, Notary Public
Harrisburg, PA  Dauphin County
My Commission Expires Feb. 8, 1997

I do hereby certify that the precise residence and complete post office address of the within named Grantee is: _4015 North Second Street_

_Harrisburg, PA 17110_.

_Chuck Hinson_
Attorney for Grantee
IA-93-372

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF DAUPHIN

I hereby CERTIFY that this document is recorded in the Recorder's Office of Dauphin County, Pennsylvania.

Recorded on this _____ day of _____, 1993, in the Recorder's Office of the said County in Record Book _____ Page _____. Given under my hand and the seal of the said office, the date above written.

_Philip Spasoff_
Philip Spasoff
Recorder of Deeds

BOOK **2105** PAGE **044**

43811

Nov 18  9 04 AM '93
RECEIVED
RECORDERS OFFICE

2802

**Form 668 (Y)(c)**
(Rev. October 2000)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (412) 395-5265 | Serial Number 230183565 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

*5 FTL 200...*

Name of Taxpayer DON & ADRIENNE BAILEY

*Pd 19 25*

Residence    4015 N 2ND ST
             HARRISBURG, PA 17110

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1996 | 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 | 07/30/2001 | 08/29/2011 | 11553.78 |
| 1040 | 12/31/1997 | 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 | 07/30/2001 | 08/29/2011 | 9443.78 |
| 1040 | 12/31/1998 | 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 | 07/30/2001 | 08/29/2011 | 10150.91 |
| 1040 | 12/31/1999 | 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 | 07/30/2001 | 08/29/2011 | 8366.69 |

MAY 0 2 2002

I hereby certify that the foregoing is a true and correct copy of the original filed.

*[signature]*
Prothonotary

DAUPHIN COUNTY PENNA

2002 JAN -8 P 2:51

RECEIVED OFFICE OF PROTHONOTARY

| Place of Filing | Prothonotary Dauphin County Harrisburg, PA 17108 | Total | $ 39515.16 |
|---|---|---|---|

This notice was prepared and signed at _____ PITTSBURGH, PA _____ , on this,

the __20th__ day of __December__, __2001__.

ENCLOSURE ___10___
PAGE ___1___ OF ___1___

Signature *[signature]* R. Coleman
for L G DOWD

Title ACS
(800) 829-3903

23-01-0008

(**NOTE:** Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

**Part 1 - Kept By Recording Office**

Form **668(Y)(c)** (Rev. 10-00)
CAT. NO 60025X



## COUNTY OF DAUPHIN
### HARRISBURG, PA.

**PHILIP SPASEFF**
**RECORDER OF DEEDS**

**OFFICIAL RECEIPT**

RE004TC07

DAUPHIN COUNTY TAX ASSESSMENT
PARCEL NO. 62-008-027

05/01/2002    09:21

OWNER.....BAILEY ADRIENNE
CO-OWN....
ADDRESS...4311 N 6TH ST
          HARRISBURG PA

ZIP.......17110
LOCATION..4311 N 6TH ST
PROP USE.......2 STORY RESIDENCE
DEED REF.....................3832-111
LAST ASSESSMENT DATE.........00-00-0000
PREVIOUS ASSESSMENT DATE......00-00-0000
E  IPT REASON...
LAST ACTIVITY DATE...........12-15-2000
LAST APPRAISER CONTACT.......00-00-0000
FINAL APPEAL FILING DATE.....00-00-0000
CLEAN AND GREEN NUMBER.......
LAST SALE DATE...............12-12-2000
PREVIOUS SALE DATE..........12-07-1998

