ORIGINAL

$> \text{to } cr \, w / o$

(83)
6-12-
Sa

# IN THE UNITED STATES DISTRICT COURT FOR

# THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL G. OBER | ) | CIVIL ACTION LAW |
| | ) | |
| **Plaintiff** | ) | NO. 1: CV-01-0084 |
| | ) | |
| vs. | ) | |
| | ) | (JUDGE CALDWELL) |
| PAUL EVANKO, MARK | ) | |
| CAMPBELL, THOMAS COURY | ) | |
| JOSEPH WESTCOTT, | ) | |
| HAWTHORNE CONLEY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| **Defendants** | ) | |

FILED
HARRISBURG, PA
JUN 11 2002
MARY E. D'ANDREA, CL
Per _____ Deputy Clerk

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS

## MOTION FOR SUMMARY JUDGMENT

I.    BACKGROUND

### A.) PROCEDURAL HISTORY

Plaintiff filed an Amended Complaint on May 2, 2002. On August 28, 2001, the

defendants answered the Complaint. On May 6, 2002 both plaintiff and defendant filed

motions for summary judgment. This brief is in opposition to defendants' motion for

summary judgment. This brief also addresses a number of matters which, in plaintiff's

view, demonstrates an obvious failure to comply with federal and local rules. The

defendants have also engaged in misconduct that certain non parties, as well as possibly

Mr. Ober himself, appear to have already decided will result in further civil litigation.

Notwithstanding those decisions, some of the innuendoes and misinformation engaged in

by defendants through Ms. Christie, Ms. Reynolds, Ms. Guido, and Mr. Sheehan are

responded to in the brief, while others will be addressed directly to the court by Mr.

Bailey. The defendants' attorney's have augmented their brief with an Appendix apparently designed to influence the Court's judgment in a personal way, while lacking any identifiable judiciable purpose. The Court is respectfully requested to disregard the defendants' actions in that regard. See Exhibit "X" hereto.

### B.)  FACTUAL HISTORY

Defendants filed virtually no fact history or factual background with their brief, nor any list of issues, as required by L.R. 7.8. Although one can obviously discern issues from defendant's argument, it is more difficult to respond without a statement of facts in their brief, and none is set forth therein. Consequently, plaintiff incorporates by reference the "Factual History"  presented in his Brief in Support of His Motion for Summary Judgment. That history is as follows:

Plaintiff incorporates by reference his concise Statement of Undisputed Material Facts (UMF) and his Exhibits in Support (enumerated) to include the video depositions which shall be filed in this case and the depositions appended hereto as an Addendum to the Exhibits to the Exhibits in Support.

On or about September 29, 1998 Darrell Ober was contacted by the FBI regarding a public corruption complaint into the Pennsylvania State Police (PSP). Complaint paragraphs' 23 and 24. Shortly after being contacted by the FBI, Ober went to Lt. Colonel Hickes and revealed what the FBI had told him. This occurred on October 5, 1998.

Ober knew Stanton, the most involved PSP member, was from Troop "B" and that his commander Conley, whose responsibility under PSP regulations requires contact with elected representations, was the incoming BPR director (Ober's immediate supervisor).

2

Ober also knew that Hickes could not have been involved in the public corruption but that the other PSP top leaders potentially could. Ober Dep. Pg. 79-85. On October 5, 1998 Hickes ordered Ober not to tell anyone. UMF paragraph 107.

On May 13, 1999 after being cleared by the FBI, Hickes and Ober told Evanko about the FBI investigation. Evanko's reaction was so negative and so angry that it frightened Hickes. Hickes Dep. Pg. 107, UMF paragraph 103. Barbara Christie, one of defendant's attorneys told Hickes he had "acted reasonably", Hickes Dep. Pg. 107-108. Evanko then assigned two PSP Majors to investigate Ober. Evanko Dep. Pg. 179, UMF paragraph 48 Ober was interrogated and ordered to come to the front office (a unique way to conduct an investigation) where he was read his rights and questioned against his will. Ober Affidavit paragraph 5. The investigation into Ober was not in accordance with PSP practices or customs. Ober Affidavit paragraph 5. What followed was a series of antipersonnel actions that included further investigations, UMF paragraph 39. Ober Affidavit paragraph 24, 18. See Ober's affidavit, with detailed annotated descriptions in paragraphs' 1 through 39, of the numerous acts of retaliation taken against him. He was selectively investigated, affidavit paragraphs 8 & 10. He was removed for no reasons from a prestigious Committee, Affidavit paragraphs 13 & 14. He was deprived of important job assets and harassed through petty denials of expenses, affidavit paragraph's 15, 16, 17 and 36. He has had his mental stability questioned in an effort to stigmatized him with his boss. Affidavit's 38 & 39. He has been denied promotional and training opportunities. Affadiavit's 26, 28, 29, 30 etc. If read as a whole the plaintiffs affidavit presents a detailed litany of inexplicable retaliations. All of these anti-personnel actions occurred within the last 8-10 months of an 18-year, spotless career.

