**ORIGINAL**

**FILED**
HARRISBURG, PA
JUN 1 4 2002
MARY E. D'ANDREA, Cl
Per _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRELL G. OBER, | : | |
| Plaintiff | : | NO. 1: CV-01-0084 |
| | : | (Judge Caldwell) |
| vs. | : | |
| | : | CIVIL ACTION - LAW |
| PAUL EVANKO, MARK CAMPBELL, | : | |
| THOMAS COURY, JOSEPH WESTCOTT, | : | JURY TRIAL DEMANDED |
| HAWTHORNE CONLEY, | : | |
| Defendants | : | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES M. SHEEHAN
General Counsel
Commonwealth of Pennsylvania

SYNDI L. GUIDO
Deputy General Counsel

BARBARA L. CHRISTIE
Chief Counsel, Pennsylvania State Police

JOANNA N. REYNOLDS
Assistant Counsel, Pennsylvania State Police

Governor's Office of General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 783-6563

Dated: June 14, 2002        (Counsel for Defendants)

## PROCEDURAL HISTORY AND STATEMENT OF THE CASE

On January 16, 2001, the plaintiff, Captain Darrell Ober, filed a civil rights complaint against the defendants. After consideration of the defendants' subsequent motion to dismiss, this Court dismissed the bulk of Ober's claims in an order and opinion dated August 13, 2001. On May 6, 2002, the defendants filed a motion for summary judgment, along with a statement of the material facts that are not in dispute. That statement is incorporated herein by reference.

Also on May 6, 2002, Ober filed a motion for summary judgment. On May 22, 2002, Ober's counsel served the defendants with copies of his statement of undisputed material facts, Ober's affidavit, and his brief supporting his motion for summary judgment. In that brief, Ober raised two claims: (1) that the defendants retaliated against Ober for exercising his First Amendment rights; and (2) that Ober was unlawfully seized in violation of his Fourth Amendment rights. This brief is in response to those claims.

## ARGUMENT

A reviewing court may enter summary judgment where there are no genuine issues as to any material fact and one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The evidence presented must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986).

A factual dispute is not material unless it might affect the outcome of the suit under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Likewise, a factual dispute is not "genuine," unless there is sufficient evidence to allow a reasonable factfinder to return a verdict for the nonmoving party. *Id.* at 249. As the moving party here, Ober bears the initial burden of identifying evidence he believes shows an absence of a genuine issue of material fact. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986). He may discharge that

burden by demonstrating an absence of evidence to support the nonmoving party's case. *Id.* at 325. He has not met that burden.

It is not enough for Ober to merely reiterate the conclusory allegations and opinions in his complaint and affidavit. He cannot simply replace the "conclusory allegations of [his] complaint...with conclusory allegations of an affidavit." *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In affidavits filed in support of a motion for summary judgment, an affiant must ordinarily set forth facts, rather than opinions or conclusions. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). While the use of opinion evidence in an affidavit can be appropriate to support or oppose a motion for summary judgment, only opinion testimony that would be admissible at trial may be considered. *See Paton v. La Prade*, 524 F.2d 862, 871 (3d Cir. 1975). An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden. *See Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985); *see also Liotta v. Borough of Springdale*, 985 F.2d 119, 122 (3d Cir. 1993) (a "belief," not based on personal knowledge, is mere speculation and therefore insufficient to withstand summary judgment).

Ober is not entitled to summary judgment as a matter of law. He has not met his burden of demonstrating an absence of evidence to support the nonmoving party's case, and the evidence is not such that a reasonable factfinder could return a verdict only for him. *See Anderson*, 477 U.S. at 248. Accordingly, Ober's motion for summary judgment should be denied.

## I. PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS RETALIATED AGAINST HIM FOR EXERCISING HIS FIRST AMENDMENT RIGHTS.

