NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-3725
_____

DARRELL G. OBER

v.

PAUL J. EVANKO, MARK CAMPBELL, THOMAS COURY,
JOSEPH WESTCOTT, HAWTHORNE CONLEY

Paul J. Evanko, Thomas Coury,
Joseph Westcott and Hawthorne Conley,
                                        Appellants
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

District Judge: The Honorable William W. Caldwell
(D.C. Civil Number 01-00084)
_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2003

BEFORE: NYGAARD and SMITH, Circuit Judges and IRENAS,[*] Senior District Judge.

(Opinion Filed: October 21, 2003)
_____

OPINION OF THE COURT

_____

[*]Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

IRENAS, Senior District Judge:

### I.

Appellee Darrell G. Ober ("Ober"), a police officer with the Pennsylvania State Police ("PSP"), sued Appellants, Paul Evanko, PSP Commissioner; Thomas Coury, PSP Deputy Commissioner; Hawthorne Conley, PSP Deputy Commissioner: Joseph Westcott, former PSP Deputy Commissioner: and Mark Campbell, former assistant chief of staff to former Pennsylvania Governor Thomas Ridge, in the United States District Court for the Middle District of Pennsylvania for civil rights violations under 42 U.S.C. § 1983.  Ober alleges that Appellants wrongfully retaliated against him for exercising his First Amendment right to comment on matters of public concern when he discussed a police corruption investigation outside the chain of command.  Appellants moved for summary judgment on qualified immunity grounds.  The District Court denied Appellants' motion, finding that Appellants violated Ober's clearly established First Amendment rights and, thus, were not entitled to qualified immunity.  Appellants argue, and we agree, that the District Court erroneously denied their motion for summary judgment because the District Court incorrectly found that Ober's communications outside the chain of command are protected speech.  Because Ober's speech is not protected, there is no need to decide whether Appellants are entitled to qualified immunity.  Therefore, we will reverse the District Court's denial of Appellants' motion for summary judgment.

## II.

Because we write only for the District Court and the parties, who are familiar with the facts of this case, we recite only those facts relevant to the disposition of this appeal. In late September or early October 1998, FBI Special Agent Ralph Kush ("Kush") approached Darrell Ober ("Ober" or "Appellee"), then Division Director for the Pennsylvania State Police Internal Affairs Division ("IAD"), Bureau of Professional Responsibility ("BPR"), to discuss an FBI investigation into police corruption. Kush told Ober that the FBI suspected Pennsylvania State Police Trooper Kipp Stanton ("Stanton") of taking bribes in return for rigging the cadet selection process and asked for Ober's help in gathering information. Kush did not tell Ober to keep the investigation secret, nor did he indicate that any of Ober's superiors were involved. Ober did not ask if anyone in his division or his superiors were suspected of wrongdoing.

On October 5, 1998, shortly after his conversation with Kush, Ober bypassed the established chain of command and spoke about the investigation with Lieutenant Colonel Robert Hickes ("Hickes"), Deputy Commissioner of Staff. Ober's direct supervisor at the time was Major Hawthorne Conley ("Conley"). Under State Police Field Regulation 1-1.17B, PSP members are required to "promptly report to their supervisors any information which comes to their attention and which tends to indicate that any other member or employe [sic] has violated any law, rule, regulation or order." Ober never discussed the investigation or his conversations with Kush with Major Conley. Hickes

3

told Ober not to tell anyone else about the investigation and to keep him updated.

Approximately seven months later, on May 12, 1999, Ober and Hickes finally informed PSP Commissioner Paul Evanko ("Evanko") about the FBI probe. At that point, the FBI had completed its investigation and determined that Stanton was the sole Trooper engaged in wrongdoing. Evanko subsequently conducted an administrative inquiry into Ober's and Hickes' conduct regarding the investigation, although neither Ober nor Hickes was disciplined.

Over the next several months Ober alleges that Appellants took numerous adverse actions against him in retaliation for his decision to circumvent the chain of command including removing Ober from volunteer positions, investigating his off-duty activities, denying him educational opportunities, assigning Ober to undesirable positions, and failing to promote him to the rank of major. None of these actions, however, affected Ober's rank, pay, benefits or status.