NO. MOBILE HOMES        NO. LOTS
LEASED LAND.....................N/A
TAX STATUS....................TAXABLE
ABATEMENT:  NO DT ENTERED 00-00-0000
DELINQUENT TAXES................YES
--------- ASSESSED VALUE ----------
*1985 BASE YEAR AT 100% STATED RATIO*
LAND....................    11,200
BUILDING................    28,200
TOTAL ASSESSMENT........    39,400
HOME/FARMSTEAD.....      NONE/NONE
HOMESTEAD APP. FILING DT..00-00-0000
EXEMPT LAND AMOUNT.......          0
EXEMPT BUILDING AMOUNT...          0
REVAL LAND..............          0
REVAL BUILDING..........          0
INTERIM ASSESSMENT......          0
LAST SALE AMOUNT........     76,600
PREVIOUS SALE AMOUNT.....    28,000

|  | NEXT PARCEL | MOBILE | DELINQUENT | CLEAN-GREEN | PROP-SALES | RETURN |
|---|---|---|---|---|---|---|
| KEY TN: | N | | D | N | P | R |
| FUNCTION | PARCEL NO | | DEED REF. | | | XMIT |

RECD. BY    *Philip Spaseff*

ENCLOSURE _____4_____

PAGE __1__ OF __3__

I hereby CERTIFY that this document is
recorded in the Recorder's Office of
Dauphin County, Pennsylvania.



MAY 0 1 2002

*Philip Spasett*

*Philip Spasett*

Philip Spasett
Recorder of Deeds

I hereby CERTIFY that this document
is recorded in the Recorder's Office
of Dauphin County, Pennsylvania.



*Philip Spasett*

Philip Spasett
Recorder of Deeds

**DEED**

This Indenture  made the 4th Day of December  in the year 2000

*between*                         P. John Sopensky

(hereinafter called the Grantor), of the one part, and

Adrienne Bailey

(hereinafter called the Grantee), of the other part.

**Witnesseth** That the said Grantors for and in consideration of the sum of $76,600.00 lawful money of the United States of America, unto Grantors  well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, his heirs and assigns,

ALL that certain piece or parcel of land with the buildings and improvements thereon erected, situate in Susquehanna Township, Dauphin County, Pennsylvania, more particularly bounded and described as follows, to wit:

BEGINNING at a point on the east side of North Sixth Street at the intersection with the northern line of a 20 foot wide alley, thence along the said east side of North Sixth Street, North 2 degrees 53 minutes East, 100 feet to an iron pipe; thence North 87 degrees 7 minutes East, 75 feet to a point at the dividing line between Lots No. 1 and 2 on the hereinafter mentioned Plan of Lots; thence along said dividing line, South 2 degrees 53 minutes West, 100 feet to a point on the northern side of the aforementioned 20 foot wide alley, thence along the northern side of said alley, South 87 degrees 7 minutes West, 75 feet to a point, the place of beginning.

BEING Lot No. 2 on the subdivision plan of Eugene M. Strine and Gloria Strine, which Plan is recorded in the Office of the Recorder of Deeds of Dauphin County, in Plan Book R, Volume 3, Page 16.

HAVING thereon erected a dwelling house known as 4311 North Sixth Street.

BEING the same premises which Robert D. Kint conveyed unto P. John Sopensky in Deed dated December 3, 1998, recorded December 7, 1998 in Deed Book 3278, page 574.

**Together** with all and singular the improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said grantors , as well at law as in equity, of, in, and to the same.

**To Have and to Hold** the said lot or piece of ground described hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, to and for the only

*Fee Simple Deed Form*

BK 3832 PG 111

ENCLOSURE _____4_____

PAGE ___2___ OF ___3___

proper use and behalf of the said Grantee, his heirs and assigns forever.

**And** the said Grantors, their heirs, executors and administrators do covenant, promise and agree, to and with the said Grantee, his heirs and assigns, by these presents, that the said Grantors and their heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, against the said Grantor and his heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under or any of them, shall and will **WARRANT** and forever **DEFEND**.

*In Witness Whereof,* the parties hereunto set their hands and Seals, Dated the day and year first above written.