Furthermore because defendants filed no factual history Plaintiff also appends his Concise Statement of Material Facts and incorporates it here along with Darrell's Affidavit, to this brief (Affidavit II), his Exhibits in Support of his Motion for Summary Judgment, the addendums to his Exhibits in Support, as well as defendants' documents in support of their motion for summary judgment.

## II.    ISSUES

(Plaintiff's counterstatement of issues as extrapolated from defendants' argument in their brief).

       A.) Defendants retaliated against plaintiff for exercising his First Amendment Rights.

          1.  Plaintiff was engaged in a protected activity.

          2.  Ober's protected activity the sole motivating factor in defendants' retaliatory misconduct.

       B.) Ober was "seized" in violation of his Fourth Amendment rights.

       C.) The defendants conspired to deprive plaintiff of his federally guaranteed rights.

       D.) The defendants are not entitled to qualified immunity.

## III.)    ARGUMENT

Defendants brief is difficult to follow for a number of reasons. It is not only unsupported by citations to the record, but the brief is also oddly structured. There's a Roman numeral (I) followed by a (B) followed by Roman Numerals (III) through (V). There is no subparagraph (A) to Roman numeral I, and there is no Roman Numeral II. Plaintiff will assume he has the correct brief in its entirety.

## STANDARD OF REVIEW

The standard of review in summary judgment cases is well established in the Third Circuit, and is consistent with Supreme Court requirements. Summary Judgment is proper when pleadings and other evidence, including affidavits, indicate there is no genuine factual dispute as to any material fact, and that judgment as a matter of law is in order. See *Anderson v. Liberty Lobby Inc*., 477 U.S. 242 (1986), *Celetex Corp v. Catrett*, 477 U.S. 317 (1986). Plaintiff has already requested summary judgment of this Court and his argument and evidence in support, to include his Concise Statement of Undisputed Material Facts (UMF) his affidavit and Exhibits in Support, and Addendum to Exhibits, are incorporated here. They amply demonstrate that if any material facts are undisputed they support summary judgment for the plaintiff. At worst, material facts are indeed in dispute, such that defendants motion should be denied.

Plaintiff waives no allegation of fact, nor his positions on the law from his motion in support, or his Exhibits in support, in response to defendants' request for summary judgment. Plaintiff makes further objection to defendants brief in support of their motion for summary judgment because defendants nowhere cite to the record, and in only 5 places do they make any general reference to their affidavits. On page 6 of their brief, a general reference is made to the "Young Aff"; on page 7 there are 2 general references made, one to an affidavit from Koscelnak and one to DeWire; also on page 7 is a general reference to "Evanko Aff" and again on page 13 there is a final reference to "Evanko Aff". This manner of briefing not only violates F.R. Civ.P. 56 but it also violates L.R. 7.8. Plaintiff believes, and is tempted, to move to strike the

brief because of its lack of conformity to the rules, but understands and accepts the reality that this Court would be loathe take such a drastic step even if such an action were warranted.

Plaintiff's difficulties are compounded by two additional features of defendant's brief, 1.) while defendant's conclusory statements are simply not supportable on the record, they are hard to counter because many are designed to be half, or irrelevant misleading representations, and, plaintiff also objects to defendants' questionable conduct in attaching Appendix "A" to their brief. Given the demonstrated conduct, and the politics of the defense lawyers, it is more than safe to assume that if defendants could raise a scintilla of a justifiable objection to plaintiff's discovery work and be able to tell the truth at the same time, they would have done so. They can't. Instead they resorted to inaccurate, and in some cases outright false allegations, along with many innuendos, defamation, false light invasion of privacy, invading the privacy of innocent third persons, and all the while they're violating the civil rights of Darrell Ober and others in their scramble to stop this litigation.