Contrary to Ober's assertion on page 5 of his brief, this Court has *not* "already ruled that Ober was engaged in protected activity." In its opinion granting in part the defendants' motion to dismiss, the Court noted that at that stage of the proceedings it was *required* to accept as true the factual allegations in Ober's complaint and construe any inferences from those allegations in his favor. *See United States v. Occidental Chem. Corp.*, 200 F.3d 143 (3d Cir. 1999). The court merely observed that Ober had sufficiently *alleged* a matter of public concern to survive the motion to dismiss.

That standard of review no longer applies at the summary judgment stage, and Ober's allegations that are unsupported by any facts of record can no longer be taken at face value. Indeed, his allegations have been completely refuted by the factual record developed since the Court decided the defendants' motion to dismiss. As thoroughly demonstrated in the defendants' statement of material facts and in their response to Ober's statement of material facts, the evidence reflected in depositions and sworn affidavits shows conclusively that Ober did not engage in protected speech. Indeed, the factual record in this case completely supports the defendants' motion for summary judgment.[1]

### A. Right to Free Speech

To prevail on his First Amendment retaliation claim, Ober must show (1) that he engaged in activity protected by the First Amendment; and (2) that the protected activity was a substantial or motivating factor for the alleged retaliation. If Ober can establish that his protected activity

---

[1] Furthermore, contrary to the implication in his brief, while this Court recited Ober's allegations of the adverse employment actions he believes have been taken against him, the Court did not conclude that those actions were substantiated in this case. Again, the Court determined that Ober had sufficiently *alleged* First Amendment claims to survive the defendants' motion to dismiss. As the record now demonstrates, neither Ober's transfer to Area III nor any of the other alleged employment actions he complains about affected his salary, rank, or benefits. As such, they are not material adverse actions and may not be the basis for a claim under 42 U.S.C. § 1983. *See Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

3

was a substantial or motivating factor, the defendants may still defeat his claims by showing they would have taken the same action in the absence of the protected conduct. *See Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001).

In this case, Ober cannot even establish the threshold prong – that he engaged in protected speech. A court's inquiry on this first step "requires balancing the public employee's interests in commenting on matters of public concern against the public employer's interests in efficiency." *Swineford v. Snyder County Pennsylvania,* 15 F.3d 1258, 1270 (3d Cir. 1994). Only if a public employee's speech concerns a public matter should a federal court review the wisdom of the employer's personnel decisions. *See Connick v. Myers*, 461 U.S. 138, 146 (1983) (when employee's speech relates to personal matters, government officials enjoy wide latitude in managing their offices, without intrusive judicial oversight in the name of the First Amendment). Whether speech is a matter of public concern "involves an examination of the content, form, and context of a given statement as revealed by the whole record." *Id.* at 1271. Based on the undisputed material facts, Ober did not engage in protected activity.

In late September or early October 1998, the FBI had information that an enlisted member of the Pennsylvania State Police was allegedly receiving pay-offs for assisting state police applicants to obtain cadet positions. (Kush Dep. at 12-13, 33-34; Ober Dep., 12/05/2001, at 77, 81.) After conferring with other State Police personnel, FBI Special Agent Kush called State Police headquarters and asked for Internal Affairs; he was transferred to Captain Ober. (Kush Dep. at 24-27, 224; Soohy Dep. at 39-40) Kush asked Ober to assist him in obtaining information about the cadet selection process. (Kush Dep. at 34; Ober Dep., 12/05/2002, at 82)

On October 5, 1998, Ober decided to bypass his immediate supervisor, then Major Conley, and give information about the FBI investigation to Lieutenant Colonel Hickes, who was outside Ober's chain of command. (Hickes Dep. at 47-48, 58-60; Conley Dep. at 32-33, 50, 84-