### III.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's denial of summary judgment. *See Behrens v. Pelletier*, 516 U.S. 299, 306 (1996) (noting that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C.

§ 1291") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). Our review is *de novo*. *See Carrasca v. Pomeroy*, 313 F.3d 828, 832 (3d. Cir. 2002); *Baldassare v. New Jersey*, 250 F.3d 188, 192 n.1 (3d Cir. 2001); *Brown v. Armenti*, 247 F.3d 69, 72 (3d Cir. 2001); *Witkowski v. Welch*, 173 F.3d 192, 198 (3d. Cir. 1999). In conducting our review, we view the facts in the light most favorable to the non-moving party. *Baldassare*, 250 F.3d at 191 n.1, 3. Therefore, in making a determination as to whether Appellants are entitled to qualified immunity, we will make an independent determination as to "whether the facts identified . . . constitute a violation of a clearly established constitutional right." *Atkinson v. Taylor*, 316 F.3d 257, 261 (3d Cir. 2003) (internal citation omitted).

### IV.

#### A.

Qualified immunity shields "government officials performing discretionary functions . . . from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 614 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine protects defendants from "unwarranted liability" and the "unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Wilson*, 526 U.S. at 609; *see also Seigert v. Gilley*, 500 U.S. 226, 232 (1990) (noting that determinations of qualified immunity "permit[] courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified

5

immunity to engage in expensive and time consuming preparation to defend the suit on its merits").

We conduct a two-part inquiry to determine if a defendant is entitled to qualified immunity. First, we "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998); *Siegert*, 500 U.S. at 232. If there is no constitutional right at issue, the inquiry ends. If, however, we find a constitutional right, we "proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn*, 526 U.S. 290. A clearly established right exists where "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Deciding the constitutional question before addressing the qualified immunity question" not only provides a clear framework for the judiciary, but also "promotes clarity in the legal standards for official conduct." *Wilson*, 526 U.S. at 609. Therefore, we first must determine if Ober alleges a deprivation of an actual constitutional right. We find that he does not and, thus, we need not address the second prong of the inquiry.

**B.**

Ober claims that he was retaliated against for exercising a First Amendment right to bypass the chain of command when discussing a police corruption investigation. It is

clear that "[p]ublic employee[s] [have] a constitutional right to speak out on matters of public concern without fear of retaliation." *Baldassare*, 250 F.3d at 194; *see also Pickering v. Board of Education*, 391 U.S. 563, 568 (1968) (noting that "[e]mployees of federal and state government do not relinquish their First Amendment rights to comment on matters of public interest as a condition of their government employment"). To establish the existence of this right, employees must show that: (1) they engaged in protected speech; (2) their speech was the motivating or substantial factor for the alleged retaliation; and (3) defendant employer must be unable to show, by a preponderance of the evidence, that the employer would have taken the same action even in the absence of the protected speech. *Baldassare*, 250 F.3d at 194-95. To determine if an employee engaged in protected speech, we apply two-part balancing test established by the United States Supreme Court in *Pickering v. Board of Education*. 391 U.S. 563 (1968).

Under *Pickering*, speech is protected if the interests of the public employee "in commenting upon matters of public concern" outweigh "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. If the balance weighs in favor of the employer, the speech is unprotected. *See Azzaro v. County of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997) (en banc) (noting that speech is unprotected where the government's interest in "effective and efficient provision of services" outweighs the interest of the employee and the public in speaking). Matters of public concern are those that can "be fairly considered

as relating to any matter of political, social or other concern to the community." *Green v. Philadelphia Hous. Auth.*, 105 F.3d 882, 885-86 (3d Cir. 1997). These issues are questions of law for the court, *Baldassare*, 250 F.3d at 195, and our analysis requires that we examine the "the content, form, and context of a given statement based upon the record as a whole." *Connick v. Myers*, 461 U.S. 138, 148 (1983).

Before we turn to the application of the *Pickering* test in this case, however, we must first address Ober's actions. In bypassing the chain of command and speaking to Hickes instead of Conley, Ober engaged in the type of communication traditionally considered speech for First Amendment retaliation purposes. Ober also made a decision, however, not to speak with Conley or any of his superiors in the chain of command. This failure to speak is not expressive conduct protected under the First Amendment. For the purposes of this case, however, we view Ober's silence and speech jointly and characterize Ober's claim as one of retaliation for speaking outside the chain of command.