Witnesses:

_____          *P. John ____*
Witness                                      _____
                                             P. John Sopensky

Commonwealth of Pennsylvania }
County of _____ } SS:

On this, the 4th Day of December, 2000, before me, a Notary Public for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared **P. John Sopensky**, known to me (satisfactorily proven) to be the person whose name is (are) subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

_____
Notary Public

```
NOTARIAL SEAL
JULIE K. SHULTZ, Notary Public
Middletown Boro.  Dauphin County
My Commission Expires Mar. 31, 2003
```

*The address of the above-named Grantee is*

4311 N. 6th Street
Harrisburg PA 19110

_____
Agent for Grantee

| L25325  | | 12/12/2000 | | | |
|---------|----|------------|------|------|------|
| PREMIER | | LS | | | |
| NO | | TRANSACTION | COUNTY | PENNA | TOTAL |
| 1 | 10 | DEEDS | 13.00 | .50 | 13.50 |
| 1 | 39 | AFFORDABLE HOUSING | 13.00 | | 13.00 |
| 1 | 15 | MORTGAGES | 13.00 | .50 | 13.50 |
| 1 | 39 | AFFORDABLE HOUSING | 13.00 | | 13.00 |
| 6 | 12 | EXTRA PAGES | 12.00 | | 12.00 |
| 2 | 53 | ACT 8 OF 1996 | 4.00 | | 4.00 |

| PA REALTY TRANSFER TAXES | | | | | |
|---|---|---|---|---|---|
| | COMMONWEALTH OF PENNSYLVANIA | | | | 69.00 |
| 30 | SUSQUEHANNA TWP. | | | | 766.00 |
| 93 | SUSQUEHANNA | | | | 383.00 |
| | CASH.. | .00 | CHECK.. | 1601.00 | 1,601.00 |

*Fee Simple Deed Form*

ENCLOSURE ___4___

PAGE ___3___ OF ___3___

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

No.  2002-133b

## OFFICE OF THE SECRETARY OF THE COMMONWEALTH

Harrisburg,    **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Alberto Rodriguez,** now is an acting **Notary Public** duly appointed on April 11, 2002, commissioned and qualified on May 10, 2002 and, as such officer has power within said Commonwealth, to administer oaths and affirmations until April 11, 2006 as the same appears of record and remains on file in this office. I also do hereby certify that it appears by the records of this office that **Alberto Rodriguez** was appointed on December 19, 2001 but that commission was returned because of failure to take the oath of office and that he was again appointed on April 11, 2002 and took the oath of office on May 10, 2002.  I do also hereby certify that it appears by the records of this office that **Alberto Rodriguez** was not commissioned and qualified until May 10, 2002.



IN TESTIMONY WHEREOF, I have hereunto set my
hand and caused the seal of my Office
to be affixed, the day and year above
written.

C. Michael Weaver

Acting Secretary of the Commonwealth

A-53

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

No.  2002-136b

## OFFICE OF THE SECRETARY OF THE COMMONWEALTH

Harrisburg,    **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Anthony B. Marceca,** now is an acting **Notary Public** duly appointed on October 24, 2001, commissioned and qualified, and, as such officer has power within said Commonwealth, to administer oaths and affirmations until October 24, 2005 as the same appears of record and remains on file in this office. I also do hereby certify that it appears by the records of this office that **Anthony B. Marceca** was not appointed or commissioned as a **Notary Public** prior to October 24, 2001.



IN TESTIMONY WHEREOF, I have hereunto set my
hand and caused the seal of my Office
to be affixed, the day and year above
written.

_____
Acting Secretary of the Commonwealth

A-54

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

No.  2002-137b

## OFFICE OF THE SECRETARY OF THE COMMONWEALTH

Harrisburg,    **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Crystal M. Lyde,** now is an acting **Notary Public** duly appointed on May 9, 2001, commissioned and qualified, and, as such officer has power within said Commonwealth, to administer oaths and affirmations until May 9, 2005 as the same appears of record and remains on file in this office.  I also do hereby certify that it appears by the records of this office that **Crystal M. Lyde** was not appointed or commissioned as a **Notary Public** prior to May 9, 2001.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the seal of my Office to be affixed, the day and year above written.