Further the defendants insult this court by suggesting that it do what they won't, because they can't, and that is find some way to have this cup pass from them. The facts do not lend support to defendants' motion for summary judgment. So having no choice, plaintiff will respond to the errors, inaccuracies, and falsehoods propounded in defendants' Appendix "A" by affixing hereto, plaintiff's Exhibit "X" which is plaintiff's response to the defendants' scandalous and impertinent comments.

Please also see Ober Affidavit II appended to his Counterstatement. As Ober's affidavit II illustrates, parts of defendants argument particularly as to when he was informed of what information the FBI had, has been distorted by defendants. And another issue worthy of note is that Captain Richard Brown ("Rick Brown") the "investigator" on this case and a material witness has not been accurate in his affidavit. See Ober Affidavit II "Review of Opposition Affidavits paragraph 4. The sum of the facts is that at the very very best from defendants' perspective all material facts are in dispute.

## A.)  First Amendment Rights

### 1.)  Protected Activity

Defendants begin their argument with a mixed reference to the applicable standard of review to support his claims. Defendants their quote <u>Baldassare v. New Jersey</u>, 250 F.3d 188 (3d Cir 2001) for the proposition that whether defendants misconduct was or was not a substantial or motivating factor in the defendants misconduct they can still avoid liability for retaliation by demonstrating that they would have taken the course they took anyway. (Defendants Brief), hereinafter "DB" at page 2 paragraph 3.

After leaving this conclusion dangling defendants move on to argue that Ober was not engaged in protected speech. However this Court has already defined that issue as a matter of law, and the facts are plainly undisputed here. See Court's August 13, 2001 Memorandum Opinion at page 9, second full paragraph. The facts as to the "content, form, and context" of Darrell Ober's activity remains unchanged and unchallenged by defendants with any facts to the contrary. See Plaintiff's Counterstatement of Facts

(CSF) paragraph's 4-11. Simply put, as to prong (1) of a First Amendment retaliation claim, Ober appears clearly to have met the test. This was a political corruption investigation that included high officials. Further Ober's motivation is irrelevant, <u>Denton v. Morgan,</u> 136 F.3d 1038 (5th Cir 1998); <u>Chappel v. Montgomery County Fire Protection District No 1.</u>, 131 F.3d 564 (6th Cir 1998).

Secondly defendants raise the issue of the balancing need test to consider the employer's interest where a public employee protected interest in speech is at stake citing <u>Swineford v. Synder County Pa.</u>, 15 F.3d 1258, 1270 (3d Cir 1994) but they never develop the issue. The reason is that the defendant had no right or interest in being warned that they were potential targets of a political corruption investigation as members of a small identifiable group, namely the top brass of the PSP. Ober could not go to them even if he wanted to. Neither could Ober go to Conley. Conley was Stanton's (the corrupt state trooper) commander and knew the local politicians involved in the probe. Ober couldn't trust to him. See Ober affidavit paragraph 9, appended to his Concise Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment.

The defendants persist in exploiting a red herring in this case. They persist in pretending that there is some significance in Ober not telling Conley of the probe, and instead telling Lt. Col Hickes instead of Lt. Col Coury, and, or Col Evanko. In a nut shell, he couldn't, and exercising proper judgment, he didn't, because all three were potential targets, while Hickes was not. Further, who ever he informed, or even why, is not at issue here since no regulation, custom, or practice of the PSP required that he report to any of the above, or indeed to anyone at all. He did tell Hickes because he

felt the need for advice. Hickes ordered him to be silent and he obeyed that order. The defendants have attempted to bog this whole case down in this false issue because this can satisfy identify any separate reason for doing to Ober what they did. There is more. There are no regulations which provide any guidance. Even AR1-1.02, had subsection (C) been in existence at the time, it would have been of no help to Evanko, or Coury, or Conley, or the other defendants, because they were potential targets, and could not have been informed with out compromising the FBI unvestigation.