4

85, 88-89, 107-108, 178; Ober Dep., 12/05/2001, at 88-89, 120, 147; Evanko Dep. at 80, 104-105, 109) Ober falsely told Hickes the FBI had expressly directed him to maintain absolute confidentiality. (Hickes Dep. at 49-51, 58-60) In fact, the FBI never asked Ober to keep the matter a secret; the FBI had already talked to several other members of the State Police about the very same investigation. (Soohy Dep. at 15-16, 27-28; Kush Dep. at 35-36, 71-72, 164, 189-191, 212, 218-220; Hickes Dep. at 177-178; Monaco Aff. at ¶¶ 3-7; Behrens Aff. at ¶¶ 2-4, 7-8) Ober asserted he felt the matter should be kept confidential because the FBI had come to him with the information, rather than the Commissioner or his Deputies. However, Ober conceded that the FBI never explicitly asked him not to disclose the information to his Bureau Director; according to Ober, the FBI was not in a position to give him such a directive. (Ober Dep., 12/05/2001, at 105-107, 116)

Further, there is no evidence that the FBI ever believed the Commissioner, his deputies, or the Governor's Office were involved in any illegal activity. (Kush Dep. at 39-41, 45, 51-53, 103, 106, 113, 115, 150) Rather, Ober was the one who made that suggestion, based on a wiretap tape he heard several weeks *after* he decided to inform Lieutenant Colonel Hickes, rather than Major Conley, about the investigation. (Soohy Dep. at 17-18, 33-37; Kush Dep. at 39-41, 45, 50-53, 103, 139, 205-207) Moreover, Ober leapt to that conclusion based on gratuitous statements made by Dennis Jay Bridge, the person attempting to buy his way into the State Police. (Kush Dep. at 39-41, 45, 131-132, 142, 197-202, 206-207, Kush Exhibits 2, 3; Evanko Dep. at 58) Ober had no reason to believe Bridge had any accurate information about Pennsylvania State Police hiring procedures.[2]

---

[2] Not only did Ober mischaracterize the nature of the F.B.I. investigation to Lieutenant Colonel Hickes, he also mischaracterized the specific information he presented to Hickes. Hickes specifically recalls Ober telling him the word "Colonel" had been used on the wiretap; however, Bridge actually mentioned a "Lieutenant Colonel."

5

To this day, it is unclear why Ober was concerned with keeping the matter from Major Conley at all. Ober's decision to ignore state police regulations and report the matter to Lieutenant Colonel Hickes was a matter of personal, rather than public, concern. Thus, the Court need not even reach *Swineford*'s balancing test.

Even if Ober's conduct in bypassing his immediate supervisor was on a matter of public concern, the employer's interests may outweigh the plaintiff's interest where the speech:

> "(1)'impair[ed] discipline by superiors'; (2) 'impair[ed] . . . harmony among co-workers'; (3) 'ha[d] a detrimental impact on close working relationships for which personal loyalty and confidence are necessary'; (4) 'impede[d] the performance of the speaker's duties'; or (5) 'interfere[d] with the regular operation of the enterprise.'"

*Swineford*, 15 F.3d at 1272 (citing *Versarge v. Clinton,* 984 F.2d 1359, 1366 (3d Cir. 1993), quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). An additional consideration is whether the plaintiff] "knowingly or recklessly made false statements and whether [the] speech was motivated by animus." *Id.*

Many of the interests outlined in *Swineford* are implicated in this case. State Police regulations required Ober, as the Director of the Internal Affairs Division, to tell his supervisor, Major Conley, that he had just received information about a trooper who was supposedly involved in illegal activity. *See* FR 1.17(b). Inexplicably, Ober chose not to do so.[3]

Instead, Ober circumvented his chain of command; he gave Lieutenant Colonel Hickes misleading information, falsely portraying top management of the State Police as targets of a criminal investigation. He also misrepresented the confidential nature of the issue. Because of that misrepresentation, Lieutenant Colonel Hickes swore Ober to secrecy but then told members of the Governor's Office that members of the State Police command staff might be implicated in

---

[3]There was no reason for Ober not to tell Conley about the investigation because, according to Ober's own deposition, there was no legitimate basis to believe that Conley had anything to do with a cadet job-selling scheme.