Under *Pickering*'s first step, there is little doubt that speech regarding alleged police corruption is a matter of public concern, particularly given the vital role state police play in promoting public safety and enforcing and upholding the laws. *See Baldassare*, 250 F.3d at 197 (stating that matters of public concern include "allegations of corrupt practices by government officials") (quoting *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989)); *see also Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1271

(3d Cir. 1994). Therefore, Ober's communications with Hickes about the FBI investigation satisfy the first step of the *Pickering* balancing test. Turning to the second element of the *Pickering* test, we examine the context in which Ober spoke and the government's interest in regulating when and to whom he speaks.

*Pickering*'s second prong requires "a fact-sensitive and deferential weighing of the government's legitimate interests" in regulating a public employee's speech. *Bd. of County Comm'r v. Umbehr*, 518 U.S. 668, 677 (1996). Governmental interests underlying the regulation of employee speech may include "whether the statement impairs discipline by supervisors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Swartzwelder*, 297 F.3d at 235 (citing *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). Courts have given law enforcement agencies wide latitude to regulate an employee's speech when that speech impacts on areas such as discipline, morale, harmony, uniformity, and trust in the ranks. *See Kelley v. Johnson*, 425 U.S. 238, 246 (1976) (noting that police departments need significant flexibility to make decisions that affect "discipline, esprit de corps, and uniformity"); *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000) (recognizing the "heightened need for order, loyalty, morale, and harmony, which affords a police department more latitude in responding to the speech of its officers than other government employers"); *O'Donnell v.*

9

*Barry*, 148 F.3d 1126, 1135 (D.C. Cir. 1998) (stating that due to the "special degree of trust and discipline required in a police force there may be a stronger governmental interest in regulating speech of police officers than in regulating the speech of other governmental employees"); *Campbell v. Towse*, 99 F.3d 820, 829-30 (7th Cir. 1996) (noting the special need of law enforcement superiors to be assured that their subordinates will be loyal and will carry out orders); *Moore v. Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) (finding that law enforcement has a "heightened interest" in maintaining discipline and harmony).

The facts at hand present precisely the type of situation in which latitude should be given to the state police. Ober did not simply speak about suspected corruption, when he spoke, he chose to speak to someone outside his chain of command. In doing so, Ober violated an established PSP regulation requiring PSP members to promptly report, to their superiors, any suspected wrongdoing by other members. These regulations are designed to promote efficiency and trust, to maintain order and discipline, and to effectively alert superiors to potential problems or wrongdoing. The need to enforce compliance with these regulations in this case far outweighs Ober's interest in violating them. Ober fails to present a persuasive reason for circumventing the chain of command by speaking with Hickes instead of Major Conley. While it is possible that bypassing the chain of command might be justified if an officer's superiors were reasonably suspected of wrongdoing, nothing in Ober's conversation with Kush or elsewhere in the record

suggests that Conley, Conley's superiors, or Commissioner Evanko were involved in Stanton's scheme or could not be trusted. Ober was required by regulation to report his conversation to his supervisor; his decision to go outside of the appropriate hierarchy is not a constitutionally protected free speech right given the strong governmental interest in having that regulation followed.

Under *Pickering*, the balance of interests in the instant case clearly favors the State. Appellee Ober fails to show that his interests in communicating about the investigation outside the chain of command outweigh the State's interest in maintaining order, trust, discipline and efficient communication. Therefore, Ober did not engage in protected speech and, consequently, fails to satisfy the first element of a First Amendment retaliation claim. Because Ober cannot show he had a constitutional right to bypass the chain of command, there is no need to decide whether Appellants are entitled to qualified immunity. Therefore, we reverse the District Court's denial of Appellants' motion for summary judgment.

## V.

For the aforementioned reasons, we will reverse the District Court's denial of Appellants' motion for summary judgment and remand the case to the District Court for action consistent with this Opinion.

TO THE CLERK:

    Please file the foregoing Opinion

                      By the Court:

                      <u>   /s/ Joseph E. Irenas   </u>
                      Senior District Judge