_____
Acting Secretary of the Commonwealth

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                        :
                        Plaintiff       :        NO.  1:CV-01-0084
                                        :        (Judge Caldwell)
                                        :
            vs.                         :        CIVIL ACTION - LAW
                                        :
PAUL EVANKO, MARK CAMPBELL,             :        JURY TRIAL DEMANDED
THOMAS COURY, JOSEPH WESTCOTT,          :
HAWTHORNE CONLEY,                       :
                        Defendants      :

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of Defendants' Brief in Support of Their

Motion for Summary was served on plaintiff's counsel, by first-class mail, addressed as

follows:

Don Bailey, Esquire
4311 North 6th Street
Harrisburg, PA 17110


Syndi L. Guido, Deputy General Counsel
Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA   17101
Dated:  May 20, 2002                    (717) 787-9356

hereby CERTIFY that this document is
recorded in the Recorder's Office of
Dauphin County, Pennsylvania.



MAY 0 1 2002

*Philip Spaseff*

*Philip Spaseff*
Philip Spaseff
Recorder of Deeds



I hereby CERTIFY that this document
is recorded in the Recorder's Office
of Dauphin County, Pennsylvania.

*Philip Spaseff*
Philip Spaseff
Recorder of Deeds

**DEED**

This Indenture  made the 4th  Day of December in the year 2000

*between*                         P. John Sopensky

(hereinafter called the Grantor), of the one part, and

Adrienne Bailey

(hereinafter called the Grantee), of the other part.

## Witnesseth  That the said Grantors for and in consideration of the sum of $76,600.00 lawful money of the United States of America, unto Grantors  well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, his heirs and assigns,

ALL that certain piece or parcel of land with the buildings and improvements thereon erected, situate in Susquehanna Township, Dauphin County, Pennsylvania, more particularly bounded and described as follows, to wit:

BEGINNING at a point on the east side of North Sixth Street at the intersection with the northern line of a 20 foot wide alley, thence along the said east side of North Sixth Street, North 2 degrees 53 minutes East, 100 feet to an iron pipe; thence North 87 degrees 7 minutes East, 75 feet to a point at the dividing line between Lots No. 1 and 2 on the hereinafter mentioned Plan of Lots; thence along said dividing line, South 2 degrees 53 minutes West, 100 feet to a point on the northern side of the aforementioned 20 foot wide alley, thence along the northern side of said alley, South 87 degrees 7 minutes West, 75 feet to a point, the place of beginning.

BEING Lot No. 2 on the subdivision plan of Eugene M. Strine and Gloria Strine, which Plan is recorded in the Office of the Recorder of Deeds of Dauphin County, in Plan Book R, Volume 3, Page 16.

HAVING thereon erected a dwelling house known as 4311 North Sixth Street.

BEING the same premises which Robert D. Kint conveyed unto P. John Sopensky in Deed dated December 3, 1998, recorded December 7, 1998 in Deed Book 3278, page 574.

*Together* with all and singular the improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of the said grantors , as well at law as in equity, of, in, and to the same.

**To Have and to Hold** the said lot or piece of ground described hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, to and for the only

*Fee Simple Deed Form*

BK 3832 PG 111

proper use and behalf of the said Grantee, his heirs and assigns forever.

**And** the said Grantors, their heirs, executors and administrators do covenant, promise and agree, to and with the said Grantee, his heirs and assigns, by these presents, that the said Grantors and their heirs, all and singular the hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto the said Grantee, his heirs and assigns, against the said Grantor and his heirs, and against all and every person and persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under or any of them, shall and will **WARRANT and forever DEFEND**.

*In Witness Whereof,* the parties hereunto set their hands and Seals, Dated the day and year first above written.