Incredibly the defendants are trying to interpret <u>Swineford</u> to stand for the proposition that it's disruptive in the workplace, and an act of disloyalty, to not inform your employer that he's a target of an FBI probe. That's a Mafia norm, not a PSP modus operendi. The defendants end by mindlessly alleging that Ober falsely portrayed top management of the PSP as targets of a criminal investigation. Even this Court should be offended by such dishonest effrontery. It was the FBI's own CI who fingered the top echelons of power, not Ober. Even the defendants said you shouldn't tell a target he's a target. Westcott however, said he would tell Evanko anyway.

### 2.) Sole Motivating Factor

By a simple process of deduction the adverse employment actions Ober suffered cannot be explained by any logic or facts beyond the manifestations of Evanko's and the other defendants' anger. They considered him disloyal because he put his law enforcement ethics above loyalty to the defendants. Defendants efforts to minimize the punitive, displinary nature of the transfer to Washington as harmless is not credible. Were it not so, Paul Evanko would have proceeded with it. See Ober affidavit in support of his motion for summary judgment, paragraph 18. The same is

true of the constructive demotion to lieutenant. The defendants pass it off as a minor matter. But not one witness in this entire case, where 26 depositions were taken can ever remember when another Captain was ever assigned to a lieutenant's position. It was, needless to say, a Scarlet Letter for Ober, an indescribable humiliation.

The defendants go on to pervasively misstate the law. "Adverse employment actions" have already been defined by this Court in its August 13, 2001 Memorandum Opinion at page 11. The record is replete with numerous incidents of harassment, intimidation, humiliation, and embarrassment that cannot be explained in any rational or reasonable way. See Ober affidavit to his Motion for Summary Judgment. Concisely put, the defendants have not even remotely met their Rule 56 burdens on the issue of plaintiff's First Amendment rights. See Plaintiff's Concise Statement of Material Facts in Support of his Motion for Summary Judgment.

### B.) Ober was seized.

Darrell Ober was ordered to report to the "front office" for a custodial interview something never done previously, heretofore unknown and was ordered to sit down and answer questions. He was read his rights, and never informed of any charges. He was never shown a complaint verification because none was ever prepared. The fact is that Ober was told by Williams and Werts that he did nothing wrong, yet was still subjected to the custodial inquiry, is noteworthy. Ober Affidavit paragraph 7. This custodial interview was conducted without any basis in law or fact, yet the defendants blithely contend it was into the circumstances of a criminal investigation. Ober Affidavit paragraph 7. Ober was not free to leave. He was outranked and outgunned. He had no idea what was being done to him or why. His

interviewers were 2 PSP Majors. He had no idea what was happening, if he was going to be arrested or what. He was not told he could not go, but the presence of armed police officers is not the usual scenario even if you are an armed police officer. Nor is this case a U.S. v. Donato, 269 F.Supp 921 (E.D. Pa. 1967) case where a search of locker is sought. This was a seizure of the person without any discernerable proper reason. In Ober's mind it was an obstruction of Justice probe.

### B.)   Conspiracy

This record is so replete with so many facts and circumstances where each of the defendants admit to talking and working together that it's virtually impossible to deny. Evanko called Coury and Westcott into a meeting to discuss what to do on May 13, 1999. See Westcott Deposition at pg 22. They all took actions to injure Ober. Westcott lined up Williams and Werts. Evanko did the transfer; took Ober off the Book Committee and put him in a lieutenant's slot to answer a few. Coury did a couple baseless investigations on Ober including one in to his private memorabilia collection to name a few more of expenses and helping Evanko cover the illicit transfer. Conley was in on the abortive transfer and a number of antipersonnel actions including taking Ober's phone, descending reimbursement of expenses, and helping Evanko cover the illicit transfer. Westcott was in on the PEMA denial, the transfer and the investigation. Coury topped it all with the suggested pschological exam,

### Qualified Immunity.

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed 2d 396 (1982) is the prime source of federal qualified immunity law. Harlow sets forth a reasonable man test. If read against Baldassare, which harkens back to 1983 in pointing out First

amendment Protection for public employees as a matter of law in the 3rd Circuit, the defendants, would clearly have been aware that know, or have to know that they were violating Ober's clearly established federally guaranteed rights. Further, this Court has already reviewed and defined the qualified immunity issues in this case. Given that plaintiffs argue that they have met their Rule 56 burden's, should the Court agree, the defendants have not shown they are entitled to qualified immunity.