6

a job-selling scheme. (Hickes Dep. at 58-59, 183; Wooley Aff. at ¶¶ at 4-6, 8; Labecki Aff. at ¶¶ 3-4, 6) These baseless rumors obviously could have caused the Commissioner and his Deputies unwarranted embarrassment. (Evanko Dep. at 46; Coury Dep., 03/12/2002, at 38) Clearly, the government's interest in proper management of the State Police outweigh any personal reasons Ober may have had for going outside his chain of command and misrepresenting the facts to Lieutenant Colonel Hickes.

### B.     Right of Association and to Petition the Government

Although in his brief Ober suggests he has a cause of action based on the First Amendment right of association and right to petition the government, he has never specifically asserted those claims until now. Ober's First Amendment claim under those theories should be deemed abandoned for purposes of his motion for summary judgment because he has not previously, nor has he now, set forth any facts or legal argument supporting a claim based on those theories. *See Hoffman v. Bankers Trust Co.*, 925 F. Supp. 315, 318 (M.D. Pa. 1995) (plaintiff's claims were deemed abandoned because she failed to raise them in her complaint or address them in a brief supporting her summary judgment motion).

Nevertheless, while there is no constitutionally enumerated "right of association," the United States Supreme Court long ago recognized a "right to associate for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *See Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984) (right to "expressive association" protects the freedom to associate with others in pursuing First Amendment ends). Ober apparently claims the defendants violated his right to expressive association by removing him from the book committee and denying him training opportunities, promotions, and the ability to confer with colleagues.

---

(Ober Dep., 12/05/2001, at 131) Ober simply claimed he did not really know Major Conley. (Ober Dep.,

7

However, Ober's brief simply reiterates his conclusory allegations without making any supporting legal argument. He utterly fails to show how training opportunities, promotions, conferring with colleagues or working on the book committee involve the sort of expressive association the First Amendment has been held to protect. *See, e.g., City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989) (barring teenagers from certain dance halls does not infringe on any constitutionally protected expressive association).

Furthermore, Ober has presented no evidence other than his own conclusory affidavit to support his claim that the defendants' actions were intended to punish him for engaging in protected First Amendment activity. *See Liotta*, 985 F.2d at 122 (plaintiff's affidavits based on opinion and conclusions neither raise a material issue of fact so as to preclude granting defendants' motion for summary judgment nor tend to establish plaintiff's substantive claims). Thus, Ober is not entitled to summary judgment on his free speech claim. *See Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 789 (3d Cir. 2001) (moving party's conclusory allegations unsupported by explanation or facts in the record do not entitle movant to summary judgment on the claim at issue.)

Likewise, Ober does not set forth any facts of record to establish that the defendants violated his right to petition the government or access the courts. The First Amendment right to petition the government for redress of grievances includes both administrative and judicial processes. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

In support of this claim, however, Ober offers nothing more than his own affidavit to conclude that the defendants took retaliatory or adverse employment actions against him for exercising his right to file grievances, mandamus and Whistleblower actions in state court, or this lawsuit. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (to prevail on retaliation

---

12/05/2001, at 125; Ober Dep., 12/07/2001, at 176)

8

claim, plaintiff must establish he engaged in protected activity, the defendants responded with retaliation, and his protected activity was the cause of the retaliation). Again, conclusory allegations and opinions, unsupported by explanation or facts of record, do not suffice to meet Ober's burden of persuasion on his summary judgment motion. He is not entitled to summary judgment on a retaliation claim. *See Liotta*, 985 F.2d at 122.[4]

## II. Even if Ober engaged in protected activity under the First Amendment, it was not a substantial or motivating factor for any action he considers retaliatory.

Ober claims the defendants retaliated against him through a series of adverse employment actions, in which he was subjected to investigations and personal attacks, inappropriately transferred, constructively demoted, refused promotions, and denied overtime and educational opportunities. According to Ober, he was also harassed, shunned, and ostracized at the defendants' behest. Yet, Ober has not produced any evidence to support any of his allegations.

As the Third Circuit has recognized, "not everything that makes an employee unhappy" should be actionable. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir. 1997). "Otherwise, minor and even trivial employment actions that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination suit." *Id.* (quoting *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)). Instead, the complained-of conduct "must be serious enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson*, 120 F.3d at 1300.