Witnesses:

_____          _____
Witness                                    P. John Sopensky

Commonwealth of Pennsylvania }
County of _____     } SS:

On this, the __4th__ Day of __December, 2000__, before me, a Notary Public for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared **P. John Sopensky**, known to me (satisfactorily proven) to be the person whose name is (are) subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

_____
Notary Public

```
NOTARIAL SEAL
JULIE K. SHULTZ, Notary Public
Middletown Boro. Dauphin County
My Commission Expires Mar. 31, 2003
```

*The address of the above-named Grantee is*

4311 N. 6th Street
Harrisburg PA 17110

_____
Agent for Grantee

*Fee Simple Deed Form*

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

No.  2002-133b

## OFFICE OF THE SECRETARY OF THE COMMONWEALTH

Harrisburg,    **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Alberto Rodriguez,** now is an acting **Notary Public** duly appointed on April 11, 2002, commissioned and qualified on May 10, 2002 and, as such officer has power within said Commonwealth, to administer oaths and affirmations until April 11, 2006 as the same appears of record and remains on file in this office. I also do hereby certify that it appears by the records of this office that **Alberto Rodriguez** was appointed on December 19, 2001 but that commission was returned because of failure to take the oath of office and that he was again appointed on April 11, 2002 and took the oath of office on May 10, 2002.  I do also hereby certify that it appears by the records of this office that **Alberto Rodriguez** was not commissioned and qualified until May 10, 2002.



IN TESTIMONY WHEREOF, I have hereunto set my
hand and caused the seal of my Office
to be affixed, the day and year above
written.

Acting Secretary of the Commonwealth

A.53

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF STATE

No.  2002-136b

## OFFICE OF THE SECRETARY OF THE COMMONWEALTH

Harrisburg,     **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Anthony B. Marceca,** now is an acting **Notary Public** duly appointed on October 24, 2001, commissioned and qualified, and, as such officer has power within said Commonwealth, to administer oaths and affirmations until October 24, 2005 as the same appears of record and remains on file in this office.  I also do hereby certify that it appears by the records of this office that **Anthony B. Marceca** was not appointed or commissioned as a **Notary Public** prior to October 24, 2001.



IN TESTIMONY WHEREOF, I have hereunto set my
hand and caused the seal of my Office
to be affixed, the day and year above
written.

_____
Acting Secretary of the Commonwealth

A-54

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF STATE

No.  2002-137b


## OFFICE OF THE SECRETARY OF THE COMMONWEALTH


Harrisburg,     **May 17, 2002**

PENNSYLVANIA, SS:

I, C. Michael Weaver, Acting Secretary of the Commonwealth of Pennsylvania, DO HEREBY CERTIFY, That it appears by the records of this office that **Crystal M. Lyde,** now is an acting **Notary Public** duly appointed on May 9, 2001, commissioned and qualified, and, as such officer has power within said Commonwealth, to administer oaths and affirmations until May 9, 2005 as the same appears of record and remains on file in this office.  I also do hereby certify that it appears by the records of this office that **Crystal M. Lyde** was not appointed or commissioned as a **Notary Public** prior to May 9, 2001.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the seal of my Office to be affixed, the day and year above written.

_____
Acting Secretary of the Commonwealth

A.55

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,                        :
              Plaintiff           :        NO.  1:CV-01-0084
                        :        (Judge Caldwell)
                        :
      vs.                         :        CIVIL ACTION - LAW
                        :
PAUL EVANKO, MARK CAMPBELL,             :        JURY TRIAL DEMANDED
THOMAS COURY, JOSEPH WESTCOTT,          :
HAWTHORNE CONLEY,                       :
            Defendants              :

## CERTIFICATE OF SERVICE

    I hereby certify that on this date a copy of Defendants' Brief in Support of Their

Motion for Summary was served on plaintiff's counsel, by first-class mail, addressed as

follows:

        Don Bailey, Esquire
        4311 North 6th Street
        Harrisburg, PA 17110

                                     _____
                          Syndi L. Guido, Deputy General Counsel
                          Governor's Office of General Counsel
                          333 Market Street, 17th Floor
                          Harrisburg, PA  17101
Dated:  May 20, 2002           (717) 787-9356