**ADDITIONAL MATTERS:**

As this brief is being finished plaintiffs counsel received in the morning mail a copy of this Court's order compelling discovery. At no time did plaintiff or his counsel ever receive a brief in support of defendants motion but the motion was moot anyway. Plaintiff supplied a second copy of the documents requested and this – like the first are covered by a receipt (even though defendants say they never got the first copy). The only documents not provided were plaintiffs income tax records, and they will be provided, although plaintiff objects (they have all the information – this is more harassment). To further comply with the spirit and letter of the Court's June 10, 2002 order plaintiff's counsel will contact opposing counsel to see what else they need.

**IV.)   CONCLUSION**

The defendants have not met the burden of Rule 56.

**WHEREFORE** this Court is respectfully requested to deny defendants motion for Summary Judgment.

Respectfully Submitted,

Don Bailey, PAID# 23786
4311 N. 6th Street
Harrisburg, PA  17110
(717) 221-9500

June 11, 2002

IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL G. OBER | ) | CIVIL ACTION LAW |
| | ) | |
| Plaintiff | ) | NO. 1: CV-01-0084 |
| | ) | |
| vs. | ) | |
| | ) | (JUDGE CALDWELL) |
| PAUL EVANKO, MARK | ) | |
| CAMPBELL, THOMAS COURY | ) | |
| JOSEPH WESTCOTT, | ) | |
| HAWTHORNE CONLEY, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S EXHIBIT "X" IN RESPONSE TO DEFENDANTS APPENDIX "A" TO THEIR BRIEF IN SUPPORT OF DEFENDANTS SUMMARY JUDGMENT

### I.)    ISSUES

Did plaintiff violate any discovery rules or behave unethically in any way, or

even fail to disclose his discovery methodology and/or practices to the

defendants.

Suggested Answer No!

### II.)    BACKGROUND

On or about May 20, 2002, the defendants filed a brief in support of

their summary judgment motion. The brief was accompanied by a Statement

of Undisputed Facts and some exhibits. The brief contained virtually no

1

"Statements of Facts" or Questions Involved," "but, assuming the defendants' Statement of Undisputed Facts and Exhibits can satisfy the rule, the brief's argument still made not a single citation to the record or even their own documents. Defendants did however generally make reference to 4 affidavits. Regardless, appended to the brief was an Appendix "A". Appendix "A" is a vehicle through which a number of accusations and innuendoes ~~to discovery in this case~~ *not so* obliquely aimed at plaintiff's counsel and his family under the guise of being *related to discovery in this case* are made by the defendants. In sum the defendants therein raise the following questions and/or allegations:

> 1.) Don Bailey is improperly or impermissibly connected to P.R. Video.

> 2.) The defendants' lawyers claimed not to know Don Bailey was married to Adrienne Palarino Bailey, the owner and operator of P.R. Video.

> 3.) The Video operators contracted by P.R. Video were not qualified.

> 4.) Adrienne Palarino Bailey somehow improperly deceived the defendants about something, like her being married to Don Bailey, or that she owned P.R. Video.

**RESPONSE:**

P.R. Video was the brainchild of Don Bailey. After years of vexatious problems associated with deposition transcripts that did not conform to notes nor the recollections of witnesses and counsel, Mr. Bailey studied the rules carefully and came to the conclusion that something had to be done. Merely recording by alternative means, as the rules allow, was not enough. Not only was accuracy a problem, but costs were, for many clients, prohibitive. Although there is no (nor would be) any conflict should Mr. Bailey own or have an interest in P.R. Video, he has none. Adrienne Palarino Bailey owns and runs P.R. Video. She has never attempted, or even been concerned, with concealing her identify or her personal relationship to Don Bailey. There is no legal, ethical, moral, or practical reason known to Don or Adrienne Bailey to even want to do such a thing. Incidentally, P.R. Video has no employees. And it never has had employees; however, upon consultation with Adrienne Palarino Bailey, she says she does plan at some time to have an employee(s). The defendants imply, or allege, that one of the independently contracted notaries who have done videography work for P.R. Video, namely Mr. Anthony Marceca, is an "associate of Mr. Bailey's" or an "employee" of P.R. Video. That is false. It is true that Mr. Marceca is a good