Ober was dissatisfied with the upcoming transfer to work with the Area III commander. However, "a purely *lateral* transfer," which does not involve a demotion in form or substance,

---

[4]Curiously, to support his right to petition claim, Ober cites to paragraphs 33-36 of his affidavit. However, while paragraph 33 notes "court actions and grievances" Ober filed, paragraphs 34-36 relate only to AR 1-1. Ober has failed to explain how AR 1-1 relates to or supports his retaliation claim. (This Court has already ruled in its opinion on the defendants' motion to dismiss that the defendants did not abuse legal process by mistakenly including a reference to AR 1-1 in their original brief in support of a motion to dismiss Ober's original complaint.)

9

"cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996).

Moreover, Colonel Evanko's decision to transfer Ober to Area III was completely unrelated to Ober's actions during the FBI investigation and was not a demotion in form or substance. (Evanko Dep. at 236; Conley Dep. at 187; Westcott Dep. at 99-100, 104; Coury Dep. 04/15/2002, at 190) The transfer did not affect his salary, rank, or benefits in any way (Ober Dep., 12/07/2002, at 39-40; Lazzaro Dep. at 60, 83-84), nor did it carry any negative implications for Ober's future career. If anything, the transfer would have enhanced his chances for promotion. (Wescott Dep. at 99-100, 104; Young Aff. at ¶¶ 4, 5) Colonel Evanko needed a Captain to assist the Area III commander in preparing for the National Governors Associations' Convention. (Westcott Dep. at 97-98, 106; Evanko Dep. at 218-219, 229, 231, 285; Coury Dep., 03/12/2002, at 64) As Commissioner, Colonel Evanko has the discretion to transfer commissioned officers anywhere he desires within the Department to meet the needs of the organization. *See* Pennsylvania State Police Field Regulation 3-2.05, the Pennsylvania State Police Regulation on General Transfers. Ober's transfer to the Special Projects Officer position in Area III was not a material adverse action and may not be the basis for a claim under § 1983.

More importantly, Ober never actually went to Area III. Although Ober wanted to stay in the Harrisburg area, no captain's position was vacant in the Harrisburg/Hershey area in early 2000. Accordingly, the Commissioner briefly assigned Ober to the Bureau of Liquor Control Enforcement as Central Section Commander, a position Major Koscelnak urgently needed to fill. (Evanko Dep. at 227-228, 238, 240; Evanko Exhibit C; Koscelnak Dep. at 13-14; *Ober v. Evanko*, Petitioner's Mot. to Withdraw, App. A, No. 35 N.D. 2000 (Pa. Commw. filed Jan. 27, 2000))

10

Of course, Ober was not happy with this brief assignment as the Central Section Commander, viewing it as a constructive demotion because the position is generally held by a Lieutenant. (Koscelnak Dep. at 8) Again, Ober suffered no loss of pay, rank or benefits, and Colonel Evanko assigned Ober to the next available Captain's position in the Harrisburg area. (Evanko Dep. at 237, 293; Conley Dep. at 185) The fact that Ober was unhappy with the Central Section Commander assignment does not make his claim actionable under § 1983. *See Robinson*, 120 F.3d at 1300.

As for Ober's other allegations, there is no evidence the defendants prevent Ober from being assigned to the Pennsylvania Emergency Management Agency (PEMA) so he could have earned overtime. (Koscelnak Dep. at 16-20; DeWire Dep. at 67, 69, 74; Evanko Dep. at 241-242; Westcott Dep. at 145-147; Coury Dep., 03/12/2002, at 100-101); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (personal involvement in alleged wrongs is required for § 1983 liability). When Ober was transferred to the Bureau of Liquor Control Enforcement as Central Section Commander, the Bureau Director, Major Koscelnak, refused to allow Ober to assume PEMA duties; Major Koscelnak believed Ober did not have time to devote to PEMA activities. Furthermore, the restrictive funding for positions in the Bureau of Liquor Control Enforcement did not allow for alternative part-time assignments, such as PEMA. (Koscelnak Dep. at 16-19)