friend of Don Bailey's. And he at least expressed on two separate occasions, an interest in P.R. Video, to Adrienne Palarino Bailey, hoping to become more involved. But in order for the defendants' lawyers to know that, they would have to be tapping telephones because those conversations (of which there were only 2, and which were cursory in nature, occurred on the telephone). They were never followed up on, and were only exploratory in nature. Mr. Marceca does not own or have any interest in P.R. Video, and he has never had any interest. The defendants would have this Court believe that Mr. Marceca and, or, Mr. Rodriquez, improperly represented themselves as notary's. That is absolutely, libelously, false. In both situations these gentlemen were in the process of finalizing their notary process having already been approved at the time. This was openly revealed to opposing counsel, and in fact Mr. Bailey even advised Ms. Reynolds that these gentlemen were in the process of acquiring their notary and that if there were any concerns we didn't have to go forward with the depositions – Mr. Ober was present at the time, as was Mr. Marceca and Adrienne Bailey was at the doorway and Ms. Reynolds voiced no concern.

At no time did any P.R. Video videographer, including Mr. Marceca, Mr. Rodriquez, or Ms. Lyde, ever indicate that they were a notary when they were not, nor did Mr. Bailey ever mislead opposing counsel or anyone else

4

about their being ~~notaries~~ *a notary*. Most notably, the rules require that if a party

objects to the taking of deposition testimony, they must do so right away.

Even applying equitable principals, and giving these attorneys, and the

defendants, the benefit of their falsely taken position about credentials

regarding the two depositions (Williams and Carr's) they complain about,

they have expressly waived all objections in their brief. The reason they

have done so is that after unlawfully investigating their victims, under badge

of this law suit no less, and then further violating the rights of P.R. Video,

Adrienne Palarino Bailey, Darrell Ober, Anthony Marceca, Albert

Rodriquez, and by innuendo Crystal Lyde, they could find no wrongdoing.

Perhaps the best example of how downright misleading these barristers can

be is best illustrated by taking a reference from their brief and comparing it

to their own record. See Brief in Support of Defendants' Motion for

Summary Judgment at page A2. The defendants would have this Court

believe that Mr. Bailey misled the witness in that deposition about an errata

sheet. Simply reading just one more page (page 15) of the defendants very

own stenographic transcript will reveal that Mr. Bailey was referring to his

own transcript of the video record (via Ms. Reynolds) and expressly not

objecting to having the witness come to Bailey's office to review Ober's

transcript from the video! These people have simply searched in vain to find

5

some way out of a record that is devastingly bad for the defendants and they have failed. The result is an attempt to smear and distort as a way of responding where the facts and the law can't help them. So hungry to cast aspersions that they aren't thinking well, they even inadvertently admit that office conversation revealed that "Adrienne" is Don Bailey's wife and they have "six children". In fact our youngest daughter (9 months), Shannon, comes to work with her parents and all these attorney's know that. They've been to Bailey's office numerous times where the depositions were done and all this has been  mentioned in casual conversation during many open discussions ie. About Don and Adrienne working together, their children, P.R. Video etc..  The defendants all knew what, and who, P.R. Video is, and was, and that no effort was ever made to conceal or misled about anything. In fact they expressly requested copies of P.R. Video's transcripts because they were "so much cheaper" than the state contracted service (Sergeant's Reporting). This was while they were setting up this effort to obfuscate the discovery process at which they have so miserably failed. But this way to practice law is apparently not new. After receiving defendants' brief, plaintiff's counsel (having been smeared by some real professionals who make these amateurish efforts look anemic at best) decided to do some checking of his own because people who behave this way usually project.