Ober also complains he was denied educational opportunities, subjected to investigations, criticized, shunned and removed from a volunteer book committee. None of these actions rise to the level of a constitutional deprivation. Employment decisions that have intangible and indirect effects on an employee's status do not qualify as "adverse" actions. *See Weston v. Pennsylvania, Dep't of Corrections*, 251 F.3d 420 (3d Cir. 2001) (a tangible, adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits"). Likewise, harsh criticism

11

or counseling and general allegations of being treated "differently or more harshly" do not constitute adverse employment actions. *See Simmerman v. Hardee's Food Sys., Inc.*, 1996 WL 131948, at *14 (E.D. Pa. March 22, 1996); *Moore v. Grove North America, Inc.*, 927 F. Supp. 824, 831 (M.D. Pa. 1996); *see also Loftus v. Southeastern Pennsylvania Transp. Auth.*, 843 F. Supp. 981, 988 (E.D. Pa 1994) (plaintiff must provide the degree of particularity that animates the fair notice requirement or his claim will be dismissed.).

Ober's request to attend training at the School of Police Staff and Command was denied because his request was received after the deadline. (Einsel Supplemental Aff. at ¶¶ 3-4) Ober was not harmed by the two administrative investigations he complains about. In fact, Ober was completely vindicated by the investigation into retired Colonel Conti's complaint that Ober was misusing his position as a state police officer to improperly solicit historical artifacts from retired members or their widows. (Coury Dep., 04/15/2002, at 50, 74)

The administrative inquiry Colonel Evanko requested was consistent with AR 4-25 and the practices of past Commissioners. (Hickes Dep. at 158-162) Ober was not disciplined or counseled about his actions. Although Ober had violated FR 1.17(b), Evanko felt discipline was unnecessary because Ober had obeyed Hickes's order to keep the FBI probe secret. (Evanko Dep. at 80-81, 105, 173-175, 176, 297, 320-321) Colonel Evanko was not even particularly concerned about Ober's actions; Evanko's primary focus was on how Lieutenant Colonel Hickes had handled the situation. (Evanko Dep. at 178)

Ober was upset when Colonel Evanko removed him from the Centennial book committee in August 1999 so Ober could devote full-time to the Incident Information Management System (IIMS). Colonel Evanko learned that Lieutenant Colonel Hickes wanted people assigned full-time to IIMS. (Evanko Dep. at 285-288) As Ober acknowledges, his role as Team Leader for System Integrator Procurement was an important part of the IIMS project. Under the

12

circumstances, the Commissioner's action was reasonably related to a legitimate government purpose.

Finally, Ober insists he should have been promoted to Major. There is only one individual who has the discretion to promote Ober and that is Colonel Evanko. (Evanko Aff. at ¶ 3) The other defendants have no liability on this claim. As for Colonel Evanko, there is no evidence that Ober was better qualified than any individual the Commissioner chose to promote. Ober remains on the eligibility list for promotion to major and has been and will be considered for promotion whenever a vacancy in a major's position becomes available. (Evanko Aff. at ¶ 7).

In sum, Ober's First Amendment claims should be dismissed. Moreover, the evidence of record demonstrates that none of the defendants have engaged in any form of retaliation against Ober, nor have they conspired to retaliate against him.

### III. DEFENDANTS DID NOT SEIZE PLAINTIFF OR CONSPIRE TO SEIZE HIM IN VIOLATION OF THE FOURTH AMENDMENT.

Although Ober includes a Fourth Amendment claim in the "Issues" section of his brief, he completely fails to brief it. That issue is waived for purposes of Ober's motion for summary judgment. *See Hoffman*, 925 F. Supp. at 318 (plaintiff's justifiable reliance claim was deemed abandoned at summary judgment stage for her failure to brief it).