6

Mr. Bailey learned that Ms. Christie has a serious history of misconduct that has caused terrible damage to herself and others in the past. By courtesy of the Philadelphia ~~Inquiry~~ *Inquirer*, that history includes destroying evidence and disobeying court orders. This Court need only check with Philadelphia Common Pleas Court Judge William Mazzola. In one case – the Santiago case, names of witnesses, with exculpatory information, were unlawfully withheld. And then there is the prosecutorial misconduct which caused the overturned convictions of Raymond Martorano and Albert Daidone for the murder of Roofers' Union boss John McCullough. The perpetrator was Ms, Christie. In 1991 a federal judge ruled that Barbara Christie improperly kept black people off a jury in a homicide case. The State Supreme Court overturned a manslaughter conviction in 1992 because Ms. Christie unlawfully defied the trial judge. In yet another murder case, back in 1983, the Court granted a mistrial saying Christie ignored his rulings. At one point Christie allegedly urged Judge Ribner (Philadelphia Court of Common Pleas) to see "both sides, not just the left side". Such behavior has been mirrored in this case. Discovery not complied with, evidence missing from public files, documents created so recently that the ink smears on them. Witnesses names and statements withheld in violation of F.R. Civ.P. 26 (not that they do defendants any good however, with the exception of perhaps

7

trying to help Mr. Campbell), and the list goes on and on – led by the distortion over subsection (c) to AR1-1.02 which is still technically an issue (ie. sanctions) before this Court.

After 11 years of litigation plaintiffs counsel won an apology and an acknowledgement of error in writing by State Treasure Barbara Hafer for false accusations made during a campaign. Hafer alleges she was lied to by federal authorities (Richard Thornburgh's associates) when she unlawfully accused Don Bailey of wrongdoing many years ago. And that case was won in the context of campaign rhetoric. The point is that this type of cheap political silliness in not only actionable, it's correctable, and should be beneath the dignity of any officer of the court. Counsel in fact apologizes for having to pen this response, but has no other choice when defendants and their attorney's decide to behave in this manner. What, for example, does Adrienne Palarino Bailey's driving record, or personal information on her, and her family, have to do with this law suit? And what does her family's tax liens have to do with any of this litigation? Why does plaintiff's counsel have to explain that his accountant Mr. Robert Wolf, of Grey's accounting in Jeannette Pennsylvania, died and left unresolved, some tax issues that have been worked out, as it were, with the federal government, who files liens to protect their rights on a regular basis? So what? Such occurrences and

similar differences between the government and taxpayers happen every year. And what does Adrienne Palarino Bailey's driver's license record (illegally obtained by defendants in violation of law and PSP regulations), have to do with any of this either? The answer is nothing even if she does take a pretty good picture (which doesn't do her justice by the way) at least by driver's license photo standards.

These attorneys are hoping this Court will lash out at Mr. Bailey because they hear he is not too well liked by the Middle District Courts. Rumor has it that a few of the Middle District Judges got together and decided to cooperate (quite improperly incidentally) on getting Mr. Bailey for his practice of civil rights law i.e. that they were "out to get him". These rumors do have a basis in fact, but Mr. Bailey knows where and from who this misconduct emanates. Defendants' attorneys on the other hand do not. They have not only made an error by shooting in the dark, they have now subjected themselves to suit for actionable wrongdoing. There is no misconduct by plaintiff or his counsel, or anyone else. The law is being followed and adhered to religiously and everyone's rights are being respected, albeit at a cheaper price and for a more accurate record.

Video depositions don't lie. This Court should indeed study this case closely. Plaintiff's confident the court shall learn how vacuous the

9

defendants position is on the facts, and grant the plaintiff's own Summary

Judgment motion as a matter of law. When doing so it should strike the

defendants' Appendix "A" and in fairness, plaintiff's Exhibit "X" since both

are irrelevant and immaterial surplusage. Once again, plaintiffs counsel

apologizes for having to respond to defendants "Appendix A".

Most Respectfully,

Don Bailey PAID# 23786
4311 N. 6th Street
Harrisburg, PA  17110
(717) 221-9500

June 13, 2002

## *CERTIFICATE OF SERVICE*

I, Don Bailey do hereby certify that a true and correct copy of the aforegoing ***Plaintiff's***

***Exhibit "X" in Response to Defendants Appendix "A" to their Biref in Support of Defendants***

***Summary Judgment*** was served upon the individual named below via first class mail postage pre-

paid at the indicated address:

Joanna Reynolds, Esquire
Barbara Christie, Esquire
1800 Elmerton Avenue
Harrisburg, Pa 17110

Syndi Guido, Esquire
333 Market Street, 17th Floor
Harrisburg, Pa 17101

DON BAILEY ESQUIRE
4311 N. 6TH STREET
HARRISBURG, PA 17110
(717) 221-9500

June 11, 2002