Even if not waived, Ober's claim that he was "seized" within the meaning of the Fourth Amendment when he was interviewed by Majors Werts and Williams about his role in the FBI's investigation is completely baseless. A Fourth Amendment seizure only occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Mendenhall*, 466 U.S. 544, 552 (1980) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16)). There is a seizure only if a reasonable person in Ober's position would have believed he was not free to leave. *Mendenhall*, 446 U.S. at 554.

13

The averments in Ober's complaint have no evidentiary basis. Ober was never subjected to a custodial interrogation. The interview was not objectively coercive; no weapons were brandished, no threats were made, no physical force was used. Ober could have left at any time. As Ober himself admits, he was not in custody and he would not have been subject to any criminal sanctions if he had refused to answer questions. (Ober Dep., 12/05/2001, at 202-208). Like many other members of the State Police, including Colonel Evanko, Ober was interviewed by Majors Werts and Williams about the facts and circumstances surrounding the FBI investigation. (Werts Dep. at 34) Ober concedes he has personally conducted similar administrative interviews and administered the same *Garrity* warnings that Majors Werts and Williams gave to him. (Ober Dep., 12/05/2001, at 48-50, 200-202)

Even if Ober was "seized," the seizure was entirely reasonable. Public employees' expectation of privacy "may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor v. Ortega*, 480 U.S. 709, 717 (1987). Searches and seizures for "work-related purposes, as well as for investigations of work-related misconduct" are constitutionally valid as long as they are reasonable under all the circumstances. *Id.* at 725-26. For example, in *United States v. Donato*, 269 F. Supp. 921 (E.D. Pa. 1967), the Court upheld the constitutionality of searching the locker of an employee at the United States Mint because the employee's expectation of privacy was reduced by virtue of actual office practices.

As in *Donato,* the State Police have specific policies applicable to interviewing employees during internal administrative investigations. *See* Pennsylvania State Police Field Regulation 1-1.28 and Administrative Regulation 4-25. Those regulations mandate that members cooperate truthfully and completely in investigations or inquiries. Moreover, AR 4-25 plainly puts members of the state police on notice that during the course of an administrative investigation, they may be subjected to certain invasions of privacy, including questions related

14

to alleged misconduct or performance of duties. *See* AR 4-25, §§ 25.08(H)(1)(h). These policies came as no surprise to Ober; he has been a member of the State Police for over 20 years, and as Director of Internal Affairs, Ober directed hundreds of administrative investigations. Ober admits conducting similar interviews and administering identical warnings. (Ober Dep., 12/05/2001, at 201). Ober's Fourth Amendment rights were not violated in any manner.[5]

## CONCLUSION

For all the foregoing reasons, the defendants respectfully ask this Court to deny Ober's motion for summary judgment in its entirety.

Respectfully submitted,

*Joanna N. Reynolds*

Joanna Reynolds, Assistant Counsel
Syndi L. Guido, Deputy General Counsel
Barbara L. Christie, Chief Counsel
Governor's Office of General Counsel
(Counsel for Defendants)

Dated: June 14, 2002

---

[5] Finally, Ober raises issues related to a conspiracy claim amongst the defendants to deprive him of his constitutional rights and for defamation. However, he has not offered any factual support for these claims or briefed them at all. Therefore, they should be deemed waived for purposes of his summary judgment motion. *See Hoffman*, 925 F. Supp. at 318.

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL G. OBER,
        Plaintiff      :    NO. 1:CV-01-0084
                                 :    (Judge Caldwell)

vs.                             :    CIVIL ACTION - LAW

PAUL EVANKO, MARK CAMPBELL,    :    JURY TRIAL DEMANDED
THOMAS COURY, JOSEPH WESTCOTT,  :
HAWTHORNE CONLEY,
        Defendants    :

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment was served on plaintiff's counsel, by first-class mail, addressed as follows:

    Don Bailey, Esquire
    4311 North 6th Street
    Harrisburg, PA 17110

                                              _____
                                              Joanna N. Reynolds, Assistant Counsel
                                              Pennsylvania State Police
                                              1800 Elmerton Avenue
                                              Harrisburg, PA  17110
Dated: June 14, 2002                 (717) 783-5568